1  JOHN-PATRICK M. FRITZ (State Bar No. 245240)
   LEVENE, NEALE, BENDER,
2  YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, California 90034
4  Telephone: (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email: JPF@LNBYG.COM

6
   Attorneys for Chapter 11
7  Debtor and Debtor in Possession

8                  **UNITED STATES BANKRUPTCY COURT**
                     **CENTRAL DISTRICT OF CALIFORNIA**
9                        **LOS ANGELES DIVISION**

10 | In re: | ) Case No.: 2:22-bk-10266-BB |
11 |        | ) |
   | ESCADA AMERICA LLC, | ) Chapter 11 Case |
12 |        | ) Subchapter V |
   |        | ) |
13 | Debtor and Debtor in Possession. | ) |
   |        | ) **EMERGENCY MOTION FOR ORDER:** |
14 |        | ) **(I) AUTHORIZING INTERIM USE OF** |
   |        | ) **CASH COLLATERAL PURSUANT TO** |
15 |        | ) **SECTION 363 OF THE BANKRUPTCY** |
   |        | ) **CODE; AND (II) SETTING A FINAL** |
16 |        | ) **HEARING;    MEMORANDUM    OF** |
   |        | ) **POINTS AND AUTHORITIES** |
17 |        | ) |
   |        | ) **Declarations of Kevin Walsh and John-** |
18 |        | ) **Patrick M. Fritz, Esq. Filed Separately** |
   |        | ) **and Concurrently** |
19 |        | ) |
   |        | ) Hearing: |
20 |        | ) Date:   January 20, 2022 |
   |        | ) Time:  10:00 a.m. |
21 |        | ) Place:  Courtroom 1539 |
   |        | )              255 East Temple Street |
22 |        | )              Los Angeles, CA 90012 |
   |        | ) |
23 |        | ) Hearing to be held in-person and by video- |
   |        | ) conference Government Zoom, see Court's |
24 |        | ) website under "Telephonic Instructions" for |
   |        | ) more details: |
25 |        | ) https://www.cacb.uscourts.gov/judges/honor |
   |        | ) able-sheri-bluebond |
26 |        | ) |
   |        | ) |
27

28

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**............................................................**9**

**I.**    **STATEMENT OF FACTS** .............................................................................................**9**

**II.**    **COMPLIANCE WITH FRBP 4001(c) & LBR 4001-2** ...........................................**9**

**III. DISCUSSION** ...................................................................................................................**10**

    **A. The Debtor Must Be Authorized to Use Cash Collateral to
Operate, Maintain and Preserve the Property and Estate in
Accordance with the Budget** ................................................................................**10**

    **B. Secured Creditors Consent**...............................................................................**12**

    **C. Compliance with Rule 4001 of the Federal Rules of Bankruptcy
Procedure and Local Bankruptcy Rule 4001-2.** ..............................................**12**

    **D. Expedited Relief Pursuant to FRBP 4001(b)(2)** .........................................**12**

    **E. Waiver of Any Applicable Stay is Appropriate** ..........................................**13**

**IV. CONCLUSION**..............................................................................................................**13**

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

In re Dynaco Corporation,
        162 B.R. 389 (Bankr.D.N.H.1993) ........................................................................11

In re Oak Glen R-Vee,
        8 B.R. 213 (Bankr.C.D.Cal.1981) .......................................................................11

In re Tucson Industrial Partners,
        129 B.R. 614 (9th Cir.B.A.P.1991)......................................................................11

**Federal Statutes**

11 U.S.C.
        § 361 ..............................................................................................................2, 6
        § 363 ..................................................................................................2, 10, 11, 12
        § 364................................................................................................................2
        § 506..............................................................................................................10
        § 544..............................................................................................................10
        § 545..............................................................................................................10
        § 547..............................................................................................................10
        § 548..............................................................................................................10
        § 549..............................................................................................................10
        § 1107(a) .......................................................................................................11

28 U.S.C.
        § 157..............................................................................................................10
        § 1334............................................................................................................10
        § 1408............................................................................................................10
        § 1409............................................................................................................10

