1  JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
2  YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
Los Angeles, California 90034
4  Telephone: (310) 229-1234
Facsimile: (310) 229-1244
5  Email: JPF@LNBYG.COM

6  Attorneys for Chapter 11
Debtor and Debtor in Possession
7

8              UNITED STATES BANKRUPTCY COURT
              CENTRAL DISTRICT OF CALIFORNIA
9                  LOS ANGELES DIVISION

10 In re:                                ) Case No.: 2:22-bk-10266-BB
                                         )
11 ESCADA AMERICA LLC,                   )
                                         ) Chapter 11 Case
12                                       ) Subchapter V
         Debtor and Debtor in Possession. )
13                                       )
                                         ) **MASTER STATEMENT OF FACTS**
14                                       ) **AND DECLARATION OF KEVIN**
                                         ) **WALSH IN SUPPORT OF**
15                                       ) **EMERGENCY FIRST DAY MOTIONS**
                                         )
16                                       ) Hearing:
                                         ) Date:   January 20, 2022
17                                       ) Time:  10:00 a.m.
                                         ) Place: Courtroom 1539
18                                       )        255 East Temple Street
                                         )        Los Angeles, CA 90012
19                                       )
20                                       ) Hearing to be held in-person and by video-
                                         ) conference Government Zoom, see Court's
21                                       ) website under "Telephonic Instructions" for
                                         ) more details:
22                                       ) https://www.cacb.uscourts.gov/judges/honor
                                         ) able-sheri-bluebond
23                                       )
                                         )
24                                       )
                                         )
25                                       )
                                         )
26 _____ )
27
28

1

## TABLE OF CONTENTS

I.  GENERAL FACTUAL BACKGROUND ................................................................. 2

    A.  General Background ................................................................ 2

    B.  Covid-19 and Events Leading to the Debtor's Bankruptcy Filing ............... 3

    C.  Secured Creditors ................................................................ 6

II.  CASH COLLATERAL USE ................................................................. 7

III.  PREPETITION WAGES AND PREPETITION PAYROLL ................................. 9

IV.  UTILITIES ................................................................................... 12

V.  CUSTOMER LOYALTY PROGRAMS ............................................... 12

VI.  PREPETITION TAX OBLIGATIONS ................................................ 13

VII.  LIMITING NOTICE TO CREDITORS ............................................. 15

VIII. REJECTION OF LEASES FOR CLOSING STORES ........................... 17

DECLARATION OF KEVIN WALSH ....................................................... **20**

**<u>MASTER STATEMENT OF FACTS</u>**

**I.      GENERAL FACTUAL BACKGROUND**

    **A.      General Background**

1.      Escada America LLC, a Delaware limited liability company, (the "<u>Debtor</u>") commenced its bankruptcy case by filing a voluntary petition under chapter 11 of title 11, sections 101 *et seq.* of the United States Code (the "<u>Bankruptcy Code</u>") on January 18, 2022, (the "<u>Petition Date</u>").  The Debtor elected subchapter V on its bankruptcy petition and is a small business debtor as defined by 11 U.S.C. § 1182(1).

2.      The United States Trustee (the "<u>UST</u>") appointed a subchapter V trustee (the "<u>Trustee</u>") pursuant to 11 U.S.C. § 1183(a).

3.      The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code.

4.      The Debtor was formed as a Delaware limited liability company in 2009.

5.      The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, ten (10) retail stores across seven (7) states in the United States, an office New York City, New York, and over 50 fulltime employees.  The Debtor's retail business is generally known to the public and branded as "Escada."  The Debtor uses the "Escada" brand via a license agreement and does not own any intellectual property rights in connection with the "Escada" brand.

6.      For several decades, Escada had been a global retail brand for high-fashion, high-end, ready-to-wear apparel for women, with an emphasis on high-fashion evening wear.

7.      On a global scale, Escada has various retail stores and subsidiaries in several countries in Europe, including but not limited to Spain, England and Germany.  Escada also has retail stores in North America, including the Debtor, which operates Escada's brick-and-mortar retail business only in the United States.

8.      Historically, Escada (under its prior ownership and prior management) had run its affairs in an unprofitable manner: (1) over-aggressive expansion into new, untested, and/or unprofitable markets and store locations; (2) overpriced commercial retail leases; (3) expensive management overhead and poor leadership; and (4) failure to update the brand so as to keep it relevant with changing tastes and generational shifts.

9.      By 2019, the Escada business on a global scale was in deep distress and could not continue.  At that time, the Debtor, together with other subsidiaries of Escada's then-parent company, was acquired by new ownership (which is now the current ownership and management).

10.      At the time of the acquisition of Debtor in 2019, Escada had 29 subsidiaries in 22 countries, all of which were financially distressed.

11.      In December 2019, the Debtor devised and began implementation of a plan to turn around the United States Escada retail business. Debtor believed that the business could be operated at a profit if fundamental business-model changes were implemented, such as overhauling the Debtor's technological suite and reducing speed to market by shifting supply chains from Asia to Europe.  Debtor's turnaround plan was also contingent upon Debtor's ability to sell product at Debtor's physical locations because ecommerce sales were minimal.

12.      However, what was not – and could not be – known at the time of the acquisition in November 2019, was that an unprecedented, global, catastrophic, and life-changing event with severe economic consequences was on the immediate horizon – the Covid-19 pandemic.

**B.      Covid-19 and Events Leading to the Debtor's Bankruptcy Filing**

13.      In December 2019, just one month after the acquisition and just as the Debtor's transformation plan was being put into effect, the novel corona virus, known to us now as Covid-19, was quietly spreading in certain regions of Asia, unbeknownst to the rest of the world.

14.      From December 2019 through February 2020, the Debtor prepared to implement a number of business-model and operational changes with the goal of making the United States

Escada retail business profitable and correct the mistakes of its prior management and prior owners.

15.    However, in March 2020, the world drastically changed, and set the Debtor on course for this current bankruptcy filing.

16.    On or about March 15, 2020, the City of Los Angeles declared a state of emergency with shelter in place orders. In the following days, many business and financial centers across the United States came to a near total standstill as the nation was gripped by the Covid-19 crisis.

17.    The Debtor invites the Court's attention to this news article from USA Today summarizing when thirty-eight states issued various shelter-at-home orders due to the Covid-19 pandemic between March 19, 2020, and April 1, 2020:

https://www.usatoday.com/story/news/nation/2020/03/30/coronavirus-stay-home-shelter-in-place-orders-by-state/5092413002/

The same information is generally summarized in the table below for ease of reference:

| | | | | | | | |
|---------|---------------|---|---------|----------------|---|---------|--------------|
| 3/19/20 | California    | | 3/23/20 | Indiana        | | 3/28/20 | Kansas       |
| 3/20/20 | New York      | | 3/23/20 | Michigan       | | 3/28/20 | Rhode Island |
| 3/20/20 | Oregon        | | 3/24/20 | Delaware       | | 3/30/20 | Tennessee    |
| 3/20/20 | Illinois      | | 3/24/20 | Wisconsin      | | 3/30/20 | Arizona      |
| 3/21/20 | New Jersey    | | 3/25/20 | Colorado       | | 3/30/20 | Kentucky     |
| 3/22/20 | Connecticut   | | 3/25/20 | Idaho          | | 3/30/20 | Maryland     |
| 3/22/20 | Louisiana     | | 3/25/20 | Kentucky       | | 3/31/20 | Maine        |
| 3/23/20 | Massachusetts | | 3/25/20 | Minnesota      | | 3/31/20 | Texas        |
| 3/23/20 | Ohio          | | 3/25/20 | Vermont        | | 4/1/20  | Florida      |
| 3/23/20 | Pennsylvania  | | 3/26/20 | Montana        | | 4/1/20  | Georgia      |
| 3/23/20 | West Virginia | | 3/27/20 | North Carolina | | 4/1/20  | Mississippi  |
| 3/23/20 | Washington    | | 3/27/20 | Alaska         | | 4/1/20  | Nevada       |
| 3/23/20 | Hawaii        | | 3/27/20 | New Hampshire  | | | |

18.    In the span of just 12 days, all fifteen (15) of the Debtor's then-active stores in eight (8) States were shuttered due to lockdown restrictions.

19.    Due to rising concerns about Covid-19 in February 2020 before the lockdowns, the U.S. stock market had plummeted, with the Dow Jones Industrial Average dropping from a

high of nearly 30,000 to near 20,000 points, having a significant impact on general consumer behavior and sales in the luxury retail fashion industry.

20.    In late March 2020, the United States federal government responded with historic economic aid, passing the CARES Act and providing approximately $3 trillion of stimulus to the economy, which may have bolstered the stock market's recovery, but such economic stimulus did nothing to help retail businesses such as the Debtor, which rely on foot traffic from customer shopping in stores to generate sales. Unfortunately, the Debtor was not eligible for any of these stimulus payments and was left with no support during these unprecedented times. In addition, as long as the pandemic lockdowns continued and stores remained closed, or shoppers refrained from shopping due to deep concerns about their health and safety, the Covid-19 recession for retail businesses would continue.

21.    For the past 21 months from March 2020 to December 2021, the Debtor reduced its overhead expenses by an estimated $13,383,037.40 and entered into negotiations with its commercial landlords for rent relief at all store locations.

22.    Nonetheless, the past 21 months have been a marked state of tremendous uncertainty for the world's health and economic affairs brought on by an unprecedented pandemic, followed by an unprecedented recession, then unprecedented trillions of dollars of government aid, none of which has prevented the ongoing uncertainty posed by Covid-19 variants and the attendant on-again-off-again lockdowns across the nation and around the world, all of which makes business in the current economic environment very difficult.

23.    Some commercial landlords have been reasonable, and the Debtor has negotiated many workouts with its various landlords during 2020 and 2021. However, there remain multiple landlords that have remained obstinate, and the end of the government's Covid-19 anti-eviction and anti-foreclosure protections are for many landlords a herald's call to commence lawsuits and eviction. It is because of the consequences of the Covid-19 pandemic that Debtor has been forced to file bankruptcy to restructure its business affairs.

24.     The Debtor was able to reach deals with landlords for three (3) of the then-fifteen (15) store locations.

25.     Of the remaining twelve (12) stores where deals had not yet been reached, negotiations are ongoing with landlords for three (3) of these locations, while landlords for the other nine (9) stores did not offer any concessions.

26.     The Debtor cannot survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.

27.     Accordingly, the Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

28.     The Debtor intends to propose a subchapter V plan in good faith to reorganize its financial affairs, repay its creditors, and avoid a senseless and unnecessary liquidation.

**C.    Secured Creditors**

29.     The Debtor has three secured creditors (each a "Secured Creditor" and collectively, the "Secured Creditors").

30.     Eden Roc International, LLC ("Eden Roc") has a first-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $579,025.32.

31.     Mega International, LLC ("Mega") has a second-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $1,506,953.

32.     Escada Sourcing and Production, LLC ("ESP") is a true consignor, and substantially all of the Debtor's inventory is owned by ESP via a consignment agreement between the parties.  ESP recorded a UCC-1 to give the world notice of its consignment.  The Debtor and Secured Parties contend that ESP is a true consignor.  However, for the purpose of use of cash collateral, to the extent that ESP might be considered a secured creditor with an interest in cash collateral, ESP consents to the use of cash collateral set forth in the Budget.

33.    As set forth in the UCC report from the State of Delaware attached as **Exhibit 7** to the Declaration of John-Patrick M. Fritz, Esq. (the "<u>Fritz Declaration</u>") the following UCC-1 liens have been recorded against the Debtor as of the Petition Date.

34.    A UCC-1 financing statement (filing number 2020 4572691) filed on July 2, 2020, for secured party Eden Roc, providing notice of a blanket lien against substantially all of the Debtor's property.

35.    A UCC-1 financing statement (filing number 2020 4572923) filed on July 2, 2020, for secured party Mega, providing notice of a blanket lien against substantially all of the Debtor's property.

36.    A UCC-1 financing statement (filing number 2021 1151423) filed on February 11, 2021, for secured party ESP, providing notice of the consignment and a lien on all inventory.

37.    A UCC-1 financing statement (filing number 2021 1151456) filed on February 11, 2021, for secured party Mega, providing notice of a blanket lien against substantially all of the Debtor's property.

## II.    CASH COLLATERAL USE

38.    The Debtor requires the use of cash collateral to maintain and operate its business and preserve its going concern value by paying ordinary and necessary expenses, as set forth in the Budget through April 22, 2022.  The payment of the expenses reflected in the Budget are necessary to avoid immediate and irreparable harm, and they are in in the best interest of the estate. A true and correct copy of the Budget is attached as **Exhibit 1** hereto.

39.    The Debtor's Secured Creditors have consented to the Debtor's use of cash collateral as set forth in the Budget.

40.    No pre-petition debt service payments will be made to Secured Creditors, but a payment for post-petition inventory may be paid, at a discount, to ESP in or around April 2022 (the Budget ends the week of April 15, 2022).

41.    Pursuant to Rules 4001(b) and 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>") and Local Bankruptcy Rule 4001-2(b) and (d), the Debtor

submits that the relief requested by the Debtor pertaining to the use of cash collateral does not

contain any of the following provisions, except as otherwise indicated below:

| **Provision** | **Cash Coll.** |
|---|---|
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount | No |

| | |
|---|---|
| of cash collateral authorized under the applicable cash collateral order. | |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

42.    The Debtor requires a waiver of the 14-day stay provided for under Bankruptcy Rule 6004 because the Debtor needs to use cash collateral as soon as possible to maintain the Debtor's business as a going concern for the benefit of the Debtor's estate.  The Debtor requests that any applicable stay, including the stay provided under Bankruptcy Rule 6004, be waived to allow Order on this Motion to become immediately effective.  Immediate use of cash collateral is necessary to avoid immediate and irreparable harm, as the Budget's expenses are for immediate necessary expenses, such as payroll, insurance, rent, and utilities, all of which are needed to preserve the value of ongoing operations.

**III.    PREPETITION WAGES AND PREPETITION PAYROLL**

43.    The Debtor employs approximately 58 employees (collectively referred to herein as "employees").

44.    Employee travel and business expenses are submitted weekly and repaid in arrears after review and approval.

45.    The Debtor makes matching contributions to employees' 401k retirement plans.  If an eligible employee contributes up to 100% of his or her compensation as a pre-tax deferral, the Debtor makes a matching contribution of 50%, limited to $1,000 of compensation each year.

46.    The Debtor provides full-time employees with comprehensive benefits, paid time off, holidays, savings account options, 401k retirement plan, and commuter benefits.  The Debtor provides employees with flexible spending accounts for up to $2,750 annually in covered health care costs and up to $5,000 for reimbursement for dependent care.  The Debtor provides employees with up to $270 per month in parking or transit benefits.  The Debtor provides employees with basic life insurance and accidental death and dismemberment insurance equal to

one-times the employee's annual salary up to a maximum of $200,000; life insurance premiums in excess of $50,000 is considered income to the employee. The Debtor also provides employees with short-term and long-term disability insurance.

47.    Payroll is paid through the third-party ADP, which makes deductions for any applicable workers compensation contributions, medical benefit contributions, federal and state withholding taxes, and payroll taxes.

48.    The Debtor has two payrolls: RW6, paid 24 times in one year in approximately 14- or 15-day intervals; and RW7, paid 26 times in one year in approximately 14-day intervals. The next payroll for RW6 is due on January 28, 2022, and will include a prepetition stub period of 1/15/2022 to 1/18/2022; and the next payroll for RW7 is due on January 21, 2022, and will include a prepetition stub period of 1/8/2022 to 1/18/2022 (the "Prepetition Payroll"). The amounts for the Prepetition Payroll are within the limits of § 507(a)(4) of $13,650 per employee.

49.    **Exhibit 2** to the Declaration is an example of the three recent payrolls[1] for RW6 and RW7, which summarizes the employees and independent contractors, the total amount of the typical payroll, demonstrating that the Prepetition Payroll is well within the limits of § 507(a)(4) of $13,650 per employee. Out of respect for personal privacy, the exhibit does not show the employees' names, but a version with employees' names is available on a confidential basis to the U.S. Trustee and Trustee upon request. The exhibit shows the amounts allocated for healthcare, taxes, workers comp, and federal and state unemployment, etc. None of the employees to paid Prepetition Payroll are insiders. The exhibit is an estimate and approximation of what will be paid in the forthcoming payrolls (which have not yet been generated), and the past three payrolls have been summarized below here for ease of reference:

///

///

---

[1] RW6 has four employees, and RW7 has approximately 50 employees, but Exhibit 2 shows 12 lines of data for RW6 and shows more than 150 lines of data for RW7 because three payrolls for each are being shown, i.e. for RW6, the same 4 employees over three payrolls, and for RW7, the same approximately 50 employees over three payrolls.

**RW6**

| Pay Date | Payroll | # of Employees |
|---|---|---|
| 12/15/2021 | $27,603.67 | 4 |
| 12/30/2021 | $24,714.24 | 4 |
| 1/14/2022 | $22,116.43 | 4 |

**RW7**

| Pay Date | Payroll | # of Employees |
|---|---|---|
| 12/10/2021 | $102,103.04 | 50 |
| 12/23/2021 | $133,100.42 | 50 |
| 1/7/2022 | $101,106.63 | 50 |

50.     All of the employees to which the Debtor seeks to pay Prepetition Payroll for the prepetition period are still employed by the Debtor (a small number of employees may be terminated due to store closings, but their claims are within the statutory limit and must be paid in full, therefore for the sake of administrative convenience, the Debtor seeks to pay them at this time).  The Debtor submits that approval to honor the Prepetition Payroll for the Prepetition Period, including all federal and state withholding taxes, payroll taxes, employer matching 401(k) contributions, and payroll service fees, will not render the estate administratively insolvent (as demonstrated by the cash collateral budget).  The Debtor's employees are integral to the Debtor's continued operation and the generation of revenue, while preserving the value of the estate.  In short, the Debtor cannot continue to operate and reorganize without the employees.  If the Debtor does not continue to pay its employees their ordinary and earned wages, salaries, commissions, and bonuses, the employees will likely quit.  Without employees, the Debtor's operations and the value of its business will be severely impaired, if not eviscerated altogether.  The source of the funds to be used to honor and pay the Prepetition Payroll is the Debtor's cash, which is the cash collateral of secured creditors.  The Debtor has submitted a budget and motion for court authority to use cash collateral to pay the Prepetition Payroll.

## IV.    UTILITIES

51.    To operate its business, the Debtor receives water, gas, electricity, sewer, garbage telephone, internet, and similar utility services from a number of utility companies (each a "Utility Company," and collectively, the "Utility Companies").  Given the importance of the services provided by the Utility Companies to the Debtor's business, it is crucial that the means of providing adequate assurance to the Utility Companies which provide utility services to the Debtor be determined so that there is no interruption in the services provided.

52.    Prior to the commencement of the Debtor's bankruptcy case, the Utility Companies listed in **Exhibit 3** to the Declaration provided utility services to the Debtor.  The Debtor intends to provide adequate "assurance of payment" by providing each of the Utility Companies listed in **Exhibit 3** with a cash deposit, as authorized by Section 366(c)(1)(A)(i) of the Bankruptcy Code, in the amounts set forth in **Exhibit 3**, provided that the Debtor will continue to utilize such services.  The proposed deposit amounts were determined based on an average of the three (3) monthly ledgers reflecting expenses the Debtor incurred for the respective Utility Companies.  To the extent that a deposit is already in place with a particular Utility, such amount was deducted (or will be deducted) from the proposed deposit sought herein.  The source of funds to be used to pay the cash deposits to the Utility Companies will be the Debtor's post-petition revenues and cash on hand, and cash collateral.  The proposed deposits are reflected in the cash collateral budget.

53.    Due to the voluminous nature of three bills per utility per location, the Debtor is not attaching the bills themselves, but the summary as set forth in **Exhibit 3**.

## V.    CUSTOMER LOYALTY PROGRAMS

54.    The Debtor has instituted several customer programs to remain competitive and to enhance its customer base.  As of the Petition Date, the Debtor's customer programs (collectively, the "Customer Programs") consist of the following:

55.    Merchandise Credits and Gift Cards.  Merchandise credits arise when a customer purchases a product in the store and later returns the product to the store without a receipt. Rather than provide the customer with a cash refund, the store gives the customer a credit that can be

applied, up to the amount of the credit, to purchase goods in the store. Merchandise credits do not expire. Gift Cards are sold at the Debtor's stores and online, and cannot be redeemed for cash. Gift cards can be reloaded and balances checked at any of the Debtor's stores and online and do not expire. The Debtor believes that the outstanding obligations on account of unredeemed merchandise credit and gift cards totals approximately $150,000 as of the Petition Date. Historically, roughly 75% of the merchandise credits and gift cards are redeemed by customers. This balance represents credits issued over several years.

56.    <u>Customer Consignment Program</u>. From time to time, because of COVID-19 concerns deterring in-store shopping, the Debtor may allow certain VIP customers to order items remotely and try them on at home, before being billed for those items. These customers may then return unwanted items and be billed for the items that they elect to keep.

57.    The Debtor seeks authority in its discretion to honor the prepetition obligations incurred under the Customer Programs.  The Debtor also seeks authority, in its discretion, to continue to honor the Customer Programs in the ordinary course of business. Such Customer Programs have been provided in the Debtor's ordinary course of business and are essential for the Debtor to stay competitive in its industry.

58.    The Debtor is seeking the relief requested herein in order to maintain customer confidence during the Case. Absent such relief, the Debtor's customer relations will be severely and irreparably harmed at a time when customer loyalty and patronage is extremely critical to the Debtor and the Debtor's ability to maximize value for the benefit of all of the parties.

## VI.    PREPETITION TAX OBLIGATIONS

59.    In the ordinary course of their business, the Debtor collects, withholds and incurs Taxes that include sales and use, business and regulatory fees, customs duties, and other taxes and fees (the "<u>Taxes</u>") payable to various governmental taxing and licensing authorities (the "<u>Taxing Authorities</u>").  The Debtor is required to remit the sales and use taxes collected in connection with the sale of goods at its stores to the applicable Taxing Authorities on a periodic basis, usually monthly in arrears for the prior month.  Many governmental authorities where the Debtor operates

its business require that the Debtor obtain a business license and pay corresponding occupational fees and/or fees associated with the filing of an annual report with such jurisdictions. Taxing authorities also impose custom duties for the importation of goods. The requirement for a company to obtain a business license varies according to the tax law of the jurisdictions, and depends on many factors, including gross receipts.

