1  JOHN-PATRICK M. FRITZ (State Bar No. 245240)
   LEVENE, NEALE, BENDER,
2  YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
   Los Angeles, California 90034
4  Telephone:  (310) 229-1234
   Facsimile:  (310) 229-1244
5  Email: JPF@LNBYG.COM

6
   Attorneys for Chapter 11
7  Debtor and Debtor in Possession

8              UNITED STATES BANKRUPTCY COURT
9              CENTRAL DISTRICT OF CALIFORNIA
               LOS ANGELES DIVISION

10 In re:                          ) Case No.: 2:22-bk-10266-BB
                                   )
11 ESCADA AMERICA LLC,             )
                                   ) Chapter 11 Case
12                                 ) Subchapter V
                                   )
       Debtor and Debtor in Possession.  )
13                                 ) **LIMITED OPPOSITION TO**
                                   ) **OBJECTION OF SIMON PROPERTY**
14                                 ) **GROUP AND BROOKFIELD**
                                   ) **PROPERTIES RETAIL TO DEBTOR'S**
15                                 ) **SUBCHAPTER V ELECTION OR,**
                                   ) **ALTERNATIVELY, MOTION FOR**
16                                 ) **APPOINTMENT OF AN OFFICIAL**
                                   ) **COMMITTEE OF UNSECURED**
17                                 ) **CREDITORS [ECF 103];**
                                   ) **MEMORANDUM OF POINTS AND**
18                                 ) **AUTHORITIES; DECLARATION OF**
                                   ) **KEVIN WALSH IN SUPPORT**
19                                 )
                                   ) Hearing:
20                                 ) Date:  April 6, 2022
                                   ) Time:  10:00 a.m.
21                                 ) Place:  Courtroom 1539
                                   )          255 East Temple Street
22                                 )          Los Angeles, CA 90012
                                   )
23                                 )
                                   ) Hearing to be held in-person and by video-
24                                 ) conference Government Zoom, see Court's
                                   ) website under "Telephonic Instructions" for
25                                 ) more details:
                                   ) https://www.cacb.uscourts.gov/judges/honor
26                                 ) able-sheri-bluebond
                                   )
27                                 )

28

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**.................................................. 3

    **I.**    **STATEMENT OF FACTS** ........................................................... 3

        **A.**    **General Background**.................................................... 3

        **B.**    **The Debtor's Pending Budget Shows Operational Cash-Flow Losses** .................................................................. 4

    **II.**    **THE DEBTOR IS ELIGIBLE FOR SUBCHAPTER V** ................. 4

        **A.**    **The Debtor's General Position** ................................. 4

        **B.**    **Subchapter V Eligibility** ......................................... 7

    **III.**    **CAUSE TO EXPAND THE TRUSTEE'S POWERS** ..................... 11

    **IV.**    **CONCLUSION** ........................................................... 14

**DECLARATION OF KEVIN WALSH** ...................................................... 15

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re 218 Jackson LLC,*
   631 B.R. 937 (Bankr.M.D.Fla.2021) ............................................................11, 13

*In re Cukierman,*
   265 F.3d 846 (9th Cir.2001) ...................................................................................9

*Department of Revenue v. Blixseth (In re Blixseth),*
   942 F.3d 1179 (9th Cir. 2019) ...............................................................................7

*In re El Toro Materials Co., Inc.,*
   504 F.3d 978 (9th Cir. 2007) .................................................................................9

*In re Fountain,*
   612 B.R. 743 (9th Cir.B.A.P.2020).........................................................................8

*In re Lomax,*
   194 B.R. 862 (9th Cir.B.A.P.1996).........................................................................9

*In re Parking Management, Inc.,*
   620 B.R. 544 (Bankr.D.Md.2020) ..........................................................................8

*In re Penland Heating and Air Conditioning, Inc.,*
   2020 WL 31245858 (Bankr.E.D.N.C. June 11, 2020)..........................................13

*In re Ventura,*
   615 B.R. 1 (Bankr. E.D.N.Y. 2020).................................................................7, 11

**Federal Statutes**

11 U.S.C.

§ 105,.................................................................................................................2
§ 363..........................................................................................................4, 16
§ 365..................................................................................................................8
§ 502..........................................................................................................2, 11
§ 1106(a)(3) ....................................................................................................12
§ 1109(b) ........................................................................................................12
§ 1129(a)(7) ......................................................................................................6
§ 1181 ..........................................................................................2, 5, 11, 12
§ 1182 ................................................................................................................7
§ 1183 ..........................................................................................2, 12, 13, 14
§ 1189(a) ..........................................................................................................5
§ 1191(b) ......................................................................................................2, 5
§ 1202(b)(2) ...................................................................................................12

