1  JOHN-PATRICK M.. FRITZ (SBN 245240)
   LEVENE, NEALE, BENDER,
2  YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
3  Los Angeles, California 90034
   Telephone: (310) 229-1234
4  Facsimile: (310) 229-1244
   Email: JPF@LNBYG.COM
5
6  Attorneys for Chapter 11 Debtor
   and Debtor in Possession

7

8
                    **UNITED STATES BANKRUPTCY COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
                        **LOS ANGELES DIVISION**
10
                                          ) Case No.: 2:22-bk-10266-BB
11                                        )
   In re:                                 ) Chapter 11 Case
12                                        ) Subchapter V
                                          )
13 ESCADA AMERICA, LLC,                   )
                                          ) **DEBTOR'S      CHAPTER      11,**
14         Debtor and Debtor in Possession. ) **SUBCHAPTER   V    PLAN    OF**
                                          ) **REORGANIZATION, DATED MAY 2,**
15                                        ) **2022**
                                          )
16                                        ) Chapter 11 Status Conference Hearing:[1]
                                          ) Date: May 11, 2022
17                                        ) Time: 10:00 a.m.
                                          ) Place: Courtroom 1539
18                                        )        255 East Temple Street
                                          )        Los Angeles, CA 90012
19                                        )
                                          ) Hearing to be held in-person and by
20                                        ) videoconference
                                          ) Government Zoom, see Court's
21                                        ) website under "Telephonic Instructions" for
                                          ) more details:
22                                        ) https://www.cacb.uscourts.gov/judges/honor
                                          ) able-sheri-bluebond
23
24

25

26

27

28
   _____
   [1] This hearing is only a status conference, ***not*** a hearing on plan confirmation.

                                          1

## I.    <u>INTRODUCTION</u>

Escada America, LLC, a Delaware limited liability company (the "<u>Debtor</u>"), is the debtor and debtor in possession in the above-captioned chapter 11, subchapter V, bankruptcy case (the "<u>Bankruptcy Case</u>") bearing case number 2:22-bk-10266-BB.  The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") and elected subchapter V on January 18, 2022 (the "<u>Petition Date</u>").  The Debtor is operating its business, managing its affairs, and administering its estate as a debtor in possession pursuant to sections 1182(2) and 1184 of the Bankruptcy Code. The United States Trustee (the "<u>UST</u>") appointed Gregory K. Jones, Esq. as the subchapter V trustee (the "<u>Trustee</u>") pursuant to 11 U.S.C. § 1183(a).

Chapter 11 subchapter V allows the Debtor (and only the Debtor) to propose a plan. This Plan is a reorganization plan proposed by the Debtor.  **This document is the Plan**.  It includes (i) a brief history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections with respect to the ability of the Debtor to make payments under the Plan. This information is provided to help you understand the Plan and to decide whether to vote to accept or reject the Plan or otherwise file objections.

The effective date of the Plan (the "<u>Effective Date</u>") will be the first business day of the first month which is at least fifteen days following the date of entry of the Court order confirming the Plan (the "<u>Plan Confirmation Order</u>") and the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan shall have been executed and

1  delivered by all parties to such documents, instruments and agreements.  The Debtor, following

2  the Effective Date, shall be referred to as the "Reorganized Debtor."

3  ## II.    STATUTORY PLAN DISCLOSURES

4      Bankruptcy Code Section 1190(1) requires that a subchapter V plan include: (i) a brief

5  history of the business operations of the Debtor; (ii) a liquidation analysis; and (iii) projections

6  with respect to the ability of the Debtor to make payments under the Plan.  11 U.S.C. § 1190(1).

7  ### A.  Brief History of the Business Operations of the Debtor

8      1.    The Debtor was formed as a Delaware limited liability company in 2009.

9      2.    The Debtor is a national specialty retailer selling high-end, ready-to-wear

10  women's apparel with its main office in Beverly Hills, California, and, as of the Petition Date,

11  had ten (10) retail stores across seven (7) states in the United States, an office New York City,

12  New York, and over 50 fulltime employees.  The Debtor's retail business is generally known to

13  the public and branded as "Escada."  The Debtor uses the "Escada" brand via a license

14  agreement and does not own any intellectual property rights in connection with the "Escada"

15  brand.

16      3.    For several decades, Escada had been a global retail brand for high-fashion, high-

17  end, ready-to-wear apparel for women, with an emphasis on high-fashion evening wear.

18      4.    On a global scale, Escada has various retail stores and subsidiaries in several

19  countries in Europe, including but not limited to Spain, England and Germany.  Escada also has

20  retail stores in North America, including the Debtor, which operates Escada's brick-and-mortar

21  retail business only in the United States.

22      5.    By 2019, the Escada business on a global scale was in deep distress and could not

23  continue.  At that time, the Debtor, together with other subsidiaries of Escada's then-parent

24  company, was acquired by new ownership (which is now the current ownership and

25  management).

26      6.    At the time of the acquisition of Debtor in 2019, Escada had 29 subsidiaries in 22

27  countries, all of which were financially distressed.

28

7.      In December 2019, the Debtor devised and began implementation of a plan to turn around the United States Escada retail business. Debtor believed that the business could be operated at a profit if fundamental business-model changes were implemented, such as overhauling the Debtor's technological suite and reducing speed to market by shifting supply chains from Asia to Europe.  Debtor's turnaround plan was also contingent upon Debtor's ability to sell product at Debtor's physical locations because ecommerce sales were minimal.

8.      However, what was not – and could not be – known at the time of the acquisition in November 2019, was that an unprecedented, global, catastrophic, and life-changing event with severe economic consequences was on the immediate horizon – the Covid-19 pandemic.

9.      In December 2019, just one month after the acquisition and just as the Debtor's transformation plan was being put into effect, the novel corona virus, known to us now as Covid-19, was quietly spreading in certain regions of Asia, unbeknownst to the rest of the world.

10.      From December 2019 through February 2020, the Debtor prepared to implement a number of business-model and operational changes with the goal of making the United States Escada retail business profitable and correct the mistakes of its prior management and prior owners.

11.      However, in March 2020, the world drastically changed, and set the Debtor on course for this current bankruptcy filing.

12.      On or about March 15, 2020, the City of Los Angeles declared a state of emergency with shelter in place orders. In the following days, many business and financial centers across the United States came to a near total standstill as the nation was gripped by the Covid-19 crisis.

13.      Between March 19, 2020, and April 1, 2020, thirty-eight states issued various shelter-at-home orders due to the Covid-19 pandemic.

14.      In the span of just 12 days, all fifteen (15) of the Debtor's then-active stores in eight (8) States were shuttered due to lockdown restrictions.

15.    Due to rising concerns about Covid-19 in February 2020 before the lockdowns, the U.S. stock market had plummeted, with the Dow Jones Industrial Average dropping from a high of nearly 30,000 to near 20,000 points, having a significant impact on general consumer behavior and sales in the luxury retail fashion industry.

16.    In late March 2020, the United States federal government responded with historic economic aid, passing the CARES Act and providing approximately $3 trillion of stimulus to the economy, which may have bolstered the stock market's recovery, but such economic stimulus did nothing to help retail businesses such as the Debtor, which rely on foot traffic from customer shopping in stores to generate sales.  Unfortunately, the Debtor was not eligible for any of these stimulus payments and was left with no support during these unprecedented times. In addition, as long as the pandemic lockdowns continued and stores remained closed, or shoppers refrained from shopping due to deep concerns about their health and safety, the Covid-19 recession for retail businesses would continue.

17.    From March 2020 to December 2021, the Debtor reduced its overhead expenses by an estimated $13,383,037.40 and entered into negotiations with its commercial landlords for rent relief at all store locations.

18.    The 21 months leading up to the Petition Date have been a marked state of tremendous uncertainty for the world's health and economic affairs brought on by an unprecedented pandemic, followed by an unprecedented recession, then unprecedented trillions of dollars of government aid, none of which has prevented the ongoing uncertainty posed by Covid-19 variants and the attendant on-again-off-again lockdowns across the nation and around the world, all of which made business up through the Petition Date very difficult.

19.    The Debtor was able to negotiate many workouts with its various commercial landlords during 2020 and 2021, but other issues could not be resolved, including, but not limited to, some landlord negotiations that did not go well.  It is because of the consequences of the Covid-19 pandemic that Debtor has been forced to file bankruptcy to restructure its business affairs.

20.    The Debtor was able to reach deals with landlords for three (3) of the then-fifteen (15) store locations, but the Debtor could not survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.

21.    Accordingly, the Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

22.    Within the first few days after the Petition Date, pursuant to a court-approved order, the Debtor rejected five unprofitable store leases, and, consequently, the Debtor is currently operating in five store locations: (i) Palm Beach, Florida, (ii) Scottsdale, Arizona, (iii) Beverly Hills, California, (iv) Costa Mesa, California, and (v) Chicago, Illinois.  The Beverly Hills, Costa Mesa, and Chicago leases are in the name of a non-debtor affiliate, but all net profits are those stores are included in the Plan's income projections.

23.    Between the Petition Date and date of filing this Plan, the Debtor engaged in substantial confidential settlement discussions, through counsel, with major unsecured non-insider creditors and the Subchapter V Trustee, to develop this proposed Plan.

24.    The Debtor has proposed this subchapter V Plan in good faith to reorganize its financial affairs, repay its creditors, and avoid a senseless and unnecessary liquidation.

**B.  Liquidation Analysis**

One confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any

remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of the Debtor.  The Debtor maintains that this requirement is clearly met.

The impaired classes under the Plan consist of classes 1, 2, 3, 4, and 5.  The Debtor must therefore satisfy the "best interest of creditors test" with respect to members of classes 1, 2,3, 4, and 5 that do not vote to accept the Plan.

Through Plan proposal discussions, the Debtor is informed that all the creditors in Classes 1, 2, 3, and 4 support the Plan and will vote to accept the Plan.  Accordingly, this Best Interest Test focuses on the creditors in Class 5.

Attached as **Exhibit 1** hereto, in balance sheet format, is a demonstration of the liquidation analysis in a hypothetical chapter 7 case as of August 1, 2022 (the "Expected Plan Confirmation Date"), if the case were to be converted to chapter 7 instead of the chapter 11 plan being confirmed.  As shown in **Exhibit 1**, all creditors in Class 5 will receive as much or more under the Plan as they would receive under a Chapter 7 liquidation of the Debtor.  *See*, **Exhibit 1**.  In a hypothetical chapter 7 liquidation, the Debtor projects that Class 5 would receive only approximately 5.10% recovery, which recovery includes numerous assumptions in favor of the creditors, including: (1) a full 100% recovery on $1,400,000 collateral for a Western Surety Bond, even though a similar bond with Lexon Surety will have an actual recovery rate of less than 50%; (2) a 54.5% recovery (i.e., 45.5% discount) rate on prepetition avoidance actions against insiders, even though those insiders have informed the Debtor that they would vigorously defend any such lawsuits; (3) a 50% discount on the secured claim held

by insider Mega International LLC, even though Mega has informed the Debtor that it would vigorously defend its claim and lien in a lawsuit; and (4) a 62.5% discount on the post-petition administrative expense claims held by Mega International LLC and Escada Sourcing and Production LLC, even though those insiders have informed the Debtor that they would vigorously defend their administrative claims in litigation. The Debtor does not believe the foregoing results would be achievable by a Chapter 7 Trustee if the case were converted, but the Debtor provides this hypothetical scenario to show that even with an optimistic, creditor-and-trustee-friendly analysis, the Plan still pays creditors far more than a liquidation. Taking the analysis one step further, even if all of the insider prepetition debt owing to Escada Sourcing and Production LLC were subordinated to Class 5 non-insider general unsecured debt (the Debtor is informed that ESP would vigorously defend the legitimacy of its claim to share in a recovery in the event of a chapter 7 liquidation, and so the Debtor does not believe this result is possible or easily achieved), the Class 5 hypothetical liquidation recovery would be only 10.35%, which is still far less than the Plan proposes to pay creditors at 15% for Treatment "A" or 11.36% in Treatment "B" under the Plan. Clearly, the Plan provides at least as much – and more – to creditors, and therefore meets the requirements of the Best Interest Test.

### C. **Plan Payment Projections**

The Debtor's five-year future plan projections are attached as **Exhibit 2** hereto.

Evidentiary support for plan projections can be found in the Debtor's monthly operating reports filed on the Court's docket at docket entry numbers 88, 114, and 143. While the Plan projections show that creditors are receiving at least three years' worth of net projected disposable income, as might be required by 11 U.S.C. § 1191(c)(2)(A) if the Plan were to be confirmed under § 1191(b), parties should note and understand that the basis of payment under a plan confirmed under § 1191(a) is not the Debtor's future income projections. Rather, if creditors vote as a whole to accept the Plan, then Class 5 receives "Treatment A," which is *more* than the Debtor's future net projected income and paid *more* quickly (1) by initial

distribution of cash on hand and Exit Financing, plus (2) the expected recovery on the Western Surety Bond.

## III.    TREATMENT OF CREDITORS' CLAIMS UNDER THE PLAN

### A.  What Creditors Will Receive Under the Plan

As required by the Bankruptcy Code, the Plan classifies certain claims and interests in various "classes" according to their right to priority and leaves other types of claims unclassified.  Also, as required by the Bankruptcy Code, the Plan states whether each class of claims or interests is impaired or unimpaired and describes the treatment each class will receive.

### 1.  Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. The Bankruptcy Code predetermines what type of treatment these claims will receive.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class.

### a.  Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Bankruptcy Code Section 507(a)(2).  The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) estate professional administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), bankruptcy counsel to the Debtor | $125,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order |

| | | allowing such fees and expenses |
|---|---|---|
| Subchapter V Trustee | $50,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| Accountant Holthouse, Carlin & Van Trigt LLP | $25,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| **TOTAL** | **$200,000 (est.)** | **Paid in the manner described above** |

The Court must approve all professional fees and expenses listed in this chart before they may be paid.  For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan.  The administrative claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed administrative claims in the Bankruptcy Case.  The actual administrative claims may be higher or lower.  Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims.  To the extent the Debtor is required to engage in any such substantial litigation, the Debtor is likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above.  By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims.

10

By including the figures described above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and the Debtor is not waiving any of its rights to object to the allowance of any of these administrative claims.  Similarly, professionals who have been employed in the Bankruptcy Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of the Disclosure Statement.

To the extent administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds provided the Debtor has sufficient funds to pay them.  To the extent administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor.

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims (other than estate-professional-administrative-expense claims listed above) accruing and unpaid in the ordinary course of business and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Mega (for Debtor's employees' health, dental, and vision benefits plans accrued and unpaid during the pendency of the bankruptcy case) | $100,000 (est.) | To be added to the Class 2 Claim held by Mega (If Class 5 votes for Treatment A)<br><br>To be paid in July 2023 (If Class 5 votes for Treatment B) |
| ESP (for consignment fees accrued and unpaid during the pendency of the bankruptcy case) | $300,000 (est.) | To be added to the Class 3 Claim held by ESP |
| **TOTAL** | **$400,000 (est.)** | |

**b.  Priority Tax Claims**

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan. Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed. 11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims under $100,000 will be paid within 30 days of the Plan Effective Date. The claim of NYC Department of Finance will be paid in equal quarterly installment payments over the first three years of the Plan. The Debtor may be these claims early with no prepayment penalty. Interest on the priority tax claims will accrue and be paid at the applicable non-bankruptcy law statutory rate.

A failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default. If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies exclusively by application to the Bankruptcy Court and with jurisdiction maintained exclusively by the Bankruptcy Court. The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim. The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount |
|---|---|---|
| County of Los Angeles | 9 | $ 8,537.47 |
| Cal. Franchise Tax Board | 17 | $800.00 |
| IRS | 2 | $79,500.00 |

| Cal. Empl. Dev. Dep't | N/A | $0 |
| NYC Dept. of Finance | N/A | $349,209.25 |
| **TOTAL** | | **$438,046.72** |

### 2. Classified Claims and Interests

#### a. Non-Tax Pre-Petition Priority Claims

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim. However, the holder of such an unsecured priority claim may agree to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim. The Debtor's schedules reflect no creditors as holding priority unsecured claims. No creditors filed proofs of claim asserting non-tax priority unsecured claims. The below chart summarizes the priority non-tax claims and whether the Debtor is considering an objection at this time:

| Name | Claim No. | Objection | Claim Amount |
|------|-----------|-----------|--------------|
| None | N/A | N/A | $0.00 |

### CLASSIFIED CLAIMS IN CLASSES 1 THROUGH 5

The Plan creates liens on certain bond recoveries (each, a "Bond Lien" and, collectively, the "Bond Liens"), which are integral to the treatment of Classes 1, 2, 3, 4, and 5 below. Classes 1, 2, and 4 have prepetition liens against all or substantially all of the Debtor's assets. Class 3 is a creditor with a consignment arrangement, but, to the extent considered as a security interest, would also have a lien. Class 5 is a general unsecured creditor class.

As of the Petition Date, the Debtor holds prepetition bonds with total value of approximately $2.15 million, the collateral for which is cash in a money-market account to support letters of credit (the "Bond Collateral") with JP Morgan Chase Bank ("JPMC"). There are $408,065.65 in offsetting liabilities against the Bond Collateral, resulting in approximately

$1,789,014.09[2] in expected bond proceeds (the "Net Bond Proceeds"). The Net Bond Proceeds stems from two separate bonds: (i) a $700,000 bond, secured by $1,400,000 in Bond Collateral (the "Western Surety Bond") and (ii) a $400,000 and a $350,000 bond, secured by $7500,000 in Bond Collateral, with $408,065.65 in offsetting liabilities (the "Lexon Bond"); and (iii) a 2% cushion in the JPMC account in the amount of approximately $47,079.74. As the bonds are cancelled, mature, and/or terminate, the Net Bond Proceeds shall be placed into a trust account (the "Bond Account") held by Debtor's counsel, LNBYG,[3] to be the collateral for: (i) the Class 5 claims with a first position Bond Lien (the "Class 5 Bond Lien"); and (ii) the Class 1 claim, with a second position Bond Lien (the "Class 1 Bond Lien").    Every dollar of Net Bond Proceeds recovered shall be paid to Class 5 allowed claim holders, *pari passu*, within 30 days of receipt of the Bond Collateral into the Bond Account, until Class 5 has received its 15% recovery under Treatment A. The Debtor shall notify Classes 1, 2, 3, 4, and 5 of the receipt of any Net Bond Proceeds within two (2) business days of such proceeds being released by JPMC to the Bond Account.    At the Debtor's and/or Reorganized Debtor's discretion, notice may be given by filing a notice on the bankruptcy court's docket or by email and/or mail to the 20 largest unsecured creditors in the case.    ESP will act as a secured lender exit financier (the "Exit Financier") and, along with Classes 1, 2, 3, and 4, through the Plan, consent to Class 5 having a lien for the Class 5 Bond Lien on the Bond Collateral, Bond Account, and Net Bond Proceeds senior to the prepetition liens held by Classes 1, 2, 3, and 4, and the exit financing lien held by the Exit Financier.

> **b. Class 1 – Allowed Secured Claim of Eden Roc International, LLC ("Eden Roc")**

The following chart identifies the Plan's treatment of Class 1 comprised of the allowed secured claims of Eden Roc International, LLC ("Eden Roc"):

---

[2] This figure includes $47,079.74 for a 2% cushion held by JPM Chase in the cash collateral deposit account that backs the bonds.

[3] Alternatively, the Debtor and/or Reorganized Debtor may set up the Bond Account as an account subject to a deposit-account-control-agreement with JPMC with a lien in favor of Class 5 to have the proceeds transfer over when they are released from the bond liabilities.

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 1 | Claimant: Eden Roc<br><br>Type of Claim: Allowed secured claim<br><br>Claim amount: $579,025.32, plus accrued interest, fees, and costs<br><br>Collateral: All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 1 shall have an allowed secured claim in the amount of $579,025.32 principal, plus accrued fees, and costs.<br><br>Senior secured lien on all of the Debtor's assets, except with respect to the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>With respect to the Bond Collateral and Bond Account, Class 1 shall have a second priority lien on the Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and validity of the lien.<br><br>Interest rate: 6.0% per annum, compounding<br><br>Loan maturity date extended to 12/31/2027.<br><br>**Payment Treatment A:**<br>If Class 5 votes to accept the plan – Balloon payment of all principal and accrued interest due on 12/31/2025. Provided that all payments to Class 5 have been made, the Debtor shall have the right to prepay all principal and accrued interest due to Class 1 without penalty.<br><br>Under Treatment A, Class 1 will not receive any payments under the Plan during the life of the Plan on account of their Class 1 claims, until and unless Class 5 |

| | | | has received all payments payable thereunder. Class 1 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan. |
| | | | **Treatment B:**<br>If Class 5 votes to reject the plan – Balloon payment of entire claim of $579,025.32 within 30 days of the Plan Effective Date. |
| | | | Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 1 claimant. |

c. **Class 2 – Allowed Secured Claim of Mega International, LLC**

The following chart identifies the Plan's treatment of Class 2 comprised of the allowed secured claim of Mega International, LLC ("Mega"), in the total amount of $1,506,953.00:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 2 | **Claimant:** Mega<br><br>**Type of Claim:** Allowed secured claim<br><br>**Prepetition Claim amount:** $1,506,953.00, plus accrued interest, fees, and costs<br><br>**Post-petition Claim amount:** $100,000 (estimated)<br><br>**Total Claim amount:** $1,656,953.00<br><br>**Collateral:** All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 2 shall have an allowed secured claim in the amount of $1,656,953.00, principal, plus accrued unpaid fees and costs.<br><br>Second position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and validity of the lien.<br><br>Interest rate: 7.0% per annum, compounding<br><br>Loan maturity date extended to 12/31/2027.<br><br>**Payment Treatment A:** If Class 5 votes to accept the plan – Balloon payment of all principal and accrued interest due on 12/31/2027.<br><br>Under Treatment A, Class 2 will not receive any payments under the Plan during the life of the Plan on account of their Class 2 claims until all payments to Class 5 have been made.  Class 2 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan.<br><br>**Treatment B:** If Class 5 votes to reject the plan – Balloon payment of the administrative claim in the amount of approximately |

| | | | $100,000 in July 2023, with the balance of the balloon payment of all principal and accrued interested due on 12/31/2027. |
| | | | Under Treatment B, Class 2 will receive payment for its post-petition Claim amount within one (1) year of the Effective Date, but will not receive any further payments under the Plan during the life of the Plan on account of their Class 2 claims until all payments to Class 5 have been made.   Class 2 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan. |
| | | | Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 2 claimant. |

**d. Class 3 – Allowed Claim of Escada Sourcing and Production LLC Related to Consignment**

The following chart identifies the Plan's treatment of Class 3 comprised of the allowed claim of Escada Sourcing and Production, LLC ("ESP"):

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 3 | Claimant: ESP<br><br>Type of Claim: True Consignment; additionally, claims as follows:<br><br>Pre-petition Claim: A prepetition secured claim in the amount of no less than $675,361.39<br><br>Post-petition Claim Amount: $300,000 (estimated)<br><br>Exit Financing Claim Amount: $150,000<br><br>Post-Confirmation Claim: Accruing according to estimated plan projections. *See*, Ex.2 to the Plan.<br><br>Claim amount: Not less than $1,025,361.39<br><br>Collateral: Not Applicable to the extent that ESP is a consignor with a true consignment; but to the extent ESP is a creditor, all inventory held by Debtor and proceeds thereof | Impaired<br><br>Entitled to Vote | Class 3 shall retain its rights as a consignor, unaltered by the Plan.<br><br>Total allowed secured claim of no less than $1,025,361.39, plus accruing claim post-confirmation.<br><br>The order confirming the Plan shall affirm the validity of the consignment agreement between the Debtor and ESP and ratify the terms of the settlement agreement entered into by and between ESP, on the one hand, and the Debtor and its estate, on the other hand (the "Settlement Agreement").<br><br>Third position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds. |

1

2          **e.  Class 4 – Allowed Claim of Escada Sourcing and Production LLC**

3               **Related to Secured Debt**

4          The following chart identifies the Plan's treatment of Class 4 comprised of the allowed

5    claim of Escada Sourcing and Production, LLC ("ESP"):

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 4 | **Claimant:** ESP<br><br>**Type of Claim:** Allowed secured claim<br><br>**Claim amount:** $19,044,356.07, plus accrued interest, fees, and costs<br><br>**Collateral:** All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 4 shall have an allowed secured claim in the amount of $19,044,356.07, principal, plus accrued unpaid fees and costs.<br><br>Fourth position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and lien held by ESP and ratify the terms of the Settlement Agreement entered into by and between ESP, on the one hand, and the Debtor and its estate, on the other hand.<br><br>Interest rate: 8.0% per annum, compounding<br><br>Loan maturity date extended to 12/31/2027.<br><br>Balloon payment of all principal and accrued interest due on 12/31/2027.<br><br>Class 4 will not receive any payments under the Plan during the life of the Plan on account of their Class 4 claims.  Class 4 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force |

| | | | and effect between the Debtor and the Class 4 claimant. |
|---|---|---|---|

### f.   Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims (see the Claims Chart for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | All general unsecured claims of the Debtor not included in any other class.<br><br>Total amount of class 5 claims is $18,480,055.54.<br><br>The Claims Chart attached as **Exhibit 3** to the Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 5. The Claims Chart reflects the anticipated amounts of claims lessors of Debtor's non-residential real property leases capped by § 502(b)(6). | Yes.<br><br>Entitled to vote | **Treatment A:**<br>**If Class 5 votes as a Class to accept the Plan**, in full and final satisfaction of each, any, and all of their claims against the Debtor, each holder of a class 5 allowed claim will receive 15 cents on the dollar for its allowed claim (the "<u>15-Cent Recovery</u>"), with: (i) at least 7.5 cents* on the dollar for its claim within fifteen (15) days of the Effective Date (the "<u>Cash On Hand Payment</u>"), and (ii) the balance of the 15 cents on the dollar still owing on its claim (i.e. 7.5 cents) by no later than the one-year anniversary of the Effective Date (the "<u>Remainder Payment</u>").<br><br>* Every dollar of Net Bond Proceeds recovered shall be paid to Class 5 allowed claim holders, *pari passu*, within 30 days of receipt of the Net Bond Proceeds into the Bond Account. Thus, if funds in the Bond Account are sufficiently high within 15 days of the Plan Effective Date, it is possible that more than 7.5 cents on the dollar could be distributed to Class 5. Class 5's recovery shall be capped at the 15-Cent Recovery and all Net Bond Proceeds in excess of the Remainder Payment due to Class 5 after application of the Cash On Hand Payment shall be payable to Class 1 pursuant to the terms hereof.<br><br>The Class 5 Lien shall be fully extinguished upon the distribution of payments, under |

23

| | | | | |
|---|---|---|---|---|
| 1 | | | | Treatment A, equal to, in the aggregate, the 15-Cent Recovery. |
| 2 | | | | |
| 3 | | | | Until paid pursuant to the terms of the Plan, the holders of Class 5 claims shall have and share *pari passu*, a first position lien on the recovery of the Net Bond Proceeds and Bond Account. |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | The payments provided for under Treatment A shall be made regardless of the income or net proceeds generated by the Debtor during the life of the Plan. |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | If the Court allows a substantial contribution claim under § 503(b) for the attorneys' fees and costs of unsecured creditors' counsel (a "Substantial Contribution Claim"), then such claim(s) shall be paid from the 15-Cent Recovery, which will result in Class 5 receiving less than fifteen cents on the dollar. Although such an apportionment will be subject to court approval, the Debtor will not object to how Class 5 claim holders and their creditors' counsel seek to apportion the 15-Cent Recovery among them. |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | **Treatment B:** **If Class 5 votes as a Class to reject the Plan, or does not vote at all**, then, in full and final satisfaction of each, any, and all of their claims against the Debtor, each holder of a class 5 allowed claim will receive a cash payment equal to its prorated share of the Debtor's projected net disposable income for a three-year period, paid over a five-year period, commencing as of the Effective Date (the "Net |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |
| 26 | | | | |
| 27 | | | | |
| 28 | | | | |

Disposable Income"), and upon confirmation of the Plan, the amount of $2.1 million shall be and is conclusively determined to be the projected net disposable income pursuant to 11 U.S.C. § 1191. Notwithstanding any portion of this Plan, under Treatment B, no lien on any Debtor or Estate assets (including, without limitation, the Bond Collateral, Bond Account, and Net Bond Proceeds) shall be given to Class 5, and Classes 1, 2, 3, and 4, shall retain first, second, third, and fourth position liens, respectively, against the entirety of the Debtor and Estate's assets (including, without limitation, the Bond Collateral, Bond Account, and Net Bond Proceeds).

The Debtor will pay the Class 5 allowed claims in six equal installments according to the following payment schedule:

1st payment: within fifteen (15) days of the Effective Date;
2nd payment: 1-year anniversary of the Effective Date.
3rd payment: 2-year anniversary of the Effective Date.
4th payment: 3-year anniversary of the Effective Date.
5th payment: 4-year anniversary of the Effective Date.
6th payment: 5-year anniversary of the Effective Date.

**For Both Treatment A and B:**
Class 5 will receive neither post-petition nor post-confirmation interest on their claims. With the exception of the payments outlined above, capped at the 15-

| | | | Cent Recovery, Class 5 and its attorneys will not be entitled to any reimbursements, expenses, costs, or other payments.

The Debtor may prepay Class 5 at any time without prepayment penalty.

If checks are in amounts of less than $50, such checks may be deferred until the next annual payment until the aggregate due to such creditor is in an amount of (i) at least $50 or (ii) the total distribution owed to the creditor at 15 cents on the dollar of the allowed claim.

In the event of a default in payment, holders of Class 5 allowed claims may seek enforcement of Plan treatment in the Bankruptcy Court as their exclusive remedy with the Bankruptcy Court holding exclusive jurisdiction.

Attached as **Exhibit 3** to the Plan is a listing of the name and dollar amount of the class 5 allowed claims expected to be paid by the Debtor pursuant to the terms of the Plan, and the estimated prorated recovery. |
|---|---|---|---|

### g.  Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.

In compliance with 11 U.S.C. § 1123(a)(6), the Debtor's charter, bylaws, and/or operating agreement will be amended to provide for the inclusion of a provision prohibiting the

issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 6 | Sole member of Debtor:<br><br>Escada Store Services LLC | Unimpaired<br><br>The class 6 interest holder is conclusively presumed to have voted to accept the Plan by operation of law | The class 6 equity interests will retain its rights and interests without impairment.<br><br>Class 6 receives no payments on account of its equity interests during the life of the Plan. |

**B. Means of Effectuating and Implementing the Plan**

**1. Funding for the Plan**

The Plan will be funded with the Debtor's cash on hand on the Plan Effective Date, recovery of the Bond Collateral into the Bond Account, exit financing, and continued business operations. The Debtor's plan projections of future income are attached as **Exhibit 2** to the Plan. On the Effective Date, Escada Sourcing and Production LLC ("Exit Financier") will contribute exit financing in the amount of $150,000 subject to the terms of the settlement agreement (the "Settlement Agreement") attached as **Exhibit 4** to the Plan. The Settlement Agreement shall provide, in part, that the Exit Financier will (i) provide a five-year, zero-interest, $150,000 loan to the Debtor, (ii) agree to subordinate its claim for post-petition priority consignment fees, (iii) subordinate its claims under Classes 3 and 4 to those of Class 5 to the extent provided for in the Debtor's Plan and (iv) vote in favor of the Debtor's Plan, in return for which the Debtor and the Estate shall irrevocably grant the Exit Financier a complete release of claims, including, without limitation, for any preference or fraudulent transfers or avoidance action claims. After the Effective Date, the Debtor will fund payments through operations, and

the Debtor may attempt to refinance and/or raise capital to make early prepayment to Class 5, but has no obligation to do so. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor will use its commercially reasonable best efforts to liquidate or materially reduce the Bond Collateral. The Debtor will distribute to Class 5 all Net Bond Proceeds from the Bond Collateral no later than 30 days after the corresponding cash is actually received in the Bond Account, up to the remaining 7.5 cents on the dollar payable to Class 5 hereunder following the initial 7.5 cents on the dollar payment made on the Plan's effective. However, if the Plan is confirmed under § 1191(b), then Class 5 creditors will be paid approximately 11.36 cents on the dollar over the course of five years from Debtor's future plan projection income.

