JOHN-PATRICK M.. FRITZ (SBN 245240)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  JPF@LNBYG.COM

Attorneys for Chapter 11 Debtor
and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No.: 2:22-bk-10266-BB |
| | ) |
| | ) Chapter 11 Case |
| ESCADA AMERICA, LLC, | ) |
| | ) **DEBTOR'S  CHAPTER  11  PLAN  OF** |
| Debtor and Debtor in Possession. | ) **REORGANIZATION, DATED MAY 12,** |
| | ) **2022** |
| | ) |
| | ) <u>Hearing on Plan Confirmation</u>: |
| | ) Date:  TBD |
| | ) Time: TBD |
| | ) |
| | ) Place:  Courtroom 1539 |
| | )           255 East Temple Street |
| | )           Los Angeles, CA 90012 |
| | ) |
| | ) Hearing to be held in-person and by |
| | ) videoconference |
| | ) Government Zoom, see Court's |
| | ) website under "Telephonic Instructions" for |
| | ) more details: |
| | ) https://www.cacb.uscourts.gov/judges/honor |
| | ) able-sheri-bluebond |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................... 2

II. TREATMENT OF CREDITORS' CLAIMS UNDER THE PLAN ............................. 3

   A. The Bond Liens ............................................................................. 3

   B. What Creditors Will Receive Under the Plan ...................................... 3

      1. Unclassified Claims ..................................................................... 5

      2. Classified Claims and Interests ...................................................... 9

   C. Means of Effectuating and Implementing the Plan ............................ 22

      1. Funding for the Plan .................................................................. 22

      2. Composition of the Debtor After the Effective Date ........................ 24

      3. Post-Confirmation Management and Compensation ......................... 24

      4. Disbursing Agent ......................................................................

      5. Objections to Claims .................................................................. 24

      6. Avoidance Actions, Strong Arm Powers, and Causes of Action .......... 25

      7. Employment of Professionals by the Reorganized Debtor and
         Payment of Professional Fees and Expenses After the Effective Date . 26

      8. Exemption from Transfer Taxes ................................................... 26

      9. Distributions to Be Made Pursuant to the Plan ............................... 26

      10. Exculpations and Releases ......................................................... 27

      11.`Injunctions ............................................................................. 27

      12. Executory Contracts and Unexpired Leases ................................... 28

      13. Changes in Rates Subject to Regulatory Commission Approval ........ 29

      14. Retention of Jurisdiction ........................................................... 29

III. EFFECT OF CONFIRMATION OF THE PLAN ............................................ 31

   A. Discharge ................................................................................. 31

   B. Modification of the Plan ............................................................... 31

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C. Post-Confirmation Status Reports** ................................................................. 31

**D. Post-Confirmation Operations** ...................................................................... **31**

**E. Post-Confirmation Conversion/Dismissal** .................................................... **31**

**F. Final Decree** ...................................................................................................... **32**

# I.    **INTRODUCTION**

Escada America, LLC, a Delaware limited liability company (the "Debtor"), is the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case") bearing case number 2:22-bk-10266-BB.   The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and elected subchapter V on January 18, 2022 (the "Petition Date").   On May 4, 2022, the Debtor amended its petition to un-elect subchapter V.  The Debtor is operating its business, managing its affairs, and administering its estate as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The United States Trustee (the "UST") appointed Gregory K. Jones, Esq. as the subchapter V trustee pursuant to 11 U.S.C. § 1183(a) for the duration of the Debtor's time in subchapter V, which ended on May 4, 2022.

**This document is the Debtor's plan of reorganization (the "Plan")**.   A separate document, sent to you in the same envelope with the Plan, is the disclosure statement (the "Disclosure Statement"), which describes the Plan.  The Disclosure Statement is provided to help you understand the Plan.  On _____, 2022, the Court held a hearing and approved the Disclosure Statement as having adequate information describing the Plan to assist parties in interest in determining whether to accept or reject the Plan or otherwise file objections.  All capitalized terms used in the Plan which are not defined in the Plan but which are defined in the Disclosure Statement shall be deemed to have the same definitions as used in the Disclosure Statement.

Chapter 11 allows debtors and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. The Plan is a reorganization plan proposed by the Debtor with substantial input from major non-insider unsecured creditors during the first three months of the case.   The effective date of the Plan (the "Effective Date") will be the first

business day of the first month which is at least fifteen days following the date of entry of the Court order confirming the Plan (the "Plan Confirmation Order") and the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instruments and agreements.    The Debtor, following the Effective Date, shall be referred to as the "Reorganized Debtor."

The Reorganized Debtor will acquire all assets and assume all liabilities of the Debtor, as restructured under the Plan.  The Reorganized Debtor will sign any reasonable documentation as requested by creditors or required by law to effectuate the acquisition of assets and assumption of liabilities under the Plan.

## II.    TREATMENT OF CREDITORS' CLAIMS UNDER THE PLAN

### A.  The Bond Liens

The Plan creates liens on certain bond recoveries (each, a "Bond Lien" and, collectively, the "Bond Liens"), which are integral to the treatment of Classes 1, 2, 3, 4, and 5 below. Classes 1, 2, and 4 have prepetition liens against all or substantially all of the Debtor's assets. Class 3 is a creditor with a consignment arrangement, but, to the extent considered as a security interest, would also have a lien.  Class 5 is a general unsecured creditor class.

As of the Petition Date, the Debtor holds prepetition bonds with total value of approximately $2.15 million, the collateral for which is cash in a money-market account to support letters of credit (the "Bond Collateral") with JP Morgan Chase Bank ("JPMC").  There are $408,065.65 in offsetting liabilities against the Bond Collateral, resulting in approximately $1,789,014.09[1] in expected bond proceeds (the "Net Bond Proceeds"). The Net Bond Proceeds

---

[1] This figure includes $47,079.74 for a 2% cushion held by JPM Chase in the cash collateral deposit account that backs the bonds.

stems from two separate bonds: (i) a $700,000 bond, secured by $1,400,000 in Bond Collateral (the "Western Surety Bond") and (ii) a $400,000 and a $350,000 bond, secured by $7500,000 in Bond Collateral, with $408,065.65 in offsetting liabilities (the "Lexon Bond"); and (iii) a 2% cushion in the JPMC account in the amount of approximately $47,079.74. As the bonds are cancelled, mature, and/or terminate, the Net Bond Proceeds shall be placed into a trust account (the "Bond Account") held by Debtor's counsel, LNBYG,[2] to be the collateral for: (i) the Class 5 claims with a first position Bond Lien (the "Class 5 Bond Lien"); and (ii) the Class 1 claim, with a second position Bond Lien (the "Class 1 Bond Lien").    Every dollar of Net Bond Proceeds recovered shall be paid to Class 5 allowed claim holders, *pari passu*, within 30 days of receipt of the Bond Collateral into the Bond Account, until Class 5 has received its full Class 5 Recovery (as defined below). The Debtor shall notify Classes 1, 2, 3, 4, and 5 of the receipt of any Net Bond Proceeds within two (2) business days of such proceeds being released by JPMC to the Bond Account.  At the Debtor's and/or Reorganized Debtor's discretion, notice may be given by filing a notice on the bankruptcy court's docket or by email and/or mail to the 20 largest unsecured creditors in the case.

ESP will act as a secured lender exit financier (the "Exit Financier") and, along with Classes 1, 2, 3, and 4, through the Plan, consent to Class 5 having a lien for the Class 5 Bond Lien on the Bond Collateral, Bond Account, and Net Bond Proceeds senior to the prepetition liens held by Classes 1, 2, 3, and 4, and the exit financing lien held by the Exit Financier.

The total payment to Class 5 creditors will be 15 cents on the dollar, reduced by a carve-out for the payment of (i) Substantial Contribution Claims, as defined below and (ii) the fees and costs of any official committee appointed under 11 U.S.C. § 1102 and the allowed administrative professional fees for any such committee (the "Class 5 Recovery").[3]

---

[2] Alternatively, the Debtor and/or Reorganized Debtor may set up the Bond Account as an account subject to a deposit-account-control-agreement with JPMC with a lien in favor of Class 5 to have the proceeds transfer over when they are released from the bond liabilities.

[3] On May 2, 2022, NYC Dept. of Finance filed proof of claim #39, asserting a priority unsecured claim in the amount of $904,777.63.  This claim is under investigation, as the Debtor scheduled the priority claim as $349,209.25 and believes the proof of claim is overstated.

**B. What Creditors Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies certain claims and interests in various "classes" according to their right to priority and leaves other types of claims unclassified. Also, as required by the Bankruptcy Code, the Plan states whether each class of claims or interests is impaired or unimpaired and describes the treatment each class will receive.