**Other Authorities**

FED.R.BANKR.P. 4001(b)(2) ...............................................................................12

# SUMMARY

Pursuant to Rules 2081-1(a)(9), 4001-2 and 9075-1(a) of the *Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California* (the "Local Rules"), 11 U.S.C. §§ 361, 363(c), and 364, and Rules 4001 and 9014 of the *Federal Rules of Bankruptcy Procedure* (the "Bankruptcy Rules"), Escada America LLC, a Delaware limited liability company (the "Debtor"), the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case, hereby moves, on an emergency basis (the "Motion"), for entry of an order (i) authorizing the Debtor to use cash collateral on an emergency interim basis pending a final hearing in accordance with the Debtor's operating budget (the "Budget"),[1] a copy of which is attached as **Exhibit "1"** to the master declaration of Kevin Walsh ("Declaration") submitted concurrently herewith;  and (ii) setting a final hearing on the Motion.  The relief requested in this Motion is based on this Motion, the memorandum of points and authorities annexed to the Motion, and the Master Statement of Facts and Master Declaration of Kevin Walsh and declaration of John-Patrick M. Fritz, Esq. (the "Fritz Declaration") filed separately in support of the Motion.

The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 18, 2022, (the "Petition Date").  The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession.

The Debtor was formed as a Delaware limited liability company in 2009.  The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, ten (10) retail stores across seven (7) states in the United States, an office New York City, New York, and over 50 fulltime employees.  The Debtor's retail business is generally known to the public and branded as "Escada."  The Debtor uses the "Escada" brand via a license agreement and does not own any intellectual property rights in connection with the "Escada" brand.

---

[1] For ease of reference, the Budget is attached as Exhibit "1" to the Motion.

For several decades, Escada had been a global retail brand for high-fashion, high-end, ready-to-wear apparel for women, with an emphasis on high-fashion evening wear. On a global scale, Escada has various retail stores and subsidiaries in several countries in Europe, including but not limited to Spain, England and Germany. Escada also has retail stores in North America, including the Debtor, which operates Escada's brick-and-mortar retail business only in the United States.

Historically, Escada (under its prior ownership and prior management) had run its affairs in an unprofitable manner: (1) over-aggressive expansion into new, untested, and/or unprofitable markets and store locations; (2) overpriced commercial retail leases; (3) expensive management overhead and poor leadership; (4) failure to update the brand so as to keep it relevant with changing tastes and generational shifts. By 2019, the Escada business on a global scale was in deep distress and could not continue. At that time, the Debtor, together with other subsidiaries of Escada's then-parent company, was acquired by new ownership (which is now the current ownership and management).

At the time of the acquisition of Debtor in 2019, Escada had 29 subsidiaries in 22 countries, all of which were financially distressed. In December 2019, the Debtor devised and began implementation of a plan to turn around the United States Escada retail business. Debtor believed that the business could be operated at a profit if fundamental business-model changes were implemented, such as overhauling the Debtor's technological suite and reducing speed to market by shifting supply chains from Asia to Europe. Debtor's turnaround plan was also contingent upon Debtor's ability to sell product at Debtor's physical locations because ecommerce sales were minimal. However, what was not – and could not be – known at the time of the acquisition in November 2019, was that an unprecedented, global, catastrophic, and life-changing event with severe economic consequences was on the immediate horizon – the Covid-19 pandemic.

In December 2019, just one month after the acquisition and just as the Debtor's transformation plan was being put into effect, the novel corona virus, known to us now as Covid-

19, was quietly spreading in certain regions of Asia, unbeknownst to the rest of the world. From December 2019 through February 2020, the Debtor prepared to implement a number of business-model and operational changes with the goal of making the United States Escada retail business profitable and correct the mistakes of its prior management and prior owners. However, in March 2020, the world drastically changed, and set the Debtor on course for this current bankruptcy filing. On or about March 15, 2020, the City of Los Angeles declared a state of emergency with shelter in place orders. In the following days, many business and financial centers across the United States came to a near total standstill as the nation was gripped by the COVID-19 crisis. In the span of just 12 days, all fifteen (15) of the Debtor's then-active stores in eight (8) States were shuttered due to lockdown restrictions.