60.    The Debtor operates in seven (7) States, which each impose different tax obligations on the Debtor in connection with its business and operations. The Debtor remits the Taxes to various federal, state and local government authorities in the ordinary course of business. Taxes are remitted by the Debtor through checks and electronic transfers that are processed through its banks and other financial institutions.

61.    Since the Taxes generally are paid in arrears, the Debtor holds the Taxes for a period of time before remitting them to the appropriate Taxing Authorities. As such, some of the Taxing Authorities were not paid for all prepetition Taxes prior to the Petition Date. As of the Petition Date, the Debtor has collected and retained approximately $50,000.00 in prepetition Taxes for which payment is due in the ordinary course of business.

62.    Other Taxing Authorities may have been sent checks with respect to Taxes that may or may not have been presented or cleared as of the Petition Date. With respect to this category, the Debtor requests authority, in its discretion and to the extent applicable, to issue postpetition replacement checks to those Taxing Authorities that have not presented or cleared prepetition checks issued on account of Taxes.

63.    Paying the prepetition Taxes is essential to the Debtor's ongoing business operations and successful reorganization. If the Debtor's fail to pay Taxes, the Taking Authorities may take actions that could impact the Debtor's ability to operate without interruption. The Debtor also may incur, and would be obligated to pay, increased interest and significant penalties if the estate does not timely satisfy its ongoing tax obligations for the prepetition period or thereafter.

64.    The Debtor also believes that some of the Taxing Authorities may cause the Debtor to be audited if the Taxes are not paid promptly.  Such audits would further divert attention from the reorganization process and increase the costs of administering this estate.

65.    In addition, many Taxing Authorities and State agencies impose personal liability on the officers and directors of collecting entities, such as the Debtor, for Taxes collected by those entities that are not paid to the appropriate Taxing Authority.  Thus, to the extent that any prepetition Taxes are unpaid, the Debtor's officers and directors may be subject to audits and/or lawsuits on account of nonpayment during the pendency of this chapter 11 case.  Such proceedings obviously would constitute a significant distraction for these officers and directors at a time when they should be focused on the Debtor's efforts to stabilize postpetition business operations and to develop and implement a successful reorganization strategy.  This problem could be compounded if the affected individuals assert rights of indemnity against the Debtor for any costs incurred in defending against or otherwise responding to claims which Taxing Authorities and/or State agencies might assert against them on account of the Debtor's nonpayment of Taxes.

## VII.    LIMITING NOTICE TO CREDITORS

66.    Based on the Debtor's books and records, the Debtor has more than 150 creditors. Many of the motions and applications that will be filed in this case will involve matters that ordinarily fall within the parameters of notices required to be given to all creditors and equity security holders in the Debtor's case, but which will not actually affect a majority of creditors or equity interest holders. Given the large number of creditors and interested parties involved and in order to minimize, as much as possible, the administrative costs to the estate associated with providing notice to all creditors, the Debtor requests that, with respect to matters for which the Bankruptcy Code or the Bankruptcy Rules authorize the Court to limit or modify the manner of providing notice, the Court authorize the Debtor to deliver notices only to the following persons/entities:

(i)    The Office of the United States Trustee;

(ii)    The Subchapter V Trustee;

(iii)     The creditors holding 20 largest unsecured claims in this case or, if and when appointed, counsel for the Official Committee of Unsecured Creditors;

(iv)      Secured creditors or their counsel;

(v)       Parties who file with the Court and serve upon the Debtor requests for special notice; and

(vi)      Any party against whom direct relief is sought by motion, application or otherwise, including, by way of example and without limitation, the non-debtor party to an executory contract being assumed or rejected, parties asserting interests in property being sold, and the like.

67.      The Debtor expects to reduce administrative costs as a result of the noticing procedures proposed herein and would like to effectuate such reductions in costs as soon as practicable.  Therefore, the Debtor believes that bringing this request on an emergency basis is warranted.

68.      Unless otherwise ordered by the Court, the limitation on notice proposed by the Debtor shall not apply to the matters or proceedings referred to in Bankruptcy Rules 2002(a)(1) (meeting of creditors), 2002(a)(4) (hearing on the dismissal or conversion of the case), 2002(a)(5) (time fixed to accept or reject a proposed modification of a plan), 2002(b) (time fixed for filing objections and hearings to consider approval of a disclosure statement and confirmation of a plan – recognizing that a disclosure statement is not required in subchapter V unless ordered for cause shown pursuant to 11 U.S.C. § 1181(b)), 2002(d) (notice to equity security holders) and 2002(f) (special meetings of creditors), which matters or proceedings shall be noticed in accordance with such Bankruptcy Rules.

69.      If the Debtor's motion to limit notice is granted, the Debtor proposes to inform all creditors and other parties in interest of notice procedures set forth therein, including a creditor's and party in interest's ability to file a request for special notice, if such party would like to receive all notices filed and served in the Case by sending such persons a notice, by regular first class mail, in the form attached hereto as **Exhibit 4** (the "Notice of Procedures"). The Debtor submits

1    that serving the Notice of Procedures on all creditors and parties in interest provides such creditors

2    and parties in interest with the information that they need in order to request special notice of all

3    notices to be filed in this Case, should such party desire to do so.

4        70.    In order to minimize administrative expenses and save the Debtor, and ultimately

5    the creditors, considerable printing and copying costs, while at the same time, still providing

6    parties in interest with notice of the various pleadings filed in this case, the Debtor suggests that

7    for each pleading filed in this case, service shall be completed by mailing a notice to all parties

8    that are required to be served with such pleading that informs the parties of the title of the pleading

9    that has been filed, the location, time, date and hearing to take place, if any. Additionally, the

10    notice will state that should any party reading the notice want an electronic copy or a hard copy

11    of the pleading, such parties can obtain them by providing a written request by email or mail to

12    Debtor's counsel. A notice similar to the notices that will be sent out pursuant to the foregoing

13    procedures is attached hereto as **Exhibit 5**. The Debtor submits that the Court should approve this

14    service procedure as it will save the estate substantial fees while at the same time ensuring that

15    parties in interest receive the information that they need to in order to make informed decisions

16    regarding the Debtor's case and particular pleadings.

17    **VIII.    REJECTION OF LEASES FOR CLOSING STORES**

18        71.    The Debtor has seven (7) retail stores located throughout six (6) states in the United

19    States (collectively, the "Retail Stores"), which are operated and are leased by the Debtor. In

20    addition to the Retail Stores, the Debtor operates three (3) other retails stores, which are leased by

21    an affiliate of the Debtor, Escada America Management LLC.

22        72.    In addition to the Retail Stores, the Debtor also leases office space in New York

23    City, NY.

24        73.    Prior to the Petition Date, the Debtor made significant efforts to streamline its

25    operations and reduce operating expenses, both at the corporate overhead level and at the Retail

26    Stores level.  However, notwithstanding the Debtor's efforts, the Debtor has not been able to

27    generate the revenues necessary to sustain operations at all of its existing Retail Stores.

28

74.    The Debtor has analyzed the performance of its existing Retail Stores to determine which of the Retail Stores are underperforming.  Based upon such analysis, the Debtor has identified a total of five (5) Retail Stores that are among the least profitable store locations and which the Debtor has determined, in the exercise of its business judgment, should be closed without delay (collectively, the "Closing Stores").  A list which identifies the Closing Stores and their addresses, as well as the names and addresses of the landlords for the Closing Stores is attached as **Exhibit 6** hereto.

75.    The Debtor believes that the rent and other obligations payable under the Leases are generally at or above the current market.  Accordingly, the Debtor does not believe that the marketing and assignment of the Leases to third parties would result in any net recovery for its bankruptcy estate.  As a result, the Debtor has determined that the cost to the Debtor of continuing to occupy the Closing Stores, and of performing its obligations under the Leases for the Closing Stores and incurring unnecessary administrative expenses, is burdensome, and that rejection of the Leases for the Closing Stores is therefore in the best interests of the Debtor's estate and creditors.

76.    Given the Debtor's determination that the Closing Stores are unprofitable store locations, each day that such Closing Stores remain open results in significant financial losses (and increased administrative expense) to the Debtor's bankruptcy estate, which must be avoided to preserve the value of the Debtor's assets, conserve the Debtor's resources and cash, and maximize the Debtor's ability to successfully reorganize in this case.  As such, the Debtor has determined that having to file the motion to obtain Court authority to reject the Leases on regular notice would result in a material loss of the Debtor's cash and accrual of administrative claims for unpaid rent, with no benefit to the estate.  Accordingly, the Debtor is seeking relief on an expedited basis.

77.    For the reasons noted above, the Debtor is seeking the entry of an order authorizing the Debtor to immediately reject the unexpired non-residential real property leases (collectively, the "Leases," and individually a "Lease") for the Closing Stores identified in **Exhibit 6** hereto. Due to the large number and voluminous nature of the Leases, the Debtor has not attached copies

of the Leases.  However, complete copies of one or more of the Leases will be provided upon written request to counsel for the Debtor, whose contact information is set forth on the upper left hand corner of the first page of this pleading.

78.    The Debtor seeks to reject each of the Leases for the Closing Stores effective as of the Petition Date, as Debtor has already vacated the premises.

79.    The Debtor is continuing to evaluate the remaining leases and may elect to reject other leases at a later date.

80.    The granting of Debtor's motion to reject the leases is without prejudice to landlords and parties in interest from asserting administrative claims at a later date.  Debtor reserves all rights, claims, and defenses.

81.    The Debtor believes that it has removed all owned personal property assets (the "Remaining Personal Property") located at the Closing Stores as of the Petition Date.  However, out of an abundance of caution and solely to the extent that the Debtor retained (or retains) any ownership interest in any Remaining Personal Property, the Debtor seeks authority to abandon any Remaining Personal Property that remain at the Closing Stores as of the Petition Date.

82.    The Debtor believes that the costs associated with liquidating any Remaining Personal Property at the Closing Stores will likely approach or exceed the value of such assets. Accordingly, the Debtor believes that the Remaining Personal Property at the Closing Stores, if any, have inconsequential value to the Debtor's estate and should be abandoned.

Dated: January 18, 2022     ESCADA AMERICA LLC

By: ___/s/ John-Patrick M. Fritz_____
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

19

## DECLARATION OF KEVIN WALSH

I, Kevin Walsh, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Director of Finance for Escada America LLC, a Delaware limited liability company. (the "Debtor"), the debtor and debtor in possession in this chapter 11 bankruptcy case.

3.      I am an experienced finance professional, having worked for the Debtor since 2016 and with prior work experience at Fortune 500 companies including Johnson & Johnson (Controller/Director) and Pfizer (Finance Director).

4.      I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

5.      I make this declaration in support of the following emergency first-day motions (each a "Motion" and, collectively, the "Motions")[2] and in support of the Debtor's chapter 11, subchapter V plan of reorganization:

   a.   Debtor's Emergency Motion for Order: (I) Authorizing Interim Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; and (II) Setting a Final Hearing (the "Cash Collateral Motion");

   b.   Debtor's Emergency Motion for Order Authorizing Debtor to: (I) Pay Prepetition Wages, Commissions and Bonuses; and (II) Honor Accrued Vacation and Leave Benefits in the Ordinary Course of Business (the "Wage Motion");

   c.   Debtor's Emergency Motion for Order: (I) Authorizing Debtor to Provide Adequate Assurance of Future Payment to Utility Companies Pursuant to Section 366(c) of the Bankruptcy Code; and (II) Setting a Final Hearing (the "Utilities Motion");

---

[2] A true and correct copy of the proposed orders granting the Motions is attached as Exhibit "A" to each of the respective Motions.

d.  Debtor's Emergency Motion for Order Authorizing Debtor to Honor Certain Prepetition Obligations to Customers (the "Customer Loyalty Motion");

e.  Debtor's Emergency Motion for Order Authorizing Debtor to Pay Certain Prepetition Taxes and Custom Duties (the "Tax Motion");

f.  Debtor's Emergency Motion for Order Limiting Notice and Related Relief (the "Limit Notice Motion"); and

g.  Debtor's Emergency Motion for Order Authorizing Debtor to (I) Reject Certain Unexpired Non-Residential Real Property Leases Pursuant to 11 U.S.C. § 365; and (II) Abandon Any Remaining Personal Property Located at the Leased Premises (the "Lease Rejection Motion")

6.  Unless otherwise stated with specificity or implied by context, capitalized defined terms used in this declaration have the same meanings as attributed to them in the master statement of facts to which this declaration is attached.

## GENERAL FACTUAL BACKGROUND

### A.  General Background

7.  Escada America LLC, a Delaware limited liability company, (the "Debtor") commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 18, 2022, (the "Petition Date").  The Debtor elected subchapter V on its bankruptcy petition and is a small business debtor as defined by the Bankruptcy Code.

8.  The United States Trustee (the "UST") appointed (or soon will appoint) a subchapter V trustee (the "Trustee").

9.  The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession.

10.  The Debtor was formed as a Delaware limited liability company in 2009.

11.  The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, ten (10) retail stores across seven (7) states in the United States, an office New York City, New York, and over 50 fulltime

employees.   The Debtor's retail business is generally known to the public and branded as "Escada."  The Debtor uses the "Escada" brand via a license agreement and does not own any intellectual property rights in connection with the "Escada" brand.

12.    For several decades, Escada had been a global retail brand for high-fashion, high-end, ready-to-wear apparel for women, with an emphasis on high-fashion evening wear.

13.    On a global scale, Escada has various retail stores and subsidiaries in several countries in Europe, including but not limited to Spain, England and Germany.  Escada also has retail stores in North America, including the Debtor, which operates Escada's brick-and-mortar retail business only in the United States.

14.    Historically, Escada (under its prior ownership and prior management) had run its affairs in an unprofitable manner: (1) over-aggressive expansion into new, untested, and/or unprofitable markets and store locations; (2) overpriced commercial retail leases; (3) expensive management overhead and poor leadership; and (4) failure to update the brand so as to keep it relevant with changing tastes and generational shifts.

15.    By 2019, the Escada business on a global scale was in deep distress and could not continue.  At that time, the Debtor, together with other subsidiaries of Escada's then-parent company, was acquired by new ownership (which is now the current ownership and management).

16.    At the time of the acquisition of Debtor in 2019, Escada had 29 subsidiaries in 22 countries, all of which were financially distressed.

17.    In December 2019, the Debtor devised and began implementation of a plan to turn around the United States Escada retail business. Debtor believed that the business could be operated at a profit if fundamental business-model changes were implemented, such as overhauling the Debtor's technological suite and reducing speed to market by shifting supply chains from Asia to Europe.  Debtor's turnaround plan was also contingent upon Debtor's ability to sell product at Debtor's physical locations because ecommerce sales were minimal.

18.    However, what was not – and could not be – known at the time of the acquisition in November 2019, was that an unprecedented, global, catastrophic, and life-changing event with severe economic consequences was on the immediate horizon – the Covid-19 pandemic.

**B.    Covid-19 and Events Leading to the Debtor's Bankruptcy Filing**

19.    In December 2019, just one month after the acquisition and just as the Debtor's transformation plan was being put into effect, the novel corona virus, known to us now as Covid-19, was quietly spreading in certain regions of Asia, unbeknownst to the rest of the world.

20.    From December 2019 through February 2020, the Debtor prepared to implement a number of business-model and operational changes with the goal of making the United States Escada retail business profitable and correct the mistakes of its prior management and prior owners.

21.    However, in March 2020, the world drastically changed, and set the Debtor on course for this current bankruptcy filing.

22.    On or about March 15, 2020, the City of Los Angeles declared a state of emergency with shelter in place orders. In the following days, many business and financial centers across the United States came to a near total standstill as the nation was gripped by the Covid-19 crisis.

23.    The Debtor invites the Court's attention to this news article from USA Today summarizing when thirty-eight states issued various shelter-at-home orders due to the Covid-19 pandemic between March 19, 2020, and April 1, 2020:

https://www.usatoday.com/story/news/nation/2020/03/30/coronavirus-stay-home-shelter-in-place-orders-by-state/5092413002/

The same information is generally summarized in the table below for ease of reference:

| 3/19/20 | California | | 3/23/20 | Indiana | | 3/28/20 | Kansas |
|---------|-----------|--|---------|---------|--|---------|--------|
| 3/20/20 | New York | | 3/23/20 | Michigan | | 3/28/20 | Rhode Island |
| 3/20/20 | Oregon | | 3/24/20 | Delaware | | 3/30/20 | Tennessee |
| 3/20/20 | Illinois | | 3/24/20 | Wisconsin | | 3/30/20 | Arizona |
| 3/21/20 | New Jersey | | 3/25/20 | Colorado | | 3/30/20 | Kentucky |
| 3/22/20 | Connecticut | | 3/25/20 | Idaho | | 3/30/20 | Maryland |
| 3/22/20 | Louisiana | | 3/25/20 | Kentucky | | 3/31/20 | Maine |

23

| 3/23/20 | Massachusetts | | 3/25/20 | Minnesota | | 3/31/20 | Texas |
|---------|---------------|---|---------|-----------|---|---------|-------|
| 3/23/20 | Ohio | | 3/25/20 | Vermont | | 4/1/20 | Florida |
| 3/23/20 | Pennsylvania | | 3/26/20 | Montana | | 4/1/20 | Georgia |
| 3/23/20 | West Virginia | | 3/27/20 | North Carolina | | 4/1/20 | Mississippi |
| 3/23/20 | Washington | | 3/27/20 | Alaska | | 4/1/20 | Nevada |
| 3/23/20 | Hawaii | | 3/27/20 | New Hampshire | | | |

24.     In the span of just 12 days, all fifteen (15) of the Debtor's then-active stores in eight (8) States were shuttered due to lockdown restrictions.

25.     Due to rising concerns about Covid-19 in February 2020 before the lockdowns, the U.S. stock market had plummeted, with the Dow Jones Industrial Average dropping from a high of nearly 30,000 to near 20,000 points, having a significant impact on general consumer behavior and sales in the luxury retail fashion industry.

26.     In late March 2020, the United States federal government responded with historic economic aid, passing the CARES Act and providing approximately $3 trillion of stimulus to the economy, which may have bolstered the stock market's recovery, but such economic stimulus did nothing to help retail businesses such as the Debtor, which rely on foot traffic from customer shopping in stores to generate sales.  Unfortunately, the Debtor was not eligible for any of these stimulus payments and was left with no support during these unprecedented times. In addition, as long as the pandemic lockdowns continued and stores remained closed, or shoppers refrained from shopping due to deep concerns about their health and safety, the Covid-19 recession for retail businesses would continue.

27.     For the past 21 months from March 2020 to December 2021, the Debtor reduced its overhead expenses by an estimated $13,383,037.40 and entered into negotiations with its commercial landlords for rent relief at all store locations.

28.     Nonetheless, the past 21 months have been a marked state of tremendous uncertainty for the world's health and economic affairs brought on by an unprecedented pandemic, followed by an unprecedented recession, then unprecedented trillions of dollars of government aid, none of which has prevented the ongoing uncertainty posed by Covid-19

variants and the attendant on-again-off-again lockdowns across the nation and around the world, all of which makes business in the current economic environment very difficult.

29.     Some commercial landlords have been reasonable, and the Debtor has negotiated many workouts with its various landlords during 2020 and 2021.  However, there remain multiple landlords that have remained obstinate, and the end of the government's Covid-19 anti-eviction and anti-foreclosure protections are for many landlords a herald's call to commence lawsuits and eviction.  It is because of the consequences of the Covid-19 pandemic that Debtor has been forced to file bankruptcy to restructure its business affairs.

30.     The Debtor was able to reach deals with landlords for three (3) of the then-fifteen (15) store locations.

31.     Of the remaining twelve (12) stores where deals had not yet been reached, negotiations are ongoing with landlords for three (3) of these locations, while landlords for the other nine (9) stores did not offer any concessions.

32.     The Debtor cannot survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.

33.     Accordingly, the Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

34.     The Debtor intends to propose a subchapter V plan in good faith to reorganize its financial affairs, repay its creditors, and avoid a senseless and unnecessary liquidation.

**C.     Secured Creditors**

35.     The Debtor has three secured creditors (each a "<u>Secured Creditor</u>" and collectively, the "<u>Secured Creditors</u>").

36.     Eden Roc International, LLC ("<u>Eden Roc</u>") has a first-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $579,025.32.

37.    Mega International, LLC ("Mega") has a second-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $1,506,953.

38.    Escada Sourcing and Production, LLC ("ESP") is a true consignor, and substantially all of the Debtor's inventory is owned by ESP via a consignment agreement between the parties.  ESP recorded a UCC-1 to give the world notice of its consignment.  The Debtor and Secured Parties contend that ESP is a true consignor.  However, for the purpose of use of cash collateral, to the extent that ESP might be considered a secured creditor with an interest in cash collateral, ESP consents to the use of cash collateral set forth in the Budget.

39.    As set forth in the UCC report from the State of Delaware attached as **Exhibit 7** to the Declaration of John-Patrick M. Fritz, Esq. (the "Fritz Declaration") the following UCC-1 liens have been recorded against the Debtor as of the Petition Date.

40.    A UCC-1 financing statement (filing number 2020 4572691) filed on July 2, 2020, for secured party Eden Roc, providing notice of a blanket lien against substantially all of the Debtor's property.

41.    A UCC-1 financing statement (filing number 2020 4572923) filed on July 2, 2020, for secured party Mega, providing notice of a blanket lien against substantially all of the Debtor's property.

42.    A UCC-1 financing statement (filing number 2021 1151423) filed on February 11, 2021, for secured party ESP, providing notice of the consignment and a lien on all inventory.

43.    A UCC-1 financing statement (filing number 2021 1151456) filed on February 11, 2021, for secured party Mega, providing notice of a blanket lien against substantially all of the Debtor's property.