**Other Authorities**

A Guide to the Small Business Reorganization Act of 2019 ....................................12

93 Am. Bankr. L.J. 571, 585 (2019) ...........................................................................12

Federal Rules of Bankruptcy Procedure Rules 9013 and 9014 ...............................2

Escada America LLC, a Delaware limited liability company (the "<u>Debtor</u>"), the debtor and debtor in possession in the above-captioned, chapter 11 bankruptcy case, respectfully submits its limited opposition (the "<u>Opposition</u>") to the Objection of Simon Property Group and Brookfield Properties Retail to Debtor's Subchapter V Election or, Alternatively, Motion for Appointment of an Official Committee of Unsecured Creditors (the "<u>Motion</u>") [ECF 103] filed by creditors Brookfield Properties Retail, Inc., Simon Property Group, Inc., and certain of their respective affiliates (collectively, the "<u>Creditors</u>").

The bases of this Opposition are 11 U.S.C. §§ 105, 365, 502, 1181, 1182, and 1183, Rules 9013 and 9014 of the Federal Rules of Bankruptcy Procedure, and Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court of the Central District of California.  In support of the Opposition, the Debtor relies on the annexed memorandum of point and authorities and declaration of Kevin Walsh.

The Debtor respectfully requests that the Court deny the Motion, or, in the alternative, set a discovery and briefing schedule on this contested matter, and, in the interim, authorize the subchapter V trustee to act as an examiner pursuant to 11 U.S.C. § 1183(b)(2).

Dated: March 23, 2022                    ESCADA AMERICA LLC

By:    <u>/s/ John-Patrick M. Fritz</u>
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF FACTS

**A.    General Background[1]**

1.    The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 18, 2022, (the "Petition Date").  The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession.

2.    The Debtor was formed as a Delaware limited liability company in 2009.  The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, an office New York City, New York, and, as of the Petition Date, ten (10) retail stores across seven (7) states in the United States, and over 50 fulltime employees.  As part of its first-day motions, the Debtor rejected five (5) leases, and is now operating at five leased locations with approximately 4 employees in its corporate office and 29 employees in stores.

3.    The Debtor negotiated workouts with some, but not all, of its various landlords during 2020 and 2021, but with the consequences of the Covid-19 pandemic that Debtor was forced to file bankruptcy to restructure its business affairs.

4.    The Debtor cannot survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.

5.    Accordingly, the Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

6.    The Debtor intends to propose a subchapter V plan in good faith to reorganize its financial affairs and avoid a senseless and unnecessary liquidation.

/ / /

---

[1] The full narrative of the Debtor's general factual  background can be found in the pending cash collateral motion and accompanying declaration of Kevin Walsh [ECF 101], which is set for hearing on April 6, 2022, at 10:00 a.m.

**B.    The Debtor's Pending Budget Shows Operational Cash-Flow Losses**

7.    To keep the Debtor operating through its reorganization, the Debtor requires the use of cash collateral.

8.    On March 16, 2022, the Debtor filed its Motion for Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; and (II) Providing Adequate Protection (the "Cash Collateral Motion") [ECF 101], which is currently set for hearing on April 6, 2022.  A budget (the "Budget") for use of cash collateral through July 15, 2022, is attached as **Exhibit 1** to the Cash Collateral Motion.

9.    Over the course of the 13-week Budget, there is a net loss of approximately $130,000.

10.    The Budget does not include any prepetition debt service, adequate protection payments, or even payments to Debtor's counsel or the subchapter V trustee.

11.    The $130,000-loss over the course of the Budget is a purely operational loss.

12.    For the first 13 weeks of this case, the Debtor's affiliates, Escada Sourcing and Production ("ESP") and Mega Corporate Offices ("MCO") did not receive any payments for inventory consignment fees or for the Debtor's employee benefits, which permitted the Debtor to operate cash-flow positive at the outset of the case.  However, in the pending Budget, those costs will be paid on a go-forward basis starting on April 16, 2022.