### 2. Composition of the Debtor After the Effective Date

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor." The members of the Debtor will remain the same as the Debtor's current members.

### 3. Post-Confirmation Management and Compensation

The Reorganized Debtor will be managed by Escada Store Services LLC for no compensation. The day-to-day management will be led by Kevin Walsh. As has been the situation throughout the case, the Debtor asserts that Mr. Walsh is not an insider, his compensation has not been subject to insider-compensation procedures, and his compensation is not subject to disclosure. Mr. Walsh does not hold any direct or indirect ownership in the Debtor.

In the ordinary course of business and subject to the business judgment rule, the Reorganized Debtor may hire and/or terminate officers, directors, and/or managers, and increase, decrease, and/or change the compensation of its managers, officers, and directors after the Effective Date so long as such alternations neither interfere with nor jeopardize payments to creditors under the Plan.

#### 4. Disbursing Agent

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor will act as the disbursing agent under the Plan.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor will act as the disbursing agent under the Plan and submit a quarterly report to the Trustee, within 45 days after the end of each quarter, detailing the payees and amounts of payment to creditors under the Plan with bank statements as proof of payment. The Reorganized Debtor will not charge any disbursing agent fee for making the Plan distributions. With specific regards to the Bond Account and Net Bond Proceeds, however, LNBYG shall act as the disbursing agent and shall only charge customary, hourly fees for such services, which shall be paid by the Debtor or Reorganized Debtor.

#### 5. Objections to Claims

The Debtor or the Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to the Debtor unless the Debtor deems the inconsistency to be insignificant.  With respect to disputed claims that are not resolved prior to the Plan Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval. As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.  As of the Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such objections to claims following the confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or

recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim.  The deadline for filing claims objections shall be 60 days after the Plan Effective Date.  The Reorganized Debtor shall withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors (the "Disputed Claims") of any particular class as if such claims were allowed in full, which shall not delay payment to allowed claims that are not Disputed Claims.

### 6.  Avoidance Actions, Strong Arm Powers, and Causes of Action

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code and any motions and/or adversary proceedings for substantive consolidation, shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be the Plan Effective Date.  The deadline for the Debtor or Reorganized Debtor to file any non-avoidance action shall be the earlier of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.  A list of potential preferential avoidable transfers are listed as **Exhibit 5** hereto.  The Debtor does not believe there are any causes of action for actual or fraudulent voidable transfers.  The Debtor may have a case of action against Lexon Surety related to bond disputes, which is under investigation.

### 7.  Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses After the Effective Date

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determines is appropriate and to

1  compensate any such professionals without the need for any further order of the Bankruptcy

2  Court.

3  **8.  Exemption from Transfer Taxes**

4  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange

5  of a security, or the making or delivery of an instrument of transfer under a plan confirmed

6  under section 1129 or 1191 of the Bankruptcy Code, may not be taxed under any law imposing a

7  stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under section

8  1146(c) of the Bankruptcy Code include all transfers by the Debtor after the commencement of

9  the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date.  The taxes

10 from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes,

11 transfer taxes, and other similar taxes.

12 **9.  Distributions to Be Made Pursuant to the Plan**

13 Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be

14 made to holders of allowed claims pursuant to the Plan may be delivered by regular mail,

15 postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time

16 be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a

17 proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay

18 allowed claims shall be null and void if not negotiated within sixty (60) days after the date of

19 issuance thereof.

20 **10. Exculpations and Releases**

21 To the maximum extent permitted by law, not any one of  the Debtor, the Reorganized

22 Debtor, Brookfield, Simon Property, 717 GFC LLC, Eden Roc LLC, Escada Sourcing and

23 Production LLC, Megan International LLC, each of its/their management, each of its/their

24 professionals employed or retained by any of them, whether or not by Bankruptcy Court order

25 (collectively, the "Exculpated Parties"), shall have or incur any liability to any person or entity

26 for any act taken or omission made in good faith in connection with or related to the formulation

27 and implementation of the Plan, or a contract, instrument, release, or other agreement or

28 document created in connection therewith, the solicitation of acceptances for or confirmation of

31

the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds.

For the avoidance of doubt the exculpation and release applies only to the events the Debtor's case and Plan as set forth in the preceding paragraph.  This is not – and shall not be construed to be – a release or exculpation of the Exculpated Parties for matters outside of the Debtor's case and Plan as set forth in the preceding paragraph.

**11. Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan, including, but not limited to claims for voidable transfers, substantive consolidation, successor liability, recharacterization, and equitable subordination.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtor, (b) the Reorganized Debtor, or (c) alleged alter egos of the Debtor or Reorganized Debtor, or (II) their property; on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.  By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the

Plan shall be deemed to have specifically consented to the injunctions set forth in this Section. The injunction described in this paragraph (the "Injunction") is applicable to *all* creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include an award of the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction against any such creditor and/or party in interest.

## 12. Executory Contracts and Unexpired Leases

On the Effective Date, the Debtor will assume the executory contracts and unexpired leases set forth on **Exhibit 6** to the Plan with the cure amount set forth on that exhibit. On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be rejected by the Debtor effective as of 11:59 PST on the day prior to the Plan Effective Date. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL BE THIRTY (30) DAYS AFTER THE PLAN EFFECTIVE DATE.** Any claim resulting from the Debtor's rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise. Any allowed claim resulting from the Debtor's rejection of an unexpired lease or executory contract will constitute a class 5 allowed claim,

subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

### 13. Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 14. Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Plan Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.    To resolve any and all disputes regarding the operation and interpretation of the Plan and the Plan Confirmation Order;

ii.    To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor or the Reorganized Debtor and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

iii.    To determine the extent, validity and priority of any lien asserted against property of the Debtor and property of the Debtor's estate;

iv.    To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Case on or before the Effective Date with respect to any person or entity related thereto;

v.    To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.    To determine any request for payment of administrative expenses;

vii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the Effective Date;

ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.    To modify the Plan under Section 1193 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Reorganized Debtor;

xi.    Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xii. To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

xiii; To enter a discharge, under 11 U.S.C. §§ 1192 and 1141(d), if applicable; and

xiv.    To enter a final decree closing the Bankruptcy Case.

**IV.    <u>EFFECT OF CONFIRMATION OF THE PLAN</u>**

**A. <u>Discharge.</u>**

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor shall receive a discharge of its debts pursuant to 11 U.S.C. § 1141(d) on the Effective Date.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor shall receive a discharge pursuant to 11 U.S.C. §§ 1192 and 1141(d), as soon as practicable after the Debtor has completed payment to the Classes for which the Plan was confirmed pursuant to 11 U.S.C. § 1191(b). If the Debtor

prepays the payments provided for under the Plan to Class 5, then the discharge pursuant to 11 U.S.C. § 1141(d)(1) shall be effective upon such prepayment.

### B.  Modification of the Plan.

The Debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require re-voting on the Plan if the Debtor modifies the Plan before confirmation in a manner that materially and adversely affects a creditor or interest holder that had voted in favor of the Plan.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Reorganized Debtor may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated, (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor may seek to modify the Plan during the life of the Plan as fixed by the Court, so long as (1) the modified plan still meets the requirements of 11 U.S.C. § 1191(b), (2) circumstances warrant the modification, and (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### C.  Post-Confirmation Status Reports.

Until a final decree closing the Bankruptcy Case is entered, the Post-Confirmation Debtor will file quarterly post-confirmation status reports with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  Even if the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor, and not the Trustee, will file the post-confirmation quarterly reports, notwithstanding Local Bankruptcy Rule 3020-2(c)(2).

The requirement of Local Bankruptcy Rule 3020-2(b)(2) for filing a report within 14 days of entry of the Plan Confirmation Report to set forth an anticipated substantial consummation date is waived.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the projected substantial consummation date will be when the administrative expense claims are

approved and paid.  If the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the projected substantial consummation date will be when Class 5 payments are completed.  Nothing in the Plan waives the requirement of Local Bankruptcy Rule 3020-2(b)(4) for filing a notice that substantial consummation of the Plan has occurred.

### D.  Post-Confirmation Operations

On and after the Effective Date, the Debtor will operate as the "Reorganized Debtor," and not as a "debtor in possession," and will not be subject to motion practice and court approval for, *inter alia*, (1) employing and compensating professionals for services rendered on and after the Effective Date; (2) obtaining financing; (3) entering into transactions outside the ordinary course of business; (4) budget approval; (5) compensating insiders; or (6) sale of substantially all or any part of the Reorganized Debtor's business.

### E.  Post-Confirmation Conversion/Dismissal.

A creditor or any other party in interest may bring a motion to convert or dismiss the Bankruptcy Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed, but before the final decree is entered, if there is a default in performing the Plan.  If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtor's chapter 11 estate that has not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case, and, the Bond Lien shall remain in place, and the Settlement shall remain in place.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation before 180 days after the entry of the Plan Confirmation Order pursuant to 11 U.S.C. § 1144.  If the Debtor and/or Reorganized Debtor successfully defends against an adversary proceeding or other lawsuit to

revoke discharge, revoke the Plan Confirmation Order, or otherwise allege confirmation by fraud, then Debtor and/or Reorganized Debtor shall be entitled to an award of reasonable attorneys' fees and costs against any such plaintiff and its counsel.

### F.  Final Decree.

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Case.  The Reorganized Debtor will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).  Notwithstanding Local Bankruptcy Rule 3022-2(c), if the Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Reorganized Debtor (and not the Trustee) will file final reports, accounts, and motion for final decree.

Presented By:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.


By:    */s/ John-Patrick M. Fritz*
       JOHN-PATRICK M. FRITZ
       Attorneys for Chapter 11
       Debtor and Plan Proponent

Escada America LLC

By:    *Kevin G Walsh*
       Kevin Walsh
       Director of Finance
       Authorized Agent for Debtor

**Exhibit 1**

**Escada America LLC**
**Estimated Liquidation Value of Assets**

| Non-Exempt Assets | Book Value | Liquidation Discount | Chapter 7 | Notes |
|---|---|---|---|---|
| Cash & Cash Equivalents | $1,946,450.74 | 0.0% | $1,946,450.74 | *Cash as of 5/2/22* |
| PP&E (Net of Depreciation) | $597,000.00 | 100.0% | $0.00 | *As of 5/2/22* |
| LOC - Bond Department / Lexon Insurance Company | $350,000.00 | 100.0% | $0.00 | *According to Lexon, when the bond terminates, Lexon will draw against its two letters of credit* |
| LOC - Bond Department / Lexon Insurance Company | $400,000.00 | 14.5% | $341,934.35 | *for $408,065.65 for payments to customs and legal bills, leaving a balance of $341,934.15, provided Lexon incurrs no more costs or expenses.* |
| LOC - Western Surety Company | $1,400,000.00 | 0.0% | $1,400,000.00 | |
| LOC - 2% Cushion at JPM Chase | $47,079.74 | 0.0% | $47,079.74 | *Assumes that JPM Chase will not assert any attorneys' fees or costs.* |
| Accounts Receivable - Credit Cards | $5,923.00 | 0.0% | $5,923.00 | *As of 3/31/22* |
| Accounts Receivable - Department Stores | $486,965.78 | 95.0% | $24,348.29 | |
| Potential Avoidance Claims | $2,200,000.00 | 45.5% | $1,200,000.00 | *Debtor believes that the $2.2M in payments in the 12 months pre-filing were proper, but setting forth a potential recovery estimate for purposes of this analysis* |
| **Total Non-Exempt Assets Before Admin & Other Expenses** | **$5,850,790.59** | | **$4,965,736.12** | |
| Less: Secured Debt - Eden Roc LLC | ($579,000.00) | 0.0% | ($579,000.00) | |
| Less: Secured Debt - Mega International LLC | ($1,700,000.00) | 50.0% | ($850,000.00) | *Debtor does not expect an actual discount and is informed that Mega would defend the validity of its claim and lien, but this hypothetical analysis sets forth a potential discount for illustrative purposes only.* |
| Less: Secured Debt - Escada Sourcing and Production LLC | ($19,719,717.46) | 100.0% | $0.00 | *It is possible that as much as $579,025.32 is subject to defenses on preferential lien avoidance claims, however, and the Debtor is informed that ESP would defend the validity of its claim and lien, but, for illustrative purposes, the lien on the entire claim is treated as avoided.* |
| Less: Post-Petition Administrative Trade Claims of Mega International LLC and Escada Sourcing and Production LLC | ($400,000.00) | 62.5% | ($150,000.00) | *Debtor does not expect an actual discount, and Debtor is informed that Mega and ESP would defend the validity of their claims, on post-petition benefits advanced by Mega and post-petition consignment fees owed to ESP, but setting forth a potential discount for purposes of hypothetical analysis for illustrative purposes.* |
| Less: Chapter 7 Trustee Fees | | | ($177,885.46) | |
| Less: Chapter 7 Trustee Legal and Accounting Fees | | | ($500,000.00) | |
| Less: Chapter Post-Petition Administrative, Non-insider Trade Payables Accrued in Ordinary Course but Unpaid | | | ($150,000.00) | *These expenses consist of non-insider payroll, etc. accrued in the ordinary course and paid in arrears on regular 15-day or 30-day terms but not yet paid in the ordinary course at the time of an immediate hypothetical conversion to chapter 7.* |
| Less: SubChapter V Trustee Fees and Expenses | | | ($50,000.00) | |
| Less: Chapter 11 Debtor Counsel Fees and Expenses | | | ($125,000.00) | |
| Less: Chapter 11 Accountant Fees and Expenses | | | ($25,000.00) | |
| Less: Unpaid Admin Landlord Rent | | | ($8,816.03) | |
| Less: Priority Unsecured Claims (other than NYC Rent Tax) | | | ($88,037.47) | |
| Less: NYC  Rent Tax | | | ($349,209.25) | |
| **Estimated Amount Available to Pay Allowed General Unsecured Claims** | | | **$1,912,787.91** | |
| | | | | |
| **Est Total Amount of General Unsecured Claims for Chapter 7 (including insiders)** | | | **$37,524,411.61** | |
| **Est Total Class 5 General Unsecured Claims** | | | **$18,480,055.54** | |
| **Prorated Recovery for General Unsecured Claims for Chapter 7** | | | **5.10%** | |
| | | | | |
| **Prorated Class 5 General Unsecured Creditor Recovery, if all affiliate unsecured debt disallowed** | | | **10.35%** | *Debtor does not expect that affiliate unsecured debt will be disallowed, and Debtor is informed the Escada Sourcing and Production LLC would defend the validity of its claim, but this hypothetical scenario is outlined for illustrative purposes.* |