**1. Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. The Bankruptcy Code predetermines what type of treatment these claims will receive. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following claims in a class.

**a. Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) estate professional administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Quarterly Fees to the United States Trustee ("<u>UST</u>") | $0 | The Debtor will be current on quarterly fees by the time of the hearing on plan confirmation. |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("<u>LNBYG</u>"), bankruptcy | $125,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective |

However, if the claim is more than $399,209.35, the Class 5 Recovery will be reduced dollar-for-dollar from a target of 15 cents to as low as 12.5 cents.

5

| | | |
|---|---|---|
| counsel to the Debtor | | Date and the date the Court enters an order allowing such fees and expenses |
| Subchapter V Trustee | $20,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| Accountant Holthouse, Carlin & Van Trigt LLP | $25,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| TBD Counsel for the Official Committee of Unsecured Creditors | $30,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| **TOTAL** | **$200,000 (est.)** | **Paid in the manner described above** |

The Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed administrative claims in the Bankruptcy Case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims. To the

extent the Debtor is required to engage in any such substantial litigation, the Debtor is likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above.  By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. By including the figures described above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and the Debtor is not waiving any of its rights to object to the allowance of any of these administrative claims.  Similarly, professionals who have been employed in the Bankruptcy Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of the Disclosure Statement.

To the extent administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds provided the Debtor has sufficient funds to pay them.  To the extent administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor.

The following chart lists all of the Debtor's § 507(a)(2) administrative claims (other than estate-professional-administrative-expense claims listed above) accruing and unpaid in the ordinary course of business and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| Mega (for Debtor's employees' health, dental, and vision benefits plans accrued and unpaid during the pendency of the bankruptcy case) | $100,000 (est.) | To be added to the Class 2 Claim held by Mega |
| ESP (for consignment fees | $300,000 (est.) | To be added to the Class 3 Claim held by ESP |

| accrued and unpaid during the pendency of the bankruptcy case) | | |
|---|---|---|
| **TOTAL** | **$400,000 (est.)** | |

### b. Priority Tax Claims

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan. Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed. 11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims under $100,000 will be paid within 30 days of the Plan Effective Date. The claim of NYC Department of Finance will be paid in equal quarterly installment payments over the first year of the Plan. The Debtor may pay these claims early with no prepayment penalty. Interest on the priority tax claims will accrue and be paid at the applicable non-bankruptcy law statutory rate.

Unless timely contested under the Plan, a failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default. If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies by application of non-bankruptcy law in non-bankruptcy court. The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim. The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the

amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount |
|---|---|---|
| County of Los Angeles | 9 | $ 8,537.47 |
| Cal. Franchise Tax Board | 17 | $800.00 |
| IRS | 2, as amended | $500.00 |
| Cal. Empl. Dev. Dep't | N/A | $0 |
| NYC Dept. of Finance | 39 | $349,209.25[4] |
| TOTAL | | $359,046.72 |

### 2.  Classified Claims and Interests

#### a.  Non-Tax Pre-Petition Priority Claims

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim. However, the holder of such an unsecured priority claim may agree to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtor's schedules reflect no creditors as holding priority unsecured claims.  No creditors filed proofs of claim asserting non-tax priority unsecured claims.  The below chart summarizes the priority non-tax claims and whether the Debtor is considering an objection at this time:

| Name | Claim No. | Objection | Claim Amount |
|---|---|---|---|
| None | N/A | N/A | $0.00 |

#### b.  Class 1 – Allowed Secured Claim of Eden Roc International, LLC ("Eden Roc")

The following chart identifies the Plan's treatment of Class 1 comprised of the allowed secured claims of Eden Roc International, LLC ("Eden Roc"):

---

[4] On May 2, 2022, NYC Dept. of Finance filed proof of claim #39, asserting a priority unsecured claim in the amount of $904,777.63.  This claim is under investigation, as the Debtor believes the claim is overstated.

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 1 | **Claimant:**<br>Eden Roc<br><br>**Type of Claim:**<br>Allowed<br>secured claim<br><br>**Claim amount:**<br>$579,025.32, plus accrued interest, fees, and costs<br><br>**Collateral:**<br>All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 1 shall have an allowed secured claim in the amount of $579,025.32 principal, plus accrued fees, and costs.<br><br>Senior secured lien on all of the Debtor's assets, except with respect to the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>With respect to the Bond Collateral and Bond Account, Class 1 shall have a second priority lien on the Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and validity of the lien.<br><br>Interest rate: 6.0% per annum, compounding.<br><br>Loan maturity date extended to 12/31/2027.<br><br>Balloon payment of all principal and accrued interest due on 12/31/2025. Provided that all payments to Class 5 have been made, the Debtor shall have the right to prepay all principal and accrued interest due to Class 1 without penalty.<br><br>Class 1 will not receive any payments under the Plan during the life of the Plan on account of their Class 1 claims, until and unless Class 5 has received all payments payable thereunder. Class 1 creditors will maintain their claims and liens and interest |

| | | | |
|---|---|---|---|
| | | | will continue to accrue but be unpaid for the life of the Plan.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 1 claimant. |

### c. Class 2 – Allowed Secured Claim of Mega International, LLC

The following chart identifies the Plan's treatment of Class 2 comprised of the allowed secured claim of Mega International, LLC ("Mega"), in the total amount of $1,605,953.00:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 2 | **Claimant:** Mega<br><br>**Type of Claim:** Allowed secured claim<br><br>**Prepetition Claim amount:** $1,506,953.00, plus accrued interest, fees, and costs<br><br>**Post-petition Claim amount:** $99,000 (estimated)<br><br>**Total Claim amount:** $1,605,953.00<br><br>**Collateral:** All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 2 shall have an allowed secured claim in the amount of $1,605,953.00, principal, plus accrued unpaid fees and costs.<br><br>Second position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and validity of the lien.<br><br>Interest rate: 7.0% per annum, compounding<br><br>Loan maturity date extended to 12/31/2027.<br><br>Balloon payment of all principal and accrued interest due on 12/31/2027.<br><br>Class 2 will not receive any payments under the Plan during the life of the Plan on account of their Class 2 claims until all payments to Class 5 have been made.  Class 2 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 2 claimant. |

1

2

3        **d.  Class  3 – Allowed  Claim  of  Escada  Sourcing  and  Production  LLC**

4              **Related to Consignment**

5        The following chart identifies the Plan's treatment of Class 3 comprised of the allowed

6 claim of Escada Sourcing and Production, LLC ("ESP"):

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 3 | **Claimant:** ESP<br><br>**Type of Claim:** True Consignment; additionally, claims as follows:<br><br>**Pre-petition Claim:** A prepetition secured claim in the amount of no less than $675,361.39<br><br>**Post-petition Claim Amount:** $300,000 (estimated)<br><br>**Exit Financing Claim Amount:** $150,000<br><br>**Post-Confirmation Claim:** Accruing according to estimated plan projections. *See*, Ex.2 to the Plan.<br><br>**Claim amount:** Not less than $1,025,361.39<br><br>**Collateral:** Not Applicable to the extent that ESP is a consignor with a true consignment; but to the extent ESP is a creditor, all inventory held by Debtor and proceeds thereof | Impaired<br><br>Entitled to Vote | Class 3 shall retain its rights as a consignor, unaltered by the Plan.<br><br>Total allowed secured claim of no less than $1,025,361.39, plus accruing claim post-confirmation.<br><br>The order confirming the Plan shall affirm the validity of the consignment agreement between the Debtor and ESP and ratify the terms of the settlement agreement entered into by and between ESP, on the one hand, and the Debtor and its estate, on the other hand (the "Settlement Agreement").<br><br>Third position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds. |

1

2          **e.  Class 4 – Allowed Claim of Escada Sourcing and Production LLC**

3              **Related to Secured Debt**

4          The following chart identifies the Plan's treatment of Class 4 comprised of the allowed

5  claim of Escada Sourcing and Production, LLC ("ESP"):

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 4 | Claimant: ESP<br><br>Type of Claim: Allowed secured claim<br><br>Claim amount: $19,044,356.07, plus accrued interest, fees, and costs<br><br>Collateral: All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 4 shall have an allowed secured claim in the amount of $19,044,356.07, principal, plus accrued unpaid fees and costs.<br><br>Fourth position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and lien held by ESP and ratify the terms of the Settlement Agreement entered into by and between ESP, on the one hand, and the Debtor and its estate, on the other hand.<br><br>Interest rate: 8.0% per annum, compounding<br><br>Loan maturity date extended to 12/31/2027.<br><br>Balloon payment of all principal and accrued interest due on 12/31/2027.<br><br>Class 4 will not receive any payments under the Plan during the life of the Plan on account of their Class 4 claims.  Class 4 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force |