In late March 2020, the United States federal government responded with historic economic aid, passing the CARES Act and providing approximately $3 trillion of stimulus to the economy, which may have bolstered the stock market's recovery, but such economic stimulus did nothing to help retail businesses such as the Debtor, which rely on foot traffic from customer shopping in stores to generate sales. Unfortunately, Debtor was not eligible for any of these stimulus payments and was left with no support during these unprecedented times. In addition, as long as the pandemic lockdowns continued and stores remained closed, or shoppers refrained from shopping due to deep concerns about their health and safety, the Covid-19 recession for retail businesses would continue.

For the past 21 months from March 2020 to December 2021, the Debtor reduced its overhead expenses by an estimated $13,383,037.40 and entered into negotiations with its commercial landlords for rent relief at all store locations. Nonetheless, the past 21 months have been a marked state of tremendous uncertainty for the world's health and economic affairs brought on by an unprecedented pandemic, followed by an unprecedented recession, then unprecedented trillions of dollars of government aid, none of which has prevented the ongoing uncertainty posed by Covid variants and the attendant on-again-off-again lockdowns across the

1    nation and around the world, all of which makes business in the current economic environment

2    very difficult.

3         Some commercial landlords have been reasonable, and the Debtor has negotiated many

4    workouts with its various landlords during 2020 and 2021.   However, there remain multiple

5    landlords that have remained obstinate, and the end of the government's Covid-19 anti-eviction

6    and anti-foreclosure protections are for many landlords a herald's call to commence lawsuits and

7    eviction.   It is because of the consequences of the Covid-19 pandemic that Debtor has been

8    forced to file bankruptcy to restructure its business affairs.   The Debtor was able to reach deals

9    with landlords for three (3) of the then-fifteen (15) store locations.   Of the remaining twelve (12)

10   stores where deals had not yet been reached, negotiations are ongoing with landlords for three (3)

11   of these locations, while landlords for the other nine (9) stores did not offer any concessions.

12        The Debtor cannot survive ongoing litigation with these landlords and the attendant

13   litigation costs and potential liability for breach of those leases. Accordingly, the Debtor

14   determined in its reasonable business judgment that it was in the best interest of its estate to file

15   this current bankruptcy case to preserve the going-concern value of its business and save the jobs

16   of its employees.   The Debtor intends to propose a subchapter V plan in good faith to reorganize

17   its financial affairs, repay its creditors, and avoid a senseless and unnecessary liquidation.

18        To keep the Debtor operating through its reorganization, the Debtor requires the use of

19   cash collateral.   Pursuant to the Motion, the Debtor seeks Court approval authorizing use of cash

20   collateral in order to pay the expenses of maintaining and operating its business as a going

21   concern, as set forth in the Budget.   The Budget reflects the Debtor's ordinary and necessary

22   operating expenses that must be paid post-petition to preserve the Debtor's business.   While the

23   Budget represents the Debtor's best estimates of such expenses, the needs of the business may

24   fluctuate.   Thus, the Debtor seeks authority to deviate from the total expenses contained in the

25   Budget by no more than 15%, on a cumulative basis, and to deviate by category (provided the

26   Debtor does not pay expenses outside any of the categories) without the need for further Court

27   order.

28

The Debtor has three secured creditors (each a "Secured Creditor" and collectively, the "Secured Creditors").

Eden Roc International, LLC ("Eden Roc") has a first-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $579,025.32.

Mega International, LLC ("Mega") has a second-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $1,506,953.

Escada Sourcing and Production, LLC ("ESP") is a true consignor, and substantially all of the Debtor's inventory is owned by ESP via a consignment agreement between the parties. ESP recorded a UCC-1 to give the world notice of its consignment. The Debtor and Secured Parties contend that ESP is a true consignor. However, for the purpose of use of cash collateral, to the extent that ESP might be considered a secured creditor with an interest in cash collateral, ESP consents to the use of cash collateral set forth in the Budget.

If the Debtor is not permitted to use its cash collateral to maintain and operate its business, the Debtor will be unable to operate, pay its rent, pay for insurance, or pay its employees, and the enterprise value of the business will be lost along with any meaningful chance of recovery by creditors. By way of the Motion, the Debtor seeks authority to use cash collateral with the consent of its Secured Creditors.