## CASH COLLATERAL USE

44.    The Debtor requires the use of cash collateral to maintain and operate its business and preserve its going concern value by paying ordinary and necessary expenses, as set forth in the Budget through April 22, 2022.  The payment of the expenses reflected in the Budget are

necessary to avoid immediate and irreparable harm, and they are in in the best interest of the estate.  A true and correct copy of the Budget is attached as **Exhibit 1** hereto.

45.    The Debtor's Secured Creditors have consented to the Debtor's use of cash collateral as set forth in the Budget.

46.    No pre-petition debt service payments will be made to Secured Creditors, but a payment for post-petition inventory may be paid, at a discount, to ESP in or around April 2022 (the Budget ends the week of April 15, 2022).

47.    The Debtor submits that the relief requested by the Debtor pertaining to the use of cash collateral does not contain any of the following provisions, except as otherwise indicated below:

| **Provision** | **Cash Coll.** |
| --- | --- |
| Cross-collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's pre-petition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's pre-petition lien. | No |
| Provisions that operate, as a practical matter, to divest the Debtor of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law. | No |
| Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the Debtor is authorized to use cash collateral or borrow funds. | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract. | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that prime any secured lien | No |

| | |
|---|---|
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee. | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549. | No |
| Waivers, effective on default or expiration, of the Debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

48.     The Debtor requires a waiver of the 14-day stay provided for under Bankruptcy Rule 6004 because the Debtor needs to use cash collateral as soon as possible to maintain the Debtor's business as a going concern for the benefit of the Debtor's estate.  The Debtor requests that any applicable stay, including the stay provided under Bankruptcy Rule 6004, be waived to allow Order on this Motion to become immediately effective.  Immediate use of cash collateral is necessary to avoid immediate and irreparable harm, as the Budget's expenses are for immediate necessary expenses, such as payroll, insurance, rent, and utilities, all of which are needed to preserve the value of ongoing operations.

**PREPETITION WAGES AND PREPETITION PAYROLL**

49.     The Debtor employs approximately 58 employees (collectively referred to herein as "employees").

50.     Employee travel and business expenses are submitted weekly and repaid in arrears after review and approval.

51.     The Debtor makes matching contributions to employees' 401k retirement plans. If an eligible employee contributes up to 100% of his or her compensation as a pre-tax deferral, the Debtor makes a matching contribution of 50%, limited to $1,000 of compensation each year.

52.     The Debtor provides full-time employees with comprehensive benefits, paid time off, holidays, savings account options, 401k retirement plan, and commuter benefits.   The Debtor provides employees with flexible spending accounts for up to $2,750 annually in covered health care costs and up to $5,000 for reimbursement for dependent care.   The Debtor provides employees with up to $270 per month in parking or transit benefits.   The Debtor provides employees with basic life insurance and accidental death and dismemberment insurance equal to one-times the employee's annual salary up to a maximum of $200,000; life insurance premiums in excess of $50,000 is considered income to the employee.   The Debtor also provides employees with short-term and long-term disability insurance.

53.     Payroll is paid through the third-party ADP, which makes deductions for any applicable workers compensation contributions, medical benefit contributions, federal and state withholding taxes, and payroll taxes.

54.     The Debtor has two payrolls: RW6, paid 24 times in one year in approximately 14- or 15-day intervals; and RW7, paid 26 times in one year in approximately 14-day intervals. The next payroll for RW6 is due on January 28, 2022, and will include a prepetition stub period of 1/15/2022 to 1/18/2022; and the next payroll for RW7 is due on January 21, 2022, and will include a prepetition stub period of 1/8/2022 to 1/18/2022 (the "Prepetition Payroll").   The amounts for the Prepetition Payroll are within the limits of § 507(a)(4) of $13,650 per employee.

55.     **Exhibit 2** to my Declaration is an example of the three recent payrolls[3] for RW6 and RW7, which summarizes the employees and independent contractors, the total amount of the typical payroll, demonstrating that the Prepetition Payroll is well within the limit of $13,650 per employee.   Out of respect for personal privacy, the exhibit does not show the employees' names, but a version with employees' names is available on a confidential basis to the U.S. Trustee and Trustee upon request.   The exhibit shows the amounts allocated for healthcare,

---

[3] RW6 has four employees, and RW7 has approximately 50 employees, but Exhibit 2 shows 12 lines of data for RW6 and shows more than 150 lines of data for RW7 because three payrolls for each are being shown, i.e. for RW6, the same 4 employees over three payrolls, and for RW7, the same approximately 50 employees over three payrolls.

taxes, workers comp, and federal and state unemployment, etc. None of the employees to paid Prepetition Payroll are insiders. The exhibit is an estimate and approximation of what will be paid in the forthcoming payrolls (which have not yet been generated), and the past three payrolls have been summarized below here for ease of reference:

**RW6**

| Pay Date | Payroll | # of Employees |
| --- | --- | --- |
| 12/15/2021 | $27,603.67 | 4 |
| 12/30/2021 | $24,714.24 | 4 |
| 1/14/2022 | $22,116.43 | 4 |

**RW7**

| Pay Date | Payroll | # of Employees |
| --- | --- | --- |
| 12/10/2021 | $102,103.04 | 50 |
| 12/23/2021 | $133,100.42 | 50 |
| 1/7/2022 | $101,106.63 | 50 |

56.    All of the employees to which the Debtor seeks to pay Prepetition Payroll for the prepetition period are still employed by the Debtor (a small number of employees may be terminated due to store closings, but their claims are within the statutory limit and must be paid in full, therefore for the sake of administrative convenience, the Debtor seeks to pay them at this time).  The Debtor submits that approval to honor the Prepetition Payroll for the Prepetition Period, including all federal and state withholding taxes, payroll taxes, employer matching 401(k) contributions, and payroll service fees, will not render the estate administratively insolvent (as demonstrated by the cash collateral budget).  The Debtor's employees are integral to the Debtor's continued operation and the generation of revenue, while preserving the value of the estate.  In short, the Debtor cannot continue to operate and reorganize without the employees.  If the Debtor does not continue to pay its employees their ordinary and earned wages, salaries, commissions, and bonuses, the employees will likely quit.  Without employees, the Debtor's operations and the value of its business will be severely impaired, if not eviscerated

altogether.  The source of the funds to be used to honor and pay the Prepetition Payroll is the Debtor's cash, which is the cash collateral of secured creditors.  The Debtor has submitted a budget and motion for court authority to use cash collateral to pay the Prepetition Payroll.

## UTILITIES

57.    To operate its business, the Debtor receives water, gas, electricity, sewer, garbage telephone, internet, and similar utility services from a number of utility companies (each a "Utility Company," and collectively, the "Utility Companies").  Given the importance of the services provided by the Utility Companies to the Debtor's business, it is crucial that the means of providing adequate assurance to the Utility Companies which provide utility services to the Debtor be determined so that there is no interruption in the services provided.

58.    Prior to the commencement of the Debtor's bankruptcy case, the Utility Companies listed in **Exhibit 3** to my Declaration provided utility services to the Debtor.  The Debtor intends to provide adequate "assurance of payment" by providing each of the Utility Companies listed in **Exhibit 3** with a cash deposit, as authorized by the Bankruptcy Code, in the amounts set forth in **Exhibit 3**, provided that the Debtor will continue to utilize such services. The proposed deposit amounts were determined based on an average of the three (3) monthly ledgers reflecting expenses the Debtor incurred for the respective Utility Companies.  To the extent that a deposit is already in place with a particular Utility, such amount was deducted (or will be deducted) from the proposed deposit sought herein.  The source of funds to be used to pay the cash deposits to the Utility Companies will be the Debtor's post-petition revenues and cash on hand, and cash collateral.  The proposed deposits are reflected in the cash collateral budget.

59.    Due to the voluminous nature of three bills per utility per location, the Debtor is not attaching the bills themselves, but the summary as set forth in **Exhibit 3**.

///

///

///

## CUSTOMER LOYALTY PROGRAMS

60.    The Debtor has instituted several customer programs to remain competitive and to enhance its customer base.  As of the Petition Date, the Debtor's customer programs (collectively, the "Customer Programs") consist of the following:

61.    Merchandise Credits and Gift Cards.  Merchandise credits arise when a customer purchases a product in the store and later returns the product to the store without a receipt. Rather than provide the customer with a cash refund, the store gives the customer a credit that can be applied, up to the amount of the credit, to purchase goods in the store. Merchandise credits do not expire. Gift Cards are sold at the Debtor's stores and online, and cannot be redeemed for cash. Gift cards can be reloaded and balances checked at any of the Debtor's stores and online and do not expire. The Debtor believes that the outstanding obligations on account of unredeemed merchandise credit and gift cards totals approximately $150,000 as of the Petition Date. Historically, roughly 75% of the merchandise credits and gift cards are redeemed by customers. This balance represents credits issued over several years.

62.    Customer Consignment Program. From time to time, because of COVID-19 concerns deterring in-store shopping, the Debtor may allow certain VIP customers to order items remotely and try them on at home, before being billed for those items. These customers may then return unwanted items and be billed for the items that they elect to keep.

63.    The Debtor seeks authority in its discretion to honor the prepetition obligations incurred under the Customer Programs.  The Debtor also seeks authority, in its discretion, to continue to honor the Customer Programs in the ordinary course of business. Such Customer Programs have been provided in the Debtor's ordinary course of business and are essential for the Debtor to stay competitive in its industry.

64.    The Debtor is seeking the relief requested herein in order to maintain customer confidence during the Case. Absent such relief, the Debtor's customer relations will be severely and irreparably harmed at a time when customer loyalty and patronage is extremely critical to the Debtor and the Debtor's ability to maximize value for the benefit of all of the parties.

### PREPETITION TAX OBLIGATIONS

65.     In the ordinary course of their business, the Debtor collects, withholds and incurs Taxes that include sales and use, business and regulatory fees, customs duties, and other taxes and fees (the "Taxes") payable to various governmental taxing and licensing authorities (the "Taxing Authorities").  The Debtor is required to remit the sales and use taxes collected in connection with the sale of goods at its stores to the applicable Taxing Authorities on a periodic basis, usually monthly in arrears for the prior month.  Many governmental authorities where the Debtor operates its business require that the Debtor obtain a business license and pay corresponding occupational fees and/or fees associated with the filing of an annual report with such jurisdictions.  Taxing authorities also impose custom duties for the importation of goods. The requirement for a company to obtain a business license varies according to the tax law of the jurisdictions, and depends on many factors, including gross receipts.

66.     The Debtor operates in seven (7) States, which each impose different tax obligations on the Debtor in connection with its business and operations. The Debtor remits the Taxes to various federal, state and local government authorities in the ordinary course of business. Taxes are remitted by the Debtor through checks and electronic transfers that are processed through its banks and other financial institutions.

67.     Since the Taxes generally are paid in arrears, the Debtor holds the Taxes for a period of time before remitting them to the appropriate Taxing Authorities.  As such, some of the Taxing Authorities were not paid for all prepetition Taxes prior to the Petition Date.  As of the Petition Date, the Debtor has collected and retained approximately $50,000.00 in prepetition Taxes for which payment is due in the ordinary course of business.

68.     Other Taxing Authorities may have been sent checks with respect to Taxes that may or may not have been presented or cleared as of the Petition Date.  With respect to this category, the Debtor requests authority, in its discretion and to the extent applicable, to issue postpetition replacement checks to those Taxing Authorities that have not presented or cleared prepetition checks issued on account of Taxes.

69.    Paying the prepetition Taxes is essential to the Debtor's ongoing business operations and successful reorganization. If the Debtor's fail to pay Taxes, the Taking Authorities may take actions that could impact the Debtor's ability to operate without interruption. The Debtor also may incur, and would be obligated to pay, increased interest and significant penalties if the estate does not timely satisfy its ongoing tax obligations for the prepetition period or thereafter.

70.    The Debtor also believes that some of the Taxing Authorities may cause the Debtor to be audited if the Taxes are not paid promptly.  Such audits would further divert attention from the reorganization process and increase the costs of administering this estate.

71.    In addition, many Taxing Authorities and State agencies impose personal liability on the officers and directors of collecting entities, such as the Debtor, for Taxes collected by those entities that are not paid to the appropriate Taxing Authority.  Thus, to the extent that any prepetition Taxes are unpaid, the Debtor's officers and directors may be subject to audits and/or lawsuits on account of nonpayment during the pendency of this chapter 11 case.   Such proceedings obviously would constitute a significant distraction for these officers and directors at a time when they should be focused on the Debtor's efforts to stabilize postpetition business operations and to develop and implement a successful reorganization strategy.  This problem could be compounded if the affected individuals assert rights of indemnity against the Debtor for any costs incurred in defending against or otherwise responding to claims which Taxing Authorities and/or State agencies might assert against them on account of the Debtor's nonpayment of Taxes.

**LIMITING NOTICE TO CREDITORS**

72.    Based on the Debtor's books and records, the Debtor has more than 150 creditors. Many of the motions and applications that will be filed in this case will involve matters that ordinarily fall within the parameters of notices required to be given to all creditors and equity security holders in the Debtor's case, but which will not actually affect a majority of creditors or equity interest holders. Given the large number of creditors and interested parties involved

and in order to minimize, as much as possible, the administrative costs to the estate associated with providing notice to all creditors, the Debtor requests that, with respect to matters for which the Bankruptcy Code or the Bankruptcy Rules authorize the Court to limit or modify the manner of providing notice, the Court authorize the Debtor to deliver notices only to the following persons/entities:

(i)     The Office of the United States Trustee;

(ii)    The Subchapter V Trustee;

(iii)   The creditors holding 20 largest unsecured claims in this case or, if and when appointed, counsel for the Official Committee of Unsecured Creditors;

(iv)    Secured creditors or their counsel;

(v)     Parties who file with the Court and serve upon the Debtor requests for special notice; and

(vi)    Any party against whom direct relief is sought by motion, application or otherwise, including, by way of example and without limitation, the non-debtor party to an executory contract being assumed or rejected, parties asserting interests in property being sold, and the like.

73.    The Debtor expects to reduce administrative costs as a result of the noticing procedures proposed herein and would like to effectuate such reductions in costs as soon as practicable.  Therefore, the Debtor believes that bringing this request on an emergency basis is warranted.

74.    Unless otherwise ordered by the Court, the limitation on notice proposed by the Debtor shall not apply to the matters or proceedings referred to in Bankruptcy Rules 2002(a)(1) (meeting of creditors), 2002(a)(4) (hearing on the dismissal or conversion of the case), 2002(a)(5) (time fixed to accept or reject a proposed modification of a plan), 2002(b) (time fixed for filing objections and hearings to consider approval of a disclosure statement and confirmation of a plan – recognizing that a disclosure statement is not required in subchapter V unless ordered for cause shown), 2002(d) (notice to equity security holders) and 2002(f) (special

meetings of creditors), which matters or proceedings shall be noticed in accordance with such Bankruptcy Rules.

75.    If the Debtor's motion to limit notice is granted, the Debtor proposes to inform all creditors and other parties in interest of notice procedures set forth therein, including a creditor's and party in interest's ability to file a request for special notice, if such party would like to receive all notices filed and served in the Case by sending such persons a notice, by regular first class mail, in the form attached hereto as **Exhibit 4** (the "Notice of Procedures"). The Debtor submits that serving the Notice of Procedures on all creditors and parties in interest provides such creditors and parties in interest with the information that they need in order to request special notice of all notices to be filed in this Case, should such party desire to do so.

76.    In order to minimize administrative expenses and save the Debtor, and ultimately the creditors, considerable printing and copying costs, while at the same time, still providing parties in interest with notice of the various pleadings filed in this case, the Debtor suggests that for each pleading filed in this case, service shall be completed by mailing a notice to all parties that are required to be served with such pleading that informs the parties of the title of the pleading that has been filed, the location, time, date and hearing to take place, if any. Additionally, the notice will state that should any party reading the notice want an electronic copy or a hard copy of the pleading, such parties can obtain them by providing a written request by email or mail to Debtor's counsel. A notice similar to the notices that will be sent out pursuant to the foregoing procedures is attached hereto as **Exhibit 5**. The Debtor submits that the Court should approve this service procedure as it will save the estate substantial fees while at the same time ensuring that parties in interest receive the information that they need in order to make informed decisions regarding the Debtor's case and particular pleadings.

## REJECTION OF LEASES FOR CLOSING STORES

77.    The Debtor has seven (7) retail stores located throughout six (6) states in the United States (collectively, the "Retail Stores"), which are operated and are leased by the

Debtor. In addition to the Retail Stores, the Debtor operates three (3) other retails stores, which are leased by an affiliate of the Debtor, Escada America Management LLC.

78.    In addition to the Retail Stores, the Debtor also leases office space in New York City, NY.

79.    Prior to the Petition Date, the Debtor made significant efforts to streamline its operations and reduce operating expenses, both at the corporate overhead level and at the Retail Stores level.  However, notwithstanding the Debtor's efforts, the Debtor has not been able to generate the revenues necessary to sustain operations at all of its existing Retail Stores.

80.    The Debtor has analyzed the performance of its existing Retail Stores to determine which of the Retail Stores are underperforming.  Based upon such analysis, the Debtor has identified a total of five (5) Retail Stores that are among the least profitable store locations and which the Debtor has determined, in the exercise of its business judgment, should be closed without delay (collectively, the "Closing Stores").  A list which identifies the Closing Stores and their addresses, as well as the names and addresses of the landlords for the Closing Stores is attached as **Exhibit 6** hereto.

81.    The Debtor believes that the rent and other obligations payable under the Leases are generally at or above the current market.  Accordingly, the Debtor does not believe that the marketing and assignment of the Leases to third parties would result in any net recovery for its bankruptcy estate.  As a result, the Debtor has determined that the cost to the Debtor of continuing to occupy the Closing Stores, and of performing its obligations under the Leases for the Closing Stores and incurring unnecessary administrative expenses, is burdensome, and that rejection of the Leases for the Closing Stores is therefore in the best interests of the Debtor's estate and creditors.

82.    Given the Debtor's determination that the Closing Stores are unprofitable store locations, each day that such Closing Stores remain open results in significant financial losses (and increased administrative expense) to the Debtor's bankruptcy estate, which must be avoided to preserve the value of the Debtor's assets, conserve the Debtor's resources and cash,

and maximize the Debtor's ability to successfully reorganize in this case. As such, the Debtor has determined that having to file the motion to obtain Court authority to reject the Leases on regular notice would result in a material loss of the Debtor's cash and accrual of administrative claims for unpaid rent, with no benefit to the estate. Accordingly, the Debtor is seeking relief on an expedited basis.

83.    For the reasons noted above, the Debtor is seeking the entry of an order authorizing the Debtor to immediately reject the unexpired non-residential real property leases (collectively, the "Leases," and individually a "Lease") for the Closing Stores identified in **Exhibit 6** hereto. Due to the large number and voluminous nature of the Leases, the Debtor has not attached copies of the Leases. However, complete copies of one or more of the Leases will be provided upon written request to counsel for the Debtor, whose contact information is set forth on the upper left hand corner of the first page of this pleading.

84.    The Debtor seeks to reject each of the Leases for the Closing Stores effective as of the Petition Date, as Debtor has already vacated the premises.

85.    The Debtor is continuing to evaluate the remaining leases and may elect to reject other leases at a later date.

86.    The granting of Debtor's motion to reject the leases is without prejudice to landlords and parties in interest from asserting administrative claims at a later date. Debtor reserves all rights, claims, and defenses.

87.    The Debtor believes that it has removed all owned personal property assets (the "Remaining Personal Property") located at the Closing Stores as of the Petition Date. However, out of an abundance of caution and solely to the extent that the Debtor retained (or retains) any ownership interest in any Remaining Personal Property, the Debtor seeks authority to abandon any Remaining Personal Property that remain at the Closing Stores as of the Petition Date.

88.    The Debtor believes that the costs associated with liquidating any Remaining Personal Property at the Closing Stores will likely approach or exceed the value of such assets.

1    Accordingly, the Debtor believes that the Remaining Personal Property at the Closing Stores, if

2    any, have inconsequential value to the Debtor's estate and should be abandoned.

3        I declare and verify under penalty of perjury that the foregoing is true and correct to the

4    best of my knowledge, information and belief.

5        Executed on this 18th day of January 2022, at ___Morristown___, ___New Jersey___.

*Kevin G Walsh*

_____
Kevin Walsh, Declarant

**Exhibit 1**

Confidential and Privileged

**Escada America LLC**
**Cash flow Projections**

$ in Thousands, Except per Unit Data

| | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | WE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fcst / Act | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST |
| Projection Week | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 13 |
| Week Ending | 01/21/22 | 01/28/22 | 02/04/22 | 02/11/22 | 02/18/22 | 02/25/22 | 03/04/22 | 03/11/22 | 03/18/22 | 03/25/22 | 04/01/22 | 04/08/22 | 04/15/22 | 04/15/22 |
| **Beginning Cash (1)** | **$1,029** | **$994** | **$1,000** | **$903** | **$949** | **$917** | **$928** | **$844** | **$890** | **$873** | **$864** | **$796** | **$842** | **$1,029** |
| ( + ) FP Receipts | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $72 | $930 |
| ( + ) OU Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| ( + ) WHS Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| ( + ) Other Receipts (2) | - | 20 | - | - | - | 20 | - | - | - | - | 20 | - | - | 60 |
| **Total Receipts** | **$72** | **$92** | **$72** | **$72** | **$72** | **$92** | **$72** | **$72** | **$72** | **$72** | **$92** | **$72** | **$72** | **$990** |
| ( - ) Consignment Fee | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| ( - ) HQ Personnel | - | (20) | - | (20) | - | (20) | - | (20) | - | (20) | - | (20) | - | (120) |
| ( - ) Store Personnel | (33) | - | (33) | - | (33) | - | (33) | - | (33) | - | (33) | - | (33) | (230) |
| ( - ) Store Retention Bonus 2 (3) | (13) | - | (13) | - | (14) | - | (14) | - | (19) | - | (19) | - | (11) | (102) |
| ( - ) Store Retention Bonus 1 (3) | - | - | - | - | (18) | - | - | - | - | - | - | - | - | (18) |
| ( - ) Selling and Shipping | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (3) | (33) |
| ( - ) Store Rent | - | - | (97) | - | - | - | (97) | - | - | - | (97) | - | - | (291) |
| ( - ) Financial Charges | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (14) |
| ( - ) Benefits | - | (55) | - | - | - | (55) | - | - | - | (55) | - | - | - | (165) |
| ( - ) Misc. (Facilities & Other) (4) | (57) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (81) |
| ( - ) Utilities, Telephones, Networks | - | (5) | (21) | - | - | (5) | - | - | - | (5) | - | - | - | (36) |
| ( - ) Taxes | - | - | - | - | (33) | - | - | - | (32) | - | - | - | (26) | (91) |
| **Total Disbursements** | **($106)** | **($86)** | **($169)** | **($26)** | **($104)** | **($81)** | **($155)** | **($26)** | **($89)** | **($81)** | **($159)** | **($26)** | **($75)** | **($1,180)** |
| **Weekly Net Operating Cash** | **($35)** | **$6** | **($98)** | **$46** | **($32)** | **$11** | **($83)** | **$46** | **($18)** | **($9)** | **($67)** | **$46** | **($4)** | **($190)** |
| **Ending Cash** | **$994** | **$1,000** | **$903** | **$949** | **$917** | **$928** | **$844** | **$890** | **$873** | **$864** | **$796** | **$842** | **$839** | **$839** |

(1) For 1/21/22, based on 1/14 cash balances from JPM.