## II.    THE DEBTOR IS ELIGIBLE FOR SUBCHAPTER V

**A.    The Debtor's General Position**

The Debtor is largely indifferent to whether its case remains in subchapter V, but for the administrative cost savings that will inure to the benefit of creditors and all stakeholders in the case.  If the Debtor is ineligible for subchapter V, then the Debtor is prepared to move forward in an ordinary chapter 11, but that will almost certainly be less efficient and entail higher administrative costs, which will be paid ahead of prepetition creditors, most likely resulting in less recovery for them.  The Debtor requests that the Court consider the best interests of all

creditors in the estate, and not only the well-heeled and highly sophisticated commercial landlord Creditors who have filed the Motion.

Contrary to the Creditors' speculative arguments about the Debtor's subchapter V strategy,[2] the Debtor does not believe that various substantive legal differences between ordinary chapter 11 and subchapter V – such as the absence of the absolute priority rule, perpetual plan exclusivity, or the possibility of confirming a plan without a non-insider impaired consenting class – make a material difference on the facts of this case.  *See*, 11 U.S.C. § 1181(a)(1) (absolute priority rule of § 1129(b)(2)(B) does not apply); 11 U.S.C. § 1189(a) (only debtor may file a plan); 11 U.S.C. § 1191(b) (excepting impaired consenting class requirements of § 1129(a)(8) and (10)).

Current ownership and management acquired the Debtor as a distressed business with many financial and operational problems in November/December 2019, then the situation became much worse with Covid-19 in February/March 2020, and numerous of the Debtor's foreign affiliates went into and/or are now in foreign insolvency proceedings in jurisdictions such as Germany, Italy, Luxembourg, and Slovenia.  What makes the Debtor's situation different is the access to SBRA, a more efficient reorganization law not available in other parts of the world.  But, as shown in the Debtor's Budget, the Debtor cannot even operate cash-flow positive in the current environment.  ECF 101 (Ex. 1, Budget).  The Budget  does not include any administrative professional expenses, and the cash burn would be even worse if those expenses were included. ECF 101 at Ex.1, Budget.  In short, there is no great value proposition on the horizon, and any reorganization in ordinary chapter 11 or subchapter V will need a "new value contribution" in some fashion.  Moreover, the estate cannot afford highly contested litigation under any chapter 11 regime, and so the Debtor is already highly incentivized to minimize costs by reaching consensual resolution with the creditors for plan support.

---

[2] The Motion is replete with speculative arguments and insinuations irrelevant to the issue of eligibility or cause for appointment of a committee, and the Debtor's decision not to engage in a tit-for-tat exchange on every barb is not and should not be construed to be Debtor's acceptance of the Creditor's allegations.  All rights, claims, and defenses are reserved.

Where, as here, the business is operating at a loss even before any administrative professional expenses, the only way for this Debtor to effectively reorganize is with the cooperation of ownership/management and creditors, which is why the Debtor, through counsel, has been in discussions with Creditors since day one of the case. If there is a possibility to be eligible for subchapter V, based on all of the cost-saving economic and administrative efficiencies attendant to SBRA, a debtor might arguably be acting contrary to its fiduciary duties to the estate to forgo that subchapter V election and proceed under the more expensive ordinary chapter 11. Accordingly, the Debtor elected subchapter V, believing itself to be eligible for the reasons discussed below, and at the very start of the case entered into discussions with creditors to reach a resolution.

Notably, the best-interest-of-creditors test applies in both ordinary chapter 11 and subchapter V, and, thus, the Debtor will always have to address the questions that the Creditors raise about prepetition voidable transfers and other issues to confirm a plan. Subchapter V does not eliminate a party's right to be heard under § 1109, examinations under FRBP 2004, contested plan discovery under FRBP 9014, or a multitude of other creditor rights, and the Debtor fully expects to have to continue to respond to the Creditors regardless of whether the case remains in subchapter V or a committee is appointed. The primary difference is that re-designation to ordinary chapter 11 and/or appointment of a committee will result in more administrative expenses, and every dollar added for administration is a dollar lost for general unsecured creditors, lowering the watermark in any chapter 11 plan, subchapter V or not. 11 U.S.C. §§ 1129(a)(7) & 1191(a).

The moving Creditors (who already have a significant voice in the ongoing discussions) are two of the most sophisticated commercial retail landlords in the country, and the Court should query whether all the general unsecured creditors will really gain from the relief requested in the Motion, or if the Motion is an institutionally-driven objection in the face of a growing wave of successful subchapter V cases in the retail industry.[3] *See*, *In re G-Star Raw*

---

[3] The Creditors (multi-billion-dollar players in their own right) seem upset that the Debtor is

1  *Retail, Inc.*, (Bankr.C.D.Cal. 2:20-bk-16040-WB); *see also*, *In re Lorna Jane USA, Inc.*

2  (Bankr.C.D.Cal. 2:21-bk-17267-NB).   Perhaps this Motion is not about what is best for all

3  creditors here in this estate but what is advantageous on an institutional and precedential level for

4  these particular Creditors in other cases down the road.