**Exhibit 2**

**Escada America LLC**
**5 Year Cash Forecast**
$ in Thousands, Except per Unit Data

| | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | YE | YE | YE | YE | YE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fcst / Act | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST |
| Projection Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 8 | 20 | 32 | 44 | 56 |
| Month / Year Ending | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Jul-23 | Jul-24 | Jul-25 | Jul-26 | Jul-27 |
| 1  Beginning Operating Cash | $1,700 | $164 | $165 | $170 | $170 | $117 | $122 | $114 | $402 | $403 | $408 | $1,750 | $1,700 | $355 | $351 | $391 | $564 |
| 2 | | | | | | | | | | | | | | | | | |
| 3  ( + ) Store Receipts | $288 | $281 | $288 | $281 | $288 | $288 | $267 | $288 | $281 | $288 | $288 | $288 | $3,403 | $3,471 | $3,540 | $3,611 | $3,683 |
| 4  ( + ) Other / Liquidation Receipts | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 | 240 | 240 | 240 | 240 |
| 5  ( + ) Issuance of Exit Financing | 150 | - | - | - | - | - | - | - | - | - | - | - | 150 | - | - | - | - |
| 6  ( + ) Release of Bond LC (1) | - | - | - | - | - | - | - | 342 | - | - | 1,400 | - | 1,742 | - | - | - | - |
| 5  ( + ) 3rd Party Sublease Contribution | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 420 | 420 | 420 | 420 | 420 |
| 6  Total Receipts & Income | $493 | $336 | $343 | $336 | $343 | $343 | $322 | $685 | $336 | $343 | $1,736 | $343 | $5,955 | $4,131 | $4,200 | $4,271 | $4,343 |
| 7 | | | | | | | | | | | | | | | | | |
| 8  ( - ) Consignment Fee (to be Accrued) (2) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 9  ( - ) HQ Personnel | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (600) | (600) | (600) | (600) | (600) |
| 10  ( - ) Store Personnel | (60) | (59) | (60) | (59) | (60) | (60) | (56) | (60) | (59) | (60) | (59) | (60) | (715) | (729) | (743) | (758) | (774) |
| 11  ( - ) Store Associate Retention Bonus | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (12) | - | - | - | - |
| 12  ( - ) Selling and Shipping | (9) | (8) | (9) | (8) | (9) | (9) | (8) | (9) | (8) | (9) | (8) | (9) | (102) | (104) | (106) | (108) | (111) |
| 13  ( - ) Store Rent | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (1,140) | (1,140) | (1,140) | (1,140) | (1,140) |
| 14  ( - ) HQ Rent | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (420) | (420) | (420) | (420) | (420) |
| 15  ( - ) Financial Charges | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (51) | (52) | (53) | (54) | (55) |
| 16  ( - ) Benefits | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (540) | (540) | (540) | (540) | (540) |
| 17  ( - ) Misc. (Facilities & Other) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (85) | (87) | (89) | (90) | (92) |
| 18  ( - ) Utilities, Telephones, Networks | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (60) | (60) | (60) | (60) | (60) |
| 19  ( - ) Sales Taxes | (26) | (26) | (26) | (26) | (26) | (26) | (24) | (26) | (26) | (26) | (26) | (26) | (310) | (315) | (321) | (327) | (333) |
| 20  ( - ) Interest Expense on Exit Financing | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21  Total Operating Disbursements | ($338) | ($335) | ($338) | ($335) | ($338) | ($338) | ($330) | ($338) | ($335) | ($338) | ($335) | ($338) | ($4,034) | ($4,047) | ($4,073) | ($4,098) | ($4,125) |
| 22 | | | | | | | | | | | | | | | | | |
| 23  Net Cash Flow Before Plan Expenses | $155 | $1 | $5 | $1 | $5 | $5 | ($8) | $347 | $1 | $5 | $1,401 | $5 | $1,920 | $84 | $128 | $173 | $219 |
| 24 | | | | | | | | | | | | | | | | | |
| 25  ( - ) LNBYG (Debtor's Counsel) | (125) | | | | | | | | | | | | (125) | | | | |
| 26  ( - ) Gregory Jones (Sub V Trustee) | (50) | | | | | | | | | | | | (50) | | | | |
| 27  ( - ) HCVT (Debtor's Accountant) | (25) | | | | | | | | | | | | (25) | | | | |
| 28  ( - ) County of Los Angeles | (10) | | | | | | | | | | | | (10) | | | | |
| 29  ( - ) CA Franchise Tax Board | (1) | | | | | | | | | | | | (1) | | | | |
| 30  ( - ) IRS | (80) | | | | | | | | | | | | (80) | | | | |
| 31  ( - ) NYC Dept. of Finance | | | | | (58) | | | (58) | | | (58) | | (175) | (88) | (88) | | |
| 32  ( - ) Class I Eden Roc LLC | | | | | | | | | | | | | | | | | |
| 33  ( - ) Class II Mega International LLC | | | | | | | | | | | | | | | | | |
| 34  ( - ) Class III Escada Sourcing and Production LLC | | | | | | | | | | | | | | | | | |
| 35  ( - ) Class IV Escada Sourcing and Production LLC | | | | | | | | | | | | | | | | | |
| 36  ( - ) Class V General Unsecured Creditors (3) | (1,400) | | | | | | | | | | | (1,400) | (2,800) | | | | |
| 37  Ending Operating Cash | $164 | $165 | $170 | $170 | $117 | $122 | $114 | $402 | $403 | $408 | $1,750 | $355 | $355 | $351 | $391 | $564 | $782 |
| 38 | | | | | | | | | | | | | | | | | |
| 39  Memo: Unpaid Consignment Fees to Escada Sourcing and Production LLC (1) | $46 | $91 | $137 | $182 | $229 | $275 | $318 | $364 | $409 | $455 | $500 | $546 | $546 | $1,166 | $1,796 | $2,437 | $3,088 |

40

41

42  (1) If the Bond in the amount of $1.4M is recovered sooner, proceeds will be distributed to the Class V General Unsecured Creditors within 30 days of receipt.

42  (2) Assumes 15% of Retail and Other / Liquidation Receipts.

43  (3) Primary source of this payment is expected from bond recovery and will is to be paid to Class 5 within 30 days of receipt, regardless of when recovered, but, under any circumstance, no later than July 31, 2023.

**Escada America LLC**
**5 Year Cash Forecast**
$ in Thousands, Except per Unit Data

| # | | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | ME FCST | YE FCST | YE FCST | YE FCST | YE FCST | YE FCST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Projection Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 12 | 24 | 36 | 48 | 60 |
| | Month / Year Ending | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Jul-23 | Jul-24 | Jul-25 | Jul-26 | Jul-27 |
| 1 | Beginning Operating Cash | $1,700 | $135 | $136 | $141 | $141 | $88 | $93 | $85 | $373 | $374 | $379 | $1,721 | $1,700 | $1,277 | $923 | $613 | $436 |
| 3 | ( + ) Store Receipts | $288 | $281 | $281 | $281 | $288 | $288 | $267 | $288 | $281 | $288 | $281 | $288 | $3,403 | $3,471 | $3,540 | $3,611 | $3,683 |
| 4 | ( + ) Other / Liquidation Receipts | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 | 240 | 240 | 240 | 240 |
| 5 | ( + ) Issuance of Exit Financing | 150 | - | - | - | - | - | - | - | - | - | - | - | 150 | - | - | - | - |
| 6 | ( + ) Release of Bond LC | - | - | - | - | - | - | - | 342 | - | - | 1,400 | - | 1,742 | - | - | - | - |
| 5 | ( + ) 3rd Party Sublease Contribution | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 420 | 420 | 420 | 420 | 420 |
| 6 | **Total Receipts & Income** | $493 | $336 | $343 | $336 | $343 | $343 | $322 | $685 | $336 | $343 | $1,736 | $343 | $5,955 | $4,131 | $4,200 | $4,271 | $4,343 |
| 7 | | | | | | | | | | | | | | | | | | |
| 8 | ( - ) Consignment Fee (to be Accrued) (1) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 9 | ( - ) HQ Personnel | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (50) | (600) | (600) | (600) | (600) | (600) |
| 10 | ( - ) Store Personnel | (60) | (59) | (60) | (59) | (60) | (60) | (56) | (60) | (59) | (60) | (59) | (60) | (715) | (729) | (743) | (758) | (774) |
| 11 | ( - ) Store Associate Retention Bonus | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (12) | - | - | - | - |
| 12 | ( - ) Selling and Shipping | (9) | (8) | (9) | (9) | (9) | (9) | (8) | (9) | (9) | (9) | (8) | (9) | (102) | (104) | (106) | (108) | (111) |
| 13 | ( - ) Store Rent | ($95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (95) | (1,140) | (1,140) | (1,140) | (1,140) | (1,140) |
| 14 | ( - ) HQ Rent | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (420) | (420) | (420) | (420) | (420) |
| 15 | ( - ) Financial Charges | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (51) | (52) | (53) | (54) | (55) |
| 16 | ( - ) Benefits | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (45) | (540) | (540) | (540) | (540) | (540) |
| 17 | ( - ) Misc. (Facilities & Other) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (7) | (85) | (87) | (89) | (90) | (92) |
| 18 | ( - ) Utilities, Telephones, Networks | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (60) | (60) | (60) | (60) | (60) |
| 19 | ( - ) Sales Taxes | (26) | (26) | (26) | (26) | (26) | (26) | (24) | (26) | (26) | (26) | (26) | (26) | (310) | (315) | (321) | (327) | (333) |
| 20 | ( - ) Interest Expense on Exit Financing | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21 | **Total Operating Disbursements** | ($338) | ($335) | ($338) | ($335) | ($338) | ($338) | ($330) | ($338) | ($335) | ($338) | ($335) | ($338) | ($4,034) | ($4,047) | ($4,073) | ($4,098) | ($4,125) |
| 22 | | | | | | | | | | | | | | | | | | |
| 23 | **Net Cash Flow Before Plan Expenses** | $155 | $1 | $5 | $1 | $5 | $5 | ($8) | $347 | $1 | $5 | $1,401 | $5 | $1,920 | $84 | $128 | $173 | $219 |
| 24 | | | | | | | | | | | | | | | | | | |
| 25 | ( - ) LNBYG (Debtor's Counsel) | (125) | - | - | - | - | - | - | - | - | - | - | - | (125) | - | - | - | - |
| 26 | ( - ) Gregory Jones (Sub V Trustee) | (50) | - | - | - | - | - | - | - | - | - | - | - | (50) | - | - | - | - |
| 27 | ( - ) HCVT (Debtor's Accountant) | (25) | - | - | - | - | - | - | - | - | - | - | - | (25) | - | - | - | - |
| 28 | ( - ) County of Los Angeles | (10) | - | - | - | - | - | - | - | - | - | - | - | (10) | - | - | - | - |
| 29 | ( - ) CA Franchise Tax Board | (1) | - | - | - | - | - | - | - | - | - | - | - | (1) | - | - | - | - |
| 30 | ( - ) IRS | (80) | - | - | - | - | - | - | - | - | - | - | - | (80) | - | - | - | - |
| 31 | ( - ) NYC Dept. of Finance | - | - | - | - | (58) | - | - | (58) | - | - | (58) | - | (175) | (88) | (88) | - | - |
| 32 | ( - ) Class I Eden Roc LLC | (579) | - | - | - | - | - | - | - | - | - | - | - | (579) | - | - | - | - |
| 33 | ( - ) Class II Mega International LLC | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 34 | ( - ) Class III Escada Sourcing and Production LLC | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 35 | ( - ) Class IV Escada Sourcing and Production LLC | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 36 | ( - ) Class V General Unsecured Creditors (2) | (350) | - | - | - | - | - | - | - | - | - | - | (350) | (700) | (350) | (350) | (350) | (350) |
| 37 | ( - ) Minimum Operating Cash Reserve | (500) | - | - | - | - | - | - | - | - | - | - | - | (500) | - | - | - | - |
| 38 | ( - ) Reimbursement of Post-Petition Admin Claims to Mega International | - | - | - | - | - | - | - | - | - | - | - | (99) | (99) | - | - | - | - |
| 39 | **Ending Operating Cash** | $135 | $136 | $141 | $141 | $88 | $93 | $85 | $373 | $374 | $379 | $1,721 | $1,277 | $1,277 | $923 | $613 | $436 | $305 |
| 40 | | | | | | | | | | | | | | | | | | |
| 41 | **Memo: Unpaid Consignment Fees to Escada Sourcing and Production LLC (1)** | $46 | $91 | $137 | $182 | $229 | $275 | $318 | $364 | $409 | $455 | $500 | $546 | $546 | $1,166 | $1,796 | $2,437 | $3,088 |
| 42 | | | | | | | | | | | | | | | | | | |
| 43 | | | | | | | | | | | | | | | | | | |

44   (1) Assumes 15% of Retail and Other / Liquidation Receipts.

45   (2) Primary source of this payment is expected from bond recovery and will is to be paid to Class 5 within 30 days of receipt, regardless of when recovered, but, under any circumstance, no later than July 31, 2023.