16

| | | | and effect between the Debtor and the Class 4 claimant. |
|---|---|---|---|

### f.  Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims (see the Claims Chart for detailed information about each general unsecured claim):

17

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | All general unsecured claims of the Debtor not included in any other class.<br><br>Total amount of class 5 claims is $18,514,329.91.<br><br>The Claims Chart attached as **Exhibit 2** to the Disclosure Statement and Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 5. The Claims Chart reflects the anticipated amounts of claims lessors of Debtor's non-residential real property leases capped by § 502(b)(6). | Yes.<br><br>Entitled to vote | In full and final satisfaction of each, any, and all of their claims against the Debtor, class 5 will receive 15 cents on the dollar for its aggregate allowed claims, reduced by a carve-out for the payment of (i) Substantial Contribution Claims, as defined below and (ii) the fees and costs of any official committee appointed under 11 U.S.C. § 1102 and the allowed administrative professional fees for any such committee (the "Class 5 Recovery"). At least 7.5 cents* on the dollar for the Class 5 claim will be paid within fifteen (15) days of the Effective Date (the "<u>Cash On Hand Payment</u>"), and (ii) the balance of the Class 5 Recovery still owing on its claim (i.e. up to an additional 7.5 cents) will be paid no later than the one-year anniversary of the Effective Date (the "<u>Remainder Payment</u>"). Each holder of a class 5 allowed claim shall receive its pro rata share of the Class 5 Recovery. [5]<br><br>* Until the Class 5 Recovery has been paid in full, every dollar of Net Bond Proceeds recovered shall be paid to Class 5 allowed claim holders, *pari passu*, within 30 days of receipt of the Net Bond Proceeds into the Bond Account. Thus, if funds in the Bond Account are sufficiently |

---

[5] On May 2, 2022, NYC Dept. of Finance filed proof of claim #39, asserting a priority unsecured claim in the amount of $904,777.63. This claim is under investigation, as the Debtor scheduled the priority claim as $349,209.25 and believes the proof of claim is overstated. However, if the claim is more than $399,209.35, the Class 5 Recovery could be reduced from a target of 15 cents to as low as 12.5 cents.

high within 15 days of the Plan Effective Date, it is possible that more than 7.5 cents on the dollar could be distributed to Class 5. Class 5's recovery shall be capped at the Class 5 Recovery and all Net Bond Proceeds in excess of the Remainder Payment due to Class 5 after application of the Cash On Hand Payment shall be payable to Class 1 pursuant to the terms hereto. Notwithstanding the foregoing, if the NYC Department of Finance's disputed claim is not settled at the time that Net Bond Proceeds are deposited into the Bond Account, LNBYG, as disbursing agent for the Bond Account and Net Bond Proceeds, shall reserve a portion of such proceeds equal to 2.5 cents on the dollar of the Class 5 claim (the "NYC Bond Reserve"), until the NYC Department of Finance claim is settled or resolved. In the event that the final NYC Department of Finance claim is determined to be greater than $399,209.35, then the NYC Bond Reserve shall be applied first to the excess due to the NYC Department of Finance and the remainder, if any, shall be distributed to Class 5 as the final distribution due to that class hereunder.

The Class 5 Lien shall be fully extinguished upon the distribution of payments, equal to, in the aggregate, the Class 5 Recovery.

Until paid pursuant to the terms of the Plan, the holders of Class 5 claims shall have and share *pari passu*, a first position lien on the

recovery of the Net Bond Proceeds and Bond Account.

If the Court allows a substantial contribution claim under § 503(b) for the attorneys' fees and costs of unsecured creditors' counsel (a "Substantial Contribution Claim"), and/or if any fees and costs of any official committee appointed under 11 U.S.C. § 1102 (together with the allowed administrative professional fees for any such committee, the "Committee Fees") are incurred, then such claim(s) and/or Committee Fees shall be deducted from the fifteen cents on the dollar otherwise available for the Class 5 Recovery, which will result in Class 5 receiving less than fifteen cents on the dollar. Although such an apportionment will be subject to court approval, the Debtor will not object to how Class 5 claim holders and their creditors' counsel seek to apportion the Class 5 Recovery among them. In no instance shall the sum of the Class 5 Recovery, the Substantial Contribution Claims, and the Committee Fees exceed (or be inferior to) the number that is equal to fifteen percent of the total amount of allowed class 5 claims.

Class 5 will receive neither post-petition nor post-confirmation interest on their claims. Class 5 and its attorneys will not be entitled to any reimbursements, expenses, costs, or other payments, except as expressly permitted above.

The Debtor may prepay Class 5

|  |  |  | at any time without prepayment penalty. |
|---|---|---|---|
|  |  |  | If checks are in amounts of less than $50, such checks may be deferred until the next annual payment until the aggregate due to such creditor is in an amount of (i) at least $50 or (ii) the total distribution owed to the creditor at 15 cents on the dollar of the allowed claim. |
|  |  |  | In the event of a default in payment, holders of Class 5 allowed claims may seek enforcement of Plan treatment in the Bankruptcy Court as their exclusive remedy with the Bankruptcy Court holding exclusive jurisdiction. |
|  |  |  | Attached as **Exhibit 2** to the Disclosure Statement and Plan is a listing of the name and dollar amount of the class 5 allowed claims expected to be paid by the Debtor pursuant to the terms of the Plan, and the estimated prorated recovery. |

### g.  Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.

In compliance with 11 U.S.C. § 1123(a)(6), the Debtor's charter, bylaws, and/or operating agreement will be amended to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | Sole member of Debtor:<br><br>Escada Store Services LLC | Unimpaired<br><br>The class 6 interest holder is conclusively presumed to have voted to accept the Plan by operation of law | The class 6 equity interests will retain its rights and interests without impairment.<br><br>Class 6 receives no payments on account of its equity interests during the life of the Plan. |

**C. Means of Effectuating and Implementing the Plan**

**1. Funding for the Plan**

The Plan will be funded with the Debtor's cash on hand on the Plan Effective Date, recovery of the Bond Collateral into the Bond Account, exit financing, and continued business operations. The Debtor's plan projections of future income are attached as **Exhibit 3** to the Disclosure Statement and Plan. On the Effective Date, Escada Sourcing and Production LLC ("Exit Financier") will contribute exit financing in the amount of $150,000 subject to the terms of the settlement agreement (the "Settlement Agreement") attached as **Exhibit 4** to the Disclosure Statement and Plan. The Settlement Agreement shall provide, in part, that the Exit Financier will (i) provide a five-year, zero-interest, $150,000 loan to the Debtor, (ii) agree to subordinate its claim for post-petition priority consignment fees, (iii) subordinate its claims under Classes 3 and 4 to those of Class 5 to the extent provided for in the Debtor's Plan and (iv) vote in favor of the Debtor's Plan, in return for which the Debtor and the Estate shall irrevocably grant the Exit Financier and its wholly-owned subsidiary, Escada Online GmbH, a complete release of claims, including, without limitation, for any preference or fraudulent transfers or avoidance action claims.

22

After the Effective Date, the Debtor will fund payments through recovery of its import bonds.    As of the Petition Date, the Debtor holds prepetition bonds with total value of approximately $2.15 million, the collateral for which is cash in a money-market account to support letters of credit (the "Bond Collateral") with JP Morgan Chase Bank ("JPMC").   There are $408,065.65 in offsetting liabilities against the Bond Collateral, resulting in approximately $1,789,014.09[6] in expected bond proceeds (the "Net Bond Proceeds"). The Net Bond Proceeds stems from two separate bonds: (i) a $700,000 bond, secured by $1,400,000 in Bond Collateral (the "Western Surety Bond") and (ii) a $400,000 and a $350,000 bond, secured by $7500,000 in Bond Collateral, with $408,065.65 in offsetting liabilities (the "Lexon Bond"); and (iii) a 2% cushion in the JPMC account in the amount of approximately $47,079.74  The Debtor will use its commercially reasonable best efforts to liquidate or materially reduce the Bond Collateral. The Debtor will distribute to Class 5 all Net Bond Proceeds from the Bond Collateral no later than 30 days after the corresponding cash is actually received in the Bond Account, up to the remaining amount payable to Class 5 under the Class 5 Recovery following the initial payment made on the Plan's effective. Notwithstanding the foregoing, if the NYC Department of Finance's disputed claim is not settled at the time that Net Bond Proceeds are deposited into the Bond Account, LNBYG, as disbursing agent for the Bond Account and Net Bond Proceeds, shall reserve a portion of such proceeds equal to 2.5 cents on the dollar of the Class 5 claim (the "NYC Bond Reserve"), until the NYC Department of Finance claim is settled or resolved. In the event that the final NYC Department of Finance claim is determined to be greater than $399,209.35, then the NYC Bond Reserve shall be applied first to the excess due to the NYC Department of Finance and the remainder, if any, shall be distributed to Class 5 as the final distribution due to that class hereunder.