## ADDITIONAL INFORMATION

This Motion is based upon Local Rules 2081-1(a)(9), 4001-2, and 9075-1(a), 11 U.S.C. §§ 361 and 363(c), and Bankruptcy Rules 4001 and 9014, the supporting Memorandum of Points and Authorities annexed hereto, the Master Statement of Facts and Kevin Walsh Declaration and Fritz Declaration filed separately in support of the Motion, the arguments and statements of counsel to be made at the hearing on the Motion, and other admissible evidence properly brought before the Court. The Debtor submits that the setting of the hearing on this Motion on an

emergency basis is warranted given the critical need to fund operations of active hotel operations.

Pursuant to Bankruptcy Rule 4001(b)(2), while the Court cannot conduct a final hearing on this Motion earlier than fourteen (14) days after service of this Motion, the Court may conduct a preliminary hearing before such fourteen-day period expires to enable the Debtor to use cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.  For the reasons noted herein and in the accompanying Memorandum of Points and Authorities, the Debtor must be able to pay expenses in accordance with the Budget pending a final hearing in order to avoid immediate and irreparable harm to the Debtor's business and its bankruptcy estate.

As set forth in detail in the accompanying Memorandum of Points and Authorities, the proposed use of cash collateral does not include any of the provisions set forth in Bankruptcy Rule 4001(c)(1)(B)(i) – (xi) or Local Bankruptcy Rule 4001-2(b).

In order to provide maximum notice of this Motion, concurrently with the filing of this Motion with the Court, the Debtor served by overnight mail a copy of this Motion and all supportive papers upon the Office of the United States Trustee, the secured creditors, and the 20 largest unsecured creditors in the Debtor's case.

A copy of the proposed order granting the Motion is attached as **Exhibit A** hereto.

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order:

(1)    affirming the adequacy of the Notice given herein;

(2)    granting the Motion on an interim basis pending a final hearing thereon;

(3)    entering an order substantially in the form of the proposed order attached as **Exhibit A** hereto;

(4)    authorizing the Debtor to use cash collateral to pay all of the expenses set forth in the Budget attached as **Exhibit 1** hereto, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis;

(5)    waiving the stay of FRBP 6004;

1      (6)    setting a final hearing on the Motion; and

2      (7)    granting such other and further relief as the Court deems just and proper under the

3  circumstances.

Dated: January 18, 2022          ESCADA AMERICA LLC

By:   */s/ John-Patrick M. Fritz*
          JOHN-PATRICK M. FRITZ
          LEVENE, NEALE, BENDER,
          YOO & GOLUBCHIK L.L.P.
          Attorneys for Chapter 11
          Debtor and Debtor in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    STATEMENT OF FACTS

The Debtor refers to and incorporates as though set forth in full here the separately and concurrently filed Master Statement of Facts and Kevin Walsh Declaration and the Fritz Declaration filed separately and concurrently in support of this Motion.  Unless otherwise stated with specificity or implied by context, capitalized defined terms used in this Motion have the same meanings as attributed to them in the Master Statement of Facts.

## II.    COMPLIANCE WITH FRBP 4001(c) & LBR 4001-2

Pursuant to Rules 4001(b) and 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and Local Bankruptcy Rule 4001-2(b) and (d), the Debtor submits that the relief requested by the Debtor pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| Provision | Cash Coll. |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |

| **Provision** | **Cash Coll.** |
|---|---|
| | |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

## III.    DISCUSSION

**A.    The Debtor Must Be Authorized to Use Cash Collateral to Operate, Maintain and Preserve the Property and Estate in Accordance with the Budget**

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

A debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(l) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section. . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C.§ 363(c)(l). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance

with Section 363.  See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ."  11 U.S.C. §363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(l) if:

> (A) each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale
> or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property.  11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr.C.D.Cal.1981); In re Tucson Industrial Partners, 129 B.R. 614 (9th Cir.B.A.P.1991).  In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business."  In re Dynaco Corporation, 162 B.R. 389 (Bankr.D.N.H.1993), quoting In re Stein, 19 B.R. 458, 459. (Bankr.E.D.Pa.1982).