(2) Liquidation sales to 3rd party retailers.

(3) Store retention bonuses developed to retain key talent.

(4) For the week ending 1/21/22, includes one time shipping, closing and supply purchases.

**Exhibit 2**

| COMPANY CODE | FILE NUMBER | POSITION ID | DIST # | PAY DATE | CHECK/VOUCHER NUMBER | GROSS PAY | TAKE HOME | DIRECT DEPOSIT : CK1-DD CHECKING 1 | DIRECT DEPOSIT : CK2-DD CHECKING 2 | NET PAY | REGULAR HOURS | OVERTIME HOURS | ADDITIONAL HOURS : V-VACATION | TOTAL HOURS | REGULAR EARNINGS | OVERTIME EARNINGS | ADDITIONAL EARNINGS : TN SALES COMM | ADDITIONAL EARNINGS : AU AUTO ALLOW | ADDITIONAL EARNINGS : BN BONUS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RW6 | 000223 | RW6000223 | 1 | 12/15/2021 | 00490003 | 2,254.75 | 1,535.33 | | 1,535.33 | 0.00 | 75.83 | | 7.00 | 82.83 | 2,254.75 | | | | |
| RW6 | 010640 | RW6010640 | 1 | 12/15/2021 | 00490004 | 5,075.00 | 3,544.43 | 200.00 | 3,344.43 | 0.00 | 75.83 | | | 75.83 | 5,075.00 | | | | |
| RW6 | 010768 | RW6010768 | 1 | 12/15/2021 | 00490002 | 11,940.58 | 8,688.15 | 8,688.15 | | 0.00 | 80.00 | | | 80.00 | 4,583.34 | | | 300.00 | 6,987.24 |
| RW6 | 000223 | RW6000223 | 1 | 12/15/2021 | 00490001 | 8,333.34 | 5,324.38 | 5,324.38 | | 0.00 | 75.83 | | | 75.83 | 8,333.34 | | | | |
| RW6 | 000223 | RW6000223 | 1 | 12/30/2021 | 00520003 | 4,655.63 | 1,351.67 | | 1,351.67 | 0.00 | 75.83 | | 7.00 | 82.83 | 2,254.75 | | | | 2,400.88 |
| RW6 | 010640 | RW6010640 | 1 | 12/30/2021 | 00520004 | 5,752.88 | 3,492.58 | 200.00 | 3,292.58 | 0.00 | 75.83 | | | 75.83 | 5,075.00 | | | | 677.88 |
| RW6 | 010768 | RW6010768 | 1 | 12/30/2021 | 00520002 | 5,972.39 | 3,762.13 | 3,762.13 | | 0.00 | 80.00 | | | 80.00 | 4,583.34 | | 300.00 | 1,019.05 | 70.00 |
| RW6 | 010604 | RW6010604 | 1 | 12/30/2021 | 00520001 | 8,333.34 | 5,324.37 | 5,324.37 | | 0.00 | 75.83 | | | 75.83 | 8,333.34 | | | | |
| RW6 | 000223 | RW6000223 | 1 | 01/14/2022 | 00020003 | 2,254.75 | 1,553.14 | | 1,553.14 | 0.00 | 75.83 | | 7.00 | 82.83 | 2,254.75 | | | | |
| RW6 | 010640 | RW6010640 | 1 | 01/14/2022 | 00020004 | 5,075.00 | 3,540.88 | 200.00 | 3,340.88 | 0.00 | 75.83 | | | 75.83 | 5,075.00 | | | | |
| RW6 | 010768 | RW6010768 | 1 | 01/14/2022 | 00020002 | 6,453.34 | 4,913.63 | 4,913.63 | | 0.00 | 80.00 | | | 80.00 | 4,583.34 | | 300.00 | 1,500.00 | 70.00 |
| RW6 | 010604 | RW6010604 | 1 | 01/14/2022 | 00020001 | 8,333.34 | 4,799.39 | 4,799.39 | | 0.00 | 75.83 | | | 75.83 | 8,333.34 | | | | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the left portion of the spreadsheet

| ADDITIONAL EARNINGS - CI - OTHER | TOTAL EARNINGS | FEDERAL INCOME - EMPLOYEE TAX | LIVED IN LOCAL - EMPLOYEE TAX | MEDICARE - EMPLOYEE TAX | SOCIAL SECURITY - EMPLOYEE TAX | SUI/SDI - EMPLOYEE TAX | WORKED IN STATE - EMPLOYEE TAX | FAMILY LEAVE INSURANCE - EMPLOYEE TAX | TOTAL EMPLOYEE TAX | VOLUNTARY DEDUCTION : 7S SUPPORTS | VOLUNTARY DEDUCTION : DNT-DENTAL | VOLUNTARY DEDUCTION : FS-FSA MEDICAL | VOLUNTARY DEDUCTION : L1 401K LOAN | VOLUNTARY DEDUCTION : MED-S125 MEDICAL | VOLUNTARY DEDUCTION : VIS-S125 VISION | TOTAL VOLUNTARY DEDUCTIONS | MEMO - G-GTL | MEMO : H-HRS*WRK | MEMO : X-MAX ELIG/COMP | TOTAL MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 2,254.75 | 127.45 | 59.09 | 29.19 | 124.80 | 1.30 | 84.46 | 11.52 | 437.81 |  | 6.50 | 20.83 | 39.32 | 214.02 |  | 281.61 | 0.94 |  | 2,254.75 | 2,255.20 |
|  | 5,075.00 | 578.83 | 68.95 |  | 294.83 | 1.30 | 261.46 |  | 1,205.37 |  | 6.50 |  |  | 317.76 |  | 325.20 | 0.94 |  | 5,075.00 | 5,080.39 |
| 70.00 | 11,940.58 | 2,038.47 |  | 168.46 | 720.30 |  |  |  | 2,927.23 |  | 6.50 |  |  | 317.76 |  | 325.20 | 0.94 |  |  | 2.40 |
|  | 8,333.34 | 1,804.80 |  | 116.08 |  |  | 452.92 |  | 2,373.80 | 290.34 | 7.80 |  |  |  |  | 336.02 | 1.00 |  | 8,333.34 | 8,350.58 |
| 4,655.63 |  | 127.45 | 59.09 | 64.00 | 273.65 | 1.30 | 84.46 | 11.52 | 621.47 | 2,400.88 | 6.50 | 20.83 | 39.32 | 214.02 |  | 2,682.49 | 0.94 | 0.45 | 2,254.75 | 2,255.20 |
| 5,752.86 |  | 578.83 | 78.78 |  | 336.85 | 1.30 | 261.46 |  | 1,257.22 | 677.88 | 6.50 |  |  | 317.76 |  | 1,003.08 | 0.94 | 5.39 | 5,075.00 | 5,080.39 |
| 5,972.39 |  | 433.82 | 81.92 |  | 350.27 |  |  |  | 866.01 | 1,019.05 | 6.50 |  |  | 317.76 |  | 1,344.25 | 0.94 | 2.40 | 4,653.34 | 4,655.74 |
| 8,333.34 |  | 1,804.80 |  | 116.09 |  |  | 452.92 |  | 2,373.81 | 290.34 | 7.80 |  |  | 336.02 |  | 635.16 | 1.00 | 17.24 | 8,333.34 | 8,350.58 |
| 2,254.75 |  | 127.68 | 59.95 | 29.49 | 126.09 | 1.30 | 84.72 | 11.52 | 440.75 |  | 6.50 | 0.08 | 39.32 | 214.02 |  | 260.86 | 0.94 | 8.27 | 2,254.75 | 2,255.20 |
| 5,075.00 |  | 560.55 | 68.99 |  | 295.00 | 1.30 | 257.15 | 25.93 | 1,208.92 |  | 6.50 |  |  | 317.76 |  | 325.20 | 0.94 | 2.40 | 5,075.00 | 5,083.27 |
| 6,453.34 |  | 745.53 | 88.89 |  | 380.09 |  |  |  | 1,214.51 |  | 6.50 |  |  | 317.76 |  | 325.20 | 0.94 | 2.40 | 4,653.34 | 4,655.74 |
| 8,333.34 |  | 1,774.67 |  | 116.08 | 496.36 | 11.67 | 452.92 | 35.42 | 2,887.12 | 290.34 | 7.80 |  |  | 336.02 | 11.67 | 646.83 | 1.00 | 17.24 | 8,333.34 | 8,350.58 |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the right portion of the spreadsheet

| COMPANY CODE | FILE NUMBER | POSITION ID | DIST # | PAY DATE | CHECK/VOUCHER NUMBER | GROSS PAY | TAKE HOME | DIRECT DEPOSIT: CK1-DD CHECKING 1 | DIRECT DEPOSIT: CK2-DD CHECKING 2 | DIRECT DEPOSIT: CK3-DD CHECKING 3 | DIRECT DEPOSIT: SV1-DD SAVINGS | DIRECT DEPOSIT: SV2-DD SAVINGS 2 | NET PAY | REGULAR HOURS | OVERTIME HOURS | ADDITIONAL HOURS: 7H-HOLIDAY | ADDITIONAL HOURS: PR-PERSONAL | ADDITIONAL HOURS: SK-SICK | ADDITIONAL HOURS: V-VACATION | TOTAL HOURS | REGULAR EARNINGS | OVERTIME EARNINGS | ADDITIONAL EARNINGS: 7H-HOLIDAY | ADDITIONAL EARNINGS: 7H-SALES COMM | ADDITIONAL EARNINGS: BN-BONUS | ADDITIONAL EARNINGS: O-OTHER | ADDITIONAL EARNINGS: PR-PERSONAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RW7 | 000340 | RW7000340 | 1 | 12/10/2021 | 00490023 | 2,492.40 | 1,405.66 | | | | | | 0.00 | 59.50 | | 7.50 | | | | 67.00 | 833.00 | | | 375.00 | 1,575.32 | | -290.92 |
| RW7 | 010788 | RW7010788 | 1 | 12/10/2021 | 00490043 | 1,422.02 | 1,110.96 | 1,110.96 | | | | | 0.00 | 66.08 | | | | | | 66.08 | 1,189.44 | | | | 232.58 | | |
| RW7 | 010755 | RW7010755 | 1 | 12/10/2021 | 00490040 | 3,653.85 | 2,409.48 | 2,409.48 | | | | | 0.00 | 76.00 | | 8.00 | | | 4.00 | 88.00 | 3,653.85 | | | | | | |
| RW7 | 010317 | RW7010317 | 1 | 12/10/2021 | 00490030 | 1,349.87 | 1,083.24 | 1,083.24 | | | | | 0.00 | 59.17 | | 7.00 | | | | 66.17 | 1,207.07 | | | | 142.80 | | |
| RW7 | 010793 | RW7010793 | 1 | 12/10/2021 | 00490025 | 1,526.00 | 1,110.26 | 1,110.26 | | | | | 0.00 | 68.33 | 1.17 | 7.00 | | | | 76.50 | 1,024.95 | 26.33 | | 105.00 | 369.72 | | |
| RW7 | 010670 | RW7010670 | 1 | 12/10/2021 | 00490045 | 2,755.02 | 2,092.54 | 2,092.54 | | | | | 0.00 | 71.50 | | 7.50 | | | | 79.00 | 1,144.00 | | | 150.00 | 961.02 | 500.00 | |
| RW7 | 010780 | RW7010780 | 1 | 12/10/2021 | 00490004 | 515.27 | 442.59 | 442.59 | | | | | 0.00 | 33.25 | | | | | | 33.25 | 399.00 | | | | 116.27 | | |
| RW7 | 010761 | RW7010761 | 1 | 12/10/2021 | 00490005 | 1,274.86 | 920.68 | 920.68 | | | | | 0.00 | 54.50 | | 7.00 | 7.00 | | | 68.50 | 817.50 | | | 105.00 | 247.36 | | 105.00 |
| RW7 | 010782 | RW7010782 | 1 | 12/10/2021 | 00490006 | 1,815.85 | 1,511.50 | 1,511.50 | | | | | 0.00 | 69.75 | | 7.50 | | | | 77.25 | 1,464.75 | | | | 157.50 | 193.60 | |
| RW7 | 010440 | RW7010440 | 1 | 12/10/2021 | 00490039 | 2,145.66 | 1,259.97 | 1,259.97 | | | | | 0.00 | 74.75 | 0.67 | 7.50 | | | | 82.92 | 1,046.50 | 14.07 | | 187.50 | 897.59 | | |
| RW7 | 010800 | RW7010800 | 1 | 12/10/2021 | 00490026 | 424.95 | 387.35 | 387.35 | | | | | 0.00 | 28.33 | | | | | | 28.33 | 424.95 | | | | | | |
| RW7 | 010773 | RW7010773 | 1 | 12/10/2021 | 00490010 | 3,653.85 | 2,855.30 | 2,855.30 | | | | | 0.00 | 80.00 | | 8.00 | | | | 88.00 | 3,653.85 | | | | | | |
| RW7 | 010721 | RW7010721 | 1 | 12/10/2021 | 00490027 | 4,423.08 | 3,216.07 | 3,216.07 | | | | | 0.00 | 80.00 | | 8.00 | | | | 88.00 | 4,423.08 | | | | | | |
| RW7 | 010648 | RW7010648 | 1 | 12/10/2021 | 00490018 | 2,692.31 | 1,125.54 | 1,125.54 | | | | | 0.00 | 80.00 | | 8.00 | | | | 88.00 | 2,692.31 | | | | | | |
| RW7 | 010771 | RW7010771 | 1 | 12/10/2021 | 00490034 | 1,959.37 | 1,528.58 | 1,528.58 | | | | | 0.00 | 64.92 | | 8.00 | | | 4.00 | 76.92 | 1,623.00 | | | | 200.00 | 36.37 | |
| RW7 | 001692 | RW7001692 | 1 | 12/10/2021 | 00490029 | 777.00 | 598.74 | 598.74 | | | | | 0.00 | 30.00 | | 7.00 | | | | 37.00 | 630.00 | | | | 147.00 | | |
| RW7 | 010794 | RW7010794 | 1 | 12/10/2021 | 00490040 | 1,313.43 | 1,076.85 | 1,076.85 | | | | | 0.00 | 72.58 | 1.75 | | | | | 74.33 | 1,016.12 | 36.75 | | | 260.56 | | |
| RW7 | 010161 | RW7010161 | 1 | 12/10/2021 | 00490032 | 1,196.48 | 587.60 | 587.60 | | | | | 0.00 | 60.33 | | 7.50 | | | | 67.83 | 844.62 | | | 150.00 | 201.86 | | |
| RW7 | 010775 | RW7010775 | 1 | 12/10/2021 | 00490011 | 1,630.16 | 1,222.01 | 1,222.01 | | | | | 0.00 | 61.25 | | 8.00 | | | | 69.25 | 1,286.25 | | | | 168.00 | 175.91 | |
| RW7 | 000435 | RW7000435 | 1 | 12/10/2021 | 00490030 | 4,142.15 | 2,417.07 | | | | 50.00 | | 0.00 | 70.83 | | | | | | 70.83 | 1,899.90 | | | | 375.00 | 1,867.25 | |
| RW7 | 010668 | RW7010668 | 1 | 12/10/2021 | 00490020 | 665.84 | 614.91 | 614.91 | | | | | 0.00 | 41.83 | | | | | | 41.83 | 543.79 | | | | 122.05 | | |
| RW7 | 010801 | RW7010801 | 1 | 12/10/2021 | 00490031 | 1,314.00 | 1,121.39 | 1,121.39 | | | | | 0.00 | 65.50 | | 7.50 | | | | 73.00 | 1,179.00 | | | | 135.00 | | |
| RW7 | 010567 | RW7010567 | 1 | 12/10/2021 | 00490007 | 1,180.03 | 895.60 | 895.60 | | | | | 0.00 | 60.00 | | 7.00 | | | | 67.00 | 870.00 | | | 101.50 | 208.53 | | |
| RW7 | 001203 | RW7001203 | 1 | 12/10/2021 | 00490035 | 2,254.97 | 1,396.65 | 246.65 | 500.00 | 650.00 | | | 0.00 | 55.58 | | 7.50 | | | 8.00 | 71.08 | 778.12 | | | | 1,089.35 | | |
| RW7 | 010776 | RW7010776 | 1 | 12/10/2021 | 00490014 | 1,472.22 | 599.69 | 599.69 | | | | | 0.00 | 67.83 | 1.92 | | | | | 69.75 | 1,153.11 | 48.96 | | | 270.15 | | |
| RW7 | 010090 | RW7010090 | 1 | 12/10/2021 | 00490001 | 1,672.00 | 1,248.14 | 1,248.14 | | | | | 0.00 | 64.00 | | | | 16.00 | | 80.00 | 1,337.60 | | | | 334.40 | | |
| RW7 | 010770 | RW7010770 | 1 | 12/10/2021 | 00490012 | 2,187.22 | 1,630.95 | 1,630.95 | | | | | 0.00 | 63.33 | | 8.00 | | | | 71.33 | 1,836.57 | | | | 232.00 | 118.65 | |
| RW7 | 010789 | RW7010789 | 1 | 12/10/2021 | 00490036 | 3,461.54 | 2,469.58 | 2,469.58 | | | | | 0.00 | | | 8.00 | | | | 8.00 | 3,461.54 | | | | | | |
| RW7 | 010789 | RW7010789 | 1 | 12/10/2021 | 00490013 | 824.83 | 698.69 | 698.69 | | | | | 0.00 | 35.00 | | | | | | 35.00 | 630.00 | | | | | 194.83 | |
| RW7 | 020100 | RW7020100 | 1 | 12/10/2021 | 21813414 | 1,364.94 | 1,098.70 | | | | | | 1,098.70 | 67.83 | | 8.00 | | | | 75.83 | 1,220.94 | | | | 144.00 | | |
| RW7 | 010792 | RW7010792 | 1 | 12/10/2021 | 00490008 | 726.20 | 646.29 | 646.29 | | | | | 0.00 | 34.17 | | | | | | 34.17 | 615.06 | | | | | 111.14 | |
| RW7 | 010757 | RW7010757 | 1 | 12/10/2021 | 00490041 | 2,494.01 | 1,823.56 | 1,823.56 | | | | | 0.00 | 73.67 | 0.50 | 7.00 | | | | 81.17 | 1,473.40 | 15.00 | | 140.00 | 865.61 | | |
| RW7 | 010787 | RW7010787 | 1 | 12/10/2021 | 00490038 | 3,846.15 | 3,160.73 | 3,160.73 | | | | | 0.00 | 72.00 | | 8.00 | | | | 88.00 | 3,846.15 | | 8.00 | | | | |
| RW7 | 010062 | RW7010062 | 1 | 12/10/2021 | 00490046 | 3,985.26 | 2,609.72 | 2,609.72 | | | | | 0.00 | 80.00 | | 8.00 | | | | 88.00 | 1,440.00 | | | 200.00 | 1,745.26 | 600.00 | |
| RW7 | 002904 | RW7002904 | 1 | 12/10/2021 | 00490015 | 2,884.62 | 2,199.20 | | | | 2,199.20 | | 0.00 | 80.00 | | 8.00 | | | | 88.00 | 2,884.62 | | | | | | |
| RW7 | 000204 | RW7000204 | 1 | 12/10/2021 | 00490042 | 614.21 | 545.30 | 545.30 | | | | | 0.00 | 20.92 | | | | | | 20.92 | 614.21 | | | | | | |
| RW7 | 010686 | RW7010686 | 1 | 12/10/2021 | 00490044 | 3,730.77 | 2,512.80 | | | 1,512.80 | 1,000.00 | | 0.00 | 80.00 | | 8.00 | | | | 88.00 | 3,730.77 | | | | | | |
| RW7 | 010744 | RW7010744 | 1 | 12/10/2021 | 00490021 | 1,722.82 | 1,406.45 | 1,406.45 | | | | | 0.00 | 66.33 | | 7.00 | | | | 73.33 | 1,193.94 | | | 126.00 | 402.88 | | |
| RW7 | 001029 | RW7001029 | 1 | 12/10/2021 | 00490028 | 2,372.24 | 1,629.46 | 1,629.46 | | | | | 0.00 | 62.25 | | 7.50 | | | | 69.75 | 871.50 | | | 262.50 | 1,404.97 | | -166.73 |
| RW7 | 000313 | RW7000313 | 1 | 12/10/2021 | 00490002 | 3,565.65 | 2,431.80 | 2,431.80 | | | | | 0.00 | 72.00 | | 8.00 | | | | 88.00 | 3,565.65 | | 8.00 | | | | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the left portion of the spreadsheet.