5  **B.    Subchapter V Eligibility**

6       Section 1182(1)(A) defines subchapter V eligibility by defining "debtor" according to a

7  debt limit: "The term 'debtor' means … a person engaged in commercial or business activities

8  … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the

9  filing of the petition… in an amount not more than $7,500,000…" 11 U.S.C. § 1182(1)(A).

10      The Debtor has scheduled some of its landlord debts as contingent and unliquidated for

11 the valid reasons discussed below.[4]   The Debtor submits that, in accordance with parallel Ninth

12 Circuit law on counting debt for eligibility, if any part of the claim is contingent or unliquidated,

13 then the entire claim is treated as such and excluded from the eligibility calculation.   In the

14 context of counting debt for involuntary cases, the Ninth Circuit has held that "a creditor whose

15 claim is the subject of a bona fide dispute as to ***amount*** lacks standing to serve as a petitioning

16 creditor under § 303(b)(1) even if a portion of the claim amount is undisputed." *Department of*

17 *Revenue v. Blixseth (In re Blixseth)*, 942 F.3d 1179, 1186 (9th Cir. 2019) (emphasis added).

18 Both Section 303(b)(1) and Section 1182(1)(A) use the term "amount" in counting debt for

19 eligibility: "The term 'debtor' means … a person engaged in commercial or business activities

20 … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the

21 filing of the petition… in an ***amount*** not more than $7,500,000." 11 U.S.C. § 1182(1)(A)

22 (emphasis added).   By application of the Ninth Circuit's reasoning in *Blixseth* to § 1182(1), if

23 any "amount" of a claim is contingent or unliquidated, then the entire claim is considered

24

25 private-equity backed.   But the courts have found eligibility broadly without any qualifying test
   for private equity, as "the purpose and intent of the SBRA [] is to assist small business owners
26 in whatever form they take…" *In re Ventura*, 615 B.R. 1, 24 (Bankr. E.D.N.Y. 2020).

27 [4] The Debtor did not list the majority of its creditors as contingent/unliquidated/disputed. Thus,
   the landlord Creditors' comparison to the *In re De La Hoz* case is misguided.

28

1    contingent or unliquidated and, therefore, not counted in the debt limits for subchapter V

2    eligibility.

3          "A debt is contingent when 'the debtor will be called upon to pay it only upon the

4    occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the

5    alleged creditor.'"  *In re Fountain*, 612 B.R. 743, 749 (9th Cir.B.A.P.2020) (quoting *In re*

6    *Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987)).    The Motion acknowledges the argument that the

7    amount of the landlords' rejection damage claims are contingent upon the Debtor's assumption

8    or rejection of a particular lease and if rejected, the date on which the rejection is effective.  *See*

9    Motion, ECF 103 at 26:10-11.[5]  One bankruptcy court has already addressed the issue and

10   determined that lease rejection claims are contingent and not calculated as part of the subchapter

11   V debt limit.  *In re Parking Management, Inc.*, 620 B.R. 544, 555 (Bankr.D.Md.2020).  Section

12   365 of the Bankruptcy Code, affords the Debtor the ability to assume or reject a lease, making

13   the liability owed under a particular lease contingent upon whether the Debtor will assume or

14   reject such lease.  11 U.S.C. §§ 365(a) & 502(g).  Thus, a landlord's claim for a lease that is still

15   active on the petition date is characteristically contingent as a result of the provisions of the

16   Bankruptcy Code.

17         Beyond this contingency, practically all (or at least the majority) of the landlords' claims

18   are unliquidated for a host of reasons.  "A debt is liquidated if it is capable of 'ready

19   determination and **precision** in computation of the amount due.'"  *In re Fountain*, 612 B.R. at

20   749 (quoting *In re Sylvester*, 19 B.R. 671, 673 (9th Cir.B.A.P.1982)) (emphasis added).