**Exhibit 3**

Escada Plan Ex.3
May 2, 2022

| | | | FILED CLAIM | | | | SCHEDULED CLAIM | | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout - "A" | Proposed Unsecured Payout - "B" |
| Internal Revenue Service | 2 | 1/27/22 | | | $79,500.00 | | | | $0.00 | | | | | | $79,500.00 | | | |
| County of Los Angeles | 9 | 2/9/22 | $8,537.47 | | | | | | $0.00 | | | | | | $8,537.47 | | | |
| California Franchise Tax Board | 17 | 2/24/22 | | | $800.00 | | | | $0.00 | | | | | | $800.00 | | | |
| California Employment Dev. Dept. | | | | | | | | | $0.00 | | | | | | | | | |
| WWD | | | | | | | | | $258.00 | | | | | | | $258.00 | $38.70 | $29.32 |
| Woodbury Common Premium Outlets | | | | | | | | | $108,024.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| WASTE MANAGEMENT | | | | | | | | | $1,173.00 | | | | | | | $1,173.00 | $175.95 | $133.30 |
| Wage Works, Inc. | | | | | | | | | $585.00 | | | | | | | $585.00 | $87.75 | $66.48 |
| Verizon Wireless | | | | | | | | | $11,917.00 | | | | | | | $11,917.00 | $1,787.55 | $1,354.20 |
| VERIZON | | | | | | | | | $125.00 | | | | | | | $125.00 | $18.75 | $14.20 |
| VECTOR SECURITY INC | | | | | | | | | $150.00 | | | | | | | $150.00 | $22.50 | $17.05 |
| UPS SUPPLY CHAIN SOLUTIONS, INC. | | | | | | | | | $25.00 | | | | | | | $25.00 | $3.75 | $2.84 |
| UNITED PARCEL SERVICE | | | | | | | | | $146.00 | | | | | | | $146.00 | $21.90 | $16.59 |
| UNITED HEALTH CARE JP MORGAN | | | | | | | | | $1,145.00 | | | | | | | $1,145.00 | $171.75 | $130.11 |
| TOWN OF PALM BEACH | | | | | | | | | $55.00 | | | | | | | $55.00 | $8.25 | $6.25 |
| THYSSEN KRUPP ELEVATOR | | | | | | | | | $1,055.00 | | | | | | | $1,055.00 | $158.25 | $119.89 |
| THOMSON REUTERS | | | | | | | | | $2,596.00 | | | | | | | $2,596.00 | $389.40 | $295.00 |
| THOMPSON TAX & ASSOCIATES | | | | | | | | | $2,352.00 | | | | | | | $2,352.00 | $352.80 | $267.27 |
| THE JEWISH WEEK INC. | | | | | | | | | $648.00 | | | | | | | $648.00 | $97.20 | $73.64 |
| The Epoch Times Association Inc. | | | | | | | | | $786.00 | | | | | | | $786.00 | $117.90 | $89.32 |
| TAX FREE SHOPPING, LTD | | | | | | | | | $85.00 | | | | | | | $85.00 | $12.75 | $9.66 |
| TAMI HOGAN | | | | | | | | | $1,061.00 | | | | | | | $1,061.00 | $159.15 | $120.57 |
| Talent Staff, LLC | | | | | | | | | $3,603.00 | | | | | | | $3,603.00 | $540.45 | $409.43 |
| T & G INDUSTRIES | | | | | | | | | $8,000.00 | | | | | | | $8,000.00 | $1,200.00 | $909.09 |
| Syzygy Performance GmbH | | | | | | | | | $145,914.00 | | | | | | | | $21,887.10 | $16,581.09 |
| St Moritz Security Services, Inc. | | | | | | | | | $19,523.00 | | | | | | | $19,523.00 | $2,928.45 | $2,218.52 |
| SPG HOUSTON HOLDINGS,LP | 4 | 1/28/22 | $100.00 | | | $13,226.39 | | | $274,232.00 | CUD | | | $100.00 | | | $13,226.39 | $1,983.96 | $1,502.99 |
| SOUTHWEST SIGN COMPANY | | | | | | | | | $6,151.00 | | | | | | | $6,151.00 | $922.65 | $698.98 |
| SOUTH COAST PLAZA | | | | | | | | | $10,064.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| SoCalGas | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 | $0.00 |
| Sinna Protection Systems | | | | | | | | | $466.00 | | | | | | | $466.00 | $69.90 | $52.95 |
| Sing Tao Newspapers New York LLC | | | | | | | | | $462.00 | | | | | | | $462.00 | $69.30 | $52.50 |
| Simon Property Group LP | | | | | | | | | $55,572.00 | CD | | | | | | $0.00 | $0.00 | $0.00 |
| SHIFT 4 CORPORATION | | | | | | | | | $533.00 | | | | | | | $533.00 | $79.95 | $60.57 |
| SHAROTTE BOUTIQUE | | | | | | | | | $1,335.00 | | | | | | | $1,335.00 | $200.25 | $151.70 |
| SEW GOOD | | | | | | | | | $980.00 | | | | | | | $980.00 | $147.00 | $111.36 |
| SEN Graphics, Inc. | | | | | | | | | $556.00 | | | | | | | $556.00 | $83.40 | $63.18 |
| Sedgwick Claims Management | | | | | | | | | $14.00 | | | | | | | $14.00 | $2.10 | $1.59 |
| Scottsdale Fashion Square LLC | 32 | 3/27/22 | $27,270.76 | | | $148,006.67 | | | $116,909.00 | CUD | | | $27,270.76 | | | $148,006.67 | $22,201.00 | $16,818.89 |
| SCM | | | | | | | | | $5,441.00 | | | | | | | $5,441.00 | $816.15 | $618.29 |
| SCHINDLER ELEVATOR CORPORATION | | | | | | | | | $3,241.00 | | | | | | | $3,241.00 | $486.15 | $368.29 |
| Schaefer Trans. Inc. | | | | | | | | | $17,780.00 | | | | | | | $17,780.00 | $2,667.00 | $2,020.45 |
| SAMSON MANAGEMENT CORP. | | | | | | | | | $1,343,149.00 | | | | | | | $1,343,149.00 | $201,472.35 | $152,630.11 |
| RUSSIAN BAZAAR | | | | | | | | | $83.00 | | | | | | | $83.00 | $12.45 | $9.43 |
| Runway Waiters | | | | | | | | | $1,083.00 | | | | | | | $1,083.00 | $162.45 | $123.07 |
| Reliable Products Supply | | | | | | | | | $363.00 | | | | | | | $363.00 | $54.45 | $41.25 |
| REGENCY ENTERPRISES INC | | | | | | | | | $17,167.00 | | | | | | | $17,167.00 | $2,575.05 | $1,950.79 |
| RAVE FABICARE INC. | | | | | | | | | $188.00 | | | | | | | $188.00 | $28.20 | $21.36 |
| Ralph's Sewing and Vacuum | | | | | | | | | $636.00 | | | | | | | $636.00 | $95.40 | $72.27 |
| QSCS OF NY, INC. | | | | | | | | | $945.00 | | | | | | | $945.00 | $141.75 | $107.39 |
| Pyke Mechanical Inc. | | | | | | | | | $650.00 | | | | | | | $650.00 | $97.50 | $73.86 |
| Premium Outlet Partners LP | 3 | 1/28/22 | $5,328.85 | | | $841,749.01 | | | $102,433.00 | | | | $5,328.85 | | | $841,749.01 | $126,262.35 | $95,653.01 |
| PITNEY BOWES PURCHASE POWER | | | | | | | | | $4,270.00 | | | | | | | $4,270.00 | $640.50 | $485.23 |
| PITNEY BOWES GLOBAL | | | | | | | | | $828.00 | | | | | | | $828.00 | $124.20 | $94.09 |
| PALM BEACH FIRE RESCUE | | | | | | | | | $121.00 | | | | | | | $121.00 | $18.15 | $13.75 |
| PALM BEACH COUNTY | | | | | | | | | $180.00 | | | | | | | $180.00 | $27.00 | $20.45 |
| Orkin Pest Control | | | | | | | | | $353.00 | | | | | | | $353.00 | $52.95 | $40.11 |
| Orkin , 875- N Houston Comm | | | | | | | | | $354.00 | | | | | | | $354.00 | $53.10 | $40.23 |
| ORKIN | | | | | | | | | $545.00 | | | | | | | $545.00 | $81.75 | $61.93 |
| ORACLE ELEVATOR COMPANY | | | | | | | | | $700.00 | | | | | | | $700.00 | $105.00 | $79.55 |
| OPTUS INC | | | | | | | | | $770.00 | | | | | | | $770.00 | $115.50 | $87.50 |
| Optimum | | | | | | | | | $1,390.00 | | | | | | | $1,390.00 | $208.50 | $157.95 |
| Oprandy's Fire & Safety Equipment | | | | | | | | | $44.00 | | | | | | | $44.00 | $6.60 | $5.00 |
| Opentext | 19 | 3/2/22 | | | | $3,164.50 | | | $4,481.00 | | | | | | | $4,481.00 | $672.15 | $509.20 |
| ONE TIME VENDOR_Customer refund_ C.ICHIK | | | | | | | | | $876.00 | | | | | | | $876.00 | $131.40 | $99.55 |
| One Image Protection INC | | | | | | | | | $1,098.00 | | | | | | | $1,098.00 | $164.70 | $124.77 |
| OCTAVIO PARRA | | | | | | | | | $165.00 | | | | | | | $165.00 | $24.75 | $18.75 |
| NVEnergy | | | | | | | | | $251.00 | | | | | | | $251.00 | $37.65 | $28.52 |
| Nestle Waters  North America | | | | | | | | | $275.00 | | | | | | | $275.00 | $41.25 | $31.25 |
| Mutual Security Services, Inc | | | | | | | | | $500.00 | | | | | | | $500.00 | $75.00 | $56.82 |
| MUSE MANAGEMENT, INC | | | | | | | | | $31,690.00 | | | | | | | $31,690.00 | $4,753.50 | $3,601.13 |
| MR HANDYMAN OF CALIFORNIA | | | | | | | | | $1,035.00 | | | | | | | $1,035.00 | $155.25 | $117.61 |
| Mood Media | | | | | | | | | $4,899.00 | | | | | | | $4,899.00 | $734.85 | $556.70 |

Escada Plan Ex.3
May 2, 2022

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout - "A" | Proposed Unsecured Payout - "B" |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Monika Arden | | | | | | | | | $2,421.00 | | | | | | | $2,421.00 | $363.15 | $275.11 |
| Modern Luxury | | | | | | | | | $467.00 | | | | | | | $467.00 | $70.05 | $53.07 |
| MILLENIUM SIGNS & DISPLAY, INC. | | | | | | | | | $1,456.00 | | | | | | | $1,456.00 | $218.40 | $165.45 |
| MI9 Retail - Raymark ULC | | | | | | | | | $12,227.00 | | | | | | | $12,227.00 | $1,834.05 | $1,389.43 |
| METROPOLITAN TELECOMM. | | | | | | | | | $65,087.00 | | | | | | | $65,087.00 | $9,763.05 | $7,396.23 |
| Melanie Theodoridis | | | | | | | | | $212.00 | | | | | | | $212.00 | $31.80 | $24.09 |
| Master Touch Cleaners, Inc. | | | | | | | | | $990.00 | | | | | | | $990.00 | $148.50 | $112.50 |
| Master Mechanical Services, Inc | | | | | | | | | $361.00 | | | | | | | $361.00 | $54.15 | $41.02 |
| MARY TANABE | | | | | | | | | $300.00 | | | | | | | $300.00 | $45.00 | $34.09 |
| Mark-Alan Harmon | | | | | | | | | $70.00 | | | | | | | $70.00 | $10.50 | $7.95 |
| Margaret's Cleaners | 23 | 3/16/22 | | | | $4,433.73 | | | $2,609.00 | | | | | | | $2,609.00 | $391.35 | $296.48 |
| Mangia 57th Inc. | | | | | | | | | $341.00 | | | | | | | $341.00 | $51.15 | $38.75 |
| Madeline Ungar | | | | | | | | | $653.00 | | | | | | | $653.00 | $97.95 | $74.20 |
| Lea Journo Salon | | | | | | | | | $430.00 | | | | | | | $430.00 | $64.50 | $48.86 |
| Las Vegas North Outlets, LLC | 5 | 1/28/22 | $3,387.18 | | | $750,769.87 | | | $266,918.00 | CUD | | | $3,387.18 | | | $750,769.87 | $112,615.48 | $85,314.50 |
| LA MODELS | | | | | | | | | $227.00 | | | | | | | $227.00 | $34.05 | $25.80 |
| KUCKER MARINO WINIARSKY & BITTENS, | | | | | | | | | $3,975.00 | | | | | | | $3,975.00 | $596.25 | $451.70 |
| Kim Murphy | | | | | | | | | $226.00 | | | | | | | $226.00 | $33.90 | $25.68 |
| Keter Environmental Services, Inc | | | | | | | | | $1,609.00 | | | | | | | $1,609.00 | $241.35 | $182.84 |
| Joyce A. Pence | | | | | | | | | $174.00 | | | | | | | $174.00 | $26.10 | $19.77 |
| Johnson Controls Security Solutions | 36 | 3/29/22 | | | | $59,041.10 | | | $55,742.00 | | | | | | | $55,742.00 | $8,361.30 | $6,334.30 |
| JOHNSON CONTROLS FIRE PROTECTION LP | 35 | 3/29/22 | | | | $569.46 | | | $514.00 | | | | | | | $514.00 | $77.10 | $58.41 |
| Jive Communications, Inc | | | | | | | | | $1,404.00 | | | | | | | $1,404.00 | $210.60 | $159.54 |
| Jana Cori Coke | | | | | | | | | $387.00 | | | | | | | $387.00 | $58.05 | $43.98 |
| J.D Coins Inc. | | | | | | | | | $761.00 | | | | | | | $761.00 | $114.15 | $86.48 |
| INTERNATIONAL SILKS & WOOLENS | | | | | | | | | $167.00 | | | | | | | $167.00 | $25.05 | $18.98 |
| Inter Trade Systems Inc | | | | | | | | | $321.00 | | | | | | | $321.00 | $48.15 | $36.48 |
| INGENIEURB RO RUCKPAUL & | | | | | | | | | $389.00 | | | | | | | $389.00 | $58.35 | $44.20 |
| IMPERIAL NETWORK GROUP INC | | | | | | | | | $1,287.00 | | | | | | | $1,287.00 | $193.05 | $146.25 |
| IMPERIAL COMMERCIAL CLEANING | | | | | | | | | $708.00 | | | | | | | $708.00 | $106.20 | $80.45 |
| HWS Informationssysteme GmbH | | | | | | | | | $4,531.00 | | | | | | | $4,531.00 | $679.65 | $514.88 |
| Hospitality Services, Inc | | | | | | | | | $3,831.00 | | | | | | | $3,831.00 | $574.65 | $435.34 |
| Hedy Bentel | | | | | | | | | $1,055.00 | | | | | | | $1,055.00 | $158.25 | $119.89 |
| HAWAII MEDICAL SERVICE ASSOCIATION | | | | | | | | | $4,575.00 | | | | | | | $4,575.00 | $686.25 | $519.88 |
| HAIG SERVICE CORPORATION | | | | | | | | | $310.00 | | | | | | | $310.00 | $46.50 | $35.23 |
| Green Peak Building Services, Inc | | | | | | | | | $2,302.00 | | | | | | | $2,302.00 | $345.30 | $261.59 |
| GRANT MCCARTHY GROUP LLC | | | | | | | | | $11,701.00 | | | | | | | $11,701.00 | $1,755.15 | $1,329.66 |
| Granite Telecommunications | | | | | | | | | $2,473.00 | | | | | | | $2,473.00 | $370.95 | $281.02 |
| Global Facility Management & Constr | | | | | | | | | $25,000.00 | | | | | | | $25,000.00 | $3,750.00 | $2,840.90 |
| General Information Solutions, LLC | | | | | | | | | $22.00 | | | | | | | $22.00 | $3.30 | $2.50 |
| Fusion Cloud Company, LLC | | | | | | | | | $100.00 | | | | | | | $100.00 | $15.00 | $11.36 |
| Funaro & co., P.C. | | | | | | | | | $38,565.00 | CD | | | | | | $0.00 | $0.00 | $0.00 |
| Frontier Communications | | | | | | | | | $820.00 | | | | | | | $820.00 | $123.00 | $93.18 |
| Freecorn Luxury Art Book, LLC | | | | | | | | | $6,955.00 | | | | | | | $6,955.00 | $1,043.25 | $790.34 |
| FRACHT FWO,INC | | | | | | | | | $615.00 | | | | | | | $615.00 | $92.25 | $69.89 |
| FLORIDA POWER & LIGHT | 1 | 1/21/22 | | | | $2,887.17 | | | $1,005.00 | | | | | | | $2,887.17 | $433.08 | $328.09 |
| Florida Pest Control | | | | | | | | | $502.00 | | | | | | | $502.00 | $75.30 | $57.05 |
| FASHION LOGISTICS, INC. | | | | | | | | | $15,867.00 | | | | | | | $15,867.00 | $2,380.05 | $1,803.06 |
| FANDL, LLC | | | | | | | | | $1,066.00 | | | | | | | $1,066.00 | $159.90 | $121.14 |
| Express Parking, Management, Inc. | | | | | | | | | $599.00 | | | | | | | $599.00 | $89.85 | $68.07 |
| EXPRESS FIRE PROTECTION | | | | | | | | | $240.00 | | | | | | | $240.00 | $36.00 | $27.27 |
| Elaine Cohen | | | | | | | | | $877.00 | | | | | | | $877.00 | $131.55 | $99.66 |
| El Paseo Collection North | | | | | | | | | $6,554.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| Eddie Love (Petty Cash) | | | | | | | | | $60.00 | | | | | | | $60.00 | $9.00 | $6.82 |
| Dutch Express, LLC | | | | | | | | | $25.00 | | | | | | | $25.00 | $3.75 | $2.84 |
| Direct Construction Company Limited | 18 | 3/2/22 | | | | $3,600.92 | | | $1,651.00 | | | | | | | $3,600.92 | $540.14 | $409.19 |
| Cushman and Wakefield | | | | | | | | | $43,151.00 | CD | | | | | | $43,151.00 | $6,472.65 | $4,903.51 |
| CT CORPORATION SYSTEM | | | | | | | | | $1,952.00 | | | | | | | $1,952.00 | $292.80 | $221.82 |
| Crown Castle Fiber LLC | | | | | | | | | $15,910.00 | | | | | | | $15,910.00 | $2,386.50 | $1,807.95 |
| Country Club Cleaners | | | | | | | | | $380.00 | | | | | | | $380.00 | $57.00 | $43.18 |
| CONDE NAST PUBLICATIONS | | | | | | | | | $23,300.00 | | | | | | | $23,300.00 | $3,495.00 | $2,647.72 |
| Concur Technologies Inc | | | | | | | | | $2,430.00 | | | | | | | $2,430.00 | $364.50 | $276.14 |
| Computzo, Inc. | | | | | | | | | $1,411.00 | | | | | | | $1,411.00 | $211.65 | $160.34 |
| Computzo GmbH | | | | | | | | | $21.00 | | | | | | | $21.00 | $3.15 | $2.39 |
| ComplyRight, Inc. dba HR Direct | | | | | | | | | $617.00 | | | | | | | $617.00 | $92.55 | $70.11 |
| COMMONWEALTH EDISON | | | | | | | | | $1,776.00 | | | | | | | $1,776.00 | $266.40 | $201.82 |
| Comcast Business | | | | | | | | | $110.00 | | | | | | | $110.00 | $16.50 | $12.50 |
| Comcast Business | | | | | | | | | $125.00 | | | | | | | $125.00 | $18.75 | $14.20 |
| CMS MECHANICAL SERVICE CO. | | | | | | | | | $1,414.00 | | | | | | | $1,414.00 | $212.10 | $160.68 |
| CLEANER'S SUPPLYS INC | | | | | | | | | $81.00 | | | | | | | $81.00 | $12.15 | $9.20 |
| CITY OF WEST PALM BEACH | | | | | | | | | $388.00 | | | | | | | $388.00 | $58.20 | $44.09 |
| City of Beverly Hills | | | | | | | | | $275.00 | | | | | | | $275.00 | $41.25 | $31.25 |
| CITY EXPEDITOR, INC. | | | | | | | | | $755.00 | | | | | | | $755.00 | $113.25 | $85.80 |