---

[6] This figure includes $47,079.74 for a 2% cushion held by JPM Chase in the cash collateral

### 2.  Composition of the Debtor After the Effective Date

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor."  The members of the Debtor will remain the same as the Debtor's current members.

### 3.  Post-Confirmation Management and Compensation

The Reorganized Debtor will be managed by Escada Store Services LLC for no compensation.  The day-to-day management will be led by Kevin Walsh.  As has been the situation throughout the case, the Debtor asserts that Mr. Walsh is not an insider, his compensation has not been subject to insider-compensation procedures, and his compensation is not subject to disclosure.  Mr. Walsh does not hold any direct or indirect ownership in the Debtor.

In the ordinary course of business and subject to the business judgment rule, the Reorganized Debtor may hire and/or terminate officers, directors, and/or managers, and increase, decrease, and/or change the compensation of its managers, officers, and directors after the Effective Date so long as such alternations neither interfere with nor jeopardize payments to creditors under the Plan.

### 4.  Disbursing Agent

The Reorganized Debtor will act as the disbursing agent under the Plan.  The Reorganized Debtor will not charge any disbursing agent fee for making the Plan distributions. With specific regards to the Bond Account and Net Bond Proceeds, however, LNBYG shall act as the disbursing agent and shall only charge customary, hourly fees for such services, which shall be paid by the Debtor or Reorganized Debtor.

### 5.  Objections to Claims

The Debtor or the Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable

deposit account that backs the bonds.

to the Debtor unless the Debtor deems the inconsistency to be insignificant. With respect to disputed claims that are not resolved prior to the Plan Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval. As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. As of the Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such objections to claims following the confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim. The deadline for filing claims objections shall be 60 days after the Plan Effective Date. The Reorganized Debtor shall withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors (the "Disputed Claims") of any particular class as if such claims were allowed in full, which shall not delay payment to allowed claims that are not Disputed Claims.

### 6. Avoidance Actions, Strong Arm Powers, and Causes of Action

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code and any motions and/or adversary proceedings for substantive consolidation, shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be the Plan Effective Date. The deadline for the Debtor or Reorganized Debtor to file any non-avoidance action shall be the earlier of (i) the statute of limitations for

such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.  A list of potential preferential avoidable transfers are listed as **Exhibit 5** to the Disclosure Statement.  The Debtor does not believe there are any causes of action for actual or fraudulent voidable transfers.  The Debtor may have a case of action against Lexon Surety related to bond disputes, which is under investigation.

### 7.    Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses After the Effective Date

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determines is appropriate and to compensate any such professionals without the need for any further order of the Bankruptcy Court.

### 8.    Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under section 1146(c) of the Bankruptcy Code include all transfers by the Debtor after the commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

### 9.    Distributions to Be Made Pursuant to the Plan

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a

proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

### 10. Exculpations and Releases

To the maximum extent permitted by law, not any one of the Debtor, the Reorganized Debtor, Brookfield, Simon Property, 717 GFC LLC, Eden Roc LLC, Escada Sourcing and Production LLC, Mega International LLC, each of its/their management, each of its/their professionals employed or retained by any of them, whether or not by Bankruptcy Court order (collectively, the "Exculpated Parties"), shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds.

For the avoidance of doubt the exculpation and release applies only to the events the Debtor's case and Plan as set forth in the preceding paragraph.  This is not – and shall not be construed to be – a release or exculpation of the Exculpated Parties for matters outside of the Debtor's case and Plan as set forth in the preceding paragraph.

### 11. Injunctions

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan, including, but not limited to claims for voidable transfers, substantive consolidation, successor liability, recharacterization, and equitable subordination.  Except as provided in the Plan or the Plan Confirmation Order, as of the Plan Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is

extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtor, (b) the Reorganized Debtor, or (c) alleged alter egos of the Debtor or Reorganized Debtor, or (II) their property; on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan. By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section. The injunction described in this paragraph (the "Injunction") is applicable to **all** creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include an award of the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction against any such creditor and/or party in interest.

## 12. Executory Contracts and Unexpired Leases

On the Effective Date, the Debtor will assume the executory contracts and unexpired leases set forth on **Exhibit 6** to the Disclosure Statement and Plan with the cure amount set

forth on that exhibit.  On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be rejected by the Debtor effective as of 11:59 PST on the day prior to the Plan Effective Date.  **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL BE THIRTY (30) DAYS AFTER THE PLAN EFFECTIVE DATE.**  Any claim resulting from the Debtor's rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.  Any allowed claim resulting from the Debtor's rejection of an unexpired lease or executory contract will constitute a class 5 allowed claim, subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

### 13. Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 14. Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Plan Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Plan Confirmation Order;

ii.     To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor or the Reorganized Debtor and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

iii.    To determine the extent, validity and priority of any lien asserted against property of the Debtor and property of the Debtor's estate;

iv.     To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the

Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Case on or before the Effective Date with respect to any person or entity related thereto;

v.    To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.    To determine any request for payment of administrative expenses;

vii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the Effective Date;

ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Reorganized Debtor;

xi.    Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xii. To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

xiii; To enter a discharge, under 11 U.S.C. § 1141(d), if applicable; and

xiv.    To enter a final decree closing the Bankruptcy Case.

**III.    EFFECT OF CONFIRMATION OF THE PLAN**

        **A.    Discharge.**

The Debtor will receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtor's estate and because the Reorganized Debtor will be continuing the Debtor's current business operations.

        **B.    Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before confirmation.  The Debtor may also seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

        **C.    Post-Confirmation Status Reports.**

Until a final decree closing the Debtor's chapter 11 case is entered, the Reorganized Debtor will file quarterly post-confirmation status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan.

        **D.    Post-Confirmation Operations**

On and after the Effective Date, the Debtor will operate as the "Reorganized Debtor," and not as a "debtor in possession," and will not be subject to motion practice and court approval for, *inter alia*, (1) employing and compensating professionals for services rendered on and after the Effective Date; (2) obtaining financing; (3) entering into transactions outside the ordinary course of business; (4) budget approval; (5) compensating insiders; or (6) sale of substantially all or any part of the Reorganized Debtor's business.

        **E.    Post-Confirmation Conversion/Dismissal.**

A creditor or any other party in interest may bring a motion to convert or dismiss the Bankruptcy Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed, but before the final decree is entered, if there is a default in performing the Plan.  If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtor's chapter 11 estate that has not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case, and, the Bond Lien shall remain in place, and the Settlement shall remain in place.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation before 180 days after the entry of the Plan Confirmation Order pursuant to 11 U.S.C. § 1144.  If the Debtor and/or Reorganized Debtor successfully defends against an adversary proceeding or other lawsuit to revoke discharge, revoke the Plan Confirmation Order, or otherwise allege confirmation by fraud, then Debtor and/or Reorganized Debtor shall be entitled to an award of reasonable attorneys' fees and costs against any such plaintiff and its counsel.

### F. <u>Final Decree.</u>

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Case.  The Reorganized Debtor will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

<u>Presented By</u>:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By: ___*/s/ John-Patrick M. Fritz*___
      JOHN-PATRICK M. FRITZ
      Attorneys for Chapter 11

1    |    Debtor and Plan Proponent

2    |    Escada America LLC

3    |

4    |    By:_ *Kevin G Walsh*_____

5    |        Kevin Walsh
        Director of Finance
6    |        Authorized Agent for Debtor