The only current source of revenue available to the Debtor to use to maintain and operate its business is its cash on hand and cash collateral.  If the Debtor is not permitted to use cash collateral to maintain and operate the business, it is a virtual certainty that the going-concern value of the business will be eviscerated to the detriment of the estate and the secured creditors.

The operating expenses that the Debtor must be able to pay during the pendency of this case are set forth in the Budget through April 22, 2022.  The Budget reflect the Debtor's ordinary and necessary operating expenses that must be paid postpetition to preserve the Debtor's business as a going concern.  While the Budget represents the Debtor's best estimates of such expenses, the needs of the businesses may fluctuate.  Thus, the Debtor seeks authority to deviate from the total

expenses contained in the Budget by no more than 15% on a line-item and cumulative basis without the need for further Court order.

**B.      Secured Creditors Consent**

Pursuant to 11 U.S.C. § 363(c)(2)(A), the Secured Creditors consent to the use of cash collateral as set forth in the Budget.  Pursuant to FRBP 4001(d)(1)(B), and as demonstrated in the table, *supra*, the use of cash collateral and the Secured Creditors' consent is not subject to or conditioned on any of the offending provisions found in FRBP 4001(c)(1)(B) or Local Bankruptcy Rule 4001-2(b) and (d).

**C.      Compliance with Rule 4001 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2.**

Pursuant to Bankruptcy Rules 4001(b)(1)(C), the Debtor is required to serve a copy of the Motion on any entity with an interest in the Debtor's cash collateral, the 20 largest unsecured creditors, and any other entity that the Court directs.  The Debtor has complied with the foregoing by serving a copy of the Motion, the proposed order, the supporting declarations and other pleadings on the secured creditors, the 20 largest unsecured creditors, the United States Trustee, the subchapter V trustee, and parties requesting special notice.

In addition, in compliance with Local Bankruptcy Rule 4001-2, the Debtor has filed concurrently herewith the mandatory Court-approved Form F4001-2 (Statement Regarding Cash Collateral Or Debtor In Possession Financing) which discloses whether the proposed Order contains certain provisions of findings of fact.  Accordingly, the Motion complies with the procedural requirements of Local Bankruptcy Rule 4001-2.

**D.      Expedited Relief Pursuant to FRBP 4001(b)(2)**

The Court is permitted to grant interim relief on an expedited basis with less than 14 days' notice where the use of cash collateral is needed to avoid immediate and irreparable harm to the estate pending a final hearing. FED.R.BANKR.P. 4001(b)(2).  The expenses set forth in the Budget are for expenses that must be paid to avoid immediate and irreparable harm, including payroll, utilities, insurance, rent, and all such expenses required to keep the business operating.  Without

1    the payment of these expenses, the going-concern value of the Debtor's estate will be irreparably

2    harmed.

3    **E.    Waiver of Any Applicable Stay is Appropriate**

4    The Debtor requires a waiver of the 14-day stay provided for under Bankruptcy Rule 6004

5    because the Debtor needs to use cash collateral as soon as possible to maintain the Debtor's

6    business as a going concern for the benefit of the Debtor's estate. Notably, Rule 6004(h) is not

7    meant to apply to the use of cash collateral. *See*, FED.R.BANKR.P. 6004(h) ("… other than cash

8    collateral"). In an abundance of caution, the Debtor requests that any applicable stay, including the

9    stay provided under Bankruptcy Rule 6004, be waived to allow Order on this Motion to become

10   immediately effective.

11   

**IV.    CONCLUSION**

12   **WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

13   (1)    affirming the adequacy of the Notice given herein;

14   (2)    granting the Motion on an interim basis pending a final hearing thereon;

15   (3)    entering an order substantially in the form of the proposed order attached as

16          **Exhibit A** hereto;

17   (4)    authorizing the Debtor to use cash collateral to pay all of the expenses set forth in

18          the Budget attached as **Exhibit 1** hereto, with authority to deviate from the line

19          items contained in the Budget by not more than 15%, on a cumulative and line-

20          item basis;

21   (5)    waiving the stay of FRBP 6004;

22   (6)    setting a final hearing on the Motion; and

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

1         (7)     granting such other and further relief as the Court deems just and proper under the

2    circumstances.