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RW7 | 001299 | RW7001299 | 1 | 12/10/2021 | 00490033 | 1,958.30 | 1,099.10 | 1,099.10 | | | 0.00 | 66.58 | 0.17 | 7.50 | | | | 74.25 | 932.12 | 3.57 | 375.00 | 647.61 | |
| RW7 | 010651 | RW7010651 | 1 | 12/10/2021 | 00490022 | 1,345.53 | 1,028.95 | 1,028.95 | | | 0.00 | 66.50 | 0.58 | 7.00 | | | | 74.08 | 931.00 | 12.18 | 98.00 | 304.35 | |
| RW7 | 010791 | RW7010791 | 1 | 12/10/2021 | 00490016 | 1,768.44 | 1,395.84 | 1,395.84 | | | 0.00 | 42.25 | | 7.00 | | | 23.36 | 72.61 | 929.50 | | 154.00 | 171.02 | |
| RW7 | 010650 | RW7010650 | 1 | 12/10/2021 | 25069850 | 1,148.83 | 889.59 | 889.59 | | | 889.59 | 54.75 | | | | | | 54.75 | 766.50 | | | 382.33 | |
| RW7 | 010560 | RW7010560 | 1 | 12/10/2021 | 00490009 | 1,166.22 | 861.09 | 861.09 | | | 0.00 | 48.08 | | 7.00 | 7.00 | 3.00 | | 65.08 | 697.16 | | 101.50 | 222.56 | 101.50 |
| RW7 | 010736 | RW7010736 | 1 | 12/10/2021 | 00490037 | 246.30 | 212.25 | 212.25 | | | 0.00 | 16.42 | | | | | | 16.42 | 246.30 | | | | |
| RW7 | 001759 | RW7001759 | 1 | 12/10/2021 | 65285197 | 5,486.00 | 4,076.72 | 4,076.72 | | | 4,076.72 | 66.33 | | 7.50 | | | | 73.83 | | | 750.00 | 4,736.00 | |
| RW7 | 010075 | RW7010075 | 1 | 12/10/2021 | 00490047 | 3,212.08 | 2,094.77 | 2,094.77 | | | 0.00 | 80.00 | | 8.00 | | | | 88.00 | 3,212.08 | | | | |
| RW7 | 002731 | RW7002731 | 1 | 12/10/2021 | 00490017 | 1,813.50 | 1,381.95 | 1,381.95 | | | 0.00 | 64.75 | 0.50 | 7.50 | | | 8.00 | 80.75 | 1,295.00 | 15.00 | 150.00 | 193.50 | |
| RW7 | 010784 | RW7010784 | 1 | 12/10/2021 | 00490018 | 454.74 | 414.51 | 414.51 | | | 0.00 | 22.92 | | | | | | 22.92 | 320.88 | | | 133.86 | |
| RW7 | 020003 | RW7020003 | 1 | 01/05/2022 | 05340706 | -197.30 | -182.21 | -182.21 | | | -182.21 | | | | | | | | | | | -197.30 | |
| RW7 | 020003 | RW7020003 | 1 | 01/05/2022 | 05343336 | 197.30 | 182.21 | 182.21 | | | 182.21 | | | | | | | | | | | 197.30 | |
| RW7 | 020003 | RW7020003 | 1 | 01/05/2022 | 05342129 | -543.40 | -495.76 | -495.76 | | | -495.76 | -27.17 | | | | | | | | | -27.17 | -543.40 | |
| RW7 | 020003 | RW7020003 | 1 | 01/05/2022 | 05343335 | 543.40 | 495.76 | 495.76 | | | 495.76 | 27.17 | | | | | | | | | 27.17 | 543.40 | |
| RW7 | 000340 | RW7000340 | 1 | 01/07/2022 | 00014024 | 3,923.00 | 2,119.81 | 2,119.81 | | | 0.00 | | 0.50 | 15.00 | | | 15.00 | 64.50 | 686.00 | 10.50 | 750.00 | 2,767.42 | |
| RW7 | 010788 | RW7010788 | 1 | 01/07/2022 | 00014044 | 1,080.00 | 866.04 | 866.04 | | | 0.00 | 60.00 | | | | | | 60.00 | 1,080.00 | | | | |
| RW7 | 010755 | RW7010755 | 1 | 01/07/2022 | 00014004 | 3,653.85 | 2,417.93 | 2,417.93 | | | 0.00 | 72.00 | | 16.00 | | | 8.00 | 96.00 | 3,653.85 | | | | |
| RW7 | 010317 | RW7010317 | 1 | 01/07/2022 | 00014025 | 1,995.00 | 1,536.07 | 1,536.07 | | | 0.00 | 57.25 | | 14.00 | | | | 71.25 | 1,603.00 | | 392.00 | | |
| RW7 | 010793 | RW7010793 | 1 | 01/07/2022 | 00014026 | 1,159.38 | 839.64 | 839.64 | | | 0.00 | 61.33 | 0.33 | 14.00 | | | | 75.66 | 919.95 | 7.43 | 210.00 | 22.00 | |
| RW7 | 010670 | RW7010670 | 1 | 01/07/2022 | 00014046 | 1,974.07 | 1,515.32 | 1,515.32 | | | 0.00 | 46.67 | | 15.00 | | | 15.00 | 76.67 | 746.72 | | 300.00 | 127.35 | 500.00 |
| RW7 | 010780 | RW7010780 | 1 | 01/07/2022 | 00014005 | 659.80 | 563.15 | 563.15 | | | 0.00 | 43.17 | | | | | | 43.17 | 518.04 | | | 141.76 | |
| RW7 | 010761 | RW7010761 | 1 | 01/07/2022 | 00014006 | 1,317.06 | 956.61 | 956.61 | | | 0.00 | 59.75 | | 14.00 | | | | 73.75 | 896.25 | | 210.00 | 210.81 | |
| RW7 | 010782 | RW7010782 | 1 | 01/07/2022 | 00014007 | 1,790.80 | 1,493.94 | 1,493.94 | | | 0.00 | 54.92 | | | 7.50 | | | 77.42 | 1,153.32 | | 315.00 | 164.98 | |
| RW7 | 010440 | RW7010440 | 1 | 01/07/2022 | 00014040 | 2,584.16 | 1,529.23 | 1,529.23 | | | 0.00 | 73.58 | 0.67 | 15.00 | | | | 89.25 | 1,030.12 | 14.07 | 375.00 | 1,164.97 | |
| RW7 | 010800 | RW7010800 | 1 | 01/07/2022 | 00014027 | 312.45 | 285.11 | 285.11 | | | 0.00 | 20.83 | | | | | | 20.83 | 312.45 | | | | |
| RW7 | 010773 | RW7010773 | 1 | 01/07/2022 | 00014011 | 3,653.85 | 2,862.55 | 2,862.55 | | | 0.00 | 80.00 | | 16.00 | | | | 96.00 | 3,653.85 | | | | |
| RW7 | 010721 | RW7010721 | 1 | 01/07/2022 | 00014028 | 4,423.08 | 3,244.04 | 3,244.04 | | | 0.00 | 80.00 | | 16.00 | | | | 96.00 | 4,423.08 | | | | |
| RW7 | 010648 | RW7010648 | 1 | 01/07/2022 | 00014020 | 2,692.31 | 975.43 | 975.43 | | | 0.00 | 64.00 | | 16.00 | | | 16.00 | 96.00 | 2,692.31 | | | | |
| RW7 | 010771 | RW7010771 | 1 | 01/07/2022 | 00014036 | 1,452.37 | 1,123.84 | 1,123.84 | | | 0.00 | 40.67 | | 16.00 | | | | 56.67 | 1,016.75 | | 400.00 | 35.62 | |
| RW7 | 001692 | RW7001692 | 1 | 01/07/2022 | 00014031 | 696.57 | 541.27 | 541.27 | | | 0.00 | 5.17 | | 14.00 | | | 14.00 | 33.11 | 108.57 | | 294.00 | | |
| RW7 | 010794 | RW7010794 | 1 | 01/07/2022 | 00014041 | 2,192.24 | 1,712.77 | 1,712.77 | | | 0.00 | 72.58 | 0.17 | | | | | 72.75 | 1,021.95 | 3.57 | | 1,166.72 | |
| RW7 | 010161 | RW7010161 | 1 | 01/07/2022 | 00014033 | 1,168.38 | 569.39 | 569.39 | | | 0.00 | 36.75 | | 15.00 | | 3.00 | | 54.75 | 514.50 | | 300.00 | 308.88 | |
| RW7 | 010775 | RW7010775 | 1 | 01/07/2022 | 00014012 | 1,707.82 | 1,282.18 | 1,282.18 | | | 0.00 | 61.00 | | 16.00 | | | | 77.00 | 1,281.00 | | 336.00 | 90.82 | |
| RW7 | 020101 | RW7020101 | 1 | 01/07/2022 | 00014034 | 825.88 | 719.25 | 719.25 | | | 0.00 | 36.67 | 0.58 | | | | | 37.25 | 806.74 | 19.14 | | | |
| RW7 | 010668 | RW7010668 | 1 | 01/07/2022 | 00014021 | 161.03 | 148.72 | 148.72 | | | 0.00 | 9.42 | | | | | | 9.42 | 122.46 | | | 38.57 | |
| RW7 | 010801 | RW7010801 | 1 | 01/07/2022 | 00014032 | 1,962.08 | 1,644.20 | 1,644.20 | | | 0.00 | 56.92 | | 15.00 | | | | 71.92 | 1,024.56 | | 270.00 | 667.52 | |
| RW7 | 010567 | RW7010567 | 1 | 01/07/2022 | 00014008 | 1,251.18 | 954.85 | 954.85 | | | 0.00 | 55.58 | | 14.00 | | 3.50 | | 73.08 | 805.91 | | 203.00 | 191.52 | |
| RW7 | 001203 | RW7001203 | 1 | 01/07/2022 | 00014037 | 1,521.98 | 921.52 | | 271.52 | 650.00 | 0.00 | 41.50 | | 15.00 | | | 12.00 | 68.50 | 581.00 | | 375.00 | 265.98 | |
| RW7 | 010776 | RW7010776 | 1 | 01/07/2022 | 00014015 | 1,294.72 | 528.99 | 528.99 | | | 0.00 | 68.25 | | | | | | 68.25 | 1,160.25 | | | 134.47 | |
| RW7 | 010090 | RW7010090 | 1 | 01/07/2022 | 00014002 | 1,672.00 | 1,246.79 | 1,246.79 | | | 0.00 | 64.00 | | 16.00 | | | | 80.00 | 1,337.60 | | 334.40 | | |
| RW7 | 010707 | RW7010707 | 1 | 01/07/2022 | 00014013 | 2,665.52 | 1,946.70 | 1,946.70 | | | 0.00 | 72.92 | | 16.00 | | | | 88.92 | 2,114.68 | | 464.00 | 86.84 | |
| RW7 | 010769 | RW7010769 | 1 | 01/07/2022 | 00014038 | 3,461.54 | 2,478.03 | 2,478.03 | | | 0.00 | | | 16.00 | | | 28.00 | 44.00 | 3,461.54 | | | | |
| RW7 | 020003 | RW7020003 | 1 | 01/07/2022 | 05343620 | 128.40 | 118.58 | | | | 118.58 | 6.42 | | | | | | 6.42 | 128.40 | | | | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the left portion of the spreadsheet.

| RW7 | Acct | Acct2 | # | Date | Ref | V1 | V2 | V3 | M1 | M2 | Zero | C13 | C14 | Hrs | C16 | C17 | C18 | S | T | T3 | T4 | T5 | T6 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RW7 | 020003 | RW70200 03 | 1 | 01/07/2022 | 05343621 | 1,717.84 | 1,447.95 | | | | 1,447.95 | 59.58 | | 14.00 | | | | 73.58 | 1,191.60 | | 280.00 | 246.24 | |
| RW7 | 010704 | RW70107 04 | 1 | 01/07/2022 | 00014016 | 851.05 | 691.72 | 691.72 | | | 0.00 | 39.83 | | | | | | 39.83 | 637.28 | | | 213.77 | |
| RW7 | 020100 | RW70201 00 | 1 | 01/07/2022 | 00014014 | 1,528.03 | 1,221.89 | 1,221.89 | | | 0.00 | 61.42 | | 16.00 | | | | 77.42 | 1,105.56 | | 288.00 | 134.47 | |
| RW7 | 010792 | RW70107 92 | 1 | 01/07/2022 | 00014009 | 742.98 | 661.66 | 661.66 | | | 0.00 | 37.58 | | | | | | 37.58 | 676.44 | | | 66.54 | |
| RW7 | 010757 | RW70107 57 | 1 | 01/07/2022 | 00014042 | 1,962.96 | 1,427.40 | 1,427.40 | | | 0.00 | 62.08 | | 14.00 | | | | 76.08 | 1,241.60 | | 280.00 | 441.36 | |
| RW7 | 010787 | RW70107 87 | 1 | 01/07/2022 | 00014039 | 3,846.15 | 3,172.69 | 3,172.69 | | | 0.00 | 72.00 | | | 8.00 | | | 96.00 | 3,846.15 | | | | |
| RW7 | 010062 | RW70100 62 | 1 | 01/07/2022 | 00014047 | 4,125.03 | 2,775.84 | 2,775.84 | | | 0.00 | 79.25 | 2.67 | 16.00 | | | | 97.92 | 1,426.50 | 72.09 | 400.00 | 1,626.44 | 600.00 |
| RW7 | 002904 | RW70029 04 | 1 | 01/07/2022 | 00014017 | 2,884.62 | 2,208.08 | | 2,208.90 | | 0.00 | 80.00 | | 16.00 | | | | 96.00 | 2,884.62 | | | | |
| RW7 | 020002 | RW70200 02 | 1 | 01/07/2022 | 00014001 | 2,797.08 | 2,359.73 | 2,359.73 | | | 0.00 | 55.92 | | 14.00 | | | | 69.92 | 1,621.68 | | 406.00 | 769.40 | |
| RW7 | 000204 | RW70002 04 | 1 | 01/07/2022 | 00014043 | 783.03 | 681.46 | 681.46 | | | 0.00 | 26.67 | | | | | | 26.67 | 783.03 | | | | |
| RW7 | 010686 | RW70106 86 | 1 | 01/07/2022 | 00014045 | 3,730.77 | 2,522.63 | 1,522.63 | | 1,000.00 | 0.00 | 64.00 | | 16.00 | | | | 80.00 | 3,730.77 | | | | |
| RW7 | 010744 | RW70107 44 | 1 | 01/07/2022 | 00014022 | 869.18 | 684.70 | 684.70 | | | 0.00 | 29.33 | | 14.00 | | | | 43.33 | 527.94 | | 252.00 | 89.24 | |
| RW7 | 001029 | RW70010 29 | 1 | 01/07/2022 | 00014029 | 1,211.62 | 837.38 | 837.38 | | | 0.00 | 52.50 | | 7.50 | | | | 60.00 | 735.00 | | 262.50 | 380.85 | |
| RW7 | 001029 | RW70010 29 | 1 | 01/07/2022 | 00014030 | 262.50 | 193.85 | 193.85 | | | 0.00 | | | 7.50 | | | | 7.50 | | | 262.50 | | |
| RW7 | 000313 | RW70003 13 | 1 | 01/07/2022 | 00014003 | 3,565.65 | 2,432.95 | 2,432.95 | | | 0.00 | 80.00 | | 16.00 | | | | 96.00 | 3,565.65 | | | | |
| RW7 | 001299 | RW70012 99 | 1 | 01/07/2022 | 00014035 | 2,704.37 | 1,634.44 | 1,634.44 | | | 0.00 | 49.58 | | 7.50 | | 7.50 | 3.00 | 67.58 | 694.12 | | 375.00 | 1,218.25 | |
| RW7 | 010651 | RW70106 51 | 1 | 01/07/2022 | 00014023 | 1,987.95 | 1,495.90 | 1,495.90 | | | 0.00 | 68.92 | 4.33 | 14.00 | | | | 87.25 | 964.88 | 90.93 | 196.00 | 736.14 | |
| RW7 | 010650 | RW70106 50 | 1 | 01/07/2022 | 25070693 | 1,088.55 | 809.97 | | 809.97 | | 809.97 | 56.25 | | | | | | 56.25 | 787.50 | | | 301.05 | |
| RW7 | 010560 | RW70105 60 | 1 | 01/07/2022 | 00014010 | 1,137.52 | 844.39 | 844.39 | | | 0.00 | 48.33 | | 14.00 | | 3.50 | | 65.83 | 700.79 | | 203.00 | 182.98 | |
| RW7 | 010759 | RW70017 59 | 1 | 01/07/2022 | 65267311 | 4,152.50 | 3,191.73 | | 3,191.73 | | 3,191.73 | 59.50 | | 15.00 | | | | 74.50 | | | 1,500.00 | 2,652.50 | |
| RW7 | 010075 | RW70100 75 | 1 | 01/07/2022 | 00014048 | 3,212.08 | 2,066.26 | 2,066.26 | | | 0.00 | 80.00 | | 16.00 | | | | 96.00 | 3,212.08 | | | | |
| RW7 | 002731 | RW70027 31 | 1 | 01/07/2022 | 00014018 | 1,900.64 | 1,452.00 | 1,452.00 | | | 0.00 | 56.83 | 0.50 | 15.00 | | 7.50 | | 79.83 | 1,136.60 | 15.00 | 300.00 | 299.04 | |
| RW7 | 010784 | RW70107 84 | 1 | 01/07/2022 | 00014019 | 664.01 | 589.31 | 589.31 | | | 0.00 | 42.00 | | | | | | 42.00 | 588.00 | | | 76.01 | |
| RW7 | 010801 | RW70108 01 | 1 | 12/13/2021 | 00494001 | 336.16 | 310.44 | 310.44 | | | 0.00 | | | | | | | | | | | 336.16 | |
| RW7 | 010800 | RW70108 00 | 1 | 12/15/2021 | 00500001 | 138.36 | 126.12 | 126.12 | | | 0.00 | | | | | | | | | | | 138.36 | |
| RW7 | 000297 | RW70002 97 | 1 | 12/15/2021 | 00500002 | 142.50 | 130.49 | 130.49 | | | 0.00 | 7.50 | | | | | | 7.50 | 142.50 | | | | |
| RW7 | 010789 | RW70107 89 | 1 | 12/15/2021 | 00470013 | -1,394.52 | -1,120.55 | -1,120.55 | | | 0.00 | -66.08 | | | | | | -66.08 | -1,189.44 | | | -205.08 | |
| RW7 | 010789 | RW70107 89 | 1 | 12/15/2021 | 00490013 | -824.83 | -698.69 | -698.69 | | | 0.00 | -35.00 | | | | | | -35.00 | -630.00 | | | -194.83 | |
| RW7 | 020100 | RW70201 00 | 1 | 12/15/2021 | 00000000 | 1,394.52 | 1,120.55 | 1,120.55 | | | 0.00 | 66.08 | | | | | | 66.08 | 1,189.44 | | | 205.08 | |
| RW7 | 020100 | RW70201 00 | 1 | 12/15/2021 | 00000000 | 824.83 | 698.69 | 698.69 | | | 0.00 | 35.00 | | | | | | 35.00 | 630.00 | | | 194.83 | |
| RW7 | 020100 | RW70201 00 | 1 | 12/15/2021 | 21771041 | -630.00 | -548.74 | | -548.74 | | -548.74 | -35.00 | | | | | | -35.00 | -630.00 | | | | |
| RW7 | 000340 | RW70003 40 | 1 | 12/23/2021 | 00510023 | 1,732.26 | 970.84 | 970.84 | | | 0.00 | 59.50 | | | | | | 59.50 | 833.00 | | | 1,190.18 | |
| RW7 | 010788 | RW70107 88 | 1 | 12/23/2021 | 00510043 | 1,257.52 | 992.20 | 992.20 | | | 0.00 | 65.50 | | | | | | 65.50 | 1,179.00 | | | 78.52 | |
| RW7 | 010755 | RW70107 55 | 1 | 12/23/2021 | 00510003 | 7,518.15 | 4,789.37 | 4,789.37 | | | 0.00 | | | | 8.00 | | | 8.00 | 3,653.85 | | | | 3,536.16 |
| RW7 | 010317 | RW70103 17 | 1 | 12/23/2021 | 00510024 | 2,034.76 | 1,555.86 | 1,555.86 | | | 0.00 | 72.67 | | | | | | 72.67 | 2,034.76 | | | | |
| RW7 | 010793 | RW70107 93 | 1 | 12/23/2021 | 00510025 | 1,597.48 | 1,163.71 | 1,163.71 | | | 0.00 | 72.42 | | | | | | 72.42 | 1,086.30 | | | 511.18 | |
| RW7 | 010670 | RW70106 70 | 1 | 12/23/2021 | 00510045 | 3,001.95 | 2,263.04 | 2,263.04 | | | 0.00 | 79.67 | | | | | | 79.67 | 1,274.72 | | 1,227.23 | 500.00 | |
| RW7 | 010780 | RW70107 80 | 1 | 12/23/2021 | 00510004 | 497.78 | 428.19 | 428.19 | | | 0.00 | 39.25 | | | | | | 39.25 | 471.00 | | | 26.78 | |
| RW7 | 010761 | RW70107 61 | 1 | 12/23/2021 | 00510005 | 1,770.46 | 877.26 | 877.26 | | | 0.00 | 65.33 | | | | 7.00 | | 72.33 | 979.95 | | | 183.49 | |
| RW7 | 010782 | RW70107 82 | 2 | 12/23/2021 | 00510006 | 360.41 | 296.79 | 296.79 | | | 0.00 | 15.67 | | | | | | 15.67 | 360.41 | | | | |
| RW7 | 010782 | RW70107 82 | 1 | 12/23/2021 | 00510006 | 1,364.58 | 1,139.87 | 1,139.87 | | | 0.00 | 53.08 | | | | 7.50 | | 60.58 | 1,114.68 | | | 92.40 | |
| RW7 | 010440 | RW70104 40 | 1 | 12/23/2021 | 00510039 | 2,008.92 | 1,178.23 | 1,178.23 | | | 0.00 | 63.83 | 0.50 | | 8.00 | | | 72.33 | 893.62 | 10.50 | | 904.80 | |
| RW7 | 010800 | RW70108 00 | 1 | 12/23/2021 | 00510026 | 458.79 | 418.17 | 418.17 | | | 0.00 | 30.58 | 0.08 | | | | | 30.66 | 458.70 | 1.80 | | -1.71 | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the left portion of the spreadsheet.