21   Furthermore, while "[a] dispute about liability does not **necessarily** render a debt unliquidated,"

22   … "if the dispute itself makes the claim difficult to ascertain or prevents the ready determination

23   of the amount due, the debt is unliquidated and excluded from the § 109(e) computation."  *In re*

24   *Fountain*, 612 B.R. at 749 (internal quotations omitted) (discussing debt limits for chapter 13);

25   *see also*, *In re Parking Management, Inc.*, 620 B.R. at  554 (looking to § 109 for guidance on

26
     _____

27   [5] Citation is to the Court's ECF ribbon page number at the top of the page, not author-
     determination pagination at the bottom of the page.  Where available, lines are also cited in the
28   format of [page]:[line]-[line] or if spanning multiple pages, [page]:[line]- [page]:[line].

                                                    8

debt eligibility questions in subchapter V).  In the instant case, there are so many variables in a majority of the landlords' claims that determining the claims with precision is practically impossible for the Debtor, particularly as of the Petition Date.

Section 502(b)(6) caps claims "as of the petition date" automatically making the landlord's claim contingent as to a certain portion of liability, and also making a certain portion of the claim unliquidated, particularly when looking at what claim the landlords might add that are for non-rent damages. Although the Motion argues that lease rejections damages are readily calculated by looking at the lease agreement, and this may be true for just pure rejection damages, landlords tend to have claims in addition to their lease rejection claims and such claims cannot accurately be calculated by the Debtor on the Petition Date.  *See*, *In re El Toro Materials Co., Inc.*, 504 F.3d 978, 981 (9th Cir. 2007) (adding to landlords' claims non-rent damages that are not subject to a cap).  Adding to uncertainty are potential disagreements about what counts as "rent" or not, and, thus what would be subject to a cap or added on.  *In re Cukierman*, 265 F.3d 846, 850-51 (9th Cir.2001)   Thus, a landlord may assert other damages related to the leasing of the property and breach of the lease that the Debtor does not know and that are unliquidated.

Additionally, if the leased premises were turned over prior to the end of the lease, based on state law, there could be a disagreement between the landlord and Debtor as to whether possession was actually "surrendered" and whether there is a duty by the landlord to re-let and mitigate damages.  *See*, *In re Lomax*, 194 B.R. 862, 865 (9th Cir.B.A.P.1996) (discussing application of *California Civil Code* §1951.2 and § 1951.4, as well as 11 U.S.C. § 502(b)(6)).

When an operating business, like the Debtor, is preparing to file chapter 11, it is most concerned with ongoing operational issues, cash collateral use, making payroll, and ensuring that its bank accounts are liquid to fund payroll, not tracking the day-to-day changes in various possible iterations of the multiple landlords' claims under different contract terms, different state law, and each landlords' independent decision to unilaterally drawdown a letters of credit, re-let, mitigate, or add to the claim with repair damages and attorneys' fees costs.  As a practical matter, the Debtor cannot know and liquidate all of these various claims.

For example, in a 158-page proof of claim filed by the Debtor's former landlord 717 GFC, LLC (Claim No. 24 on the Debtor's claims register), 717 GFC, LLC devotes a portion of is asserted claim to repair costs incurred by 717 GFC, LLC as a result of alleged damage by the Debtor to the leased premises.  POC 24.  When scheduling 717 GFC, LLC's claim, the Debtor had no way of knowing the universe of the claim(s) that 717 GFC, LLC was going to assert including the repair portion of the claim for out of pocket expenses incurred by 717 GFC, LLC to repair damage to the leased premises, and, therefore, to a certain extent unknown and unliquidated. The amount of the claim is still unliquidated because 717 GFC LLC itself hedges with the safety language of  "***not less than*** $5,108,857.92" followed on by a full paragraph of reservation of rights to "supplement, further amend, and/or modify" the claim.  POC 24 at 5.

As another example, the Beverly Wilshire Hotel ("BWH") filed its 92-page proof of claim on February 18, 2022.  POC 15.  According to the proof of claim, the Debtor turned over possession in November 2020, and the BWH landlord drew on a letter of credit of $2,457,850.68.  POC 15 at 5.  But, unbeknownst to the Debtor (especially as of Petition Date), it appears that BWH covered and mitigated its damages by July 2021, by re-letting the space to Armani, as the proof of claim shows an expense line charged against the Debtor's estate for "$48,750.00 Commission Fees for Armani Lease."  POC 15 at 91.  The Debtor had no way of knowing that BWH would assess against the Debtor charges for the Armani commission and then numerous Allen Matkins legal invoices, including one for $3,450 for "Armani Lease Related Legal Fees" and a $32,000 charge for post-surrender demolition and lease build out in November 2021.  POC 15 at 91 and 92.  Indeed, unbeknownst to the Debtor as of the Petition Date, but now apparent from the proof of claim, there is the issue of BWH taking a double or triple recovery, subjecting it to a claim objection to the benefit of the entire estate, for if the Debtor returned possession by November 2020, then one year of capped § 502(b)(6) rent damages would go until approximately November 2021, but the BWH landlord appears to have had a double or triple recovery by (1) taking the letter of credit deposit, (2) taking cover damages rent from Armani, and (3) still asserting a claim against the estate from July 2021 going forward.