Escada Plan Ex.3
May 2, 2022

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout - "A" | Proposed Unsecured Payout - "B" |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CIT | | | | | | | | | $14,896.00 | | | | | | | $14,896.00 | $2,234.40 | $1,692.72 |
| Cision US, Inc | | | | | | | | | $6,694.00 | | | | | | | $6,694.00 | $1,004.10 | $760.68 |
| Cisco Systems Capital Corporation | | | | | | | | | $31,960.00 | | | | | | | $31,960.00 | $4,794.00 | $3,631.81 |
| Chicago Oak Street Partners, LLC | 20 | 3/12/22 | | | | $837,026.18 | | | $554,764.00 | CUD | | | | | | $837,026.18 | $125,553.93 | $95,116.33 |
| CHETRIT 1412 LLC | 16 | 2/21/22 | | | | $250,000.00 | | | $250,000.00 | CU | | | | | | $250,000.00 | $37,500.00 | $28,409.01 |
| CenturyLink | 8 | 2/3/22 | | | | $700.25 | | | $689.00 | | | | | | | $700.25 | $105.04 | $79.57 |
| Carlton Technologies, Inc | | | | | | | | | $269.00 | | | | | | | $269.00 | $40.35 | $30.57 |
| BUREAU OF ELEVATOR SAFETY | | | | | | | | | $274.00 | | | | | | | $274.00 | $41.10 | $31.14 |
| Borden Ladner Gervais, LLP | | | | | | | | | $1,480.00 | | | | | | | $1,480.00 | $222.00 | $168.18 |
| BOGUSLAW SANKOWSKI | | | | | | | | | $941.00 | | | | | | | $941.00 | $141.15 | $106.93 |
| Blue Print AG | | | | | | | | | $598.00 | | | | | | | $598.00 | $89.70 | $67.95 |
| Bal Harbour Shops LLLP | | | | | | | | | $81,623.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| AVALARA INC | | | | | | | | | $4,649.00 | | | | | | | $4,649.00 | $697.35 | $528.29 |
| Atlantic Broadband | | | | | | | | | $78.00 | | | | | | | $78.00 | $11.70 | $8.86 |
| Atlantic Broadband | | | | | | | | | $733.00 | | | | | | | $733.00 | $109.95 | $83.30 |
| ASA Cleaning Services Corp | | | | | | | | | $22,255.00 | | | | | | | $22,255.00 | $3,338.25 | $2,528.97 |
| Archive Systems, Inc. | | | | | | | | | $11,515.00 | | | | | | | $11,515.00 | $1,727.25 | $1,308.52 |
| Angel Tailor | | | | | | | | | $152.00 | | | | | | | $152.00 | $22.80 | $17.27 |
| AMERICAN EXPRESS | 13 | | | | | $21,674.03 | | | $59,401.00 | D | | | | | | $21,674.03 | $3,251.10 | $2,462.95 |
| American Commercial Equities Three, | | | | | | | | | $29,341.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| Amanda Huang | | | | | | | | | $55.00 | | | | | | | $55.00 | $8.25 | $6.25 |
| ALPINE BUSINESS SYSTEMS | | | | | | | | | $10,988.00 | | | | | | | $10,988.00 | $1,648.20 | $1,248.63 |
| Alliant Insurance Services, Inc. | | | | | | | | | $348,375.00 | | | | | | | $348,375.00 | $52,256.25 | $39,587.95 |
| Alliance Pro Services LLC | | | | | | | | | $278.00 | | | | | | | $278.00 | $41.70 | $31.59 |
| ALA MONA CENTER ASSOCIATION | | | | | | | | | $1,198.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| Ala Moana Anchor Acquisition, LLC | 14 | 2/18/22 | $7,220.63 | | | $1,382,622.26 | | | $264,681.00 | CUD | | | $7,220.63 | | | $1,382,622.26 | $207,393.34 | $157,115.69 |
| ABALON EXTERMINATING CO. INC. | | | | | | | | | $450.00 | | | | | | | $450.00 | $67.50 | $51.14 |
| [Beverly Hills Wilshire Hotel] | 15 | 2/18/22 | | | | $2,441,373.90 | | | $2,546,815.33 | CUD | | | | | | $2,441,373.90 | $366,206.09 | $277,428.02 |
| 717 GFC LLC | 24 | 3/23/22 | | | | $5,108,857.92 | | | $5,055,143.00 | CUD | | | | | | $5,108,857.92 | $766,328.69 | $580,550.29 |
| 693 Fifth Owner LLC | | | | | | | | | $1,641.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| Harris County Water Control | 6 | 1/31/22 | | $1,546.80 | | | | | | | | | | $1,546.80 | | | $0.00 | $0.00 |
| Harris County Municipal Utility District | 7 | 1/31/22 | | $8,204.13 | | | | | | | | | | $8,204.13 | | | $0.00 | $0.00 |
| The Retail Property Trust | 10 | 3/10/22 | | | | $440,000.00 | | | | | | | | | | $440,000.00 | $66,000.00 | $49,999.85 |
| Sawgrass Mills Phase IV LLC | 11 | 2/10/22 | $4,205.33 | | | $543,937.97 | | | | | | | $4,205.33 | | | $543,937.97 | $81,590.70 | $61,810.95 |
| Premium Outlet Partners LP | 12 | 2/10/22 | $5,326.37 | | | $417,439.45 | | | | | | | $5,326.37 | | | $417,439.45 | $62,615.92 | $47,436.16 |
| Mfi Retail – Raymark ULC | 21A | 3/15/22 | | | | $2,677.50 | | | | | | | | | | $2,677.50 | $401.63 | $304.26 |
| Fedex Corporate Services, Inc | 22 | 3/16/22 | | | | $266.61 | | | | | | | | | | $266.61 | $39.99 | $30.30 |
| Great Northern Insurance | 25 | 3/24/22 | | | | $211,141.65 | | | | | | | | | | $211,141.65 | $31,671.25 | $23,993.30 |
| Chubb Insurance Company | 26 | 3/24/22 | | | | $20,576.73 | | | | | | | | | | $20,576.73 | $3,086.51 | $2,338.26 |
| Vigilant Insurance Company | 27 | 3/24/22 | | | | $67,260.00 | | | | | | | | | | $67,260.00 | $10,089.00 | $7,643.16 |
| Federal Insurance Company | 28 | 3/24/22 | | | | $1,788.23 | | | | | | | | | | $1,788.23 | $268.23 | $203.21 |
| Stephanie Buono | 29 | 3/24/22 | | $84,533.42 | | $40,411.80 | | | | | | | | | | $40,411.80 | $6,061.77 | $4,592.24 |
| the Neiman Marcus Group | 30 | 3/24/22 | | | | $230,085.72 | | | | | | | | | | $230,085.72 | $34,512.86 | $26,146.03 |
| Manhattan Telecommunications Corporation/MetTel | 31 | 3/25/22 | | | | $86,806.03 | | | | | | | | | | $86,806.03 | $13,020.90 | $9,864.29 |
| United Parcel Service | 33 | 3/28/22 | | | | $235,709.96 | | | | | | | | | | $235,709.96 | $35,356.49 | $26,785.14 |
| Suzanne Humbert | 37 | 3/29/22 | | | | $300,960.00 | | | $0.00 | CUD | | | | | | $300,960.00 | $45,144.00 | $34,199.90 |
| Rebecca Castillo | | | | | | | | | $0.00 | CUD | | | | | | $0.00 | $0.00 | $0.00 |
| NYC Department of Finance | | | | | | | $349,209.25 | | $68,819.41 | C | | | | | $349,209.25 | $68,819.41 | $10,322.91 | $7,820.36 |
| Ann Marie Di Ionna | | | | | | | | | $99,915.19 | | | | | | | $99,915.19 | $14,987.28 | $11,353.96 |
| Escada Shared Services Ltd. | | | | | | | | | $32,000.00 | | | | | | | $0.00 | $0.00 | $0.00 |
| Dunnwright Services Inc. | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 | $0.00 |
| Site Crew Inc. | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 | $0.00 |
| Worth-Pondfield LLC | 34A | 3/28/22 | $43,666.35 | | | $1,462,737.72 | | | $1,343,149.00 | CUD | | | $43,666.35 | | | $1,462,737.72 | $219,410.66 | $166,219.70 |
| IDK Cooling Corp. | 38 | 4/14/22 | | | | $2,041.41 | | | | Late | | | | | | $0.00 | $0.00 | $0.00 |
| | | | | | | | | | | | | | | | | | | |
| TOTAL | | | | | | $15,933,544.14 | | | $13,818,133.93 | | | | $471,505.47 | $21,815,446.71 | $438,046.72 | $18,480,055.54 | $2,772,008.33 | $2,100,000.00 |
| | | | | | | | | | | | | | | | | | 15% recover | 11.36% recovery |

# Exhibit 4

**EXHIBIT 4**

The Settlement Agreement between the Debtor and its estate, on the one hand, and Escada Sourcing and Production LLC ("ESP") on the other hand is under discussion and subject to final documentation.  The key terms of the Settlement Agreement are set forth in the Plan, and include:

On the Effective Date, Escada Sourcing and Production LLC ("Exit Financier") will contribute exit financing in the amount of $150,000 subject to the terms of the Settlement Agreement. The Settlement Agreement shall provide, in part, that the Exit Financier will (i) provide a five-year, zero-interest, $150,000 loan to the Debtor, (ii) agree to subordinate its claim for post-petition priority consignment fees, (iii) subordinate its claims under Classes 3 and 4 to those of Class 5 to the extent provided for in the Debtor's Plan and (iv) vote in favor of the Debtor's Plan, in return for which the Debtor and the Estate shall irrevocably grant the Exit Financier a complete release of claims, including, without limitation, for any preference or fraudulent transfers or avoidance action claims.

If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtor's chapter 11 estate that has not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case, and, the Bond Lien shall remain in place, and the Settlement shall remain in place.

The foregoing is without prejudice to revision during ongoing settlement discussions.

**Exhibit 5**

**EXHIBIT 5**

The following pages annexed to this Exhibit 5 are from the Debtor's Statement of Financial Affairs ## 3 and 4 listing potential preference actions held by the Debtor's estate.

Because the lien of Escada Sourcing and Producing LLC ("ESP") was filed within the one-year period prior to the Petition Date, there is a potential preference lien avoidance action against ESP.  However, the Debtor is informed and believes that ESP has valid defenses to portions of its claim for ordinary course, new value, and/or contemporaneous exchange of value for certain portions of its claim and lien.

The Debtor does not believe that the estate has any actual or fraudulent transfer avoidance claims.

The Debtor may have claims against Lexon Surety related to a prepetition bond, which is under investigation.

**Exhibit 3 to SOFA**

| Creditor | Date | Total Amount | Reason of payment | Address |
|---|---|---|---|---|
| CHAMBERLAIN, HRDLICKA, WHITE, | 1/13/2022 | 22,762.50 | Professional Legal Services | 191 Peachtree Street, N.E., Forty Sixth Floor, Atlanta, GA, 30303 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 11/10/2021 | 23,092.67 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 11/18/2021 | 15,101.40 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 12/3/2021 | 15,101.40 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 1/13/2022 | 27,558.36 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| SCOTTSDALE FASHION SQUARE, LLC | 12/3/2021 | 728.44 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SCOTTSDALE FASHION SQUARE, LLC | 1/7/2022 | 32,563.59 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SHEILA FERRIS-BEATON | 10/29/2021 | 248.02 | Expense Reimbursement, Travel, Store Expenses | S. Grand Central Parkway, #3419, 555, Las Vegas, NV, 89106 |
| 693 Fifth Owner LLC | 12/3/2021 | 58,162.02 | Store Rent | PO Box 780522, Philadelphia, PA, 19178-0522 |
| 693 Fifth Owner LLC | 12/16/2021 | 62,513.84 | Store Rent | PO Box 780522, Philadelphia, PA, 19178-0522 |
| Account Service Fees / JP MORGAN | 11/2/2021 | 3.95 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218 2051 |
| Account Service Fees / JP MORGAN | 11/15/2021 | 4,070.79 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218 2051 |
| Account Service Fees / JP MORGAN | 11/26/2021 | 7.90 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218 2051 |
| Account Service Fees / JP MORGAN | 12/15/2021 | 4,383.29 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218 2051 |
| Account Service Fees / JP MORGAN | 1/3/2022 | 10,690.73 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218 2051 |
| Account Service Fees / JP MORGAN | 1/10/2022 | 7.90 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218 2051 |
| Account Service Fees / JP MORGAN | 1/18/2022 | 4,356.09 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218 2051 |
| ADP , LLC | 11/29/2021 | 290.34 | Payroll Fees | 1851 N Resler Drive, MS 100, El Paso, TX, 79912 |
| ADP , LLC | 12/16/2021 | 290.34 | Payroll Fees | 1851 N Resler Drive, MS 100, El Paso, TX, 79912 |
| ADP , LLC | 1/14/2022 | 1,403.70 | Payroll Fees | 1851 N Resler Drive, MS 100, El Paso, TX, 79912 |
| Ala Moana Anchor Acquisition, LLC | 11/3/2021 | 25,000.00 | Store Rent | PO Box 860375, Minneapolis, MN, 55486-0074 |
| Ala Moana Anchor Acquisition, LLC | 12/3/2021 | 25,000.00 | Store Rent | PO Box 860375, Minneapolis, MN, 55486-0074 |
| Alliance Pro Services, LLC | 11/1/2021 | 1,893.93 | Plumbing & Other Store Maintenance | 239 Sneech Pond Rd, Cumberland, RI, 02864 |
| American Commercial Equities Three, LLC | 11/2/2021 | 6,690.00 | Store Rent | 22917 Pacific Coast Highway, Malibu, CA, 90265 |
| American Commercial Equities Three, LLC | 11/26/2021 | 31,690.00 | Store Rent | 22917 Pacific Coast Highway, Malibu, CA, 90265 |
| American Commercial Equities Three, LLC | 1/10/2022 | 31,690.00 | Store Rent | 22917 Pacific Coast Highway, Malibu, CA, 90265 |
| AMERICAN EXPRESS | 10/28/2021 | 13,697.06 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/1/2021 | 0.65 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/4/2021 | 8,832.19 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/5/2021 | 12,001.16 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/10/2021 | 250.00 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 12/1/2021 | 0.65 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 12/3/2021 | 1,750.94 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 12/6/2021 | 12,148.07 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 1/3/2022 | 17,269.98 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 1/5/2022 | 9,869.51 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 1/14/2022 | 1,452.85 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| Angel Tailor | 12/3/2021 | 57.60 | Tailoring Services | 1311 Kapiolani Blvd Suite 209, Honolulu, HI, 96814 |
| AT&T | 11/8/2021 | 476.92 | Telephone & Internet cost | AT&T  P.O. Box 5019  Carol Stream, IL 60197-5019 |
| AT&T | 12/9/2021 | 476.92 | Telephone & Internet cost | AT&T  P.O. Box 5019  Carol Stream, IL 60197-5019 |
| AT&T | 1/6/2022 | 476.92 | Telephone & Internet cost | AT&T  P.O. Box 5019  Carol Stream, IL 60197-5019 |
| ATLANTIC BROADBAND | 10/25/2021 | 151.90 | Telephone & Internet cost | PO Box 371801, Pittsburgh, PA, 15250-7801 |
| AVALARA INC | 11/4/2021 | 21,000.00 | License/Consulting on Automated Tax Platform | DEPT CH 16781, PALATINE, IL, 60055-6781 |
| AVALARA INC | 12/14/2021 | 4,899.38 | Avalara CertCapture Service & Setup | DEPT CH 16781, PALATINE, IL, 60055-6781 |
| AVALARA INC | 1/18/2022 | 179.09 | Avalara AvaTax Platform Charge -- Proration | DEPT CH 16781, PALATINE, IL, 60055-6781 |
| Blanca Lozano | 11/3/2021 | 100.00 | Expense Reimbursement, Travel, Store Expenses | 3500 Mystic Pointe Dr, apt 3107, AVENTURA, FL, 33180 |
| CENTRAL HUDSON GAS & ELECTRIC | 11/8/2021 | 94.22 | Utilities | 284 SOUTH AVENUE POUGHKEEPSIE NY 12601-4839 |
| CENTRAL HUDSON GAS & ELECTRIC | 12/9/2021 | 204.94 | Utilities | 284 SOUTH AVENUE POUGHKEEPSIE NY 12601-4839 |
| CENTRAL HUDSON GAS & ELECTRIC | 12/30/2021 | 124.14 | Utilities | 284 SOUTH AVENUE POUGHKEEPSIE NY 12601-4839 |
| Cerasia & Del Rey-Cone LLP | 11/4/2021 | 6,635.00 | Legal Expenses | 3 Honeysuckle Ave, West Orange, NJ, 07052 |
| CERASIA LAW LLC | 1/13/2022 | 687.50 | Legal Expenses | 3 Honeysuckle Ave. West Orange, NJ, 07052 |
| CERTEGY CHECK SERVICES | 12/21/2021 | 30.00 | Check Services /Payment solutions | PO Box 4535, CAROL STREAM, IL, 60197-4535 |
| City of Beverly Hills | 1/4/2022 | 278.00 | Engine Inspection / Fire Department | PO Box 548, Roseville, CA, 95678-0548 |
| CNA INSURANCE | 11/15/2021 | 25,192.60 | Insurance Policy Payments | PO Box 74007619, CHICAGO, IL, 60674-7619 |
| CNA INSURANCE | 1/18/2022 | 40,151.00 | Insurance Policy Payments | PO Box 74007619, CHICAGO, IL, 60674-7619 |