7    |

8    |

9    |

10   |

11   |

12   |

13   |

14   |

15   |

16   |

17   |

18   |

19   |

20   |

21   |

22   |

23   |

24   |

25   |

26   |

27   |

28   |

**Exhibit 1**

Intentionally Omitted

**Exhibit 2**

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Internal Revenue Service | 2A | 5/5/22 | | | $500.00 | | | $0.00 | | | | | | | $500.00 | | |
| County of Los Angeles | 9 | 2/9/22 | | | $8,537.47 | | | $0.00 | | | | | | | $8,537.47 | | |
| California Franchise Tax Board | 17 | 2/24/22 | | | $800.00 | | | $0.00 | | | | | | | $800.00 | | |
| California Employment Dev. Dept. | | | | | | | | $0.00 | | | | | | | | | |
| WWD | | | | | | | | | $258.00 | | | | | | | $258.00 | $38.70 |
| Woodbury Common Premium Outlets | | | | | | | | | $108,024.00 | CUD | | | | | | $0.00 | $0.00 |
| WASTE MANAGEMENT | | | | | | | | | $1,173.00 | | | | | | | $1,173.00 | $175.95 |
| Wage Works, Inc. | | | | | | | | | $585.00 | | | | | | | $585.00 | $87.75 |
| Verizon Wireless | | | | | | | | | $11,917.00 | | | | | | | $11,917.00 | $1,787.55 |
| VERIZON | | | | | | | | | $125.00 | | | | | | | $125.00 | $18.75 |
| VECTOR SECURITY INC | | | | | | | | | $150.00 | | | | | | | $150.00 | $22.50 |
| UPS SUPPLY CHAIN SOLUTIONS, INC. | | | | | | | | | $25.00 | | | | | | | $25.00 | $3.75 |
| UNITED PARCEL SERVICE | | | | | | | | | $146.00 | | | | | | | $146.00 | $21.90 |
| UNITED HEALTH CARE JP MORGAN | | | | | | | | | $1,145.00 | | | | | | | $1,145.00 | $171.75 |
| TOWN OF PALM BEACH | | | | | | | | | $55.00 | | | | | | | $55.00 | $8.25 |
| THYSSEN KRUPP ELEVATOR | | | | | | | | | $1,055.00 | | | | | | | $1,055.00 | $158.25 |
| THOMSON REUTERS | | | | | | | | | $2,596.00 | | | | | | | $2,596.00 | $389.40 |
| THOMPSON TAX & ASSOCIATES | | | | | | | | | $2,352.00 | | | | | | | $2,352.00 | $352.80 |
| THE JEWISH WEEK INC. | | | | | | | | | $648.00 | | | | | | | $648.00 | $97.20 |
| The Epoch Times Association Inc. | | | | | | | | | $786.00 | | | | | | | $786.00 | $117.90 |
| TAX FREE SHOPPING, LTD | | | | | | | | | $85.00 | | | | | | | $85.00 | $12.75 |
| TAMI HOGAN | | | | | | | | | $1,061.00 | | | | | | | $1,061.00 | $159.15 |
| Talent Staff, LLC | | | | | | | | | $3,603.00 | | | | | | | $3,603.00 | $540.45 |
| T & G INDUSTRIES | | | | | | | | | $8,000.00 | | | | | | | $8,000.00 | $1,200.00 |
| Syzygy Performance GmbH | | | | | | | | | $145,914.00 | | | | | | | $145,914.00 | $21,887.10 |
| St Moritz Security Services, Inc. | | | | | | | | | $19,523.00 | | | | | | | $19,523.00 | $2,928.45 |
| SPG HOUSTON HOLDINGS,LP | 4 | 1/28/22 | $100.00 | | | $13,226.39 | | | $274,232.00 | CUD | | | $100.00 | | | $13,226.39 | $1,983.96 |
| SOUTHWEST SIGN COMPANY | | | | | | | | | $6,151.00 | | | | | | | $6,151.00 | $922.65 |
| SOUTH COAST PLAZA | | | | | | | | | $10,064.00 | CUD | | | | | | $0.00 | $0.00 |
| SoCalGas | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 |
| Sirina Protection Systems | | | | | | | | | $466.00 | | | | | | | $466.00 | $69.90 |
| Sing Tao Newspapers New York LLC | | | | | | | | | $462.00 | | | | | | | $462.00 | $69.30 |
| Simon Property Group LP | | | | | | | | | $55,572.00 | CD | | | | | | $0.00 | $0.00 |
| SHIFT 4 CORPORATION | | | | | | | | | $533.00 | | | | | | | $533.00 | $79.95 |
| SHAROTTE BOUTIQUE | | | | | | | | | $1,335.00 | | | | | | | $1,335.00 | $200.25 |
| SEW GOOD | | | | | | | | | $980.00 | | | | | | | $980.00 | $147.00 |
| SEN Graphics, Inc. | | | | | | | | | $556.00 | | | | | | | $556.00 | $83.40 |
| Sedgwick Claims Management | | | | | | | | | $14.00 | | | | | | | $14.00 | $2.10 |
| Scottsdale Fashion Square LLC | 32 | 3/27/22 | $27,270.76 | | | $148,006.67 | | | $116,909.00 | CUD | | | $27,270.76 | | | $148,006.67 | $22,201.00 |
| SCM | | | | | | | | | $5,441.00 | | | | | | | $5,441.00 | $816.15 |
| SCHINDLER ELEVATOR CORPORATION | | | | | | | | | $3,241.00 | | | | | | | $3,241.00 | $486.15 |
| Schaefer Trans. Inc. | | | | | | | | | $17,780.00 | | | | | | | $17,780.00 | $2,667.00 |
| SAMSON MANAGEMENT CORP. | | | | | | | | | $1,343,149.00 | | | | | | | $1,343,149.00 | $201,472.35 |
| RUSSIAN BAZAAR | | | | | | | | | $83.00 | | | | | | | $83.00 | $12.45 |
| Runway Waiters | | | | | | | | | $1,083.00 | | | | | | | $1,083.00 | $162.45 |
| Reliable Products Supply | | | | | | | | | $363.00 | | | | | | | $363.00 | $54.45 |
| REGENCY ENTERPRISES INC | | | | | | | | | $17,167.00 | | | | | | | $17,167.00 | $2,575.05 |
| RAVE FABICARE INC. | | | | | | | | | $188.00 | | | | | | | $188.00 | $28.20 |
| Ralph's Sewing and Vacuum | | | | | | | | | $636.00 | | | | | | | $636.00 | $95.40 |
| QSCS OF NY, INC. | | | | | | | | | $945.00 | | | | | | | $945.00 | $141.75 |
| Pyke Mechanical Inc. | | | | | | | | | $650.00 | | | | | | | $650.00 | $97.50 |
| Premium Outlet Partners LP | 3 | 1/28/22 | $5,328.85 | | | $841,749.01 | | | $102,433.00 | | | | $5,328.85 | | | $841,749.01 | $126,262.35 |
| PITNEY BOWES PURCHASE POWER | | | | | | | | | $4,270.00 | | | | | | | $4,270.00 | $640.50 |
| PITNEY BOWES GLOBAL | | | | | | | | | $828.00 | | | | | | | $828.00 | $124.20 |
| PALM BEACH FIRE RESCUE | | | | | | | | | $121.00 | | | | | | | $121.00 | $18.15 |
| PALM BEACH COUNTY | | | | | | | | | $180.00 | | | | | | | $180.00 | $27.00 |
| Orkin Pest Control | | | | | | | | | $353.00 | | | | | | | $353.00 | $52.95 |
| Orkin , 875- N Houston Comm | | | | | | | | | $354.00 | | | | | | | $354.00 | $53.10 |
| ORKIN | | | | | | | | | $545.00 | | | | | | | $545.00 | $81.75 |
| ORACLE ELEVATOR COMPANY | | | | | | | | | $700.00 | | | | | | | $700.00 | $105.00 |
| OPTUS INC | | | | | | | | | $770.00 | | | | | | | $770.00 | $115.50 |
| Optimum | | | | | | | | | $1,390.00 | | | | | | | $1,390.00 | $208.50 |
| Oprandy's Fire & Safety Equipment | | | | | | | | | $44.00 | | | | | | | $44.00 | $6.60 |
| Opentext | 19 | 3/2/22 | | | | $3,164.50 | | | $4,481.00 | | | | | | | $4,481.00 | $672.15 |
| ONE TIME VENDOR_Customer refund_ C.ICHIK | | | | | | | | | $876.00 | | | | | | | $876.00 | $131.40 |
| One Image Protection INC | | | | | | | | | $1,098.00 | | | | | | | $1,098.00 | $164.70 |
| OCTAVIO PARRA | | | | | | | | | $165.00 | | | | | | | $165.00 | $24.75 |