3   Dated: January 18, 2022                  ESCADA AMERICA LLC

By:   ___*/s/ John-Patrick M. Fritz*_____
             JOHN-PATRICK M. FRITZ
             LEVENE, NEALE, BENDER,
             YOO & GOLUBCHIK L.L.P.
             Attorneys for Chapter 11
             Debtor and Debtor in Possession

**EXHIBIT A**

1  JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
2  YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
Los Angeles, California 90034
4  Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
5  Email: JPF@LNBYG.COM

6
Attorneys for Chapter 11
7  Debtor and Debtor in Possession

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                 LOS ANGELES DIVISION

10  In re:                              ) Case No.: 2:22-bk-10266-BB
                                        )
11  ESCADA AMERICA LLC,                 ) Chapter 11 Case
                                        ) Subchapter V
12                                      )
           Debtor and Debtor in Possession.  )
13                                      ) **ORDER: (I) AUTHORIZING INTERIM**
                                        ) **USE OF CASH COLLATERAL AND**
14                                      ) **PROVIDING          ADEQUATE**
                                        ) **PROTECTION     PURSUANT     TO**
15                                      ) **SECTIONS   361   AND   363   OF   THE**
                                        ) **BANKRUPTCY    CODE;    AND    (II)**
16                                      ) **SETTING A FINAL HEARING**
                                        )
17                                      ) Hearing:
                                        ) Date:   January 20, 2022
18                                      ) Time:  10:00 a.m.
                                        ) Place:  Courtroom 1539
19                                      )        255 East Temple Street
                                        )        Los Angeles, CA 90012
20                                      )
21                                      )
22                                      )
23                                      )
24                                      )
25                                      )
26 _____  )

27

28

                              1

On January 20, 2022, at 10:00 a.m., the Honorable Sheri Bluebond, United States Bankruptcy Judge for the Central District of California (the "Court"), held a hearing (the "Hearing") in Courtroom 1539 of the United States Bankruptcy Courthouse located at 255 East Temple Street, Los Angeles, California, to consider the emergency motion (the "Motion"), for entry of an order (i) authorizing the Debtor to use cash collateral on an emergency interim basis pending a final hearing in accordance with the Debtor's operating budget (the "Budget"); and (ii) setting a final hearing on the Motion filed by Escada America LLC, a Delaware limited liability company (the "Debtor"), the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case.  Appearances were made as set forth on the Court's record of the hearing.

The Court, having read and considered the Motion and all papers in support of the Motion, including the declaration of Kevin Walsh (the "Declaration") and the declaration of John-Patrick M. Fritz, the statement of counsel made orally at the hearing, the record in the case, the docket in the case, and for good cause appearing, therefor,

**HEREBY FINDS** that notice of the Motion and Hearing were good and proper under the circumstances and pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules, and

**HEREBY ORDERS AS FOLLOWS:**

(1)    The Motion is granted on an interim basis as set forth in this Order;

(2)    The Debtor is authorized to use cash collateral to pay all of the expenses set forth in the Budget attached as **Exhibit 1** to the Motion and Declaration, with authority to deviate from the line items contained in the Budget by not more than 15%, on a cumulative and line-item basis;

(3)    The stay of FRBP 6004 is waived;

(4)    A final hearing (the "Final Hearing") on the Motion is set for _____, 2022, at :0 .m.

2

1    (5)    Opposition to the Motion, if any, shall be filed by no later than 14 days prior to

2    the Final Hearing, and replies to oppositions, if any, shall be filed no later than 7 days prior to the