| Cls | ID | Code | # | Date | Acct | Gross | Amt2 | Amt3 | c10 | c11 | c12 | Dist | Rate | a1 | a2 | a3 | a4 | a5 | a6 | Total | Bal | c23 | Adj | End |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RW7 | 010773 | RW70107 73 | 1 | 12/23/2021 | 00510010 | 7,339.61 | 4,524.10 | 4,524.10 | | | | 0.00 | 68.00 | | | 4.00 | | | 8.00 | 80.00 | 3,653.85 | | | 2,725.66 |
| RW7 | 010721 | RW70107 21 | 1 | 12/23/2021 | 00510027 | 6,786.68 | 4,608.72 | 4,608.72 | | | | 0.00 | 80.00 | | | | | | | 80.00 | 4,423.08 | | | 2,363.60 |
| RW7 | 010648 | RW70106 48 | 1 | 12/23/2021 | 00510019 | 4,135.89 | 2,183.94 | 2,183.94 | | | | 0.00 | 80.00 | | | | | | | 80.00 | 2,692.31 | | | 1,443.58 |
| RW7 | 010771 | RW70107 71 | 1 | 12/23/2021 | 00510035 | 2,191.26 | 1,771.27 | 1,771.27 | | | | 0.00 | 65.50 | | | | | | 16.00 | 81.50 | 1,637.50 | | | 153.76 |
| RW7 | 001692 | RW70016 92 | 1 | 12/23/2021 | 00510029 | 1,090.32 | 823.01 | 823.01 | | | | 0.00 | 36.92 | | | | | 5.00 | 10.00 | 51.92 | 775.32 | | | |
| RW7 | 010794 | RW70107 94 | 1 | 12/23/2021 | 00510040 | 1,481.95 | 1,202.40 | 1,202.40 | | | | 0.00 | 73.58 | 2.50 | | | | | | 76.08 | 1,030.12 | | 52.50 | 399.33 |
| RW7 | 010161 | RW70101 61 | 1 | 12/23/2021 | 00510033 | 1,346.11 | 690.10 | 690.10 | | | | 0.00 | 64.17 | 0.08 | | | | | | 64.25 | 898.38 | | 1.68 | 446.05 |
| RW7 | 010775 | RW70107 75 | 1 | 12/23/2021 | 00510011 | 1,568.67 | 1,176.57 | 1,176.57 | | | | 0.00 | 63.83 | | | | | | 6.00 | 69.83 | 1,340.43 | | | 102.24 |
| RW7 | 000435 | RW70004 35 | 1 | 12/23/2021 | 00510030 | 3,903.21 | 2,267.64 | 2,217.64 | | | 50.00 | 0.00 | 58.92 | | | | 0.50 | | 5.50 | 64.92 | 1,767.60 | | | 1,835.61 |
| RW7 | 010668 | RW70106 68 | 1 | 12/23/2021 | 00510020 | 446.29 | 412.15 | 412.15 | | | | 0.00 | 27.58 | | | | | | | 27.58 | 358.54 | | | 87.75 |
| RW7 | 010801 | RW70108 01 | 1 | 12/23/2021 | 00510031 | 1,636.67 | 1,380.65 | 1,380.65 | | | | 0.00 | 68.67 | | | | | | | 68.67 | 1,236.06 | | | 400.61 |
| RW7 | 010567 | RW70105 67 | 1 | 12/23/2021 | 00510007 | 1,118.02 | 845.78 | 845.78 | | | | 0.00 | 60.25 | | | | | | 7.00 | 67.25 | 873.63 | | | 142.89 |
| RW7 | 001203 | RW70012 03 | 1 | 12/23/2021 | 00510036 | 1,914.13 | 1,183.04 | | 33.04 | 500.00 | 650.00 | 0.00 | 55.17 | | | | | | 16.00 | 71.17 | 772.38 | | | 741.75 |
| RW7 | 000297 | RW70002 97 | 1 | 12/23/2021 | 00510032 | 262.77 | 241.54 | 41.54 | | | 200.00 | 0.00 | 13.83 | | | | | | | 13.83 | 262.77 | | | |
| RW7 | 010776 | RW70107 76 | 1 | 12/23/2021 | 00510014 | 1,255.33 | 511.59 | 511.59 | | | | 0.00 | 62.50 | | | | | | | 62.50 | 1,062.50 | | | 192.83 |
| RW7 | 010090 | RW70100 90 | 1 | 12/23/2021 | 00510001 | 1,672.00 | 1,248.13 | 1,248.13 | | | | 0.00 | 80.00 | | | | | | | 80.00 | 1,672.00 | | | |
| RW7 | 010770 | RW70107 70 | 1 | 12/23/2021 | 00510012 | 2,128.25 | 1,592.22 | 1,592.22 | | | | 0.00 | 67.58 | | | 4.00 | | | | 71.58 | 1,959.82 | | | 52.43 |
| RW7 | 010769 | RW70107 69 | 1 | 12/23/2021 | 00510037 | 3,461.54 | 2,469.59 | 2,469.59 | | | | 0.00 | | | | | | | | | 3,461.54 | | | |
| RW7 | 020003 | RW70200 03 | 1 | 12/23/2021 | 05340706 | 197.30 | 182.21 | | | | | 182.21 | | | | | | | | | 197.30 | | | |
| RW7 | 010704 | RW70107 04 | 1 | 12/23/2021 | 00510015 | 300.41 | 258.97 | 258.97 | | | | 0.00 | 16.50 | | | | | | | 16.50 | 264.00 | | | 36.41 |
| RW7 | 020100 | RW70201 00 | 1 | 12/23/2021 | 00510013 | 683.76 | 590.32 | 590.32 | | | | 0.00 | 66.33 | | | | | | | 66.33 | 1,193.94 | | | 119.82 |
| RW7 | 010792 | RW70107 92 | 1 | 12/23/2021 | 00510008 | 585.64 | 530.53 | 530.53 | | | | 0.00 | 30.83 | | | | | | | 30.83 | 554.94 | | | 30.70 |
| RW7 | 010757 | RW70107 57 | 1 | 12/23/2021 | 00510041 | 1,271.80 | 876.49 | 876.49 | | | | 0.00 | 53.50 | | | | | | | 53.50 | 1,070.00 | | | 201.80 |
| RW7 | 010787 | RW70107 87 | 1 | 12/23/2021 | 00510038 | 5,827.28 | 3,009.18 | 3,009.18 | | | | 0.00 | 80.00 | | | | | | | 80.00 | 3,846.15 | | | |
| RW7 | 010062 | RW70100 62 | 1 | 12/23/2021 | 00510046 | 2,931.13 | 1,960.12 | 1,960.12 | | | | 0.00 | 79.50 | | | | | | | 79.50 | 1,431.00 | | 900.13 | 600.00 |
| RW7 | 002904 | RW70029 04 | 1 | 12/23/2021 | 00510016 | 7,438.75 | 4,483.19 | | | | 4,483.19 | 0.00 | 80.00 | | | | | | | 80.00 | 2,884.62 | | | 3,550.96 |
| RW7 | 000204 | RW70002 04 | 1 | 12/23/2021 | 00510042 | 295.95 | 268.96 | 268.96 | | | | 0.00 | 10.08 | | | | | | | 10.08 | 295.95 | | | |
| RW7 | 010686 | RW70106 86 | 1 | 12/23/2021 | 00510044 | 3,730.77 | 2,512.80 | | 1,512.80 | 1,000.00 | | 0.00 | 80.00 | | | | | | | 80.00 | 3,730.77 | | | |
| RW7 | 010744 | RW70107 44 | 1 | 12/23/2021 | 00510021 | 1,453.53 | 1,190.95 | 1,190.95 | | | | 0.00 | 67.33 | | | | | | | 67.33 | 1,211.94 | | | 241.59 |
| RW7 | 001029 | RW70010 29 | 1 | 12/23/2021 | 00510028 | 930.92 | 618.11 | 618.11 | | | | 0.00 | 57.17 | 1.08 | | | | | | 58.25 | 800.38 | | 22.68 | 274.59 |
| RW7 | 010075 | RW70003 13 | 1 | 12/23/2021 | 00510002 | 3,565.65 | 2,431.82 | 2,431.82 | | | | 0.00 | 80.00 | | | | | | | 80.00 | 3,565.65 | | | |
| RW7 | 001299 | RW70012 99 | 1 | 12/23/2021 | 00510034 | 2,587.13 | 1,454.75 | 1,454.75 | | | | 0.00 | 73.42 | 0.17 | | | | | | 73.59 | 1,027.88 | | 3.57 | 1,555.68 |
| RW7 | 010651 | RW70106 51 | 1 | 12/23/2021 | 00510022 | 1,096.21 | 828.62 | 828.62 | | | | 0.00 | 54.75 | | | | | 14.00 | | 68.75 | 766.50 | | | 133.71 |
| RW7 | 010650 | RW70106 50 | 1 | 12/23/2021 | 25070233 | 849.06 | 669.71 | | | | | 669.71 | 51.83 | | | | | | | 51.83 | 725.62 | | | 123.44 |
| RW7 | 010560 | RW70105 60 | 1 | 12/23/2021 | 00510009 | 1,077.69 | 800.13 | 800.13 | | | | 0.00 | 61.92 | | | | | | | 61.92 | 897.84 | | | 179.85 |
| RW7 | 001759 | RW70017 59 | 1 | 12/23/2021 | 65266362 | 18,802.10 | 11,557.20 | | | | | 11,557.20 | 70.00 | 4.00 | | 7.00 | 22.50 | | 137.50 | 241.00 | | | | 2,802.10 |
| RW7 | 010075 | RW70100 75 | 1 | 12/23/2021 | 00510075 | 3,996.56 | 2,685.10 | 2,685.10 | | | | 0.00 | 80.00 | | | | | | | 80.00 | 3,212.08 | | | 784.48 |
| RW7 | 002731 | RW70027 31 | 1 | 12/23/2021 | 00510017 | 1,693.36 | 1,294.76 | 1,294.76 | | | | 0.00 | 76.25 | 0.17 | | | | | | 76.42 | 1,525.00 | | 5.10 | 163.26 |
| RW7 | 010784 | RW70107 84 | 1 | 12/23/2021 | 00510018 | 507.28 | 459.92 | 459.92 | | | | 0.00 | 30.00 | | | | | | | 30.00 | 420.00 | | | 87.28 |
| RW7 | 010648 | RW70106 48 | 1 | 12/30/2021 | 05200001 | 1,977.80 | 0.00 | | | | | | | | | | | | | | | | | |
| RW7 | 020003 | RW70200 03 | 1 | 12/30/2021 | 05342129 | 543.40 | 495.76 | | | | | 495.76 | 27.17 | | | | | | | 27.17 | 543.40 | | | |
| RW7 | 010744 | RW70107 44 | 1 | 12/30/2021 | 05200002 | 507.40 | 0.00 | 0.00 | | | | 0.00 | | | | | | | | | | | | |
| RW7 | 010651 | RW70106 51 | 1 | 12/30/2021 | 05200003 | 518.29 | | | | | | 0.00 | | | | | | | | | | | | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the left portion of the spreadsheet.

| RW7 | 010650 | RW70106 50 | 1 | 12/30/202 1 | 00520004 | 503.02 | 0.00 | | | | | 0.00 | | | | | | | | | |
| RW7 | 001759 | RW70017 59 | 1 | 12/30/202 1 | 00520005 | 1,476.00 | 0.00 | | | | | 0.00 | | | | | | | | | |
| RW7 | 010075 | RW70100 75 | 1 | 12/30/202 1 | 00520006 | 410.47 | 0.00 | | | | | 0.00 | | | | | | | | | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the left portion of the spreadsheet.

| ADD EARN: SK-SICK | ADD EARN: V-VACATION | TOTAL EARNINGS | FEDERAL INCOME - EMPLOYEE TAX | MEDICARE - EMPLOYEE TAX | SOCIAL SECURITY - EMPLOYEE TAX | SUI/SDI - EMPLOYEE TAX | WORKED IN STATE EMPLOYEE TAX | FAMILY LEAVE INSURANCE - EMPLOYEE TAX | TOTAL EMPLOYEE TAX | VOL DED: DNT-DENTAL | VOL DED: FS-FSA MEDICAL | VOL DED: HI-HAWAII MED INS | VOL DED: K1-EE 401K | VOL DED: L1-401K LOAN 1 | VOL DED: LIF-SUPP. LIFE INS. | VOL DED: S125 MEDICAL | VOL DED: NJ-NJ VOL PLAN DI | VOL DED: P-PARKING | VOL DED: V125 VISION | TOTAL VOLUNTARY DEDUCTIONS | MEMO: G-GTL | MEMO: H-HRS*WRK | MEMO: X-KA-ER 401K MATCH | MEMO: X-MAX ELIG/COMP | TOTAL MEMOS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 2,492.40 | 246.72 | 34.13 | 145.91 | 27.89 | 65.44 | | 520.09 | 3.09 | | | 398.78 | | | 164.32 | | | 0.46 | 566.65 | 28.82 | 67.00 | | 2,492.40 | 2,588.22 |
| | | 1,422.02 | 105.06 | 20.62 | 88.16 | 7.11 | 90.11 | | 311.06 | | | | | | | | | | | | | 66.08 | | 1,422.02 | 1,488.10 |
| | | 3,653.85 | 503.04 | 51.03 | 218.22 | | | | 772.29 | 3.09 | | | 328.85 | | | 139.68 | | | 0.46 | 472.08 | 8.94 | 88.00 | | 3,653.85 | 3,750.79 |
| | | 1,349.87 | 68.45 | 19.58 | 83.69 | 16.20 | 11.22 | | 199.14 | | | | | | 67.49 | | | | | 67.49 | | 66.17 | 33.75 | 1,349.87 | 1,449.79 |
| | | 1,526.00 | 97.39 | 19.69 | 84.21 | 16.30 | 30.28 | | 247.87 | 3.09 | | | | | | 164.32 | | | 0.46 | 167.87 | | 76.50 | | 1,526.00 | 1,602.50 |
| | | 2,755.02 | 263.07 | 37.51 | 160.40 | | 33.63 | | 494.61 | 3.09 | | | | | | 164.32 | | | 0.46 | 167.87 | | 79.00 | | 2,755.02 | 2,334.02 |
| | | 515.27 | 33.26 | 7.47 | 31.95 | | | | 72.68 | | | | | | | | | | | | | 33.25 | | 515.27 | 548.52 |
| | | 1,274.86 | 4.13 | 15.52 | 66.36 | | | | 86.01 | 6.00 | | | | | 63.74 | 197.56 | | | 0.87 | 268.17 | | 68.50 | 31.87 | 1,274.86 | 1,375.23 |
| | | 1,815.85 | 75.28 | 24.91 | 106.53 | | | | 206.72 | 3.09 | | | | | | 94.08 | | | 0.46 | 97.63 | | 77.25 | | 1,815.85 | 1,893.10 |
| | | 2,145.66 | 94.09 | 28.65 | 122.47 | 23.70 | 17.33 | | 286.24 | 6.00 | | | 429.13 | | | 164.32 | | | | 599.45 | | 82.92 | | 2,145.66 | 2,228.58 |
| | | 424.95 | | 6.16 | 26.34 | 5.10 | | | 37.60 | | | | | | | | | | | | | 28.33 | | 424.95 | 453.28 |
| | | 3,653.85 | 307.31 | 53.01 | 226.66 | 1.20 | 191.70 | 18.67 | 798.55 | | | | | | | | | | | | 2.08 | 88.00 | | 3,653.85 | 3,743.93 |
| | | 4,423.08 | 402.14 | 62.13 | 265.63 | 51.36 | 282.52 | | 1,063.78 | 3.09 | | | | | | 139.68 | | | 0.46 | 143.23 | 4.50 | 88.00 | | 4,423.08 | 4,515.58 |
| | | 2,692.31 | 127.96 | 36.77 | 157.25 | | | | 321.98 | 3.09 | | | | | 1,076.92 | 164.32 | | | 0.46 | 1,244.79 | 11.72 | 88.00 | | 2,692.31 | 2,792.03 |
| 100.00 | | 1,959.37 | 38.00 | 25.69 | 109.85 | | 69.62 | | 243.16 | 3.09 | | | | | | 94.08 | 90.00 | | 0.46 | 187.63 | 0.10 | 76.92 | | 1,959.37 | 2,036.39 |
| | | 777.00 | 37.85 | 11.21 | 47.95 | | | | 97.01 | 3.09 | | | | | 77.70 | | | | 0.46 | 81.25 | | 37.00 | | 777.00 | 814.00 |
| | | 1,313.43 | 92.03 | 19.04 | 81.43 | 15.77 | 28.31 | | 236.58 | | | | | | | | | | | | | 74.33 | | 1,313.43 | 1,387.76 |
| | | 1,196.48 | 2.84 | 11.87 | 50.75 | 9.83 | 0.11 | | 75.40 | 6.00 | | | 155.54 | | | 371.07 | | | 0.87 | 533.48 | | 67.83 | | 1,196.48 | 1,264.31 |
| | | 1,630.16 | 118.32 | 22.22 | 95.01 | 1.20 | 65.44 | 8.33 | 310.52 | 3.09 | | | | | | 94.08 | | | 0.46 | 97.63 | | 69.25 | | 1,630.16 | 1,699.41 |
| | | 4,142.15 | 516.79 | 55.53 | 237.42 | | | | 809.74 | 7.20 | | | 414.22 | 171.61 | 11.22 | 310.17 | | | 0.92 | 915.34 | 5.36 | 70.83 | | 4,142.15 | 4,218.34 |
| | | 665.84 | | 9.65 | 41.28 | | | | 50.93 | | | | | | | | | | | | | 41.83 | | 665.84 | 707.67 |
| | | 1,314.00 | 92.09 | 19.05 | 81.47 | | | | 192.61 | | | | | | | | | | | | | 73.00 | | 1,314.00 | 1,387.00 |
| | | 1,180.03 | 103.99 | 15.70 | 67.11 | | | | 186.80 | 3.09 | | | | | | 94.08 | | | 0.46 | 97.63 | | 67.00 | | 1,180.03 | 1,247.03 |
| | 200.00 | 2,254.97 | 212.60 | 30.36 | 129.84 | | 92.15 | | 464.95 | 3.09 | | | 225.50 | | | 164.32 | | | 0.46 | 393.37 | 7.20 | 71.08 | | 2,254.97 | 2,333.25 |
| | | 1,472.22 | | 21.34 | 91.27 | 17.66 | 6.15 | | 136.42 | | | | | | 736.11 | | | | | 736.11 | | 69.75 | | 1,472.22 | 1,541.97 |
| | | 1,672.00 | 141.18 | 22.82 | 97.61 | | 35.36 | 4.68 | 301.65 | 3.09 | | | | | 16.72 | 94.08 | 7.86 | | 0.46 | 122.21 | | 80.00 | 8.36 | 1,672.00 | 1,760.36 |
| | | 2,187.22 | 190.00 | 30.30 | 129.56 | 1.20 | 96.40 | 11.18 | 458.64 | 3.09 | | | | | | 94.08 | | | 0.46 | 97.63 | 0.12 | 71.33 | | 2,187.22 | 2,258.67 |
| | | 3,461.54 | 470.35 | 48.80 | 208.67 | | 166.51 | | 894.33 | 3.09 | | | | | | 94.08 | | | 0.46 | 97.63 | 1.66 | 8.00 | | 3,461.54 | 3,471.20 |
| | | 824.83 | 34.22 | 11.96 | 51.14 | 1.20 | 23.41 | 4.21 | 126.14 | | | | | | | | | | | | | 35.00 | | 824.83 | 859.83 |
| | | 1,364.94 | 98.21 | 19.79 | 84.63 | 1.20 | 55.44 | 6.97 | 266.24 | | | | | | | | | | | | | 75.83 | | 1,364.94 | 1,440.77 |
| | | 726.20 | 24.35 | 10.53 | 45.03 | | | | 79.91 | | | | | | | | | | | | | 34.17 | | 726.20 | 760.37 |
| | | 2,494.01 | 132.32 | 31.84 | 136.12 | 26.35 | 45.43 | | 372.06 | 10.11 | | | | | | 286.93 | | 1.35 | | 298.39 | | 81.17 | | 2,494.01 | 2,575.18 |
| | | 3,846.15 | 390.78 | 55.85 | 238.79 | | | | 685.42 | | | | | | | | | | | | 5.30 | 88.00 | | 3,846.15 | 3,939.45 |
| | | 3,985.26 | 449.78 | 53.75 | 229.81 | | 92.77 | | 826.11 | 7.20 | 105.77 | | 270.82 | | | 164.32 | | | 0.92 | 549.43 | | 88.00 | | 3,985.26 | 3,473.26 |
| | | 2,884.62 | 119.82 | 37.60 | 160.74 | 31.05 | 39.17 | | 388.38 | 10.11 | | | | | | 286.93 | | | | 297.04 | 4.94 | 88.00 | | 2,884.62 | 2,977.56 |
| | | 614.21 | 13.15 | 9.06 | 38.73 | 7.37 | 0.60 | | 68.91 | | | 55.96 | | | | | | | | 55.96 | 10.46 | 20.92 | | 614.21 | 645.59 |
| | | 3,730.77 | 615.52 | 53.31 | 227.98 | 11.02 | 254.18 | | 1,162.01 | | | | | | 55.96 | | | | | 55.96 | 2.16 | 88.00 | | 3,730.77 | 3,820.93 |
| | | 1,722.82 | 181.29 | 24.93 | 106.60 | | | | 312.82 | 3.09 | | | | | | | | | 0.46 | 3.55 | | 73.33 | | 1,722.82 | 1,796.15 |
| | | 2,372.24 | 288.01 | 32.46 | 138.79 | 26.46 | 89.19 | | 574.91 | 3.09 | | | | | | 164.32 | | | 0.46 | 167.87 | 34.32 | 69.75 | | 2,372.24 | 2,476.31 |
| | | 3,565.65 | 566.02 | 50.41 | 215.55 | | 160.37 | 9.99 | 1,002.34 | 3.09 | | | | 17.12 | | 94.08 | 16.76 | | | 131.51 | 8.73 | 88.00 | | 3,565.65 | 3,662.19 |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the right portion of the spreadsheet