1    The Debtor cannot liquidate the claim of landlords as of the Petition Date without insight into

2    these type of things.

3        The BWH and 717 GFC landlord claims are the two largest claims, and the

4    categorization of these two claims alone as unliquidated shift the Debtor in or out of subchapter

5    V eligibility.  For all of these reasons – and these types of reasons – regarding uncertainty in

6    liquidating landlords' claims, as well as the contingency aspect of assumption/rejection landlord

7    claims, the Debtor qualifies for subchapter V.  To the extent a question still remains, a claim

8    objection proceeding, or at least a claim estimation proceeding under 11 U.S.C. § 502(c) may be

9    appropriate given the depth of examination required for multiple claims and the importance of

10   this decision for the estate's eligibility for subchapter V.

11          **III.    CAUSE TO EXPAND THE TRUSTEE'S POWERS**

12          **IN LIEU OF APPOINTING A CREDITORS' COMMITTEE**

13       "[T]he purpose and intent of the SBRA [] is to assist small business owners in whatever

14   form they take, and to give them speedy access to relief via the bankruptcy process. … [T]he

15   Congressional intent of the SBRA was to keep small business owners in business, and to

16   benefit the employees, suppliers, customers and others who rely on that business." *In re

17   Ventura*, 615 B.R. 1, 24 (Bankr.E.D.N.Y. 2020).

18       While subchapter V permits the appointment of a committee in unusual circumstances

19   for cause shown, the Court should acknowledge that Congress already placed a fiduciary

20   within the framework in the subchapter V trustee.  Case law on the role of fiduciaries in

21   subchapter V is instructive, particularly on the role of the trustee in the absence of a

22   committee.  In subchapter V, there is no committee unless cause is shown on noticed motion

23   and hearing.  11 U.S.C. § 1181(b) (referencing §§ 1102 and 1103).  Instead, the subchapter V

24   trustee acts as a fiduciary for creditors in lieu of a creditors committee.  *In re Ventura*, 615

25   B.R. 1, 13 (Bankr. E.D.N.Y. 2020).  "The subchapter V trustee is an independent third party

26   and a fiduciary who must be fair and impartial to all parties in the case." *In re 218 Jackson

27   LLC*, 631 B.R. 937, 948 (Bankr.M.D.Fla.2021).

28

Congress already expressly permits the subchapter V trustee to take the expansive role of an examiner to investigate matters on behalf of the estate in a cost-effective manner to further the purpose of small business reorganization.  Bankruptcy Code Section 1183 provides in pertinent part:

> The trustee shall –
>
> (2) perform the duties specified in paragraphs (3), (4), and (7) of section 1106 of this title, if the court, for ***cause*** and on request of a party in interest, the trustee, or the United States trustee, so orders[.]

11 U.S.C. § 1183(b)(2) (emphasis added).[6]  Section 1106(a)(3) in turn states:

> (a)  A trustee shall –
>
> (3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, ***the operation of the debtor's business*** and the desirability of the continuance of such business, and any other matter relevant to the case or to the ***formulation of a plan***.

11 U.S.C. § 1106(a)(3) (emphasis added).

"Cause" under section 1183(b)(2) is not defined, and to date, no case law discussing "cause" under § 1183(b)(2) has been published.  However, much of subchapter V is based on chapter 12.  *See*, Bonapfel, "A Guide to the Small Business Reorganization Act of 2019," 93 Am. Bankr. L.J. 571, 585 (2019) (noting that subchapter V resembles chapter 12 in some aspects).    Section 1183(b)(2) is nearly identical to § 1202(b)(2).  *In re AJEM Hospitality, LLC*, 202 WL 3125276 *1, *1 (Bankr.M.D.N.C. Mar.23, 2020); *see*, 11 U.S.C. § 1202(b)(2). While there is little case law evaluating "cause" under § 1202(b)(2), an analysis of the purpose of the trustee role in subchapter V and chapter 12 is insightful.