| | | | | |
|---|---|---|---|---|
| Comcast Business | 10/18/2021 | 121.60 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 71211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 11/10/2021 | 125.01 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 71211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 11/18/2021 | 121.40 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 71211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 12/10/2021 | 125.01 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 71211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 12/20/2021 | 121.40 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 71211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 1/10/2022 | 125.01 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 71211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 1/18/2022 | 121.52 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 71211 CHARLOTTE NC 28272-1211 |
| COMMONWEALTH EDISON | 10/19/2021 | 700.05 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| COMMONWEALTH EDISON | 11/17/2021 | 621.42 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| COMMONWEALTH EDISON | 12/20/2021 | 1,519.76 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| COMMONWEALTH EDISON | 1/7/2022 | 784.59 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| ComplyRight, Inc. dba HR Direct | 12/2/2021 | 636.48 | Poster Service Renewal | PO Box 669390, Pompano Beach, FL, 33066 |
| ComplyRight, Inc. dba HR Direct | 1/4/2022 | 181.88 | Poster Service Renewal | PO Box 669390, Pompano Beach, FL, 33066 |
| CON EDISON | 10/18/2021 | 32.76 | Utilities | PO Box 1702, NEW YORK, 10116-1702 |
| CON EDISON | 11/16/2021 | 33.81 | Utilities | PO Box 1702, NEW YORK, 10116-1702 |
| CON EDISON | 12/17/2021 | 34.84 | Utilities | PO Box 1702, NEW YORK, 10116-1702 |
| Credit Card Fees / FISERV | 10/18/2021 | 1,895.33 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/19/2021 | 0.97 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/20/2021 | 1.20 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/21/2021 | 1,630.43 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/22/2021 | 306.56 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/25/2021 | 3,184.31 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/26/2021 | 1.01 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/27/2021 | 1.20 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/28/2021 | 1,699.37 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/29/2021 | 401.18 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/1/2021 | 2,296.29 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/2/2021 | 0.98 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/3/2021 | 2,042.70 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/4/2021 | 1,373.86 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/5/2021 | 418.58 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/8/2021 | 1,602.33 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/9/2021 | 0.87 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/10/2021 | 1.03 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/12/2021 | 1,934.12 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/15/2021 | 1,522.55 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/16/2021 | 1.06 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/17/2021 | 1.96 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/18/2021 | 2,298.82 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/19/2021 | 517.45 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/22/2021 | 1,530.09 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/23/2021 | 1.80 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/24/2021 | 1.44 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/26/2021 | 2,442.78 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/29/2021 | 1,724.30 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/30/2021 | 3.84 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 12/1/2021 | 2.33 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |

| Payee | Description | Date | Amount | Address |
|---|---|---|---|---|
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/7/2021 | 3,349.75 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/9/2021 | 695.17 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/6/2021 | 1,634.06 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/8/2021 | 2.76 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/9/2021 | 986.41 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/10/2021 | 1,151.01 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/14/2021 | 0.99 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/15/2021 | 1.28 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/16/2021 | 1,213.44 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/17/2021 | 344.20 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/20/2021 | 3,073.11 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/21/2021 | 0.51 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/22/2021 | 0.55 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/23/2021 | 1,884.32 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/24/2021 | 5,026.25 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/27/2021 | 2,161.85 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/28/2021 | 533.99 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/30/2021 | 1.62 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/31/2021 | 1.75 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/3/2022 | 3,681.94 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/4/2022 | 45.32 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/5/2022 | 1.25 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/6/2022 | 1.47 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/7/2022 | 4,787.34 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/10/2022 | 1,212.13 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/11/2022 | 0.66 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/12/2022 | 0.93 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/13/2022 | 3,077.40 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/14/2022 | 215.12 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/18/2022 | 2,573.88 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Cynthia White | Expense Reimbursement, Travel, Store Expenses | 10/29/2021 | 191.64 | 7014 E. Camelback Road, Suite 1128, Scottsdale, AZ, 85251 |
| Cynthia White | Expense Reimbursement, Travel, Store Expenses | 1/4/2022 | 66.29 | 7014 E. Camelback Road, Suite 1128, Scottsdale, AZ, 85251 |
| DEPT TAX FEE (CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION) | CA sales tax audit settlement | 11/24/2021 | 38,699.79 | PO Box 942879, SACRAMENTO CA 94279-8062 |
| DILLARD STORE SERVICES INC | Customer Refund | 12/10/2021 | 2,750.08 | P.O. Box 8005, Little Rock, AR, 72203 |
| Dutch Express, LLC | | 11/5/2021 | 159.73 | 34 West 15th Street, 3rd Floor, New York, Ny, 10013 |
| El Paseo Collection North | Store Rent | 11/3/2021 | 5,000.00 | 73-061 El Paseo, Suite 200, Palm Desert, CA, 92260 |
| El Paseo Collection North | Store Rent | 12/3/2021 | 11,694.37 | 73-061 El Paseo, Suite 200, Palm Desert, CA, 92260 |
| Erica Nieves | Expense Reimbursement, Travel, Store Expenses | 10/28/2021 | 293.86 | 18181 NE 31 ST, CT#305, AVENTURA, FL, 33160 |
| Erica Nieves | Expense Reimbursement, Travel, Store Expenses | 12/16/2021 | 510.72 | 18181 NE 31 ST, CT#305, AVENTURA, FL, 33160 |
| Erica Nieves | Expense Reimbursement, Travel, Store Expenses | 1/4/2022 | 935.35 | 18181 NE 31 ST, CT#305, AVENTURA, FL, 33160 |
| ESCADA DESERT HILLS PREMIUM OUTLETS | Store Rent | 11/3/2021 | 58,162.02 | PO Box 822873, Philadelphia, PA, 19182-2873 |
| ESCADA DESERT HILLS PREMIUM OUTLETS | Store Rent | 12/3/2021 | 58,805.22 | PO Box 822873, Philadelphia, PA, 19182-2873 |
| ESCADA LAS VEGAS NORTH OUTLETS, LLC | Store Rent | 11/3/2021 | 33,647.89 | 875 South Grand Central Parkway, #1690, Las Vegas, NV, 89106 |
| ESCADA LAS VEGAS NORTH OUTLETS, LLC | Store Rent | 12/3/2021 | 33,647.89 | 875 South Grand Central Parkway, #1690, Las Vegas, NV, 89106 |
| ESCADA SAWGRASS MILLS PHASE IV, LLC | Store Rent | 11/3/2021 | 42,170.34 | PO Box 403539, ATLANTA, GA, 30384 |
| ESCADA SAWGRASS MILLS PHASE IV, LLC | Store Rent | 12/3/2021 | 42,170.34 | PO Box 403539, ATLANTA, GA, 30384 |
| ESCADA WOODBURY COMMON PREMIUM OUTLETS | Store Rent | 11/3/2021 | 53,508.12 | PO Box 822884, Philadelphia, PA, 19182-2884 |
| ESCADA WOODBURY COMMON PREMIUM OUTLETS | Store Rent | 12/3/2021 | 53,508.12 | PO Box 822884, Philadelphia, PA, 19182-2884 |
| EXPRESS FIRE PROTECTION | Fire Inspection | 12/3/2021 | 251.45 | PO Box 670041, CORAL SPRINGS, FL, 33067 |
| Express Parking Management, Inc. | Employee Parking Fees | 10/29/2021 | 2,305.08 | 1001 W. JASMINE DRIVE, SUITE N, LAKE PARK, FL, 33403-2119 |
| FANDL, LLC | Business Licensing, PPT, CRT Other Taxes/Fees | 10/28/2021 | 5,000.00 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FANDL, LLC | Business Licensing, PPT, CRT Other Taxes/Fees | 11/4/2021 | 13,040.32 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FANDL, LLC | Business Licensing, PPT, CRT Other Taxes/Fees | 1/13/2022 | 29,011.47 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FANDL, LLC | Business Licensing, PPT, CRT Other Taxes/Fees | 1/14/2022 | 8,147.91 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FASHION LOGISTICS INC | Storage/Logistic Services | 10/29/2021 | 14,175.11 | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |
| FASHION LOGISTICS INC | Storage/Logistic Services | 12/2/2021 | 15,909.81 | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |

| Name | Date | Amount | Description | Address |
|---|---|---|---|---|
| FASHION LOGISTICS INC | 1/4/2022 | 7,930.38 | Storage/Logistic Services | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |
| FASHION LOGISTICS INC | 1/13/2022 | 9,262.78 | Storage/Logistic Services | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |
| FLORIDA POWER & LIGHT | 10/21/2021 | 461.35 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 10/26/2021 | 1,194.36 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 11/5/2021 | 751.34 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 11/19/2021 | 436.11 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 11/24/2021 | 1,040.15 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 12/21/2021 | 330.50 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 12/28/2021 | 955.33 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 1/5/2022 | 582.75 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FRACHT FWO,INC | 11/4/2021 | 616.98 | Duty | Broadway 50, Lynbrook NY, 11563 |
| FRACHT FWO,INC | 11/18/2021 | 616.98 | Duty | Broadway 50, Lynbrook NY, 11563 |
| Franchise TAX (State of California) | 10/18/2021 | 3,200.00 | Franchise TAX | PO BOX 942879, SACRAMENTO CA 94279-8062 |
| Franchise TAX (State of California) | 10/19/2021 | 6,400.00 | Franchise TAX | PO BOX 942879, SACRAMENTO CA 94279-8062 |
| FRONTIER COMMUNICATIONS HOLDINGS, LLC | 12/2/2021 | 828.45 | Telephone & Internet cost | P.O. Box 709, South Windsor, CT 06074-9998 or FRONTIER P.O. Box 740407 CINCINNATI OH 45274-0407 |
| General Information Solutions, LLC | 10/29/2021 | 1,067.16 | HR Services / Recruitment | PO Box 841243, Dallas, TX, 75284 |
| General Information Solutions, LLC | 1/13/2022 | 185.25 | HR Services / Recruitment | PO Box 841243, Dallas, TX, 75284 |
| GOING PLACES, LLC | 11/3/2021 | 13,500.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 11/18/2021 | 50,000.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 12/3/2021 | 13,500.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 12/31/2021 | 155.88 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 1/7/2022 | 13,500.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GRANITE TELECOMMUNICATIONS LLC | 10/29/2021 | 2,595.95 | Telecommunication | PO Box 983119, Boston, MA, 02298-3119 |
| GRANITE TELECOMMUNICATIONS LLC | 11/10/2021 | 1,619.39 | Telecommunication | PO Box 983119, Boston, MA, 02298-3119 |
| GRANITE TELECOMMUNICATIONS LLC | 1/13/2022 | 1,619.39 | Telecommunication | PO Box 983119, Boston, MA, 02298-3119 |
| GRANT MCCARTHY GROUP LLC | 12/6/2021 | 5,000.00 | Tax Consulting | 777 WESTCHESTER AVENUE, WHITE PLAINS, NY, 10604 |
| HAWAII MEDICAL SERVICE ASSOCIATION | 12/6/2021 | 7,515.56 | Medical Coverage | PO Box 29330, HONOLULU, HI, 96820-1730 |
| HAWAII MEDICAL SERVICE ASSOCIATION | 12/15/2021 | 4,099.20 | Medical Coverage | PO Box 29330, HONOLULU, HI, 96820-1730 |
| HURST & SIEBERT, INC. | 12/1/2021 | 17,596.70 | Demolition & builders services for store maintenance | 932 Calle Amanecer, Suite A, San Clemente, CA, 92673 |
| Inter Trade Systems Inc | 12/2/2021 | 341.20 | EcaTalogue- Base Usage Fees | PO Box 5581, Boston, MA, 02205-5811 |
| Inter Trade Systems Inc | 1/4/2022 | 170.60 | EcaTalogue- Base Usage Fees | PO Box 5581, Boston, MA, 02205-5811 |
| JIVE COMMUNICATIONS INC | 12/2/2021 | 1,411.03 | Telephone & Internet cost | PO BOX 412252, BOSTON, MA, 02241 - 2252 |
| JIVE COMMUNICATIONS INC | 1/4/2022 | 1,411.12 | Telephone & Internet cost | PO BOX 412252, BOSTON, MA, 02241 - 2252 |
| JIVE COMMUNICATIONS INC | 1/13/2022 | 1,399.82 | Telephone & Internet cost | PO BOX 412252, BOSTON, MA, 02241 - 2252 |
| Joseph R. Saucier | 11/18/2021 | 203.50 | Personal Shopper | 68 King Street, Boston, MA, 02122 |
| JOYCE, LLC | 11/5/2021 | 1,264.00 | Professional Legal Services | 7209 Lancaster Pike, Hockessin, DE, 19707 |
| KETER ENVIRONMENTAL SERVICES, INC. | 1/4/2022 | 2,098.50 | Waste Management | PO Box 417468, Boston, MA, 02241-7468 |
| KETER ENVIRONMENTAL SERVICES, INC. | 1/7/2022 | 2,098.50 | Waste Management | PO Box 417468, Boston, MA, 02241-7468 |
| KEVIN WALSH | 1/14/2022 | 210.54 | Expense Reimbursement, Travel, Store Expenses | 693 Fifth Avenue, Floor 6, NY, 10022 |
| KUCKER MARINO WINIARSKY & BITTENS, | 12/3/2021 | 4,270.00 | Legal Expenses | 747 Third Avenue, New York, NY, 10017 |
| LA MODELS,INC. | 12/3/2021 | 240.00 | Models | 7700 SUNSET BLVD. LOS ANGELES, CA, 90046 |
| LANDMARK RETAIL CORP | 11/15/2021 | 5,000.00 | Store Maintenance | 24 Newark Pompton Turnpike, Bldg B, Little Falls, NJ, 07424 |
| Levene, Neale, Bender, Yoo & Brill, LLP | 10/29/2021 | 17,552.11 | Professional Services | 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA, 90067-6200 |
| Levene, Neale, Bender, Yoo & Brill, LLP | 12/16/2021 | 6,054.76 | Professional Services | 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA, 90067-6200 |
| Levene, Neale, Bender, Yoo & Brill, LLP | 1/14/2022 | 50,000.00 | Deposit for Professional Services | 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA, 90067-6200 |
| LISA KENEALLY | 1/14/2022 | 3,698.59 | Payroll | Prince Court 4, Jackson, NJ, 08527 |
| Lisa Lucero-Day | 12/3/2021 | 45.00 | Expense Reimbursement, Travel, Store Expenses | 73505 Ironwood Street, Palm Desert, CA, 92260 |
| Lori Brown | 11/1/2021 | 467.21 | Expense Reimbursement, Travel, Store Expenses | Wilshire Boulevard, 9502, Beverly Hills, 90212 |
| Lori Brown | 1/4/2022 | 573.22 | Expense Reimbursement, Travel, Store Expenses | Wilshire Boulevard, 9502, Beverly Hills, 90212 |
| MADELINE UNGAR | 12/2/2021 | 689.00 | Personal Shopper | 7825 Blue Water Drive, Las Vegas, NV, 89128 |
| MAGIAN RAHIMI | 10/29/2021 | 1,010.79 | Expense Reimbursement, Travel, Store Expenses | 11736 SW25th Court, Miramar, FL, 33025 |
| MAGIAN RAHIMI | 12/16/2021 | 1,592.67 | Expense Reimbursement, Travel, Store Expenses | 11736 SW25th Court, Miramar, FL, 33025 |