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NVEnergy | | | | | | | | | $251.00 | | | | | | | $251.00 | $37.65 |
| Nestle Waters  North America | | | | | | | | | $275.00 | | | | | | | $275.00 | $41.25 |
| Mutual Security Services, Inc | | | | | | | | | $500.00 | | | | | | | $500.00 | $75.00 |
| MUSE MANAGEMENT, INC | | | | | | | | | $31,690.00 | | | | | | | $31,690.00 | $4,753.50 |
| MR HANDYMAN OF CALIFORNIA | | | | | | | | | $1,035.00 | | | | | | | $1,035.00 | $155.25 |
| Mood Media | | | | | | | | | $4,899.00 | | | | | | | $4,899.00 | $734.85 |
| Monika Arden | | | | | | | | | $2,421.00 | | | | | | | $2,421.00 | $363.15 |
| Modern Luxury | | | | | | | | | $467.00 | | | | | | | $467.00 | $70.05 |
| MILLENIUM SIGNS & DISPLAY, INC. | | | | | | | | | $1,456.00 | | | | | | | $1,456.00 | $218.40 |
| MI9 Retail - Raymark ULC | | | | | | | | | $12,227.00 | | | | | | | $12,227.00 | $1,834.05 |
| METROPOLITAN TELECOMM. | | | | | | | | | $65,087.00 | | | | | | | $65,087.00 | $9,763.05 |
| Melanie Theodoridis | | | | | | | | | $212.00 | | | | | | | $212.00 | $31.80 |
| Master Touch Cleaners, Inc. | | | | | | | | | $990.00 | | | | | | | $990.00 | $148.50 |
| Master Mechanical Services, Inc | | | | | | | | | $361.00 | | | | | | | $361.00 | $54.15 |
| MARY TANABE | | | | | | | | | $300.00 | | | | | | | $300.00 | $45.00 |
| Mark-Alan Harmon | | | | | | | | | $70.00 | | | | | | | $70.00 | $10.50 |
| Margaret's Cleaners | 23 | 3/16/22 | | | | $4,433.73 | | | $2,609.00 | | | | | | | $2,609.00 | $391.35 |
| Mangia 57th Inc. | | | | | | | | | $341.00 | | | | | | | $341.00 | $51.15 |
| Madeline Ungar | | | | | | | | | $653.00 | | | | | | | $653.00 | $97.95 |
| Lea Journo Salon | | | | | | | | | $430.00 | | | | | | | $430.00 | $64.50 |
| Las Vegas North Outlets, LLC | 5 | 1/28/22 | $3,387.18 | | | $750,769.87 | | | $266,918.00 | CUD | | | $3,387.18 | | | $750,769.87 | $112,615.48 |
| LA MODELS | | | | | | | | | $227.00 | | | | | | | $227.00 | $34.05 |
| KUCKER MARINO WINIARSKY & BITTENS, | | | | | | | | | $3,975.00 | | | | | | | $3,975.00 | $596.25 |
| Kim Murphy | | | | | | | | | $226.00 | | | | | | | $226.00 | $33.90 |
| Keter Environmental Services, Inc | | | | | | | | | $1,609.00 | | | | | | | $1,609.00 | $241.35 |
| Joyce A. Pence | | | | | | | | | $174.00 | | | | | | | $174.00 | $26.10 |
| Johnson Controls Security Solutions | 36 | 3/29/22 | | | | $59,041.10 | | | $55,742.00 | | | | | | | $55,742.00 | $8,361.30 |
| JOHNSON CONTROLS FIRE PROTECTION LP | 35 | 3/29/22 | | | | $569.46 | | | $514.00 | | | | | | | $514.00 | $77.10 |
| Jive Communications, Inc | | | | | | | | | $1,404.00 | | | | | | | $1,404.00 | $210.60 |
| Jana Cori Coke | | | | | | | | | $387.00 | | | | | | | $387.00 | $58.05 |
| J.D Coins Inc. | | | | | | | | | $761.00 | | | | | | | $761.00 | $114.15 |
| INTERNATIONAL SILKS & WOOLENS | | | | | | | | | $167.00 | | | | | | | $167.00 | $25.05 |
| Inter Trade Systems Inc | | | | | | | | | $321.00 | | | | | | | $321.00 | $48.15 |
| INGENIEURB RO RUCKPAUL & | | | | | | | | | $389.00 | | | | | | | $389.00 | $58.35 |
| IMPERIAL NETWORK GROUP INC | | | | | | | | | $1,287.00 | | | | | | | $1,287.00 | $193.05 |
| IMPERIAL COMMERCIAL CLEANING | | | | | | | | | $708.00 | | | | | | | $708.00 | $106.20 |
| HWS Informationssysteme GmbH | | | | | | | | | $4,531.00 | | | | | | | $4,531.00 | $679.65 |
| Hospitality Services, Inc | | | | | | | | | $3,831.00 | | | | | | | $3,831.00 | $574.65 |
| Hedy Bentel | | | | | | | | | $1,055.00 | | | | | | | $1,055.00 | $158.25 |
| HAWAII MEDICAL SERVICE ASSOCIATION | | | | | | | | | $4,575.00 | | | | | | | $4,575.00 | $686.25 |
| HAIG SERVICE CORPORATION | | | | | | | | | $310.00 | | | | | | | $310.00 | $46.50 |
| Green Peak Building Services, Inc | | | | | | | | | $2,302.00 | | | | | | | $2,302.00 | $345.30 |
| GRANT MCCARTHY GROUP LLC | | | | | | | | | $11,701.00 | | | | | | | $11,701.00 | $1,755.15 |
| Granite Telecommunications | | | | | | | | | $2,473.00 | | | | | | | $2,473.00 | $370.95 |
| Global Facility Management & Constr | | | | | | | | | $25,000.00 | | | | | | | $25,000.00 | $3,750.00 |
| General Information Solutions, LLC | | | | | | | | | $22.00 | | | | | | | $22.00 | $3.30 |
| Fusion Cloud Company, LLC | | | | | | | | | $100.00 | | | | | | | $100.00 | $15.00 |
| Funaro & co., P.C. | | | | | | | | | $38,565.00 | CD | | | | | | $0.00 | $0.00 |
| Frontier Communications | | | | | | | | | $820.00 | | | | | | | $820.00 | $123.00 |
| Freecom Luxury Art Book, LLC | | | | | | | | | $6,955.00 | | | | | | | $6,955.00 | $1,043.25 |
| FRACHT FWO,INC | | | | | | | | | $615.00 | | | | | | | $615.00 | $92.25 |
| FLORIDA POWER & LIGHT | 1 | 1/21/22 | | | | $2,887.17 | | | $1,005.00 | | | | | | | $2,887.17 | $433.08 |
| Florida Pest Control | | | | | | | | | $502.00 | | | | | | | $502.00 | $75.30 |
| FASHION LOGISTICS, INC. | | | | | | | | | $15,867.00 | | | | | | | $15,867.00 | $2,380.05 |
| FANDL, LLC | | | | | | | | | $1,066.00 | | | | | | | $1,066.00 | $159.90 |
| Express Parking, Management, Inc. | | | | | | | | | $599.00 | | | | | | | $599.00 | $89.85 |
| EXPRESS FIRE PROTECTION | | | | | | | | | $240.00 | | | | | | | $240.00 | $36.00 |
| Elaine Cohen | | | | | | | | | $877.00 | | | | | | | $877.00 | $131.55 |
| El Paseo Collection North | | | | | | | | | $6,554.00 | CUD | | | | | | $0.00 | $0.00 |
| Eddie Love (Petty Cash) | | | | | | | | | $60.00 | | | | | | | $60.00 | $9.00 |
| Dutch Express, LLC | | | | | | | | | $25.00 | | | | | | | $25.00 | $3.75 |
| Direct Construction Company Limited | 18 | 3/2/22 | | | | $3,600.92 | | | $1,651.00 | | | | | | | $3,600.92 | $540.14 |
| Cushman and Wakefield | | | | | | | | | $43,151.00 | CD | | | | | | $43,151.00 | $6,472.65 |
| CT CORPORATION SYSTEM | | | | | | | | | $1,952.00 | | | | | | | $1,952.00 | $292.80 |
| Crown Castle Fiber LLC | | | | | | | | | $15,910.00 | | | | | | | $15,910.00 | $2,386.50 |
| Country Club Cleaners | | | | | | | | | $380.00 | | | | | | | $380.00 | $57.00 |
| CONDE NAST PUBLICATIONS | | | | | | | | | $23,300.00 | | | | | | | $23,300.00 | $3,495.00 |