3    Final Hearing.

4    **SO ORDERED.**

5    ###

**Exhibit 1**

Confidential and Privileged

**Escada America LLC**
**Cash flow Projections**

$ in Thousands, Except per Unit Data

| | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fcst / Act | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | | FCST |
| Projection Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | | 13 |
| Week Ending | 01/21/22 | 01/28/22 | 02/04/22 | 02/11/22 | 02/18/22 | 02/25/22 | 03/04/22 | 03/11/22 | 03/18/22 | 03/25/22 | 04/01/22 | 04/08/22 | 04/15/22 | | 04/15/22 |
| | | | | | | | | | | | | | | | |
| **Beginning Cash (1)** | $1,029 | $994 | $1,000 | $903 | $949 | $917 | $928 | $844 | $890 | $873 | $864 | $796 | $842 | | $1,029 |
| | | | | | | | | | | | | | | | |
| ( + ) FP Receipts | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | | $930 |
| ( + ) OU Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | | - |
| ( + ) WHS Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | | - |
| ( + ) Other Receipts (2) | - | 20 | - | - | 20 | - | - | - | - | - | 20 | - | - | | 60 |
| **Total Receipts** | $72 | $92 | $72 | $72 | $72 | $92 | $72 | $72 | $72 | $72 | $92 | $72 | $72 | | $990 |
| | | | | | | | | | | | | | | | |
| ( - ) Consignment Fee | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | | $0 |
| ( - ) HQ Personnel | - | (20) | - | (20) | - | (20) | - | (20) | - | (20) | - | (20) | - | | (120) |
| ( - ) Store Personnel | (33) | - | (33) | - | (33) | - | (33) | - | (33) | - | (33) | - | (33) | | (230) |
| ( - ) Store Retention Bonus 2 (3) | (13) | - | (13) | - | (14) | - | (14) | - | (19) | - | (19) | - | (11) | | (102) |
| ( - ) Store Retention Bonus 1 (3) | - | - | - | - | (18) | - | - | - | - | - | - | - | - | | (18) |
| ( - ) Selling and Shipping | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | | (33) |
| ( - ) Store Rent | - | - | (97) | - | - | (97) | - | - | - | (97) | - | - | | (291) |
| ( - ) Financial Charges | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | | (14) |
| ( - ) Benefits | - | (55) | - | - | - | (55) | - | - | - | (55) | - | - | - | | (165) |
| ( - ) Misc. (Facilities & Other) (4) | (57) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | | (81) |
| ( - ) Utilities, Telephones, Networks | - | (5) | (21) | - | - | (5) | - | - | - | (5) | - | - | - | | (36) |
| ( - ) Taxes | - | - | - | - | (33) | - | - | - | (32) | - | - | - | (26) | | (91) |
| **Total Disbursements** | ($106) | ($86) | ($169) | ($26) | ($104) | ($81) | ($155) | ($26) | ($89) | ($81) | ($159) | ($26) | ($75) | | ($1,180) |
| | | | | | | | | | | | | | | | |
| **Weekly Net Operating Cash** | ($35) | $6 | ($98) | $46 | ($32) | $11 | ($83) | $46 | ($18) | ($9) | ($67) | $46 | ($4) | | ($190) |
| | | | | | | | | | | | | | | | |
| **Ending Cash** | $994 | $1,000 | $903 | $949 | $917 | $928 | $844 | $890 | $873 | $864 | $796 | $842 | $839 | | $839 |

(1) For 1/21/22, based on 1/14 cash balances from JPM.

(2) Liquidation sales to 3rd party retailers.

(3) Store retention bonuses developed to retain key talent.

(4) For the week ending 1/21/22, includes one time shipping, closing and supply purchases.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled **EMERGENCY MOTION FOR ORDER: (I) AUTHORIZING INTERIM USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE; AND (II) SETTING A FINAL HEARING; MEMORANDUM OF POINTS AND AUTHORITIES** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 18, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**: On **January 18, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 18, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Overnight Mail
The Honorable Sheri Bluebond                          By email to:
United States Bankruptcy Court                        - Eden Roc International, LLC
Central District of California                            - Escada Sourcing and Production LLC
Edward R. Roybal Federal Building and Courthouse     - Mega International, LLC
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **January 18, 2022** | Jason Klassi | /s/ Jason Klassi |
| Date | Type Name | Signature |