|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1,958.30 | 265.46 | 26.53 | 113.44 | 21.48 | 68.59 |  | 495.50 |  | 3.09 | 195.83 | 164.32 | 0.46 | 363.70 | 39.22 | 74.25 |  | 1,958.30 | 2,071.77 |
|  | 1,345.53 | 123.91 | 18.10 | 77.40 |  |  |  | 219.41 |  | 3.09 |  | 94.08 |  | 97.17 |  | 74.08 |  | 1,345.53 | 1,419.61 |
| 513.92 | 1,768.44 | 144.51 | 25.65 | 109.64 | 21.23 | 53.89 |  | 354.92 |  |  | 17.68 |  |  | 17.68 |  | 72.61 | 8.84 | 1,768.44 | 1,849.89 |
|  | 1,148.83 | 56.47 | 16.66 | 71.23 |  |  |  | 144.36 |  |  | 114.88 |  |  | 114.88 |  | 54.75 | 57.44 | 1,148.83 | 1,261.02 |
| 43.50 | 1,166.22 | 35.02 | 16.82 | 71.90 |  |  |  | 123.74 |  | 6.00 | 174.93 |  | 0.46 | 181.39 |  | 65.08 |  | 1,166.22 | 1,231.30 |
|  | 246.30 | 9.44 | 3.57 | 15.27 |  | 5.77 |  | 34.05 |  |  |  |  |  |  |  | 16.42 |  | 246.30 | 262.72 |
|  | 5,486.00 | 425.23 | 81.85 | 350.00 | 65.83 | 212.07 |  | 1,134.98 |  |  | 274.30 |  |  | 274.30 | 159.26 | 73.83 |  | 5,486.00 | 5,719.09 |
|  | 3,212.08 | 255.15 | 44.29 | 189.39 |  | 139.40 |  | 628.23 |  | 3.09 | 321.21 | 164.32 | 0.46 | 489.00 | 10.36 | 88.00 |  | 3,212.08 | 3,310.44 |
| 160.00 | 1,813.50 | 164.20 | 25.36 | 108.47 | 20.99 | 48.57 |  | 367.59 |  | 3.09 | 60.41 |  | 0.46 | 63.96 |  | 80.75 |  | 1,813.50 | 1,894.25 |
|  | 454.74 |  | 6.59 | 28.19 | 5.45 |  |  | 40.23 |  |  |  |  |  |  |  | 22.92 |  | 454.74 | 477.66 |
|  |  |  |  |  |  | -197.30 | -2.86 |  |  | -12.23 | -15.09 |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 197.30 | 2.86 |  |  | 12.23 | 15.09 |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  | -543.40 | -6.07 | -7.88 |  | -33.69 | -47.64 |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 543.40 | 6.07 | 7.88 |  | 33.69 | 47.64 |  |  |  |  |  |  |  |  |
| -290.92 | 3,923.00 | 502.65 | 54.87 | 234.60 | 41.31 | 174.21 |  | 1,007.64 |  | 3.09 | 627.68 | 164.32 |  |  |  |  |  |  |  |
|  | 1,080.00 | 61.93 | 15.66 | 66.96 | 5.40 | 64.01 |  | 213.96 |  |  |  |  |  |  |  |  |  |  |  |
|  | 3,653.85 | 494.60 | 51.03 | 218.21 |  |  |  | 763.84 |  | 3.09 | 328.85 | 139.68 |  |  |  |  |  |  |  |
|  | 1,995.00 | 139.91 | 29.00 | 123.98 | 21.95 | 44.34 |  | 359.18 |  |  | 99.75 |  |  |  |  |  |  |  |  |
|  | 1,159.38 | 51.31 | 14.38 | 61.47 | 10.91 | 13.80 |  | 151.87 |  |  |  | 164.32 |  |  |  |  |  |  |  |
| 300.00 | 1,974.07 | 129.23 | 26.19 | 111.98 |  | 23.48 |  | 290.88 |  | 3.09 |  | 164.32 |  |  |  |  |  |  |  |
|  | 659.80 | 46.17 | 9.57 | 40.91 |  |  |  | 96.65 |  |  |  |  |  |  |  |  |  |  |  |
|  | 1,317.06 | 5.06 | 16.13 | 68.98 |  |  |  | 90.17 |  |  | 65.85 | 197.56 |  |  |  |  |  |  |  |
| 157.50 | 1,790.80 | 69.70 | 24.55 | 104.98 |  |  |  | 199.23 |  | 3.09 |  | 94.08 |  |  |  |  |  |  |  |
|  | 2,584.16 | 131.99 | 35.00 | 149.66 | 26.55 | 24.58 |  | 367.78 |  | 6.00 | 516.83 | 164.32 |  |  |  |  |  |  |  |
|  | 312.45 |  |  |  | 4.53 | 19.37 | 3.44 | 27.34 |  |  |  |  |  |  |  |  |  |  |  |
|  | 3,653.85 | 303.12 | 53.01 | 226.67 | 1.20 | 188.63 | 18.67 | 791.30 |  |  |  |  |  |  |  |  |  |  |  |
|  | 4,423.08 | 385.26 | 62.12 | 265.63 | 47.08 | 275.72 |  | 1,035.81 |  | 3.09 |  | 139.68 |  |  |  |  |  |  |  |
|  | 2,692.31 | 125.88 | 36.77 | 157.24 |  |  |  | 319.89 | 152.20 | 3.09 | 1,076.92 | 164.32 |  |  |  |  |  |  |  |
|  | 1,452.37 |  | 18.34 | 78.42 |  | 44.14 |  | 140.90 |  | 3.09 |  | 94.08 |  |  |  |  |  |  | 90.00 |
| 294.00 | 696.57 | 29.07 | 10.05 | 42.97 |  |  |  | 82.09 |  | 3.09 | 69.66 |  |  |  |  |  |  |  |  |
|  | 2,192.24 | 204.14 | 31.79 | 135.92 | 24.11 | 83.51 |  | 479.47 |  |  |  |  |  |  |  |  |  |  |  |
| 45.00 | 1,168.38 |  | 11.46 | 49.01 | 8.69 |  |  | 69.16 |  | 6.00 | 151.89 | 371.07 |  |  |  |  |  |  |  |
|  | 1,707.82 | 125.55 | 23.35 | 99.83 | 1.20 | 69.35 | 8.73 | 328.01 |  | 3.09 |  | 94.08 |  |  |  |  |  |  |  |
|  | 825.88 | 32.78 | 11.98 | 51.20 | 9.08 | 1.59 |  | 106.63 |  |  |  |  |  |  |  |  |  |  |  |
|  | 161.03 |  | 2.33 | 9.98 |  |  |  | 12.31 |  |  |  |  |  |  |  |  |  |  |  |
|  | 1,962.08 | 167.78 | 28.45 | 121.65 |  |  |  | 317.88 |  |  |  |  |  |  |  |  |  |  |  |
| 50.75 | 1,251.18 | 110.45 | 16.73 | 71.52 |  |  |  | 198.70 |  | 3.09 |  | 94.08 |  |  |  |  |  |  |  |
| 300.00 | 1,521.98 | 116.25 | 19.84 | 84.81 |  | 59.49 |  | 280.39 |  | 3.09 | 152.20 | 164.32 |  |  |  |  |  |  |  |
|  | 1,294.72 |  | 18.77 | 80.27 | 14.24 | 5.09 |  | 118.37 |  |  | 647.36 |  |  |  |  |  |  |  |  |
|  | 1,672.00 | 139.09 | 22.83 | 97.61 | 35.36 | 2.34 | 7.11 | 304.34 | 4.18 | 3.09 | 16.72 | 94.08 | 2.34 |  |  |  |  |  |  |
|  | 2,665.52 | 286.78 | 37.24 | 159.22 | 1.20 | 123.13 | 13.62 | 621.19 |  | 3.09 |  | 94.08 |  |  |  |  |  |  |  |
|  | 3,461.54 | 461.90 | 48.80 | 208.67 |  | 166.51 |  | 885.88 |  | 3.09 |  | 94.08 |  |  |  |  |  |  |  |
|  | 128.40 |  | 1.86 | 7.96 |  |  |  | 9.82 |  |  |  |  |  |  |  |  |  |  |  |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the right portion of the spreadsheet

| C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 | C10 | C11 | C12 | C13 | C14 | C15 | C16 | C17 | C18 | C19 | C20 | C21 | C22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1,717.84 | 138.47 | 24.91 | 106.51 |  |  |  |  | 269.89 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 851.05 | 74.15 | 12.34 | 52.77 | 9.36 | 10.71 |  |  | 159.33 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 1,528.03 | 115.69 | 22.16 | 94.74 | 1.20 | 64.54 | 7.81 |  | 306.14 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 742.98 | 24.49 | 10.77 | 46.06 |  |  |  |  | 81.32 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 1,962.96 | 66.84 | 24.14 | 103.20 | 18.31 | 24.68 |  |  | 237.17 |  |  | 10.11 |  |  | 286.93 |  |
|  |  |  |  |  |  | 3,846.15 | 378.82 | 55.85 | 238.79 |  |  |  |  | 673.46 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 4,125.03 | 492.90 | 57.31 | 245.04 |  | 99.10 |  |  | 894.35 |  |  | 7.20 | 282.00 |  | 164.72 |  |
|  |  |  |  |  |  | 2,884.62 | 115.63 | 37.66 | 161.02 | 28.46 | 35.91 |  |  | 378.68 |  |  | 10.11 |  |  | 286.93 |  |
|  |  |  |  |  |  | 2,797.08 | 223.30 | 40.57 | 173.48 |  |  |  |  | 437.35 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 783.03 | 28.50 | 11.51 | 49.20 | 8.61 | 3.75 |  |  | 101.57 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 3,730.77 | 604.71 | 53.32 | 227.97 | 12.00 | 254.18 |  |  | 1,152.18 |  |  |  | 55.96 |  |  |  |
|  |  |  |  |  |  | 869.18 | 75.90 | 12.55 | 53.67 |  |  |  |  | 142.12 | 38.81 |  | 3.09 |  |  |  |  |
|  | -166.73 |  |  |  |  | 1,211.62 | 97.27 | 15.63 | 66.84 | 11.48 | 15.15 |  |  | 206.37 |  |  | 3.09 |  |  | 164.32 |  |
|  |  |  |  |  |  | 262.50 | 31.50 | 4.31 | 18.40 | 2.89 | 11.55 |  |  | 68.65 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 3,565.65 | 557.58 | 50.41 | 215.55 |  | 160.37 | 4.99 | 15.15 | 1,004.05 |  | 8.91 | 3.09 |  | 17.12 | 94.08 | 4.99 |
|  |  |  | 375.00 | 42.00 |  | 2,704.37 | 430.08 | 39.78 | 170.10 | 29.75 | 129.78 |  |  | 799.49 |  |  |  | 270.44 |  |  |  |
|  |  |  |  |  |  | 1,987.95 | 210.58 | 27.42 | 117.23 |  |  |  |  | 355.23 | 39.65 |  | 3.09 |  |  | 94.08 |  |
|  |  |  |  |  |  | 1,088.55 | 47.97 | 15.78 | 67.49 |  |  |  |  | 131.24 | 38.48 |  |  | 108.86 |  |  |  |
|  |  |  | 50.75 |  |  | 1,137.52 | 29.51 | 16.40 | 70.13 |  |  |  |  | 116.04 |  |  | 6.00 | 170.63 |  |  |  |
|  |  |  |  |  |  | 4,152.50 | 238.81 | 62.52 | 267.33 | 45.68 | 87.95 |  |  | 702.29 | 50.85 |  |  | 207.63 |  |  |  |
|  |  |  |  |  |  | 3,212.08 | 250.95 | 44.29 | 189.38 |  | 139.40 |  |  | 624.02 | 32.72 |  | 3.09 | 321.21 |  | 164.32 |  |
|  |  |  |  |  | 150.00 | 1,900.64 | 172.58 | 26.63 | 113.87 | 20.20 | 51.40 |  |  | 384.68 |  |  | 3.09 |  |  | 60.41 |  |
|  |  |  |  |  |  | 664.01 | 16.60 | 9.63 | 41.17 | 7.30 |  |  |  | 74.70 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 336.16 |  | 4.88 | 20.84 |  |  |  |  | 25.72 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 138.36 |  | 2.00 | 8.58 | 1.66 |  |  |  | 12.24 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 142.50 |  | 2.27 | 9.74 |  |  |  |  | 12.01 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | -1,394.52 | -101.76 | -20.22 | -86.46 | -1.20 | -57.20 | -7.13 |  | -273.97 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | -824.83 | -34.22 | -11.96 | -51.14 | -1.20 | -23.41 | -4.21 |  | -126.14 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 1,394.52 | 101.76 | 20.22 | 86.46 | 1.20 | 57.20 | 7.13 |  | 273.97 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | 824.83 | 34.22 | 11.96 | 51.14 | 1.20 | 23.41 | 4.21 |  | 126.14 |  |  |  |  |  |  |  |
|  |  |  |  |  |  | -630.00 | -14.73 | -9.14 | -39.06 | -1.20 | -13.91 | -3.22 |  | -81.26 |  |  |  |  |  |  |  |
|  | -290.92 |  |  |  |  | 1,732.26 | 148.57 | 23.10 | 98.78 | 18.78 | 27.16 |  |  | 316.39 |  |  | 3.09 | 277.16 |  | 164.32 |  |
|  |  |  |  |  |  | 1,257.52 | 85.32 | 18.24 | 77.97 | 6.29 | 77.50 |  |  | 265.32 |  |  |  |  |  |  |  |
| 328.14 |  |  |  |  |  | 7,518.15 | 1,363.69 | 107.07 | 457.80 |  |  |  |  | 1,928.56 | 328.14 |  | 3.09 | 328.85 |  | 139.68 |  |
|  |  |  |  |  |  | 2,034.76 | 146.53 | 29.57 | 126.45 | 24.41 | 50.20 |  |  | 377.16 |  |  |  | 101.74 |  |  |  |
|  |  |  |  |  |  | 1,597.48 | 105.97 | 20.73 | 88.63 | 17.15 | 33.42 |  |  | 265.90 |  |  | 3.09 |  |  | 164.32 |  |
|  |  |  |  |  |  | 3,001.95 | 317.40 | 41.09 | 175.71 |  | 36.84 |  |  | 571.04 |  |  | 3.09 |  |  | 164.32 |  |
|  |  |  |  |  |  | 497.78 | 31.51 | 7.22 | 30.86 |  |  |  |  | 69.59 |  |  |  |  |  |  |  |
| 502.02 |  | 105.00 |  |  |  | 1,770.46 | 3.52 | 22.71 | 97.10 |  |  |  |  | 123.33 | 502.02 |  | 6.00 | 63.42 |  | 197.56 |  |
|  |  |  |  |  |  | 360.41 | 36.04 | 5.23 | 22.35 |  |  |  |  | 63.62 |  |  |  |  |  |  |  |
|  |  | 157.50 |  |  |  | 1,364.58 | 30.16 | 18.37 | 78.55 |  |  |  |  | 127.08 |  |  | 3.09 |  |  | 94.08 |  |
|  |  |  | 200.00 |  |  | 2,008.92 | 80.96 | 26.66 | 113.99 | 22.06 | 14.92 |  |  | 258.59 |  |  | 6.00 | 401.78 |  | 164.32 |  |
|  |  |  |  |  |  | 458.79 |  | 6.66 | 28.45 | 5.51 |  |  |  | 40.62 |  |  |  |  |  |  |  |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the right portion of the spreadsheet

| | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 960.10 | | | | | | 7,339.61 | 864.06 | 106.46 | 455.19 | 1.20 | 396.24 | 32.26 | 1,855.41 | 960.10 | | | | | | | |
| | | | | | | 6,786.68 | 922.13 | 96.39 | 412.17 | 79.72 | 524.32 | | 2,034.73 | | 3.09 | | | | | 139.68 | |
| | | | | | | 4,135.89 | 402.71 | 57.71 | 246.74 | | | | 707.16 | | 3.09 | | 1,076.92 | | | 164.32 | |
| | | | | | 400.00 | 2,191.26 | 76.63 | 30.36 | 129.82 | | 85.55 | | 322.36 | | 3.09 | | | | | 94.08 | |
| | | | 105.00 | | 210.00 | 1,090.32 | 71.59 | 15.76 | 67.38 | | | | 154.73 | | 3.09 | | 109.03 | | | | |
| | | | | | | 1,481.95 | 112.25 | 21.49 | 91.88 | 17.78 | 36.15 | | 279.55 | | | | | | | | |
| | | | | | | 1,346.11 | 15.86 | 14.04 | 60.03 | 11.61 | 1.54 | | 103.08 | | 6.00 | | 174.99 | | | 371.07 | |
| | | | 126.00 | | | 1,568.67 | 110.94 | 21.33 | 91.21 | 1.20 | 61.77 | 8.02 | 294.47 | | 3.09 | | | | | 94.08 | |
| | | 25.00 | | | 275.00 | 3,903.21 | 469.48 | 52.06 | 222.59 | | | | 744.13 | | 7.20 | | 390.32 | 171.61 | 11.22 | 310.17 | |
| | | | | | | 446.29 | | 6.47 | 27.67 | | | | 34.14 | | | | | | | | |
| | | | | | | 1,636.67 | 130.81 | 23.73 | 101.48 | | | | 256.02 | | | | | | | | |
| | | | | | 101.50 | 1,118.02 | 96.55 | 14.80 | 63.26 | | | | 174.61 | | 3.09 | | | | | 94.08 | |
| | | | | | 400.00 | 1,914.13 | 160.69 | 25.43 | 108.72 | | 76.97 | | 371.81 | | 3.09 | | 191.41 | | | 164.32 | |
| | | | | | | 262.77 | | 4.03 | 17.20 | | | | 21.23 | | | | | | | | |
| | | | | | | 1,255.33 | | 18.21 | 77.83 | 15.07 | 4.96 | | 116.07 | | | | 627.67 | | | | |
| | | | | | | 1,672.00 | 141.18 | 22.83 | 97.61 | | 35.36 | 4.68 | 301.86 | | 3.09 | | 16.72 | | | 94.08 | 7.86 |
| | | | 116.00 | | | 2,128.25 | 178.09 | 29.45 | 125.90 | 1.20 | 92.88 | 10.88 | 438.40 | | 3.09 | | | | | 94.08 | |
| | | | | | | 3,461.54 | 470.35 | 48.80 | 208.66 | | 166.51 | | 894.32 | | 3.09 | | | | | 94.08 | |
| | | | | | | 197.30 | | 2.86 | 12.23 | | | | 15.09 | | | | | | | | |
| | | | | | | 300.41 | 14.85 | 4.36 | 18.62 | 3.61 | | | 41.44 | | | | | | | | |
| | -630.00 | | | | | 683.76 | 20.11 | 9.92 | 42.39 | 1.20 | 16.33 | 3.49 | 93.44 | | | | | | | | |
| | | | | | | 585.64 | 10.30 | 8.50 | 36.31 | | | | 55.11 | | | | | | | | |
| | | | | | | 1,271.80 | 0.80 | 14.11 | 60.36 | 11.68 | 9.97 | | 96.92 | | 10.11 | | | | | 286.93 | |
| 1,981.13 | | | | | | 5,827.28 | 390.78 | 84.57 | 361.62 | | | | 836.97 | 1,981.13 | 10.11 | | | | | 286.93 | |
| | | | | | | 2,931.13 | 236.43 | 38.46 | 164.46 | | 66.58 | | 505.93 | | 7.20 | 105.75 | 186.49 | | | 164.72 | |
| 1,003.17 | | | | | | 7,438.75 | 701.90 | 103.62 | 443.09 | 73.66 | 333.08 | | 1,655.35 | 1,003.17 | 10.11 | | | | | 286.93 | |
| | | | | | | 295.95 | | 4.44 | 19.00 | 3.55 | | | 26.99 | | | | | | | | |
| | | | | | | 3,730.77 | 615.52 | 53.32 | 227.97 | 11.02 | 254.18 | | 1,162.01 | | | 55.96 | | | | | |
| | | | | | | 1,453.53 | 148.10 | 21.03 | 89.90 | | | | 259.03 | | 3.09 | | | | | | |
| | -166.73 | | | | | 930.92 | 65.67 | 11.56 | 49.44 | 9.15 | 9.12 | | 144.94 | | 3.09 | | | | | 164.32 | |
| | | | | | | 3,565.65 | 566.02 | 50.41 | 215.54 | | 160.37 | 9.98 | 1,002.32 | | 3.09 | | | 17.12 | | 94.08 | 16.76 |
| | | | | | | 2,587.13 | 378.37 | 35.64 | 152.43 | 29.03 | 110.33 | | 705.80 | | 3.09 | | 258.71 | | | 164.32 | |
| | | | 196.00 | | | 1,096.21 | 93.99 | 14.49 | 61.94 | | | | 170.42 | | 3.09 | | | | | 94.08 | |
| | | | | | | 849.06 | 29.49 | 12.31 | 52.64 | | | | 94.44 | | | | 84.91 | | | | |
| | | | | | | 1,077.69 | 27.50 | 15.53 | 66.42 | | | | 109.45 | | 6.00 | | 161.65 | | | | |
| | | 2,250.00 | | 13,750.00 | | 18,802.10 | 3,946.28 | 274.94 | 1,175.61 | 119.93 | 1,588.03 | | 7,104.79 | | | | 140.11 | | | | |
| | | | | | | 3,996.56 | 349.28 | 55.67 | 238.02 | | | | 822.38 | | 3.09 | | 321.21 | | | 164.32 | |
| | | | | | | 1,693.36 | 149.79 | 23.63 | 101.03 | 19.55 | 40.64 | | 334.64 | | 3.09 | | | | | 60.41 | |
| | | | | | | 507.28 | | 2.46 | 7.36 | 31.45 | 6.09 | | 47.36 | | | | | | | | |
| 1,977.80 | | | | | | 1,977.80 | | 28.85 | 123.35 | | | | 152.20 | 1,825.60 | | | | | | | |
| | | | | | | 543.40 | 6.07 | 7.88 | 33.69 | | | | 47.64 | | | | | | | | |
| 507.40 | | | | | | 507.40 | | 7.35 | 31.46 | | | | 38.81 | 468.59 | | | | | | | |
| 518.29 | | | | | | 518.29 | | 7.52 | 32.13 | | | | 39.65 | 478.64 | | | | | | | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the right portion of the spreadsheet

| | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 503.02 | | | | | 503.02 | 7.29 | 31.19 | | | | 38.48 | 464.54 | | | | | | | | | |
| 1,476.00 | | | | | 1,476.00 | 23.71 | 27.14 | | | | 50.85 | 1,425.15 | | | | | | | | | |
| 410.47 | | | | | 410.47 | 6.10 | 26.09 | | 0.53 | | 32.72 | 377.75 | | | | | | | | | |