"Traditionally, trustees tend to be adversarial to the debtor as a result of their duties in protecting the estate and creditors. … This role typically puts a trustee in conflict with the

---

[6] The Debtor is a party in interest authorized to bring this Motion making this request.  *See*, 11 U.S.C. § 1109(b); *see also*, 11 U.S.C. § 1181(a) (not excluding § 1109 from subchapter V).

debtor and sometimes creditors. … A chapter 12 trustee is perhaps the most similar here [to the subchapter V trustee] – not taking possession of estate property and occupying a similar oversight role." *In re 218 Jackson LLC*, 631 B.R. 937, 947 (Bankr.M.D.Fla.2021). "A subchapter V trustee plays a different role from other trustees." *Id.* It is a "new role" and a "unique" role in furtherance of Congress' intent to carry out the SBRA, "which provides a new avenue for small business debtors to reorganize outside of the more costly traditional chapter 11 framework." *Id.* at 946. "[T]he subchapter V trustee's role was intentionally designed to be less adversarial." *Id.* at 947. "The subchapter V trustee is an independent third party and a fiduciary who must be fair and impartial to all parties in the case." *Id.* (quoting The United States Trustee's Handbook for Small Business Chapter 11 Subchapter V Trustees). "The subchapter V trustee will act as a fiduciary for creditors, in lieu of an appointed creditors' committee. The subchapter V trustee is also charged with facilitating the subchapter V debtor's small business reorganization…" *In re Penland Heating and Air Conditioning, Inc.*, 2020 WL 31245858, *1, *1 (Bankr.E.D.N.C. June 11, 2020) (quoting *In re Ventura*, 2020 WL 1867898, *1, *7 (Bankr.E.D.N.Y. Apr.10, 2020)). The Court has power to limit the scope and extent of the Trustee's expanded powers for investigation and reports under § 1183(b)(2). *In re AJEM Hospitality, LLC*, 202 WL 3125276 *1, *2 (Bankr.M.D.N.C. Mar.23, 2020) (collecting cases).

Here, in this case, there is "cause" and it is most appropriate for the Trustee's powers to be expanded to investigate and file a report to help facilitate an investigation of issues that the Creditors have raised in their Motion for appointment of a Committee. The Trustee, as the third party neutral fiduciary, and in lieu of a creditors' committee, is perfectly situated to conduct the investigation into the issues that the Creditors raise in the Motion, fulfilling Congress' intent in carrying out SBRA, while minimizing the costs of administration.

The Debtor will stipulate the expanded powers under § 1183(b)(2), and the Debtor will amend its cash collateral budget to add a professional expense line item for Debtor's counsel and the subchapter V trustee to engage in this investigation.

This relief under § 1183(b)(2) will be without prejudice to the Court considering appointment of a committee at a later date if cause is shown.  Moreover, expansion of the trustee's powers under § 1183(b)(2) is without prejudice to a determination at a later date as to the Debtor's subchapter V eligibility, as even in an ordinary chapter 11, Mr. Jones could be appointed and serve as an examiner under § 1104(c) to carry out the same tasks.

In the interim, the Debtor would request an extension of its deadline to file its subchapter V plan under § 1189 while the trustee conducts the investigation and whether a committee would be appointed to provide input on a potential plan.

## IV.    <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (i) denying the Motion, or (ii) alternatively, setting the Motion for a continued hearing with a discovery and briefing schedule as a contested matter, and, in the interim, expanding the subchapter V trustee's powers as an examiner pursuant to 11 U.S.C. § 1183(b)(2); and (iv) granting such other and further relief as the Court deems appropriate under the circumstances of this case.

Dated: March 23, 2022                          ESCADA AMERICA LLC

                                        By:     */s/ John-Patrick M. Fritz*
                                                JOHN-PATRICK M. FRITZ
                                                LEVENE, NEALE, BENDER,
                                                YOO & GOLUBCHIK L.L.P.
                                                Attorneys for Chapter 11
                                                Debtor and Debtor in Possession

14

### DECLARATION OF KEVIN WALSH

I, Kevin Walsh, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am the Director of Finance for Escada America LLC, a Delaware limited liability company. (the "Debtor"), the debtor and debtor in possession in this chapter 11 bankruptcy case.

3.      I am an experienced finance professional, having worked for the Debtor since 2016 and with prior work experience at Fortune 500 companies including Johnson & Johnson (Controller/Director) and Pfizer (Finance Director).