| Name | Date | Amount | Description | Address |
|---|---|---|---|---|
| MAIGAN RAHIMI | 1/4/2022 | 322.48 | Expense Reimbursement, Travel, Store Expenses | 11736 SW25th Court, Miramar, FL, 33025 |
| Mangia 57th Inc. | 12/7/2021 | 353.22 | market catering | 50 West 57th Street, New York, NY, 10019 |
| Margaret's Cleaners | 10/28/2021 | 1,778.89 | Dry Cleaning | 5150 Convoy Street, San Diego, CA, 92111 |
| MASTER TOUCH CLEANERS, INC | 1/13/2022 | 1,132.00 | Dry Cleaning | 1175 Baker Street, Costa Mesa, CA, 92626 |
| MELAND, RUSSIN & BALDWICK | 11/5/2021 | 257.00 | Professional Services | 3200 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, FL, 33131 |
| MI9 Retail - Raymark ULC | 10/19/2021 | 5,573.17 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 10/29/2021 | 8,750.00 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 12/3/2021 | 5,573.17 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 12/20/2021 | 5,839.78 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 1/4/2022 | 9,323.17 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MICHELLE DELLA PERUTA | 1/14/2022 | 3,763.02 | Payroll | 41 BELCHER RD WARWICK NY 10990-3008 US |
| MODERN FUTURE INC. | 10/29/2021 | 300.00 | Tailoring Services | 310 N Beverly Dr, Beverly Hills, CA, 90210 |
| MODERN FUTURE INC. | 1/4/2022 | 450.00 | Tailoring Services | 310 N Beverly Dr, Beverly Hills, CA, 90210 |
| Monika Arden | 10/19/2021 | 67.05 | Expense Reimbursement, Travel, Store Expenses | 1800 Sawgrass Mills Circle, 2430, Sunrise, NJ, 33323 |
| Monika Arden | 1/4/2022 | 232.67 | Expense Reimbursement, Travel, Store Expenses | 1800 Sawgrass Mills Circle, 2430, Sunrise, NJ, 33323 |
| Monika Arden | 1/14/2022 | 3,694.05 | Payroll | 1800 Sawgrass Mills Circle, 2430, Sunrise, NJ, 33323 |
| OPEN TEXT INC. | 12/2/2021 | 3,113.69 | IT services | 9711 Washington Blvd., Suite 700, Gaithersburg, MD, 20878 |
| ORANGE & ROCKLAND | 10/18/2021 | 921.36 | Utilities | PO BOX 1005  SPRING VALLEY, NY 10977 |
| ORANGE & ROCKLAND | 11/16/2021 | 601.62 | Utilities | PO BOX 1005  SPRING VALLEY, NY 10977 |
| ORANGE & ROCKLAND | 12/17/2021 | 597.57 | Utilities | PO BOX 1005  SPRING VALLEY, NY 10977 |
| ORKIN | 1/14/2022 | 695.50 | Pest Control | 2257 Vista Parkway, Suite 5, West Palm Beach, FL, 33411-2726 |
| RAVE FABICARE INC. | 12/2/2021 | 211.62 | Dry Cleaning | 8490 E RUTHERUS DRIVE STE. 104, SCOTTSDALE, AZ, 85260 |
| RAVE FABICARE INC. | 1/4/2022 | 138.62 | Dry Cleaning | 8490 E RUTHERUS DRIVE STE. 104, SCOTTSDALE, AZ, 85260 |
| Sara Y. Sakakibara | 10/19/2021 | 597.95 | Personal Shopper | Ala Wai Blvd, 1645, Honolulu, HI, 96815 |
| Schaefer Trans, Inc. | 11/4/2021 | 7,507.34 | International Freight Forwarding Services | 580 Atlantic Avenue, EAST ROCKAWAY, NY, 11518 |
| Schaefer Trans, Inc. | 11/18/2021 | 838.28 | International Freight Forwarding Services | 580 Atlantic Avenue, EAST ROCKAWAY, NY, 11518 |
| Schaefer Trans, Inc. | 1/13/2022 | 4,513.15 | International Freight Forwarding Services | 580 Atlantic Avenue, EAST ROCKAWAY, NY, 11518 |
| SCOTTSDALE FASHION SQUARE, LLC | 11/3/2021 | 32,469.59 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SCOTTSDALE FASHION SQUARE, LLC | 12/3/2021 | 31,835.15 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SEN Graphics, Inc. | 12/3/2021 | 585.00 | Marketing / Stickers | 3125 Horseshoe Lane, Suite D, Charlotte, NC, 28208 |
| Sharon Moskal | 11/3/2021 | 1,106.25 | Marketing | 1580 President Street,Brooklyn, NY, 11213 |
| Sharon Moskal | 1/4/2022 | 1,350.00 | Marketing | 1580 President Street,Brooklyn, NY, 11213 |
| SHEILA FERRIS BEATON | 1/4/2022 | 248.23 | Expense Reimbursement, Travel, Store Expenses | S. Grand Central Parkway, #3419, 555, Las Vegas, NV, 89106 |
| SHEILA FERRIS BEATON | 1/14/2022 | 3,733.53 | Payroll | S. Grand Central Parkway, #3419, 555, Las Vegas, NV, 89106 |
| SHELLY RAPP | 1/14/2022 | 3,922.43 | Payroll | 48650 Seminole Drive, Suite C-132, Cabazon, CA, 92230 |
| SHIFT 4 CORPORATION | 10/29/2021 | 508.89 | IT / POS Processing | 1491 CENTER CROSSING RD, LAS VEGAS, NV, 89144 |
| SHIFT 4 CORPORATION | 11/29/2021 | 544.72 | IT / POS Processing | 1491 CENTER CROSSING RD, LAS VEGAS, NV, 89144 |
| SHIFT 4 CORPORATION | 12/29/2021 | 591.48 | IT / POS Processing | 1491 CENTER CROSSING RD, LAS VEGAS, NV, 89144 |
| SO CAL GAS | 10/19/2021 | 16.27 | Gas Supply | SoCalGas, PO BOX C, MONTEREY PARK,CA 91756-5111 |
| SO CAL GAS | 11/22/2021 | 14.79 | Gas Supply | SoCalGas, PO BOX C, MONTEREY PARK,CA 91756-5111 |
| SO CAL GAS | 12/21/2021 | 16.27 | Gas Supply | SoCalGas, PO BOX C, MONTEREY PARK,CA 91756-5111 |
| SOUTH COAST PLAZA | 11/3/2021 | 2,426.10 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTH COAST PLAZA | 11/18/2021 | 11,794.84 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTH COAST PLAZA | 12/3/2021 | 12,464.57 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTH COAST PLAZA | 1/7/2022 | 8,963.90 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTHERN CALIFORNIA EDISON | 10/18/2021 | 5,360.19 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHERN CALIFORNIA EDISON | 11/16/2021 | 3,752.46 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHERN CALIFORNIA EDISON | 12/20/2021 | 3,671.67 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHERN CALIFORNIA EDISON | 1/18/2022 | 3,567.30 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHWEST SIGN COMPANY | 12/3/2021 | 6,553.80 | Installation work and maintenance | 1852 POMONA ROAD, CORONA, CA, 92878 |
| SOUTHWEST SIGN COMPANY US | 1/13/2022 | 3,620.00 | Installation work and maintenance | 1852 POMONA ROAD, CORONA, CA, 92878 |
| SPECTRUM | 11/8/2021 | 249.96 | Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL  33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |
| SPECTRUM | 12/6/2021 | 114.98 | Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL  33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |

| Name | Date | Amount | Description | Address |
|---|---|---|---|---|
| SPECTRUM | 1/6/2022 | 114.98 | Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL 33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |
| SPECTRUM | 1/7/2022 | 134.98 | Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL 33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |
| Stephanie Sparkman | 11/5/2021 | 5,763.13 | Expense Reimbursement, Travel, Store Expenses | 5337 Pond View Dr, Westerville, OH, 43081 |
| Stephanie Sparkman | 12/2/2021 | 9,735.01 | Expense Reimbursement, Travel, Store Expenses | 5337 Pond View Dr, Westerville, OH, 43081 |
| Steven Wawack /AT&T | 10/26/2021 | 139.10 | Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| Steven Wawack /AT&T | 11/26/2021 | 139.10 | Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| Steven Wawack /AT&T | 12/28/2021 | 139.10 | Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| TAMI HOGAN | 12/3/2021 | 1,065.80 | Personal Shopper | 600 LIECHTY COURT, HEATH, TX, 75032 |
| THOMPSON TAX & ASSOCIATES | 10/19/2021 | 69,666.56 | Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 11/18/2021 | 84,177.67 | Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 12/3/2021 | 39,915.95 | Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 12/17/2021 | 78,524.73 | Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 1/7/2022 | 65,495.65 | Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| Total Appliance & A/C Repair, Inc. | 11/12/2021 | 16,366.51 | HVAC replacement | PO Box 70, Hallandale Beach, FL, 33009 |
| U.S Customs and Border Protection | 10/25/2021 | 4,424.85 | US Customs | Bldg. #77, Jamaica, NC, 11430 |
| U.S Customs and Border Protection | 11/23/2021 | 6,723.59 | US Customs | Bldg. #77, Jamaica, NC, 11430 |
| VECTOR SECURITY INC | 11/3/2021 | 1,973.01 | Security | PO Box 89462, Cleveland, OH |
| VERIZON | 11/12/2021 | 145.64 | Telephone & Internet cost | PO BOX 5124 ALBANY, NY 12212-5124 |
| VERIZON | 12/14/2021 | 145.64 | Telephone & Internet cost | PO BOX 5124 ALBANY, NY 12212-5124 |
| VERIZON | 1/12/2022 | 145.64 | Telephone & Internet cost | PO BOX 5124 ALBANY, NY 12212-5124 |
| WASTE MANAGEMENT | 10/21/2021 | 990.75 | Utilities | WASTEMANAGEMENTOF ILLINOIS, INC   POBOX 42390 PHOENIX, AZ 85080 |
| WASTE MANAGEMENT | 11/19/2021 | 1,197.36 | Utilities | WASTEMANAGEMENTOF ILLINOIS, INC   POBOX 42390 PHOENIX, AZ 85080 |
| WASTE MANAGEMENT | 12/21/2021 | 1,198.05 | Utilities | WASTEMANAGEMENTOF ILLINOIS, INC   POBOX 42390 PHOENIX, AZ 85080 |
| WORTH-PONDFIELD LLC | 11/10/2021 | 100,000.00 | Store Rent | 97-77 QUEENS BLVD, SUITE 710, REGO PARK, NY, 11374 |
| WORTH-PONDFIELD LLC | 11/18/2021 | 50,000.00 | Store Rent | 97-77 QUEENS BLVD, SUITE 710, REGO PARK, NY, 11374 |
| WORTH-PONDFIELD LLC | 12/3/2021 | 50,000.00 | Store Rent | 97-77 QUEENS BLVD, SUITE 710, REGO PARK, NY, 11374 |

| Exhibit 4 to SOFA | | | | |
|---|---|---|---|---|
| Creditor | Date | Total Amount | Reason of payment | Address |
| ESCADA (UK) LTD | 8/25/2021 | 77,000.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 2/3/2021 | 74,900.94 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 3/24/2021 | 72,001.55 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 4/23/2021 | 88,136.96 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 6/11/2021 | 20,000.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 6/29/2021 | 6,735.68 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 7/22/2021 | 94,640.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 10/21/2021 | 84,247.20 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 11/18/2021 | 113,720.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 11/22/2021 | 56,585.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA ONLINE US LLC | 1/21/2021 | 30,000.00 | Partial Payment on Intercompany Debt | 693 Fifth Avenue, Floor 6, NY,  10022 |
| Escada Store Services LLC | 9/9/2021 | 25,000.00 | Intercompany Payment / Legal Services | 9720 Wilshire Boulevard, Beverly Hills, CA, 90212 |
| Escada Sourcing & Production group | 2/22/2021 | 150,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 3/5/2021 | 121,636.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 3/24/2021 | 100,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 4/16/2021 | 90,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 4/23/2021 | 150,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 4/28/2021 | 250,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/5/2021 | 120,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/14/2021 | 55,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/19/2021 | 235,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/21/2021 | 45,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/26/2021 | 45,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/27/2021 | 153,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 6/11/2021 | 25,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 6/22/2021 | 120,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 6/28/2021 | 120,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 7/29/2021 | 40,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 8/5/2021 | 48,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 9/23/2021 | 35,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 11/8/2021 | 60,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 11/22/2021 | 30,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 12/21/2021 | 75,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |

# Exhibit 6

**Exhibit 6**

| Landlord or Counterparty | Real Property Address (if Lease) | Assume or Reject | Cure Amount |
|---|---|---|---|
| Worth-Pondfield LLC c/o Eastgold Holdings LLC | 222 Worth Avenue, Palm Beach, Florida | TBD | TBD |
| 693 Fifth Owner LLC | 693 Fifth Avenue 6th Floor, New York, NY | TBD | TBD |
| Scottsdale Fashion Square LLC | 6900 E Camelback Rd, Scottsdale, AZ 85251 | TBD | TBD |
| Escada Sourcing and Production LLC | N/A (Consignment Agreement) | TBD | TBD |

The Debtor uses the "Escada" brand subject to a licensing agreement, which the Debtor believes is not an executory contract.  If the Debtor's Plan is confirmed, then the Reorganized Debtor will continue to use the Escada brand.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled **DEBTOR'S CHAPTER 11, SUBCHAPTER V PLAN OF REORGANIZATION, DATED MAY 2, 2022**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 2, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **May 2, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 2, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **May 2, 2022** | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                     **F 9013-3.1.PROOF.SERVICE**

**2:22-bk-10266-BB Notice will be electronically mailed to:**

Dustin P Branch on behalf of Creditor The Macerich Company
branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com

John C Cannizzaro on behalf of Creditor 717 GFC LLC
john.cannizzaro@icemiller.com, julia.yankula@icemiller.com

Michael J Darlow on behalf of Creditor Harris County Municipal Utility District #358
mdarlow@pbfcm.com, tpope@pbfcm.com

Caroline Djang on behalf of Interested Party Caroline R. Djang
caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com

Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)
eryk.r.escobar@usdoj.gov

John-Patrick M Fritz on behalf of Debtor Escada America, LLC
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

William W Huckins on behalf of Creditor Brookfield Properties Retail, Inc.
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

William W Huckins on behalf of Creditor SIMON PROPERTY GROUP INC
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

Gregory Kent Jones (TR)
gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com

Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC
mkogan@koganlawfirm.com

Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.
ggpbk@ggp.com

Lindsey L Smith on behalf of Debtor Escada America, LLC
lls@lnbyg.com, lls@ecf.inforuptcy.com

Ronald M Tucker, Esq on behalf of Creditor SIMON PROPERTY GROUP INC
rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**