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Concur Technologies Inc | | | | | | | | | $2,430.00 | | | | | | | $2,430.00 | $364.50 |
| Computoq, Inc. | | | | | | | | | $1,411.00 | | | | | | | $1,411.00 | $211.65 |
| Computoq GmbH | | | | | | | | | $21.00 | | | | | | | $21.00 | $3.15 |
| ComplyRight, Inc. dba HR Direct | | | | | | | | | $617.00 | | | | | | | $617.00 | $92.55 |
| COMMONWEALTH EDISON | | | | | | | | | $1,776.00 | | | | | | | $1,776.00 | $266.40 |
| Comcast Business | | | | | | | | | $110.00 | | | | | | | $110.00 | $16.50 |
| Comcast Business | | | | | | | | | $125.00 | | | | | | | $125.00 | $18.75 |
| CMS MECHANICAL SERVICE CO. | | | | | | | | | $1,414.00 | | | | | | | $1,414.00 | $212.10 |
| CLEANER'S SUPPLYS INC | | | | | | | | | $81.00 | | | | | | | $81.00 | $12.15 |
| CITY OF WEST PALM BEACH | | | | | | | | | $388.00 | | | | | | | $388.00 | $58.20 |
| City of Beverly Hills | | | | | | | | | $275.00 | | | | | | | $275.00 | $41.25 |
| CITY EXPEDITOR, INC. | | | | | | | | | $755.00 | | | | | | | $755.00 | $113.25 |
| CIT | 40 | 5/9/22 | | | | $49,170.37 | | | $14,896.00 | | Late | | | | | $49,170.37 | $7,375.56 |
| Cision US, I | | | | | | | | | $6,694.00 | | | | | | | $6,694.00 | $1,004.10 |
| Cisco Systems Capital Corporation | | | | | | | | | $31,960.00 | | | | | | | $31,960.00 | $4,794.00 |
| Chicago Oak Street Partners, LLC | 20 | 3/12/22 | | | | $837,026.18 | | | $554,764.00 | CUD | | | | | | $837,026.18 | $125,553.93 |
| CHETRIT 1412 LLC | 16 | 2/21/22 | | | | $250,000.00 | | | $250,000.00 | CU | | | | | | $250,000.00 | $37,500.00 |
| CenturyLink | 8 | 2/3/22 | | | | $700.25 | | | $689.00 | | | | | | | $700.25 | $105.04 |
| Carlton Technologies, Inc | | | | | | | | | $269.00 | | | | | | | $269.00 | $40.35 |
| BUREAU OF ELEVATOR SAFETY | | | | | | | | | $274.00 | | | | | | | $274.00 | $41.10 |
| Borden Ladner Gervais, LLP | | | | | | | | | $1,480.00 | | | | | | | $1,480.00 | $222.00 |
| BOGUSLAW SANKOWSKI | | | | | | | | | $941.00 | | | | | | | $941.00 | $141.15 |
| Blue Print AG | | | | | | | | | $598.00 | | | | | | | $598.00 | $89.70 |
| Bal Harbour Shops LLLP | | | | | | | | | $81,623.00 | CUD | | | | | | $0.00 | $0.00 |
| AVALARA INC | | | | | | | | | $4,649.00 | | | | | | | $4,649.00 | $697.35 |
| Atlantic Broadband | | | | | | | | | $78.00 | | | | | | | $78.00 | $11.70 |
| Atlantic Broadband | | | | | | | | | $733.00 | | | | | | | $733.00 | $109.95 |
| ASA Cleaning Services Corp | | | | | | | | | $22,255.00 | | | | | | | $22,255.00 | $3,338.25 |
| Archive Systems, Inc. | | | | | | | | | $11,515.00 | | | | | | | $11,515.00 | $1,727.25 |
| Angel Tailor | | | | | | | | | $152.00 | | | | | | | $152.00 | $22.80 |
| AMERICAN EXPRESS | 13 | | | | | $21,674.03 | | | $59,401.00 | D | | | | | | $21,674.03 | $3,251.10 |
| American Commercial Equities Three, | | | | | | | | | $29,341.00 | CUD | | | | | | $0.00 | $0.00 |
| Amanda Huang | | | | | | | | | $55.00 | | | | | | | $55.00 | $8.25 |
| ALPINE BUSINESS SYSTEMS | | | | | | | | | $10,988.00 | | | | | | | $10,988.00 | $1,648.20 |
| Alliant Insurance Services, Inc. | | | | | | | | | $348,375.00 | | | | | | | $348,375.00 | $52,256.25 |
| Alliance Pro Services LLC | | | | | | | | | $278.00 | | | | | | | $278.00 | $41.70 |
| ALA MOANA CENTER ASSOCIATION | | | | | | | | | $1,198.00 | CUD | | | | | | $0.00 | $0.00 |
| Ala Moana Anchor Acquisition, LLC | 14 | 2/18/22 | $7,220.63 | | | $1,382,622.26 | | | $264,681.00 | CUD | | | $7,220.63 | | | $1,382,622.26 | $207,393.34 |
| ABALON EXTERMINATING CO. INC. | | | | | | | | | $450.00 | | | | | | | $450.00 | $67.50 |
| [Beverly Hills Wilshire Hotel] | 15 | 2/18/22 | | | | $2,441,373.90 | | | $2,546,815.33 | CUD | | | | | | $2,441,373.90 | $366,206.09 |
| 717 GFC LLC | 24 | 3/23/22 | | | | $5,108,857.92 | | | $5,055,143.00 | CUD | | | | | | $5,108,857.92 | $766,328.69 |
| 693 Fifth Owner LLC | | | | | | | | | $1,641.00 | CUD | | | | | | $0.00 | $0.00 |
| Harris County Water Control | 6 | 1/31/22 | | $1,546.80 | | | | | | | | | | $1,546.80 | | $0.00 | $0.00 |
| Harris County Municipal Utility District | 7 | 1/31/22 | | $8,204.13 | | | | | | | | | | $8,204.13 | | $0.00 | $0.00 |
| The Retail Property Trust | 10 | 3/10/22 | | | | $440,000.00 | | | | | | | | | | $440,000.00 | $66,000.00 |
| Sawgrass Mills Phase IV LLC | 11 | 2/10/22 | $4,205.33 | | | $543,937.97 | | | | | | | $4,205.33 | | | $543,937.97 | $81,590.70 |
| Premium Outlet Partners LP | 12 | 2/10/22 | $5,326.37 | | | $417,439.45 | | | | | | | $5,326.37 | | | $417,439.45 | $62,615.92 |
| MI9 Retail – Raymark ULC | 21A | 3/15/22 | | | | $266.61 | | | | | | | | | | $266.61 | $39.99 |
| Fedex Corporate Services, Inc | 22 | 3/16/22 | | | | $2,677.50 | | | | | | | | | | $2,677.50 | $401.63 |
| Great Northern Insurance | 25 | 3/24/22 | | | | $211,141.65 | | | | | | | | | | $211,141.65 | $31,671.25 |
| Chubb Insurance Company | 26 | 3/24/22 | | | | $20,576.73 | | | | | | | | | | $20,576.73 | $3,086.51 |
| Vigilant Insurance Company | 27 | 3/24/22 | | | | $67,260.00 | | | | | | | | | | $67,260.00 | $10,089.00 |
| Federal Insurance Company | 28 | 3/24/22 | | | | $1,788.23 | | | | | | | | | | $1,788.23 | $268.23 |
| Stephanie Buono | 29 | 3/24/22 | | | | $40,411.80 | | | $0.00 | CUD | | | | | | $40,411.80 | $6,061.77 |
| the Neiman Marcus Group | 30 | 3/24/22 | | $84,533.42 | | $230,085.72 | | | | | | | | | | $230,085.72 | $34,512.86 |
| Manhattan Telecommunications Corporation/MetTel | 31 | 3/25/22 | | | | $86,806.03 | | | | | | | | | | $86,806.03 | $13,020.90 |
| United Parcel Service | 33 | 3/28/22 | | | | $235,709.96 | | | | | | | | | | $235,709.96 | $35,356.49 |
| Suzanne Humbert | 37 | 3/29/22 | | | | $300,960.00 | | | $0.00 | CUD | | | | | | $300,960.00 | $45,144.00 |
| Rebecca Castillo | | | | | | | | | $0.00 | CUD | | | | | | $0.00 | $0.00 |
| NYC Department of Finance | 39 | 5/2/22 | | | $904,777.63 | | | $349,209.25 | $68,819.41 | C | Under Investigation | | | | $349,209.25 | $68,819.41 | $10,332.91 |
| Ann Marie Di Ionna | | | | | | | | | $99,915.19 | | | | | | | $99,915.19 | $14,987.28 |
| Escada Shared Services Ltd. | | | | | | | | | $32,000.00 | | | | | | | $0.00 | $0.00 |
| Dunnwright Services Inc. | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 |
| Site Crew Inc. | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 |
| Worth-Pondfield LLC | 34A | 3/28/22 | $43,666.35 | | | $1,462,737.72 | | | $1,343,149.00 | CUD | | | $43,666.35 | | | $1,462,737.72 | $219,410.66 |

| | | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout |
| IDK Cooling Corp. | 38 | 4/14/22 | | | | $2,041.41 | | | | | Late | | | | | $0.00 | $0.00 |
| | | | | | | | | | | | | | | | | | |
| TOTAL | | | | | | $15,982,714.51 | | | $13,818,133.93 | | | | $471,505.47 | $21,815,446.71 | $359,046.72 | $18,514,329.91 | $2,777,149.49 |
| | | | | | | | | | | | | | | | | | 15% recovery |