**2:22-bk-10266 Notice will be electronically mailed to:**

John-Patrick M Fritz on behalf of Debtor Escada America, LLC
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Escada 9277
20 Largest

| | | |
|---|---|---|
| 717 GFC LLC<br>Attn: Mrs.Tsui Yeung<br>500 5th Avenue 54th Floor<br>New York City, NY 10110<br><br>ty@jeffsutton.com<br>212.573.9001    fax  212.573.9173 | Beverly Hills Wilshire Hotel<br>9500 WILSHIRE BLVD<br>BEVERLY HILLS, CA 90212 | SAMSON MANAGEMENT CORP.<br>Attn.:  Kathy Panaro<br>97-77 QUEENS BLVD, SUITE 710<br>REGO PARK, NY 11374<br><br>kpanaro@rosenyc.com<br>(212) 210-6753 |
| Chicago Oak Street Partners, LLC<br>Attn:  Lesley Pembroke<br>1343 N. Wells Street, Rear Bldg.<br>Chicago, IL 60610<br><br>pmdcompany1343@gmail.com<br>312.944.8200   fax: 312.944.8227 | Alliant Insurance Services, Inc.<br>701 B St 6th Floor<br>San Diego, CA 92101<br><br>Emily.Quinlan@alliant.com<br>415 946 7500 | SPG HOUSTON HOLDINGS,LP<br>PO Box 822693<br>PHILADELPHIA, PA 19182-2693<br><br>317.263.3037 |
| Las Vegas North Outlets, LLC<br>Attn: Marie Wood<br>875 South Grand Central Parkway, #1<br>Las Vegas, NV  89106<br><br>Marie.Wood@simon.com<br>317-685-7335 | Ala Moana Anchor Acquisition, LLC<br>Attn:  Lisa Gordon<br>PO Box 860375<br>Minneapolis, MN 55486-0074<br><br>Lisa.Gordon@brookfieldpropertiesretail.com<br>818.693.1907 | CHETRIT 1412 LLC<br>Attn: Nativ Winiarsky<br>PO Box 785000<br>PHILADELPHIA, PA 10018<br><br>nwiniarsky@kuckermarino.com<br>212.869.5030    fax  212.944.5818 |
| Syzygy Performance GmbH<br>Osterwaldstra e 10<br>Munchen, Germany 80805-0000<br><br>buchhaltung@catbirdseat.de<br>*+49 898 0991 1800 | Scottsdale Fashion Square LLC<br>Attn:  Tamara Ortega<br>PO Box 31001-2156<br>Pasadena, CA 91110-2156<br><br>Tamara.Ortega@macerich.com<br>602.953.6328 | Woodbury Common Premium Outlets<br>Attn: Marie Wood<br>PO Box 822884<br>Philadelphia, PA 19182-2884<br><br>Marie.Wood@simon.com<br>317-685-7335 |
| Premium Outlet Partners LP<br>Attn:  Leslie C. Traylor<br>PO Box 822873<br>Philadelphia, PA 19182-2873<br><br>Leslie.Traylor@simon.com<br>317-263-2315 | Bal Harbour Shops LLLP<br>Attn: Lorena Dehogues<br>9700 Collins Avenue<br>Bal Harbour, FL  33154<br><br>ld@whitmanfd.com<br>305.403.9249 | METROPOLITAN TELECOMM.<br>PO Box 9660<br>MANCHESTER, NH 03108-9660<br><br>customerservice@mettel.net<br>866 625 2228 |
| AMERICAN EXPRESS<br>PO Box 1270<br>NEWARK, NJ 07101-1270<br><br>AmericanExpress@welcome.aexp.com<br>800 528 2122 | Johnson Controls Security Solutions<br>Attn:  Virgil Guerra<br>PO Box 371994<br>Pittsburgh, PA 15250-7994<br><br>virgilio.guerra@jci.com<br>800-289-2647 | Simon Property Group LP<br>2696 Solution Center<br>Chicago, IL  60677-2006<br><br>317-263-7071 |
| Cushman and Wakefield<br>Attn:  Kaleb McCullough<br>1290 Avenue of the Americas<br>New York, NY 10104<br><br>kaleb.mccullough@cushwake.com<br>314-391-6192 | Funaro & co., P.C.<br>Attn:  Joseph M. Catalano<br>350 Fifth Avenue, 41st Fl<br>New York, NY 10118<br><br>joe.catalano@funaro.com<br>(212) 273-5389   fax:  (212) 947-4725 | Sawgrass Mills Phase IV, L.L.C.<br>c/o M.S. Management Associates Inc.,<br>225 W Washington St,<br>Indianapolis, IN 46204 |