Due to the large number of columns in this spreadsheet, it is printed to two parts.
This is the right portion of the spreadsheet

**Exhibit 3**

Escada America LLC
Utility Providers
As of 1/7/22

| Utility Provider Name | Type of Utility | Account No. | Location Served | Security Deposit | Previous Bill (M | Previous Bill (M | Previous Bill (M | Average Bill - Proposed Deposit |
|---|---|---|---|---|---|---|---|---|
| 693 Fifth Owner LLC | Energy/Water/Heat/waste disposal | Within the Rent Invoice | NY Showroom | | $ 524.71 | $ 774.18 | $ 807.84 | $ 702.24 |
| CENTRAL HUDSON GAS & ELECTRIC | Energy/Water/Heat/waste disposal | 2100-4016-33-9 | Woodbury | | $ 124.14 | $ 204.94 | $ 51.96 | $ 127.01 |
| CITY OF WEST PALM BEACH | Energy/Water/Heat/waste disposal | 4808332610-0, 8267475101-1 , 1663347383-7 | Palm Beach | | $ 230.83 | $ 513.10 | $ 727.60 | $ 490.51 |
| COMMONWEALTH EDISON | Energy/Water/Heat/waste disposal | 6989094024 | Chicago | | $ 1,519.76 | $ 1,053.40 | $ 700.05 | $ 1,091.07 |
| FLORIDA POWER & LIGHT | Energy/Water/Heat/waste disposal | 21031-90324 | Palm Beach | | $ 955.33 | $ 1,040.15 | $ 1,194.36 | $ 1,063.28 |
| FLORIDA POWER & LIGHT | Energy/Water/Heat/waste disposal | 31715-89348 | Sawgrass | | $ 582.75 | $ 704.39 | $ 751.34 | $ 679.49 |
| Las Vegas North Outlets, LLC | Energy/Water/Heat/waste disposal | Within the Rent Invoice | Las Vegas | | $ 611.30 | $ 611.30 | $ 611.30 | $ 611.30 |
| Mesa Water District | Energy/Water/Heat/waste disposal | 06811700-118931 | Costa Mesa | | | | | $ - |
| NVEnergy | Energy/Water/Heat/waste disposal | 3.00034E+18 | Las Vegas | | $ 258.24 | $ 303.65 | $ 351.30 | $ 304.40 |
| ORANGE & ROCKLAND | Energy/Water/Heat/waste disposal | 1896106050 | Woodbury | | $ 593.79 | $ 601.62 | $ 921.36 | $ 705.59 |
| Premium Outlet Partners LP | Energy/Water/Heat/waste disposal | Within the Rent Invoice | Cabazon | | $ 474.09 | $ 474.09 | $ 474.09 | $ 474.09 |
| SAWGRASS MILLS PHASE IV LLC | Energy/Water/Heat/waste disposal | Within the Rent Invoice | Sawgrass | | $ 496.63 | $ 496.63 | $ 496.63 | $ 496.63 |
| Scottsdale Fashion Square LLC | Energy/Water/Heat/waste disposal | Within the Rent Invoice | Scottsdale | | $ 1,112.00 | $ 1,112.00 | $ 1,112.00 | $ 1,112.00 |
| SoCalGas | Energy/Water/Heat/waste disposal | 052 423 8629 9 | Cabazon | | $ 16.27 | $ 14.79 | $ 16.27 | $ 15.78 |
| SOUTH COAST PLAZA | Energy/Water/Heat/waste disposal | Within the Rent Invoice | Costa Mesa | Terminated | $ 446.02 | $ 870.40 | $ 336.90 | $ 551.11 |
| SOUTHERN CALIFORNIA EDISON | Energy/Water/Heat/waste disposal | 7.00149E+11 | Beverly Hills | | $ 3,671.67 | $ 3,752.46 | $ 5,360.19 | $ 4,261.44 |
| SOUTHERN CALIFORNIA EDISON | Energy/Water/Heat/waste disposal | 7.00147E+11 | Costa Mesa | | $ 507.84 | $ 820.11 | $ 629.44 | $ 652.46 |
| WASTE MANAGEMENT | Energy/Water/Heat/waste disposal | 10-84033-53003 | Chicago | | $ 1,216.05 | $ 1,198.05 | $ 1,197.36 | $ 1,203.82 |
| Woodbury Common Premium Outlets | Energy/Water/Heat/waste disposal | Within the Rent Invoice | Woodbury | | $ 507.04 | $ 507.04 | $ 507.04 | $ 507.04 |
| AT&T | Telephone & Internet cost | 307910254 | Beverly Hills | | $ 139.10 | $ 139.10 | $ 139.10 | $ 139.10 |
| AT&T | Telephone & Internet cost | 831-000-8213 237 | Costa Mesa | | $ 476.92 | $ 476.92 | $ 476.92 | $ 476.92 |
| Comcast Business | Telephone & Internet cost | 8771 30 012 3700316 | Chicago | | $ 125.01 | $ 125.01 | $ 125.01 | $ 125.01 |
| Comcast Business | Telephone & Internet cost | 8535 11 460 0140483 | Palm Beach | | $ 122.52 | $ 121.40 | $ 121.40 | $ 121.77 |
| Frontier Communications | Telephone & Internet cost | 845-928-1619-021021-7 | Woodbury | | $ 119.31 | $ 457.01 | $ 247.56 | $ 274.63 |
| Granite Telecommunications | Telephone & Internet cost | 4063906 | Cabazon | | $ 422.92 | $ 422.92 | $ 422.92 | $ 422.92 |
| Granite Telecommunications | Telephone & Internet cost | 4063906 | Las Vegas | | $ 424.56 | $ 424.56 | $ 424.56 | $ 424.56 |
| Granite Telecommunications | Telephone & Internet cost | 4063906 | Sawgrass | | $ 386.53 | $ 386.53 | $ 386.53 | $ 386.53 |
| Granite Telecommunications | Telephone & Internet cost | 4063906 | Scottsdale | | $ 385.38 | $ 385.38 | $ 385.38 | $ 385.38 |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Accounting Office | | | | | $ 1,411.06 |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Beverly Hills | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Buy | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Cabazon | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Chicago | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Costa Mesa | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Human Resources | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Information Technology | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Las Vegas | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | NY showroom | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Office Operations | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Palm Beach | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Retail Operations | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Sawgrass | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Scottsdale | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Wholesale Sales | | | | | |
| Jive Communications, Inc | Telephone & Internet cost | CN-734028-1903 | Woodbury | | $ 1,411.12 | $ 1,411.03 | $ 1,411.03 | |
| OPTUS INC | Telephone & Internet cost | Specific IT support services - mostly due to relocations or store cl | Chicago | | | | $ 786.45 | $ 786.45 |
| Spectrum | Telephone & Internet cost | 8150 20 007 1864646 | NY showroom | | $ 114.98 | $ 114.98 | $ 114.98 | $ 114.98 |
| VERIZON | Telephone & Internet cost | 555-771-651-0001-89 | Warehouse (NJ) | | $ 145.64 | $ 145.64 | $ 145.64 | $ 145.64 |
| Spectrum | Telephone & Internet cost | | NY showroom | | | | | |

**Exhibit 4**

JOHN-PATRICK M. FRITZ (State Bar No. 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: JPF@LNBYG.COM

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | ) Case No. 2:22-bk-10266-BB |
| | ) |
| ESCADA AMERICA LLC, | ) Chapter 11 |
| | ) Subchapter V |
| Debtor and Debtor in Possession. | ) |
| | ) **NOTICE OF ORDER LIMITING** |
| | ) **SCOPE OF NOTICE AND** |
| | ) **OPPORTUNITY TO REQUEST** |
| | ) **SPECIAL NOTICE** |
| | ) |
| | ) <u>Hearing</u>: |
| | ) DATE: __, 2022 |
| | ) TIME: :0 .m. |
| | ) PLACE: Courtroom |
| | ) 255 East Temple Street |
| | ) Los Angeles, California 90012 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**TO ALL CREDITORS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that the Court has entered an *Order Granting Debtor's Emergency Motion For Entry Of An Order Limiting Notice And Related Relief* (the "Order"), sought by Escada America LLC, the debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor"), which establishes the scope of notice to be given in connection with certain pleadings and proceedings in the Debtor's bankruptcy case.

**PURSUANT TO THE ORDER, IN THIS CASE ALL CREDITORS AND PARTIES IN INTEREST WILL RECEIVE THIS NOTICE AND NOTICE OF THE FOLLOWING PROCEEDINGS:**

1. Any hearing on the dismissal or conversion of the Debtor's case;

2. The first meeting of creditors conducted pursuant to Section 341(a) of the Bankruptcy Code;

3. The time to file proofs of claim in the Debtor's case;

4. Certain matters related to a plan of reorganization (and disclosure statement, if required), including any modification thereof; and

5. Any other matter for which the Court requires that the notice be served on all creditors and/or interest holders.

**PLEASE TAKE FURTHER NOTICE** that in order to receive notice of other proceedings in this case not included in the list above, you will be required to file with the Clerk of the Bankruptcy Court and serve upon proposed counsel for the Debtor, at the address on the upper left hand corner of this Notice, a written request for special notice in a form consistent with the Court's rules.

Dated:  __, 2022                          ESCADA AMERICA LLC


By:___*/s/ John-Patrick M. Fritz*___
        JOHN-PATRICK M. FRITZ
        LEVENE, NEALE, BENDER,
             YOO & GOLUBCHIK L.L.P.
        Proposed Attorneys for
        Chapter 11 Debtor and
        Debtor in Possession

1

**Exhibit 5**

1

JOHN-PATRICK M. FRITZ (State Bar No. 245240)

2

LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.

3

2818 La Cienega Avenue
Los Angeles, California 90034

4

Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

5

Email: JPF@LNBYB.COM

6

Proposed Attorneys for Chapter 11 Debtor
and Debtor in Possession

7

8

9

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

10

11

In re

Case No. 2:22-bk-10266-BB

12

ESCADA AMERICA LLC,

Chapter 11
Subchapter V

13

14

Debtor and Debtor in Possession.

15

**NOTICE OF FILING OF [INSERT**
**PLEADINGS NAME]**

16

<u>Hearing</u>
DATE:       [INSERT HEARING DATE]

17

TIME:       [INSERT HEARING TIME]

18

PLACE:    Courtroom
255 East Temple Street

19

Los Angeles, California 90012

20

21

22

23

24

25

26

27

28

**TO ALL CREDITORS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on [INSERT DATE], Escada America LLC the debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor"), filed that certain [INSERT PLEADING NAME] (the "Motion/Application"). A hearing on the Motion/Application will take place on [INSERT DATE] at [INSERT TIME] in Courtroom [INSERT] of the United States Bankruptcy Court, located at 255 East Temple Street, Los Angeles, California 90012.

**PLEASE TAKE FURTHER NOTICE** that an electronic copy of the Motion may be obtained free of charge, by emailing Debtor's counsel at JPF@LNBYG.COM and JASON@LNBYG.COM. If any party desires a hard copy of the Motion/Application, such hard copy will be promptly provided upon written request to the Debtor's counsel whose contact information is set forth in the upper-left hand corner of this Notice.

**PLEASE TAKE FURTHER NOTICE** that **your rights may be affected. You should read the Motion/Application carefully and discuss it with your attorney. If you do not have an attorney, you may wish to consult one.**

Dated:  INSERT DATE                                ESCADA AMERICA LLC


By:____/s/ John-Patrick M. Fritz____
        JOHN-PATRICK M. FRITZ
        LEVENE, NEALE, BENDER,
              YOO & GOLUBCHIK L.L.P.
        Proposed Attorneys for
        Chapter 11 Debtor and
        Debtor in Possession

1

**Exhibit 6**

| Landlord/Counterparty | Address of Landlord | Real Property Address |
| --- | --- | --- |
| Ala Moana Anchor Acquisition, LLC | PO Box 860375, Minneapolis, MN 55486-0074 | 1450 Ala Moana Blvd, Honolulu, HI 96814 |
| Las Vegas North Outlets, LLC | 875 South Grand Central Parkway, #1, Las Vegas, NV 89106 | 875 South Grand Central Pkwy, Las Vegas, NV 89106 |
| Premium Outlet Partners, L.P. | PO Box 822873, Philadelphia, PA 19182-2873 | 48650 Seminole Dr, Cabazon, CA 92230 |
| Sawgrass Mills Phase IV, L.L.C. | 225 W Washington St, c/o M.S. Management Associates Inc., Indianapolis, IN 46204 | 1800 Sawgrass Mills Cir, Sunrise, FL 33323 |
| Woodbury Common Premium Outlets | PO Box 822884, Philadelphia, PA 19182-2884 | 347 Red Apple Ct, Central Valley, NY 10917 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled **Master Statement of Facts and Declaration of Kevin Walsh in Support of Emergency First Day Motion** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 18, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **January 18, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 18, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Via Overnight Mail
The Honorable Sheri Bluebond                By email to:
United States Bankruptcy Court              - Eden Roc International, LLC
Central District of California              - Escada Sourcing and Production LLC
Edward R. Roybal Federal Building and Courthouse    - Mega International, LLC
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **January 18, 2022** | Jason Klassi | */s/ Jason Klassi* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1 | **2:22-bk-10266 Notice will be electronically mailed to:**

2 | John-Patrick M Fritz on behalf of Debtor Escada America, LLC
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

3 |
United States Trustee (LA)

4 | ustpregion16.la.ecf@usdoj.gov

5 |

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

Escada 9277
20 Largest

| | | |
|---|---|---|
| 717 GFC LLC<br>Attn: Mrs.Tsui Yeung<br>500 5th Avenue 54th Floor<br>New York City, NY 10110<br><br>ty@jeffsutton.com<br>212.573.9001    fax   212.573.9173 | Beverly Hills Wilshire Hotel<br>9500 WILSHIRE BLVD<br>BEVERLY HILLS, CA 90212 | SAMSON MANAGEMENT CORP.<br>Attn.: Kathy Panaro<br>97-77 QUEENS BLVD, SUITE 710<br>REGO PARK, NY 11374<br><br>kpanaro@rosenyc.com<br>(212) 210-6753 |
| Chicago Oak Street Partners, LLC<br>Attn: Lesley Pembroke<br>1343 N. Wells Street, Rear Bldg.<br>Chicago, IL 60610<br><br>pmdcompany1343@gmail.com<br>312.944.8200   fax: 312.944.8227 | Alliant Insurance Services, Inc.<br>701 B St 6th Floor<br>San Diego, CA 92101<br><br>Emily.Quinlan@alliant.com<br>415 946 7500 | SPG HOUSTON HOLDINGS,LP<br>PO Box 822693<br>PHILADELPHIA, PA 19182-2693<br><br>317.263.3037 |
| Las Vegas North Outlets, LLC<br>Attn: Marie Wood<br>875 South Grand Central Parkway, #1<br>Las Vegas, NV  89106<br><br>Marie.Wood@simon.com<br>317-685-7335 | Ala Moana Anchor Acquisition, LLC<br>Attn: Lisa Gordon<br>PO Box 860375<br>Minneapolis, MN 55486-0074<br><br>Lisa.Gordon@brookfieldpropertiesretail.com<br>818.693.1907 | CHETRIT 1412 LLC<br>Attn: Nativ Winiarsky<br>PO Box 785000<br>PHILADELPHIA, PA 10018<br><br>nwiniarsky@kuckermarino.com<br>212.869.5030    fax 212.944.5818 |
| Syzygy Performance GmbH<br>Osterwaldstra e 10<br>Munchen, Germany 80805-0000<br><br>buchhaltung@catbirdseat.de<br>*+49 898 0991 1800 | Scottsdale Fashion Square LLC<br>Attn: Tamara Ortega<br>PO Box 31001-2156<br>Pasadena, CA 91110-2156<br><br>Tamara.Ortega@macerich.com<br>602.953.6328 | Woodbury Common Premium Outlets<br>Attn: Marie Wood<br>PO Box 822884<br>Philadelphia, PA 19182-2884<br><br>Marie.Wood@simon.com<br>317-685-7335 |
| Premium Outlet Partners LP<br>Attn: Leslie C. Traylor<br>PO Box 822873<br>Philadelphia, PA 19182-2873<br><br>Leslie.Traylor@simon.com<br>317-263-2315 | Bal Harbour Shops LLLP<br>Attn: Lorena Dehogues<br>9700 Collins Avenue<br>Bal Harbour, FL  33154<br><br>ld@whitmanfd.com<br>305.403.9249 | METROPOLITAN TELECOMM.<br>PO Box 9660<br>MANCHESTER, NH 03108-9660<br><br>customerservice@mettel.net<br>866 625 2228 |
| AMERICAN EXPRESS<br>PO Box 1270<br>NEWARK, NJ 07101-1270<br><br>AmericanExpress@welcome.aexp.com<br>800 528 2122 | Johnson Controls Security Solutions<br>Attn: Virgil Guerra<br>PO Box 371994<br>Pittsburgh, PA 15250-7994<br><br>virgilio.guerra@jci.com<br>800-289-2647 | Simon Property Group LP<br>2696 Solution Center<br>Chicago, IL  60677-2006<br><br>317-263-7071 |
| Cushman and Wakefield<br>Attn: Kaleb McCullough<br>1290 Avenue of the Americas<br>New York, NY 10104<br><br>kaleb.mccullough@cushwake.com<br>314-391-6192 | Funaro &co., P.C.<br>Attn: Joseph M. Catalano<br>350 Fifth Avenue, 41st Fl<br>New York, NY 10118<br><br>joe.catalano@funaro.com<br>(212) 273-5389   fax:  (212) 947-4725 | Sawgrass Mills Phase IV, L.L.C.<br>c/o M.S. Management Associates Inc.,<br>225 W Washington St,<br>Indianapolis, IN 46204 |

Utility Companies

| | | |
|---|---|---|
| CENTRAL HUDSON GAS & ELECTRIC<br>284 SOUTH AVENUE<br>POUGHKEEPSIE, NY 12601-4839<br><br>845-452-2700 or 800-527-2714 | CITY OF WEST PALM BEACH<br>401 Clematis Street<br>West Palm Beach, FL 33401<br><br>(561) 822-1300 | COMMONWEALTH EDISON<br>COMED PO BOX 6111<br>CAROL STREAM, IL 60197-6112<br><br>800-524-0795 or 877 426 6331 |
| COMMONWEALTH EDISON<br>COMED PO BOX 6112<br>CAROL STREAM, IL 60197-6112<br><br>800-524-0795 or 877 426 6331 | FLORIDA POWER & LIGHT<br>FPL GENERAL MAIL FACILITY<br>MIAMI, FL 33188-0001<br><br>800 226 3545 | Mesa Water District<br>PO BOX 515474<br>Los Angeles, CA 90051-6774<br><br>(949) 631-1200 fax: 949 574 1035<br>customerservice@mesawater.org |
| Mesa Water District<br>1965 Placentia Avenue<br>Costa Mesa, CA 92627- 3420<br><br>(949) 631-1200 fax: 949 574 1035<br>customerservice@mesawater.org | NVEnergy<br>6226 West Sahara Ave<br>Las Vegas, NV 89146<br><br>(800) 331-3103 | ORANGE & ROCKLAND<br>PO BOX 1005<br>SPRING VALLEY, NY 10977<br><br>877 434 4100 |
| SoCalGas<br>PO BOX C<br>MONTEREY PARK, CA 91756-5111<br><br>800-427-2000 | SOUTHERN CALIFORNIA EDISON<br>PO BOX 300<br>ROSEMEAD, CA 91772-0001<br><br>800-990-7788  Fax 562 491 2815 | WASTEMANAGEMENT OF ILLINOIS, INC<br>PO Box 42390<br>PHOENIX, AZ 85080<br><br>(866)570-4702 |
| AT&T<br>AT&T PO BOX 5014<br>CAROL STREAM, IL 60197-5014<br><br>800.321.2000 | AT&T<br>AT&T P.O. Box 5019<br>CAROL STREAM, IL 60197-5014<br><br>800 235-7524 | Comcast Business<br>PO BOX 70219<br>PHILADELPHIA, PA 19176-0219<br><br>800-391-3000 |
| Comcast Business<br>P O BOX 4928<br>OAK BROOK , IL 60522-4928<br><br>800-391-3000 | Comcast Business<br>PO BOX 71211<br>CHARLOTTE, NC 28272-1211<br><br>800-391-3000 | Comcast Business<br>141 NW 16TH ST<br>POMPANO BEACH, FL 33060-5250<br><br>800-391-3000 |
| Frontier Communications<br>P.O. Box 740407<br>CINCINNATI, OH 45274-0407<br><br>877 213 1556<br>remittance.research@ftr.com | Frontier Communications<br>P.O. Box 709<br>South Windsor, CT 06074-9998 | Granite Telecommunications<br>100 Newport Ave Ext.<br>Quincy, MA 02171<br>(866) 847-5500<br>custserv@granitenet.com |
| | Jive Communications, Inc<br>PO BOX 412252<br>BOSTON, MA 02241 - 2252<br><br>855-848-0764<br>jive-ar.us@logmein.com | OPTUS INC<br>3423 One Place<br>Jonesboro, AR 72404 |
| Spectrum<br>PO BOX 742663<br>Cincinnati, OH 45274-2663<br><br>877-227-8711 | Spectrum<br>4145 S. FALKENBURG RD<br>RIVERVIEW, FL 33578-8652 | VERIZON<br>PO BOX 5124<br>ALBANY, NY 12212-5124<br><br>800 523 0559<br>ach-wire.requests@one.verizon.com |