4.      I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

5.      I make this declaration in support of the Debtor's annexed Opposition.

6.      The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 18, 2022, (the "Petition Date").  The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession.

7.      The Debtor was formed as a Delaware limited liability company in 2009.  The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, an office New York City, New York, and, as of the Petition Date, ten (10) retail stores across seven (7) states in the United States, and over 50 fulltime employees.  As part of its first-day motions, the Debtor rejected five (5) leases, and is now operating at five leased locations with approximately 4 employees in its corporate office and 29 employees in stores.

8.     The Debtor negotiated workouts with some, but not all, of its various landlords during 2020 and 2021, but with the consequences of the Covid-19 pandemic that Debtor was forced to file bankruptcy to restructure its business affairs.

9.     Since 2020 alone, numerous of the Debtor's foreign affiliates went into and/or are now in foreign insolvency proceedings in jurisdictions such as Germany, Italy, Luxembourg, and Slovenia.

10.     The Debtor cannot survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.

11.     Accordingly, the Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

12.     The Debtor intends to propose a subchapter V plan in good faith to reorganize its financial affairs and avoid a senseless and unnecessary liquidation.

13.     To keep the Debtor operating through its reorganization, the Debtor requires the use of cash collateral.

14.     On March 16, 2022, the Debtor filed its Motion for Order (I) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code; and (II) Providing Adequate Protection (the "Cash Collateral Motion") [ECF 101], which is currently set for hearing on April 6, 2022.  A budget (the "Budget") for use of cash collateral through July 15, 2022, is attached as **Exhibit 1** to the Cash Collateral Motion.

15.     Over the course of the 13-week Budget, there is a net loss of approximately $130,000.

16.     The Budget does not include any prepetition debt service, adequate protection payments, or even payments to Debtor's counsel or the subchapter V trustee.

17.     The $130,000-loss over the course of the Budget is a purely operational loss.

18.     For the first 13 weeks of this case, the Debtor's affiliates, Escada Sourcing and Production ("ESP") and Mega Corporate Offices ("MCO") did not receive any payments for

inventory consignment fees or for the Debtor's employee benefits, which permitted the Debtor to operate cash-flow positive at the outset of the case.  However, in the pending Budget, those costs will be paid on a go-forward basis starting on April 16, 2022.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed on this 23rd day of March 2022, at Beverly Hills, California.

*Kevin G Walsh*
Kevin Walsh, Declarant

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled **LIMITED OPPOSITION TO OBJECTION OF SIMON PROPERTY GROUP AND BROOKFIELD PROPERTIES RETAIL TO DEBTOR'S SUBCHAPTER V ELECTION OR, ALTERNATIVELY, MOTION FOR APPOINTMENT OF AN OFFICIAL COMMITTEE OF UNSECURED CREDITORS [ECF 103]; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KEVIN WALSH IN SUPPORT** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:   Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 23, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**: On **March 23, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):   Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 23, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 23, 2022 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| Date | Type Name | Signature |

*2:22-bk-10266-BB Notice will be electronically mailed to:*

*Dustin P Branch on behalf of Creditor The Macerich Company*
*branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com*

*John C Cannizzaro on behalf of Creditor 717 GFC LLC*
*john.cannizzaro@icemiller.com, julia.yankula@icemiller.com*

*Michael J Darlow on behalf of Creditor Harris County Municipal Utility District #358*
*mdarlow@pbfcm.com, tpope@pbfcm.com*

*Caroline Djang on behalf of Interested Party Caroline R. Djang*
*caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com*

*Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)*
*eryk.r.escobar@usdoj.gov*

*John-Patrick M Fritz on behalf of Debtor Escada America, LLC*
*jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com*

*William W Huckins on behalf of Creditor Brookfield Properties Retail, Inc.*
*whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com*

*William W Huckins on behalf of Creditor SIMON PROPERTY GROUP INC*
*whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com*

*Gregory Kent Jones (TR)*
*gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com*

*Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC*
*mkogan@koganlawfirm.com*

*Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.*
*ggpbk@ggp.com*

*Lindsey L Smith on behalf of Debtor Escada America, LLC*
*lls@lnbyg.com, lls@ecf.inforuptcy.com*

*Ronald M Tucker, Esq on behalf of Creditor SIMON PROPERTY GROUP INC*
*rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com*

*United States Trustee (LA)*
*ustpregion16.la.ecf@usdoj.gov*