**Exhibit 3**

**Escada America LLC**
**3 Year Cash Forecast**
$ in Thousands, Except per Unit Data

| | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | YE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fcst / Act | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST |
| Projection Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 8 |
| Month / Year Ending | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Jul-23 |
| **1 Beginning Operating Cash** | $1,700 | $253 | $272 | $279 | $299 | $203 | $222 | $237 | $484 | $500 | $522 | $1,824 | $1,700 |
| 2 | | | | | | | | | | | | | |
| 3 ( + ) Store Receipts | $156 | $153 | $156 | $153 | $156 | $156 | $146 | $156 | $153 | $156 | $153 | $156 | $1,851 |
| 4 ( + ) Other / Liquidation Receipts | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| 5 ( + ) Issuance of Exit Financing | 150 | - | - | - | - | - | - | - | - | - | - | - | 150 |
| 6 ( + ) Release of Bond LC (1) | - | - | - | - | - | - | - | 342 | - | - | 1,400 | - | 1,742 |
| 5 ( + ) 3rd Party Sublease Contribution | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 420 |
| **6 Total Receipts & Income** | $361 | $208 | $211 | $208 | $211 | $211 | $201 | $553 | $208 | $211 | $1,608 | $211 | $4,400 |
| 7 | | | | | | | | | | | | | |
| 8 ( - ) Consignment Fee (to be Accrued) (2) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 9 ( - ) HQ Personnel | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (480) |
| 10 ( - ) Store Personnel | (33) | (32) | (33) | (32) | (33) | (33) | (31) | (33) | (32) | (33) | (32) | (33) | (389) |
| 11 ( - ) Store Associate Retention Bonus | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (12) |
| 12 ( - ) Selling and Shipping | (5) | (5) | (5) | (5) | (5) | (5) | (4) | (5) | (5) | (5) | (5) | (5) | (56) |
| 13 ( - ) Store Rent | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (180) |
| 14 ( - ) HQ Rent | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (420) |
| 15 ( - ) Financial Charges | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (28) |
| 16 ( - ) Benefits | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (420) |
| 17 ( - ) Misc. (Facilities & Other) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (46) |
| 18 ( - ) Utilities, Telephones, Networks | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (60) |
| 19 ( - ) Sales Taxes | (15) | (15) | (15) | (15) | (15) | (15) | (14) | (15) | (15) | (15) | (15) | (15) | (178) |
| 20 ( - ) Interest Expense on Exit Financing | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **21 Total Operating Disbursements** | ($190) | ($188) | ($190) | ($188) | ($190) | ($190) | ($186) | ($190) | ($188) | ($190) | ($188) | ($190) | ($2,268) |
| 22 | | | | | | | | | | | | | |
| **23 Net Cash Flow Before Plan Expenses** | $172 | $19 | $22 | $19 | $22 | $22 | $15 | $363 | $19 | $22 | $1,419 | $22 | $2,135 |
| 24 | | | | | | | | | | | | | |
| 25 ( - ) LNBYG (Debtor's Counsel) | (125) | - | - | - | - | - | - | - | - | - | - | - | (125) |
| 26 ( - ) Gregory Jones (Sub V Trustee) | (20) | - | - | - | - | - | - | - | - | - | - | - | (20) |
| 27 ( - ) HCVT (Debtor's Accountant) | (25) | - | - | - | - | - | - | - | - | - | - | - | (25) |
| 28 ( - ) Committee Counsel | (30) | - | - | - | - | - | - | - | - | - | - | - | (30) |
| 29 ( - ) US Trustee Quarterly Fees | (8) | - | (14) | - | - | (3) | - | - | (3) | - | - | (3) | (31) |
| 30 ( - ) County of Los Angeles | (10) | - | - | - | - | - | - | - | - | - | - | - | (10) |
| 31 ( - ) CA Franchise Tax Board | (1) | - | - | - | - | - | - | - | - | - | - | - | (1) |
| 32 ( - ) IRS | (1) | - | - | - | - | - | - | - | - | - | - | - | (1) |
| 33 ( - ) NYC Dept. of Finance | - | - | - | - | (117) | - | - | (117) | - | - | (117) | - | (350) |
| 34 ( - ) Class I Eden Roc LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 35 ( - ) Class II Mega International LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 36 ( - ) Class III Escada Sourcing and Production LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 37 ( - ) Class IV Escada Sourcing and Production LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 38 ( - ) Class V General Unsecured Creditors (3) | (1,400) | - | - | - | - | - | - | - | - | - | - | (1,370) | (2,770) |
| **39 Ending Operating Cash** | $253 | $272 | $279 | $299 | $203 | $222 | $237 | $484 | $500 | $522 | $1,824 | $473 | $473 |
| 40 | | | | | | | | | | | | | |
| **41 Memo: Unpaid Consignment Fees to Escada Sourcing and Production LLC (1)** | $26 | $52 | $79 | $105 | $131 | $158 | $183 | $209 | $235 | $261 | $287 | $314 | $314 |

44 (1) If the Bond in the amount of $1.4M is recovered sooner, proceeds will be distributed to the Class V General Unsecured Creditors within 30 days of receipt.

44 (2) Assumes 15% of Retail and Other / Liquidation Receipts.

45 (3) Primary source of this payment is expected from bond recovery and will to be paid to Class 5 within 30 days of receipt, regardless of when recovered, but, under any circumstance, no later than July 31, 2023.

**Exhibit 4**

**EXHIBIT 4**

     The Settlement Agreement between the Debtor and its estate, on the one hand, and Escada Sourcing and Production LLC ("ESP") on the other hand is under discussion and subject to final documentation.  The key terms of the Settlement Agreement are set forth in the Plan, and include:

     On the Effective Date, Escada Sourcing and Production LLC ("Exit Financier") will contribute exit financing in the amount of $150,000 subject to the terms of the Settlement Agreement. The Settlement Agreement shall provide, in part, that the Exit Financier will (i) provide a five-year, zero-interest, $150,000 loan to the Debtor, (ii) agree to subordinate its claim for post-petition priority consignment fees, (iii) subordinate its claims under Classes 3 and 4 to those of Class 5 to the extent provided for in the Debtor's Plan and (iv) vote in favor of the Debtor's Plan, in return for which the Debtor and the Estate shall irrevocably grant the Exit Financier and its wholly-owned subsidiary, Escada Online GmbH, a complete release of claims, including, without limitation, for any preference or fraudulent transfers or avoidance action claims.

     If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtor's chapter 11 estate that has not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case, and, the Bond Lien shall remain in place, and the Settlement shall remain in place.

     The foregoing is without prejudice to revision during ongoing settlement discussions.

**Exhibit 5**

Intentionally Omitted

**Exhibit 6**

**Exhibit 6**

| Landlord or Counterparty | Real Property Address (if Lease) | Assume or Reject | Cure Amount |
|---|---|---|---|
| Worth-Pondfield LLC c/o Eastgold Holdings LLC | 222 Worth Avenue, Palm Beach, Florida | TBD | TBD |
| 693 Fifth Owner LLC | 693 Fifth Avenue 6th Floor, New York, NY | TBD | TBD |
| Scottsdale Fashion Square LLC | 6900 E Camelback Rd, Scottsdale, AZ 85251 | TBD | TBD |
| Escada Sourcing and Production LLC | N/A (Consignment Agreement) | TBD | TBD |

The Debtor uses the "Escada" brand subject to a licensing agreement, which the Debtor believes is not an executory contract. If the Debtor's Plan is confirmed, then the Reorganized Debtor will continue to use the Escada brand.

**Exhibit 7**

Intentionally Omitted

**Exhibit 8**

Intentionally Omitted

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled **DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION, DATED MAY 12, 2022**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 12, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On **May 12, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 12, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **May 12, 2022** | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

34

**2:22-bk-10266-BB Notice will be electronically mailed to:**

Dustin P Branch on behalf of Creditor The Macerich Company
branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com

John C Cannizzaro on behalf of Creditor 717 GFC LLC
john.cannizzaro@icemiller.com, julia.yankula@icemiller.com

Michael J Darlow on behalf of Creditor Harris County Municipal Utility District #358
mdarlow@pbfcm.com, tpope@pbfcm.com

Caroline Djang on behalf of Interested Party Caroline R. Djang
caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com

Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)
eryk.r.escobar@usdoj.gov

John-Patrick M Fritz on behalf of Debtor Escada America, LLC
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

William W Huckins on behalf of Creditor Brookfield Properties Retail, Inc.
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

William W Huckins on behalf of Creditor SIMON PROPERTY GROUP INC
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

Gregory Kent Jones (TR)
gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com

Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC
mkogan@koganlawfirm.com

Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.
ggpbk@ggp.com

Lindsey L Smith on behalf of Debtor Escada America, LLC
lls@lnbyg.com, lls@ecf.inforuptcy.com

Ronald M Tucker, Esq on behalf of Creditor SIMON PROPERTY GROUP INC
rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov