1  JOHN-PATRICK M.. FRITZ (SBN 245240)
   LEVENE, NEALE, BENDER,
2  YOO & GOLUBCHIK L.L.P.
   2818 La Cienega Avenue
3  Los Angeles, California 90034
   Telephone:  (310) 229-1234
4  Facsimile:  (310) 229-1244
   Email:  JPF@LNBYG.COM
5
   Attorneys for Chapter 11 Debtor
6  and Debtor in Possession

7

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9                 LOS ANGELES DIVISION

10                                    ) Case No.: 2:22-bk-10266-BB
                                      )
11  In re:                            )
                                      ) Chapter 11 Case
12                                    )
    ESCADA AMERICA, LLC,              ) DISCLOSURE          STATEMENT
13                                    ) DESCRIBING DEBTOR'S CHAPTER
           Debtor and Debtor in Possession.  ) 11   PLAN   OF   REORGANIZATION,
14                                    ) DATED MAY 12, 2022
                                      )
15                                    ) Hearing  on  Adequacy  of  Disclosure
                                      ) Statement:
16                                    ) Date:  TBD
                                      ) Time: TBD
17                                    )
18                                    ) Hearing on Plan Confirmation:
                                      ) Date:  TBD
19                                    ) Time: TBD
                                      )
20                                    ) Place:  Courtroom 1539
21                                    )          255 East Temple Street
                                      )          Los Angeles, CA 90012
22                                    )
23                                    ) Hearing to be held in-person and by
                                      ) videoconference
24                                    ) Government Zoom, see Court's
                                      ) website under "Telephonic Instructions" for
25                                    ) more details:
                                      ) https://www.cacb.uscourts.gov/judges/honor
26  _____) able-sheri-bluebond

27

28

                                    1

# TABLE OF CONTENTS

**I. INTRODUCTION** ................................................................................................... **2**

    **A. Purpose of this Disclosure Statement** ................................................ **3**

    **B. Deadline for Voting and Objecting; Date of Plan Confirmation Hearing** ........ **4**

    **C. Identity of Persons to Contact for More Information Regarding the Plan** ...... **5**

    **D. Disclaimer** ................................................................................................ **5**

**II. BACKGROUND** ................................................................................................ **5**

    **A. Brief History of the Business Operations of the Debtor** ..................... **5**

    **B. Debtor's Secured Debt Structure.** .................................................. **8**

    **C. The Debtor's Assets** ................................................................... **9**

    **D. Events During the Subchapter V Stage of the Bankruptcy
       Case and Formulation of a Subchapter V Plan** ........................... **10**

    **E. Administrative Matters** .............................................................. **12**

**III. PLAN SUMMARY** ......................................................................................... **15**

    **A. Summary of Plan Classes** ........................................................... **15**

    **B. What Creditors Will Receive Under the Plan** ............................... **15**

        **1. Unclassified Claims** ........................................................... **15**

        **2. Classified Claims and Interests** ........................................ **19**

    **C. Means of Effectuating and Implementing the Plan** ..................... **33**

        **1. Funding for the Plan** ......................................................... **33**

        **2. Composition of the Debtor After the Effective Date** ......... **35**

        **3. Post-Confirmation Management and Compensation.** .......... 35

        **4. Disbursing Agent** .............................................................. **35**

        **5. Objections to Claims** ......................................................... **35**

        **6. Avoidance Actions, Strong Arm Powers, and Causes of Action** .......... **36**

        **7. Employment of Professionals by the Reorganized Debtor
          and Payment of Professional Fees and Expenses After the Effective Date** 37

**8. Exemption from Transfer Taxes**................................................**37**

**9. Distributions to Be Made Pursuant to the Plan** .....................................**37**

**10. Exculpations and Releases** ..........................................**38**

**11. Injunctions** ...................................................**38**

**12. Executory Contracts and Unexpired Leases.** .....................................39

**13. Changes in Rates Subject to Regulatory Commission Approval**........**40**

**14. Retention of Jurisdiction** .............................................**40**

**IV. TAX CONSEQUENCES OF THE PLAN** .....................................**42**

**V. CONFIRMATION REQUIREMENTS AND PROCEDURES.** ..............................**44**

**A. Who May Vote or Object.**...................................................45

**B. Who May Vote to Accept/Reject the Plan** .....................................**45**

**C. What Is an Allowed Claim/Interest** ..........................................**45**

**D. What Is an Impaired Claim/Interest** ..........................................**45**

**E. Who Is Not Entitled to Vote**...................................................**47**

**F. Who Can Vote in More Than One Class** .....................................**47**

**G. Votes Necessary to Confirm the Plan.** ..........................................47

**H. Votes Necessary for a Class to Accept the Plan.** .............................47

**I. Treatment of Non-accepting Classes.** ..........................................48

**J. Request for Confirmation Despite Nonacceptance by Impaired Class(es).**.....48

**K. Liquidation Analysis**...................................................48

**L. Feasibility**...................................................50

**VI.  RISK FACTORS REGARDING THE PLAN** ...................................**52**

**VII. EFFECT OF CONFIRMATION OF THE PLAN** ................................**52**

**A. Discharge.**...................................................**52**

**B. Modification of the Plan.**.........................................................................................**52**

**C. Post-Confirmation Status Reports.**............................................................... 53

**D. Post-Confirmation Operations.**...................................................................... 54

**E. Post-Confirmation Conversion/Dismissal.** ...............................................**53**

**F. Final Decree**....................................................................................................**54**

## I.    <u>INTRODUCTION</u>

Escada America, LLC, a Delaware limited liability company (the "<u>Debtor</u>"), is the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>") bearing case number 2:22-bk-10266-BB.  The Debtor filed a voluntary petition under chapter 11 of 11 U.S.C. §§ 101 *et seq.* (the "<u>Bankruptcy Code</u>") and elected subchapter V on January 18, 2022 (the "<u>Petition Date</u>").  On May 4, 2022, the Debtor amended its petition to un-elect subchapter V.  The Debtor is operating its business, managing its affairs, and administering its estate as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The United States Trustee (the "<u>UST</u>") appointed Gregory K. Jones, Esq. as the subchapter V trustee pursuant to 11 U.S.C. § 1183(a) for the duration of the Debtor's time in subchapter V, which ended on May 4, 2022.

**This document is the Disclosure Statement, which describes the Debtor's plan of reorganization (the "<u>Plan</u>").**

Chapter 11 allows debtors and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. The Plan is a reorganization plan proposed by the Debtor with substantial input from major non-insider unsecured creditors during the first three months of the case.  The effective date of the Plan (the "<u>Effective Date</u>") will be the first business day of the first month which is at least fifteen days following the date of entry of the Court order confirming the Plan (the "<u>Plan Confirmation Order</u>") and the satisfaction or waiver by the Debtor of all of the following conditions to the effectiveness of the Plan: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan shall have been executed and delivered by all parties to such documents, instruments and agreements.  The Debtor,

1  following the Effective Date, shall be referred to as the "Reorganized Debtor."

2  　　　The Reorganized Debtor will acquire all assets and assume all liabilities of the Debtor,
3  as restructured under the Plan.  The Reorganized Debtor will sign any reasonable documentation
4  as requested by creditors or required by law to effectuate the acquisition of assets and
5  assumption of liabilities under the Plan.

6  　　　**A.  Purpose of this Disclosure Statement**

7  　　　This Disclosure Statement summarizes what is in the Plan, and tells you certain
8  information relating to the Plan and the process the Court follows in determining whether or not
9  to confirm the Plan.

10  　　　**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**
11  **KNOW ABOUT:**

12  　　　**(1)　　WHO CAN VOTE OR OBJECT,**

13  　　　**(2)　　WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim**
14  **will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO**
15  **WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

16  　　　**(3)　　THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS**
17  **DURING ITS BANKRUPTCY CASE,**

18  　　　**(4)　　WHAT THINGS THE COURT WILL LOOK AT TO DECIDE**
19  **WHETHER OR NOT TO CONFIRM THE PLAN,**

20  　　　**(5)　　WHAT IS THE EFFECT OF CONFIRMATION, AND**

21  　　　**(6)　　WHETHER THE PLAN IS FEASIBLE.**

22  　　　This Disclosure Statement cannot tell you everything about your rights.  You should
23  consult your own lawyer to obtain more specific advice on how the Plan will affect you and
24  what is the best course of action for you.

25  　　　Be sure to read the Plan as well as this Disclosure Statement.  If there are any
26  inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will
27  govern.

28

1    The Bankruptcy Code requires a Disclosure Statement to contain "adequate information"

2  concerning the Plan.  The Bankruptcy Court has approved this document as an adequate

3  Disclosure Statement, containing enough information to enable parties affected by the Plan to

4  make an informed judgment about the Plan.

5    **B. Deadline for Voting and Objecting; Date of Plan Confirmation Hearing**

6    THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

7  DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE

8  NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS

9  THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS AND

10  INTEREST HOLDERS IN THESE CASES.

11    (i)  Time and Place of the Plan Confirmation Hearing

12    The hearing where the Court will determine whether or not to confirm the Plan (the

13  "Plan Confirmation Hearing") will take place on _____, 2022, at   : 0  .m., before

14  the Honorable Sheri Bluebond, United States Bankruptcy Judge for the Central District of

15  California, in Courtroom 1539 on the Fifteenth Floor of the United States Bankruptcy

16  Courthouse located at 255 East Temple Street, Los Angeles, California 90012.  However,

17  please check the Court's website and tentative rulings regarding whether you are permitted to

18  appear in-person or by zoom videoconference.  In the event of a zoom videoconference hearing,

19  the link information is provided on the first page of the Disclosure Statement.

20    (ii) Deadline for Voting for or Against the Plan

21    If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot

22  and return the ballot in the enclosed envelope or by email to J.P. Fritz, Esq., Levene, Neale,

23  Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034;

24  JPF@LNBYG.COM.

25    Your ballot must be **received** by **5:00 p.m., PST, on** _____**, 2022** or it will not be

26  counted.

27    (iii)    Deadline for Objecting to the Confirmation of the Plan

28

4

Objections to the confirmation of the Plan must be filed with the Court and served by same day service upon J.P. Fritz, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034, fax: (310) 229-1244, email: JPF@LNBYG.COM. Your objection must be filed and served by **_____, 2022**.

**C. Identity of Persons to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact J.P. Fritz, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034; phone: (310) 229-1234; fax: (310) 229-1244; email: JPF@LNBYG.COM.

**D. Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records, which, unless otherwise indicated, are unaudited. The information contained in this Disclosure Statement is provided by the Debtor. The Debtor represent that everything stated in this Disclosure Statement is true to the Debtor's best knowledge. The Bankruptcy Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.    BACKGROUND

**A. Brief History of the Business Operations of the Debtor**

1.    The Debtor was formed as a Delaware limited liability company in 2009.

2.    The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, and, as of the Petition Date, had ten (10) retail stores across seven (7) states in the United States, an office New York City, New York, and over 50 fulltime employees. The Debtor's retail business is generally known to the public and branded as "Escada." The Debtor uses the "Escada" brand via a license agreement and does not own any intellectual property rights in connection with the "Escada" brand.

3.    For several decades, Escada had been a global retail brand for high-fashion, high-end, ready-to-wear apparel for women, with an emphasis on high-fashion evening wear.

4.      On a global scale, Escada has various retail stores and subsidiaries in several countries in Europe, including but not limited to Spain, England and Germany.  Escada also has retail stores in North America, including the Debtor, which operates Escada's brick-and-mortar retail business only in the United States.

5.      By 2019, the Escada business on a global scale was in deep distress and could not continue.  At that time, the Debtor, together with other subsidiaries of Escada's then-parent company, was acquired by new ownership (which is now the current ownership and management).

6.      At the time of the acquisition of Debtor in 2019, Escada had 29 subsidiaries in 22 countries, all of which were financially distressed.

7.      In December 2019, the Debtor devised and began implementation of a plan to turn around the United States Escada retail business. Debtor believed that the business could be operated at a profit if fundamental business-model changes were implemented, such as overhauling the Debtor's technological suite and reducing speed to market by shifting supply chains from Asia to Europe.  Debtor's turnaround plan was also contingent upon Debtor's ability to sell product at Debtor's physical locations because ecommerce sales were minimal.

8.      However, what was not – and could not be – known at the time of the acquisition in November 2019, was that an unprecedented, global, catastrophic, and life-changing event with severe economic consequences was on the immediate horizon – the Covid-19 pandemic.

9.      In December 2019, just one month after the acquisition and just as the Debtor's transformation plan was being put into effect, the novel corona virus, known to us now as Covid-19, was quietly spreading in certain regions of Asia, unbeknownst to the rest of the world.

10.      From December 2019 through February 2020, the Debtor prepared to implement a number of business-model and operational changes with the goal of making the United States Escada retail business profitable.

11.      However, in March 2020, the world drastically changed, and set the Debtor on course for this current bankruptcy filing.

12.     On or about March 15, 2020, the City of Los Angeles declared a state of emergency with shelter in place orders. In the following days, many business and financial centers across the United States came to a near total standstill as the nation was gripped by the Covid-19 crisis.

13.     Between March 19, 2020, and April 1, 2020, thirty-eight states issued various shelter-at-home orders due to the Covid-19 pandemic.

14.     In the span of just 12 days, all fifteen (15) of the Debtor's then-active stores in eight (8) States were shuttered due to lockdown restrictions.

15.     Due to rising concerns about Covid-19 in February 2020 before the lockdowns, the U.S. stock market had plummeted, with the Dow Jones Industrial Average dropping from a high of nearly 30,000 to near 20,000 points, having a significant impact on general consumer behavior and sales in the luxury retail fashion industry.

16.     In late March 2020, the United States federal government responded with historic economic aid, passing the CARES Act and providing approximately $3 trillion of stimulus to the economy, which may have bolstered the stock market's recovery, but such economic stimulus did nothing to help retail businesses such as the Debtor, which rely on foot traffic from customer shopping in stores to generate sales.  Unfortunately, the Debtor was not eligible for any of these stimulus payments and was left with no support during these unprecedented times. In addition, as long as the pandemic lockdowns continued and stores remained closed, or shoppers refrained from shopping due to deep concerns about their health and safety, the Covid-19 recession for retail businesses would continue.

17.     From March 2020 to December 2021, the Debtor reduced its overhead expenses by an estimated $13,383,037.40 and entered into negotiations with its commercial landlords for rent relief at all store locations.

18.     The 21 months leading up to the Petition Date have been a marked state of tremendous uncertainty for the world's health and economic affairs brought on by an unprecedented pandemic, followed by an unprecedented recession, then unprecedented trillions of dollars of government aid, none of which has prevented the ongoing uncertainty posed by

Covid-19 variants and the attendant on-again-off-again lockdowns across the nation and around the world, all of which made business up through the Petition Date very difficult.

19.    The Debtor was able to negotiate many workouts with its various commercial landlords during 2020 and 2021, but other issues could not be resolved, including, but not limited to, some landlord negotiations that did not go well. It is because of the consequences of the Covid-19 pandemic that Debtor has been forced to file bankruptcy to restructure its business affairs.

20.    The Debtor was able to reach deals with landlords for three (3) of the then-fifteen (15) store locations, but the Debtor could not survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.

21.    Accordingly, the Debtor determined in its reasonable business judgment that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

22.    Within the first few days after the Petition Date, pursuant to a court-approved order, the Debtor rejected five unprofitable store leases, and, consequently, the Debtor is currently operating in five store locations: (i) Palm Beach, Florida, (ii) Scottsdale, Arizona, (iii) Beverly Hills, California, (iv) Costa Mesa, California, and (v) Chicago, Illinois. The Beverly Hills, Costa Mesa, and Chicago leases are in the name of a non-debtor affiliate, but all net profits are those stores are included in the Plan's income projections. The Debtor is also a tenant in a New York City office lease.

23.    Between the Petition Date and May 3, 2022, the Debtor engaged in substantial confidential settlement discussions, through counsel, with major unsecured non-insider creditors and the Subchapter V Trustee, to develop the Plan.

24.    The Debtor has proposed the Plan in good faith to reorganize its financial affairs, repay its creditors, and avoid a senseless and unnecessary liquidation.

**B. Debtor's Secured Debt Structure**

25.    The Debtor has three secured creditors (each a "Secured Creditor" and collectively, the "Secured Creditors").

26.     Eden Roc International, LLC ("Eden Roc") has a first-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $579,025.32.   Eden Roc is an affiliate of the Debtor, as defined in the Bankruptcy Code.  Eden Roc filed its UCC-1 financing statement on July 2, 2020.

27.     Mega International, LLC ("Mega") has a second-position security interest perfected by the filing of a UCC-1 on substantially all the Debtor's assets and a secured debt of approximately $1,506,953.  Mega is an affiliate of the Debtor, as defined in the Bankruptcy Code.  Mega filed its UCC-1 financing statement on July 2, 2020.  Mega filed a second UCC-1 financing statement on February 11, 2021.

28.     Escada Sourcing and Production, LLC ("ESP") is a true consignor, and substantially all of the Debtor's inventory is owned by ESP via a consignment agreement between the parties.  ESP recorded a UCC-1 to give the world notice of its consignment; additionally, ESP has a security interest on the proceeds and products of ESP's inventory.  ESP asserts a secured claim of approximately $675,361.39, for prepetition amounts owed but unpaid related to the sale of its consigned inventory.   ESP asserts a prepetition secured claim of approximately $19,044,356.07 related to debt acquired in an arms-length transaction with an independent third-party .  ESP is an affiliate of the Debtor, as defined in the Bankruptcy Code. ESP filed its UCC-1 February 11, 2021.

29.     During the bankruptcy case, Mega provided health insurance benefits to the Debtor's employees in the ordinary course of business for approximately $99,000, for which it did not receive reimbursement, and for which Mega asserts a post-petition administrative claim.

30.     During the bankruptcy case, the Debtor has incurred but not paid approximately $300,000 of consignment fees owing to ESP for the sale of ESP's consigned inventory, which the Debtor has not paid and for which ESP asserts a post-petition administrative claim.

**C.  The Debtor's Assets**

31.     The Debtor's main assets are its cash on hand, ongoing operations, and its import bonds.

32.    The Debtor's import bonds were set up as far back as 2012 and 2013, under prior ownership and management, and predating the consignment structure between the Debtor and ESP.    The import bond structure continued in its legacy format up into 2022 and after the Petition Date.    The Debtor recognized that it does not have a need for the import bonds.    A substantial asset supporting the Plan is the recovery of the collateral for these import bonds.

33.    As of the Petition Date, the Debtor holds prepetition bonds with total value of approximately $2.15 million, the collateral for which is cash in a money-market account to support letters of credit (the "Bond Collateral") with JP Morgan Chase Bank ("JPMC").    There are $408,065.65 in offsetting liabilities against the Bond Collateral, resulting in approximately $1,789,014.09[1] in expected bond proceeds (the "Net Bond Proceeds"). The Net Bond Proceeds stems from two separate bonds: (i) a $700,000 bond, secured by $1,400,000 in Bond Collateral (the "Western Surety Bond") and (ii) a $400,000 and a $350,000 bond, secured by $7500,000 in Bond Collateral, with $408,065.65 in offsetting liabilities (the "Lexon Bond"); and (iii) a 2% cushion in the JPMC account in the amount of approximately $47,079.74.

34.    The Debtor does not own the Escada brand or intellectual property related thereto, but uses it subject to a license.

35.    The Debtor does not own its inventory; ESP owns the inventory, and the Debtor sells it on consignment.    If any party were to challenge the consignment arrangement and succeed, then the Debtor would have need of the import bonds, and the recovery of those import bonds would no longer be available as an asset for recovery and payment to creditors under the Plan.

36.    Attached as **Exhibit 1** to the Disclosure Statement is a copy of the Debtor's 2021 balance sheet showing assets and liabilities as of December 2021.

**D.    Events During the Subchapter V Stage of the Bankruptcy Case and Formulation of a Subchapter V Plan**

---

[1] This figure includes $47,079.74 for a 2% cushion held by JPM Chase in the cash collateral deposit account that backs the bonds.

37.    On January 20, 2022, the Court held emergency hearings on the Debtor's "first day" motions to address immediate operational issues, including: (i) cash collateral use, (ii) payment of non-insider prepetition wages; (iii) payment of certain prepetition priority taxes; (iv) procedures to limit notice; (v) deposits for adequate assurance to utility companies; and (vi) rejection of certain commercial real property leases.  The Court entered orders granting these motions to the extent reflected in those orders.

38.    The Debtor timely submitted its compliance package to the Office of the United States Trustee by January 25, 2022, and supplemented the compliance package from time to time thereafter.

39.    The Debtor timely filed its bankruptcy schedules and statement of financial affairs (the "Schedules" and "SOFA") by the original statutory deadline of February 1, 2022, without any extension or request for an extension.   Thereafter, the Debtor amended its Schedules and SOFA from time to time as necessary and appropriate.

40.    The Debtor attended its meeting (the "341 Meeting") of creditors pursuant to 11 U.S.C. § 341 conducted by the Office of the United States Trustee on February 8, 2022, which was continued to March 10, 2022, and March 22, 2022, and concluded on that date.

41.    The Debtor commenced its bankruptcy case as a subchapter V case, which requires a plan to be filed within the first 90 days of the Petition Date, unless the Court extends the deadline for reasons for which the Debtor should not justly be held accountable.  Accordingly, shortly after the first date of the 341 Meeting, the Debtor, through counsel, engaged in extensive and continuous discussions with some its largest creditors (717 GFC LLC, Simon Property Group, Brookfield Properties Retail, and BW Hotel LLC) (collectively, the "Creditors") in an attempt to formulate a consensual plan of reorganization.

42.    On March 16, 2022, creditors Brookfield Properties Retail, Inc., Simon Property Group, Inc., and certain of their respective affiliates, filed their Objection of Simon Property Group and Brookfield Properties Retail to Debtor's Subchapter V Election or, Alternatively, Motion for Appointment of an Official Committee of Unsecured Creditors (the "Election Motion") [ECF 103].

1    43.    On March 23, 2022, 717 GFC LLC filed its joinder to the Election Motion.

2    44.    Later in the day on March 23, 2022, the Debtor filed its opposition to the
3    Election Motion.

4    45.    The Debtor and the Creditors continued their settlement negotiations and
5    discussions in attempts to formulate a consensual plan, at times with the participation of the
6    subchapter V trustee.    Between March 29, 2022, and April 19, 2022, the Debtor and the
7    Creditors entered into multiple stipulations to continue the hearing on the Election Motion and
8    the Debtor's cash collateral motion while settlement talks continued, with the hearings
9    rescheduled for May 11, 2022.

10    46.    The stipulations between the parties included a request that the Court extend the
11    90-day deadline for the Debtor to file its subchapter V plan from April 18, 2022, to May 2,
12    2022, which the Court granted at a status conference held on April 6, 2022 [ECF 132].

13    47.    On April 21, 2022,[2] the Office of the United States Trustee filed its "United
14    States Trustee's Notice of Motion and Motion Objecting to Debtor's Subchapter V Designation"
15    (the "Designation Motion") [ECF 145], which was set for hearing on June 1, 2022.

16    48.    On May 2, 2022, the Debtor timely filed its subchapter V plan (the "Subchapter
17    V Plan") [ECF 148].

18    49.    On May 4, 2022, the Debtor filed its amended petition, to un-elect the subchapter
19    V designation and designate its case as one under chapter 11, but no longer subchapter V.

20    50.    The Debtor's Plan is based largely on the Subchapter V Plan, which was
21    formulated to be a consensual plan with the extensive input of the Creditors through months for
22    settlement negotiations in February, March, and April 2022.

23    **E.  Administrative Matters**

24    51.    The deadline for non-governmental creditors to submit claims against the Debtor
25    and its estate was March 29, 2022; the deadline for governmental creditors to submit claims
26    against the Debtor and its estate is July 18, 2022 [ECF 31].

27    _____

28    [2] April 21, 2022, was the last day of the 30-day period to object to the subchapter V designation,
measured by 30 days from the conclusion of the 341 Meeting on March 22, 2022.

52.     On February 8, 2022, the Debtor filed its application to employ Levene, Neale, Bender, Yoo & Golubchik L.L.P ("LNBYG") as its general bankruptcy counsel, no objections were filed, and the Court entered an order on March 2, 2022, approving the application.

53.     On March 11, 2022, the Debtor filed its application to employ Holthouse, Carlin & Van Trigt LLP ("HCVT") as its accountant, no objections were filed, and the Court entered an order on April 12, 2022, approving the application.

### III.    PLAN SUMMARY

### A. Summary of Plan Classes

On the Plan Effective Date, the Debtor will be referred to as the "Reorganized Debtor." The Reorganized Debtor will acquire all assets and assume all liabilities of the Debtor as restructured under the Plan.  The Reorganized Debtor will sign any reasonable documentation required by law to effectuate the acquisition of assets and assumption of liabilities under the Plan.

The class 1 claim under the Plan is comprised of Eden Roc's allowed secured claim.

The class 2 claim under the Plan is comprised of Mega's allowed secured claim.

The class 3 claim under the Plan is comprised of ESP's (i) allowed secured claim on account of the consignment agreement, (ii) its accrued, unpaid post-petition administrative claim for consignment fees; and (iii) the Exit Financing.

The class 4 claim under the Plan is comprised of ESP's allowed secured claim on account of its prepetition debt acquisition.

The class 5 claims under the Plan are comprised of the non-insider general unsecured creditors.

Class 6 under the Plan is comprised of the equity interests of Escada Store Services LLC.

The Plan also contains non-classified claim holders, as the Bankruptcy Code pre-determines their treatment.  These non-classified claim categories include: (i) post-petition

1  estate professionals; (ii) non-tax priority unsecured claims, primarily for prepetition unpaid

2  wages; and (iii) prepetition priority tax claims.

3      The Plan creates liens on certain bond recoveries (each, a "Bond Lien" and, collectively,

4  the "Bond Liens"), which are integral to the treatment of Classes 1, 2, 3, 4, and 5 below.

5  Classes 1, 2, and 4 have prepetition liens against all or substantially all of the Debtor's assets.

6  Class 3 is a creditor with a consignment arrangement, but, to the extent considered as a security

7  interest, would also have a lien.  Class 5 is a general unsecured creditor class.

8      As of the Petition Date, the Debtor holds prepetition bonds with total value of

9  approximately $2.15 million, the collateral for which is cash in a money-market account to

10  support letters of credit (the "Bond Collateral") with JP Morgan Chase Bank ("JPMC").  There

11  are $408,065.65 in offsetting liabilities against the Bond Collateral, resulting in approximately

12  $1,789,014.09[3] in expected bond proceeds (the "Net Bond Proceeds"). The Net Bond Proceeds

13  stems from two separate bonds: (i) a $700,000 bond, secured by $1,400,000 in Bond Collateral

14  (the "Western Surety Bond") and (ii) a $400,000 and a $350,000 bond, secured by $7500,000 in

15  Bond Collateral, with $408,065.65 in offsetting liabilities (the "Lexon Bond"); and (iii) a 2%

16  cushion in the JPMC account in the amount of approximately $47,079.74. As the bonds are

17  cancelled, mature, and/or terminate, the Net Bond Proceeds shall be placed into a trust account

18  (the "Bond Account") held by Debtor's counsel, LNBYG,[4] to be the collateral for: (i) the Class

19  5 claims with a first position Bond Lien (the "Class 5 Bond Lien"); and (ii) the Class 1 claim,

20  with a second position Bond Lien (the "Class 1 Bond Lien").  Every dollar of Net Bond

21  Proceeds recovered shall be paid to Class 5 allowed claim holders, *pari passu*, within 30 days of

22  receipt of the Bond Collateral into the Bond Account, until Class 5 has received its full Class 5

23  Recovery (as defined below). The Debtor shall notify Classes 1, 2, 3, 4, and 5 of the receipt of

24

25

26  [3] This figure includes $47,079.74 for a 2% cushion held by JPM Chase in the cash collateral deposit account that backs the bonds.

27

28  [4] Alternatively, the Debtor and/or Reorganized Debtor may set up the Bond Account as an account subject to a deposit-account-control-agreement with JPMC with a lien in favor of Class 5 to have the proceeds transfer over when they are released from the bond liabilities.

1  any Net Bond Proceeds within two (2) business days of such proceeds being released by JPMC

2  to the Bond Account.  At the Debtor's and/or Reorganized Debtor's discretion, notice may be

3  given by filing a notice on the bankruptcy court's docket or by email and/or mail to the 20

4  largest unsecured creditors in the case.

5       ESP will act as a secured lender exit financier (the "Exit Financier") and, along with

6  Classes 1, 2, 3, and 4, through the Plan, consent to Class 5 having a lien for the Class 5 Bond

7  Lien on the Bond Collateral, Bond Account, and Net Bond Proceeds senior to the prepetition

8  liens held by Classes 1, 2, 3, and 4, and the exit financing lien held by the Exit Financier.

9       The total payment to Class 5 creditors will be 15 cents on the dollar, reduced by a carve-

10  out for the payment of (i) Substantial Contribution Claims, as defined below and (ii) the fees

11  and costs of any official committee appointed under 11 U.S.C. § 1102 and the allowed

12  administrative professional fees for any such committee (the "Class 5 Recovery"). [5]

13       **B.  What Creditors Will Receive Under the Plan**

14       As required by the Bankruptcy Code, the Plan classifies certain claims and interests in

15  various "classes" according to their right to priority and leaves other types of claims

16  unclassified.  Also, as required by the Bankruptcy Code, the Plan states whether each class of

17  claims or interests is impaired or unimpaired and describes the treatment each class will

18  receive.

19       **1.  Unclassified Claims**

20       Certain types of claims are not placed into voting classes; instead they are unclassified.

21  The Bankruptcy Code predetermines what type of treatment these claims will receive.  They are

22  not considered impaired and they do not vote on the Plan because they are automatically

23  entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor

24  has not placed the following claims in a class.

25

26

_____

27  [5] On May 2, 2022, NYC Dept. of Finance filed proof of claim #39, asserting a priority
unsecured claim in the amount of $904,777.63.  This claim is under investigation, as the Debtor

28  scheduled the priority claim as $349,209.25 and believes the proof of claim is overstated.
However, if the claim is more than $399,209.35, the Class 5 Recovery will be reduced dollar-
for-dollar from a target of 15 cents to as low as 12.5 cents.

### a. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's § 507(a)(2) estate professional administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
| --- | --- | --- |
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Quarterly Fees to the United States Trustee ("UST") | $0 | The Debtor will be current on quarterly fees by the time of the hearing on plan confirmation. |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), bankruptcy counsel to the Debtor | $125,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| Subchapter V Trustee | $20,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| Accountant Holthouse, Carlin & Van Trigt LLP | $25,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses |
| TBD Counsel for the Official Committee of Unsecured Creditors | $30,000 (est.) | Paid in full out of the Debtor's cash on hand on the later of the Effective Date and the date the Court enters an order |

|  |  | allowing such fees and expenses |
|---|---|---|
| **TOTAL** | **$200,000 (est.)** | **Paid in the manner described above** |

The Court must approve all professional fees and expenses listed in this chart before they may be paid.  For all professional fees and expenses (except fees owing to the Clerk of the Bankruptcy Court), the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan.  The administrative claim amounts set forth above simply represent the Debtor's best estimates as to the amount of allowed administrative claims in the Bankruptcy Case.  The actual administrative claims may be higher or lower.  Much of whether the actual administrative claims described above for professionals will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims.  To the extent the Debtor is required to engage in any such substantial litigation, the Debtor is likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above.  By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims.  By including the figures described above, the Debtor is not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and the Debtor is not waiving any of its rights to object to the allowance of any of these administrative claims.  Similarly, professionals who have been employed in the Bankruptcy Case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of the Disclosure Statement.

To the extent administrative claims are allowed prior to the Effective Date, such allowed administrative claims may be paid by the Debtor out of the Debtor's funds provided the Debtor has sufficient funds to pay them.  To the extent administrative claims are allowed after the Effective Date, such allowed administrative claims will be paid by the Reorganized Debtor.

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims (other than estate-professional-administrative-expense claims listed above) accruing and unpaid in the ordinary course of business and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Mega (for Debtor's employees' health, dental, and vision benefits plans accrued and unpaid during the pendency of the bankruptcy case) | $100,000 (est.) | To be added to the Class 2 Claim held by Mega |
| ESP (for consignment fees accrued and unpaid during the pendency of the bankruptcy case) | $300,000 (est.) | To be added to the Class 3 Claim held by ESP |
| **TOTAL** | **$400,000 (est.)** | |

**b.  Priority Tax Claims**

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan.  Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed.  11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims under $100,000 will be paid within 30 days of the Plan Effective Date.  The claim of NYC Department of Finance will be paid in equal quarterly installment payments over the first year of the Plan.  The Debtor may pay these claims early with no prepayment penalty. Interest on the priority tax claims will accrue and be paid at the applicable non-bankruptcy law statutory rate.

Unless timely contested under the Plan, a failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default.  If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies by application of non-bankruptcy law in non-bankruptcy court.  The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim.  The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount |
|---|---|---|
| County of Los Angeles | 9 | $ 8,537.47 |
| Cal. Franchise Tax Board | 17 | $800.00 |
| IRS | 2, as amended | $500.00 |
| Cal. Empl. Dev. Dep't | N/A | $0 |
| NYC Dept. of Finance | 39 | $349,209.25[6] |
| **TOTAL** | | **$359,046.72** |

**2.  Classified Claims and Interests**

**a.  Non-Tax Pre-Petition Priority Claims**

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections

---

[6] On May 2, 2022, NYC Dept. of Finance filed proof of claim #39, asserting a priority unsecured claim in the amount of $904,777.63.  This claim is under investigation, as the Debtor believes the claim is overstated.

507(a)(4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim.  However, the holder of such an unsecured priority claim may agree to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.  The Debtor's schedules reflect no creditors as holding priority unsecured claims.  No creditors filed proofs of claim asserting non-tax priority unsecured claims.  The below chart summarizes the priority non-tax claims and whether the Debtor is considering an objection at this time:

| Name | Claim No. | Objection | Claim Amount |
|------|-----------|-----------|--------------|
| None | N/A | N/A | $0.00 |

**b. Class 1 – Allowed Secured Claim of Eden Roc International, LLC ("Eden Roc")**

The following chart identifies the Plan's treatment of Class 1 comprised of the allowed secured claims of Eden Roc International, LLC ("Eden Roc"):

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 1 | **Claimant:** Eden Roc<br><br>**Type of Claim:** Allowed secured claim<br><br>**Claim amount:** $579,025.32, plus accrued interest, fees, and costs<br><br>**Collateral:** All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 1 shall have an allowed secured claim in the amount of $579,025.32 principal, plus accrued fees, and costs.<br><br>Senior secured lien on all of the Debtor's assets, except with respect to the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>With respect to the Bond Collateral and Bond Account, Class 1 shall have a second priority lien on the Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and validity of the lien.<br><br>Interest rate: 6.0% per annum, compounding.<br><br>Loan maturity date extended to 12/31/2027.<br><br>Balloon payment of all principal and accrued interest due on 12/31/2025. Provided that all payments to Class 5 have been made, the Debtor shall have the right to prepay all principal and accrued interest due to Class 1 without penalty.<br><br>Class 1 will not receive any payments under the Plan during the life of the Plan on account of their Class 1 claims, until and unless Class 5 has received all payments payable thereunder. Class 1 creditors will maintain their claims and liens and interest |

| | | | will continue to accrue but be unpaid for the life of the Plan. |
| | | | Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 1 claimant. |

### c. Class 2 – Allowed Secured Claim of Mega International, LLC

The following chart identifies the Plan's treatment of Class 2 comprised of the allowed secured claim of Mega International, LLC ("Mega"), in the total amount of $1,605,953.00:

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 2 | Claimant: Mega<br><br>Type of Claim: Allowed secured claim<br><br>Prepetition Claim amount: $1,506,953.00, plus accrued interest, fees, and costs<br><br>Post-petition Claim amount: $99,000 (estimated)<br><br>Total Claim amount: $1,605,953.00<br><br>Collateral: All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 2 shall have an allowed secured claim in the amount of $1,605,953.00, principal, plus accrued unpaid fees and costs.<br><br>Second position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and validity of the lien.<br><br>Interest rate: 7.0% per annum, compounding<br><br>Loan maturity date extended to 12/31/2027.<br><br>Balloon payment of all principal and accrued interest due on 12/31/2027.<br><br>Class 2 will not receive any payments under the Plan during the life of the Plan on account of their Class 2 claims until all payments to Class 5 have been made.  Class 2 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force and effect between the Debtor and the Class 2 claimant. |

1

2

3          **d. Class 3 – Allowed Claim of Escada Sourcing and Production LLC**

4              **Related to Consignment**

5          The following chart identifies the Plan's treatment of Class 3 comprised of the allowed

6    claim of Escada Sourcing and Production, LLC ("ESP"):

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 3 | Claimant: ESP<br><br>Type of Claim: True Consignment; additionally, claims as follows:<br><br>Pre-petition Claim: A prepetition secured claim in the amount of no less than $675,361.39<br><br>Post-petition Claim Amount: $300,000 (estimated)<br><br>Exit Financing Claim Amount: $150,000<br><br>Post-Confirmation Claim: Accruing according to estimated plan projections. *See*, Ex.2 to the Plan.<br><br>Claim amount: Not less than $1,025,361.39<br><br>Collateral: Not Applicable to the extent that ESP is a consignor with a true consignment; but to the extent ESP is a creditor, all inventory held by Debtor and proceeds thereof | Impaired<br><br>Entitled to Vote | Class 3 shall retain its rights as a consignor, unaltered by the Plan.<br><br>Total allowed secured claim of no less than $1,025,361.39, plus accruing claim post-confirmation.<br><br>The order confirming the Plan shall affirm the validity of the consignment agreement between the Debtor and ESP and ratify the terms of the settlement agreement entered into by and between ESP, on the one hand, and the Debtor and its estate, on the other hand (the "Settlement Agreement").<br><br>Third position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds. |

1

2     **e. Class 4 – Allowed Claim of Escada Sourcing and Production LLC**

3      **Related to Secured Debt**

4    The following chart identifies the Plan's treatment of Class 4 comprised of the allowed

5 claim of Escada Sourcing and Production, LLC ("ESP"):

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| CLASS # | DESCRIPTION | IMPAIRED VOTING | TREATMENT |
|---|---|---|---|
| 4 | **Claimant:** ESP<br><br>**Type of Claim:** Allowed secured claim<br><br>**Claim amount:** $19,044,356.07, plus accrued interest, fees, and costs<br><br>**Collateral:** All assets of the Debtor | Impaired<br><br>Entitled to vote. | Class 4 shall have an allowed secured claim in the amount of $19,044,356.07, principal, plus accrued unpaid fees and costs.<br><br>Fourth position junior secured lien on all of the Debtor's assets, except for the Bond Collateral, Bond Account, and Net Bond Proceeds.<br><br>The order confirming the Plan shall affirm the validity of the claim and lien held by ESP and ratify the terms of the Settlement Agreement entered into by and between ESP, on the one hand, and the Debtor and its estate, on the other hand.<br><br>Interest rate: 8.0% per annum, compounding<br><br>Loan maturity date extended to 12/31/2027.<br><br>Balloon payment of all principal and accrued interest due on 12/31/2027.<br><br>Class 4 will not receive any payments under the Plan during the life of the Plan on account of their Class 4 claims. Class 4 creditors will maintain their claims and liens and interest will continue to accrue but be unpaid for the life of the Plan.<br><br>Unless otherwise altered by the Plan, other terms in the prepetition loan and security documents remain in full force |

| | | | and effect between the Debtor and the Class 4 claimant. |
|---|---|---|---|

**f.   Classes of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of the class containing all of the Debtor's non-priority general unsecured claims (see the Claims Chart for detailed information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | All general unsecured claims of the Debtor not included in any other class.<br><br>Total amount of class 5 claims is $18,514,329.91.<br><br>The Claims Chart attached as **Exhibit 2** to the Disclosure Statement and Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 5. The Claims Chart reflects the anticipated amounts of claims lessors of Debtor's non-residential real property leases capped by § 502(b)(6). | Yes.<br><br>Entitled to vote | In full and final satisfaction of each, any, and all of their claims against the Debtor, class 5 will receive 15 cents on the dollar for its aggregate allowed claims, reduced by a carve-out for the payment of (i) Substantial Contribution Claims, as defined below and (ii) the fees and costs of any official committee appointed under 11 U.S.C. § 1102 and the allowed administrative professional fees for any such committee (the "Class 5 Recovery"). At least 7.5 cents* on the dollar for the Class 5 claim will be paid within fifteen (15) days of the Effective Date (the "<u>Cash On Hand Payment</u>"), and (ii) the balance of the Class 5 Recovery still owing on its claim (i.e. up to an additional 7.5 cents) will be paid no later than the one-year anniversary of the Effective Date (the "<u>Remainder Payment</u>"). Each holder of a class 5 allowed claim shall receive its pro rata share of the Class 5 Recovery. [7]<br><br>* Until the Class 5 Recovery has been paid in full, every dollar of Net Bond Proceeds recovered shall be paid to Class 5 allowed claim holders, *pari passu*, within 30 days of receipt of the Net Bond Proceeds into the Bond Account. Thus, if funds in the Bond Account are sufficiently |

[7] On May 2, 2022, NYC Dept. of Finance filed proof of claim #39, asserting a priority unsecured claim in the amount of $904,777.63. This claim is under investigation, as the Debtor scheduled the priority claim as $349,209.25 and believes the proof of claim is overstated. However, if the claim is more than $399,209.35, the Class 5 Recovery could be reduced from a target of 15 cents to as low as 12.5 cents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

high within 15 days of the Plan Effective Date, it is possible that more than 7.5 cents on the dollar could be distributed to Class 5. Class 5's recovery shall be capped at the Class 5 Recovery and all Net Bond Proceeds in excess of the Remainder Payment due to Class 5 after application of the Cash On Hand Payment shall be payable to Class 1 pursuant to the terms hereto. Notwithstanding the foregoing, if the NYC Department of Finance's disputed claim is not settled at the time that Net Bond Proceeds are deposited into the Bond Account, LNBYG, as disbursing agent for the Bond Account and Net Bond Proceeds, shall reserve a portion of such proceeds equal to 2.5 cents on the dollar of the Class 5 claim (the "NYC Bond Reserve"), until the NYC Department of Finance claim is settled or resolved. In the event that the final NYC Department of Finance claim is determined to be greater than $399,209.35, then the NYC Bond Reserve shall be applied first to the excess due to the NYC Department of Finance and the remainder, if any, shall be distributed to Class 5 as the final distribution due to that class hereunder.

The Class 5 Lien shall be fully extinguished upon the distribution of payments, equal to, in the aggregate, the Class 5 Recovery.

Until paid pursuant to the terms of the Plan, the holders of Class 5 claims shall have and share *pari passu*, a first position lien on the

recovery of the Net Bond Proceeds and Bond Account.

If the Court allows a substantial contribution claim under § 503(b) for the attorneys' fees and costs of unsecured creditors' counsel (a "Substantial Contribution Claim"), and/or if any fees and costs of any official committee appointed under 11 U.S.C. § 1102 (together with the allowed administrative professional fees for any such committee, the "Committee Fees") are incurred, then such claim(s) and/or Committee Fees shall be deducted from the fifteen cents on the dollar otherwise available for the Class 5 Recovery, which will result in Class 5 receiving less than fifteen cents on the dollar. Although such an apportionment will be subject to court approval, the Debtor will not object to how Class 5 claim holders and their creditors' counsel seek to apportion the Class 5 Recovery among them. In no instance shall the sum of the Class 5 Recovery, the Substantial Contribution Claims, and the Committee Fees exceed (or be inferior to) the number that is equal to fifteen percent of the total amount of allowed class 5 claims.

Class 5 will receive neither post-petition nor post-confirmation interest on their claims. Class 5 and its attorneys will not be entitled to any reimbursements, expenses, costs, or other payments, except as expressly permitted above.

The Debtor may prepay Class 5

| | | | at any time without prepayment penalty. |
| | | | If checks are in amounts of less than $50, such checks may be deferred until the next annual payment until the aggregate due to such creditor is in an amount of (i) at least $50 or (ii) the total distribution owed to the creditor at 15 cents on the dollar of the allowed claim. |
| | | | In the event of a default in payment, holders of Class 5 allowed claims may seek enforcement of Plan treatment in the Bankruptcy Court as their exclusive remedy with the Bankruptcy Court holding exclusive jurisdiction. |
| | | | Attached as **Exhibit 2** to the Disclosure Statement and Plan is a listing of the name and dollar amount of the class 5 allowed claims expected to be paid by the Debtor pursuant to the terms of the Plan, and the estimated prorated recovery. |

### g.  Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.

In compliance with 11 U.S.C. § 1123(a)(6), the Debtor's charter, bylaws, and/or operating agreement will be amended to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | Sole member of Debtor: Escada Store Services LLC | Unimpaired The class 6 interest holder is conclusively presumed to have voted to accept the Plan by operation of law | The class 6 equity interests will retain its rights and interests without impairment. Class 6 receives no payments on account of its equity interests during the life of the Plan. |

**C. Means of Effectuating and Implementing the Plan**

    **1. Funding for the Plan**

The Plan will be funded with the Debtor's cash on hand on the Plan Effective Date, recovery of the Bond Collateral into the Bond Account, exit financing, and continued business operations.  The Debtor's plan projections of future income are attached as **Exhibit 3** to the Disclosure Statement  and Plan.  On the Effective Date, Escada Sourcing and Production LLC ("Exit Financier") will contribute exit financing in the amount of $150,000 subject to the terms of the settlement agreement (the "Settlement Agreement") attached as **Exhibit 4** to the Disclosure Statement and Plan. The Settlement Agreement shall provide, in part, that the Exit Financier will (i) provide a five-year, zero-interest, $150,000 loan to the Debtor, (ii) agree to subordinate its claim for post-petition priority consignment fees, (iii) subordinate its claims under Classes 3 and 4 to those of Class 5 to the extent provided for in the Debtor's Plan and (iv) vote in favor of the Debtor's Plan, in return for which the Debtor and the Estate shall irrevocably grant the Exit Financier and its wholly-owned subsidiary, Escada Online GmbH, a complete release of claims, including, without limitation, for any preference or fraudulent transfers or avoidance action claims.

After the Effective Date, the Debtor will fund payments through recovery of its import bonds.   As of the Petition Date, the Debtor holds prepetition bonds with total value of approximately $2.15 million, the collateral for which is cash in a money-market account to support letters of credit (the "Bond Collateral") with JP Morgan Chase Bank ("JPMC").   There are $408,065.65 in offsetting liabilities against the Bond Collateral, resulting in approximately $1,789,014.09[8] in expected bond proceeds (the "Net Bond Proceeds"). The Net Bond Proceeds stems from two separate bonds: (i) a $700,000 bond, secured by $1,400,000 in Bond Collateral (the "Western Surety Bond") and (ii) a $400,000 and a $350,000 bond, secured by $7500,000 in Bond Collateral, with $408,065.65 in offsetting liabilities (the "Lexon Bond"); and (iii) a 2% cushion in the JPMC account in the amount of approximately $47,079.74  The Debtor will use its commercially reasonable best efforts to liquidate or materially reduce the Bond Collateral. The Debtor will distribute to Class 5 all Net Bond Proceeds from the Bond Collateral no later than 30 days after the corresponding cash is actually received in the Bond Account, up to the remaining amount payable to Class 5 under the Class 5 Recovery following the initial payment made on the Plan's effective. Notwithstanding the foregoing, if the NYC Department of Finance's disputed claim is not settled at the time that Net Bond Proceeds are deposited into the Bond Account, LNBYG, as disbursing agent for the Bond Account and Net Bond Proceeds, shall reserve a portion of such proceeds equal to 2.5 cents on the dollar of the Class 5 claim (the "NYC Bond Reserve"), until the NYC Department of Finance claim is settled or resolved. In the event that the final NYC Department of Finance claim is determined to be greater than $399,209.35, then the NYC Bond Reserve shall be applied first to the excess due to the NYC Department of Finance and the remainder, if any, shall be distributed to Class 5 as the final distribution due to that class hereunder.

---

[8] This figure includes $47,079.74 for a 2% cushion held by JPM Chase in the cash collateral

### 2.   Composition of the Debtor After the Effective Date

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor." The members of the Debtor will remain the same as the Debtor's current members.

### 3.   Post-Confirmation Management and Compensation

The Reorganized Debtor will be managed by Escada Store Services LLC for no compensation. The day-to-day management will be led by Kevin Walsh. As has been the situation throughout the case, the Debtor asserts that Mr. Walsh is not an insider, his compensation has not been subject to insider-compensation procedures, and his compensation is not subject to disclosure. Mr. Walsh does not hold any direct or indirect ownership in the Debtor.

In the ordinary course of business and subject to the business judgment rule, the Reorganized Debtor may hire and/or terminate officers, directors, and/or managers, and increase, decrease, and/or change the compensation of its managers, officers, and directors after the Effective Date so long as such alternations neither interfere with nor jeopardize payments to creditors under the Plan.

### 4.   Disbursing Agent

The Reorganized Debtor will act as the disbursing agent under the Plan. The Reorganized Debtor will not charge any disbursing agent fee for making the Plan distributions. With specific regards to the Bond Account and Net Bond Proceeds, however, LNBYG shall act as the disbursing agent and shall only charge customary, hourly fees for such services, which shall be paid by the Debtor or Reorganized Debtor.

### 5.   Objections to Claims

The Debtor or the Reorganized Debtor, as the case may be, will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable

---

deposit account that backs the bonds.

to the Debtor unless the Debtor deems the inconsistency to be insignificant.  With respect to disputed claims that are not resolved prior to the Plan Effective Date, the Reorganized Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval. As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan.  As of the Effective Date, the Reorganized Debtor shall have the sole authority and standing to file any objections to claims following the confirmation of the Plan, and the Court shall retain jurisdiction over the Debtor, the Reorganized Debtor, and the Bankruptcy Case to resolve such objections to claims following the confirmation of the Plan.  Nothing contained in the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any rights of setoff or recoupment, or of any defense, the Debtor or the Reorganized Debtor may have with respect to any claim.  The deadline for filing claims objections shall be 60 days after the Plan Effective Date.  The Reorganized Debtor shall withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are disputed and have not been allowed as of the date of distribution to creditors (the "Disputed Claims") of any particular class as if such claims were allowed in full, which shall not delay payment to allowed claims that are not Disputed Claims.

**6.  Avoidance Actions, Strong Arm Powers, and Causes of Action**

All avoidance actions and strong-arm powers of a trustee under chapter 5 of the Bankruptcy Code and any motions and/or adversary proceedings for substantive consolidation, shall irrevocably vest in the Debtor and be transferred in total to the Reorganized Debtor upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be the Plan Effective Date.  The deadline for the Debtor or Reorganized Debtor to file any non-avoidance action shall be the earlier of (i) the statute of limitations for

such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets or specified in the Plan, all causes of action owned by the Debtor shall vest in the Reorganized Debtor unless specifically settled with such settlement approved by order of the Bankruptcy Court prior to confirmation of the Plan.  A list of potential preferential avoidable transfers are listed as **Exhibit 5** to the Disclosure Statement.  The Debtor does not believe there are any causes of action for actual or fraudulent voidable transfers.  The Debtor may have a case of action against Lexon Surety related to bond disputes, which is under investigation.

### 7.   Employment of Professionals by the Reorganized Debtor and Payment of Professional Fees and Expenses After the Effective Date

On and after the Effective Date, the Reorganized Debtor shall have the right to employ and compensate professionals as the Reorganized Debtor determines is appropriate and to compensate any such professionals without the need for any further order of the Bankruptcy Court.

### 8.   Exemption from Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of the Bankruptcy Code, may not be taxed under any law imposing a stamp tax or similar tax.  Transfers under the Plan that are exempt from taxes under section 1146(c) of the Bankruptcy Code include all transfers by the Debtor after the commencement of the Bankruptcy Case in contemplation of the Plan but prior to the Effective Date.  The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

### 9.   Distributions to Be Made Pursuant to the Plan

Except as otherwise agreed to by the Reorganized Debtor in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a

37

1  proof of claim duly filed with the Bankruptcy Court, to such address.  Checks issued to pay

2  allowed claims shall be null and void if not negotiated within sixty (60) days after the date of

3  issuance thereof.

4           **10. Exculpations and Releases**

5           To the maximum extent permitted by law, not any one of  the Debtor, the Reorganized

6  Debtor, Brookfield, Simon Property, 717 GFC LLC, Eden Roc LLC, Escada Sourcing and

7  Production LLC, Mega International LLC, each of its/their management, each of its/their

8  professionals employed or retained by any of them, whether or not by Bankruptcy Court order

9  (collectively, the "Exculpated Parties"), shall have or incur any liability to any person or entity

10 for any act taken or omission made in good faith in connection with or related to the formulation

11 and implementation of the Plan, or a contract, instrument, release, or other agreement or

12 document created in connection therewith, the solicitation of acceptances for or confirmation of

13 the Plan, or the consummation and implementation of the Plan and the transactions

14 contemplated therein, including the distribution of estate funds.

15          For the avoidance of doubt the exculpation and release applies only to the events the

16 Debtor's case and Plan as set forth in the preceding paragraph.  This is not – and shall not be

17 construed to be – a release or exculpation of the Exculpated Parties for matters outside of the

18 Debtor's case and Plan as set forth in the preceding paragraph.

19          **11. Injunctions**

20          The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively

21 or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of

22 action, equitable remedy, liability or interest released, discharged, stayed, or terminated

23 pursuant to the Plan, including, but not limited to claims for voidable transfers, substantive

24 consolidation, successor liability, recharacterization, and equitable subordination.  Except as

25 provided in the Plan or the Plan Confirmation Order, as of the Plan Effective Date, all entities

26 that have held, currently hold or may hold a claim or other debt or liability or equitable remedy

27 that was stayed or is discharged or an interest or other right of an equity security holder that is

28

extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I) (a) the Debtor, (b) the Reorganized Debtor, or (c) alleged alter egos of the Debtor or Reorganized Debtor, or (II) their property; on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.  By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section. The injunction described in this paragraph (the "Injunction") is applicable to ***all*** creditors and parties in interest with respect to claims or causes of action arising or existing prior to the Plan Effective Date.

All creditors and parties in interest who are presented with a copy of the Plan Confirmation Order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest ("Actual Knowledge"), such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such Actual Knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include an award of the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction against any such creditor and/or party in interest.

### 12. Executory Contracts and Unexpired Leases

On the Effective Date, the Debtor will assume the executory contracts and unexpired leases set forth on **Exhibit 6** to the Disclosure Statement and Plan with the cure amount set

forth on that exhibit.  On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be rejected by the Debtor effective as of 11:59 PST on the day prior to the Plan Effective Date.  **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE PLAN EFFECTIVE DATE WILL BE THIRTY (30) DAYS AFTER THE PLAN EFFECTIVE DATE.**  Any claim resulting from the Debtor's rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.  Any allowed claim resulting from the Debtor's rejection of an unexpired lease or executory contract will constitute a class 5 allowed claim, subject to the limitations set forth in 11 U.S.C. § 502(b) and other applicable sections of the Bankruptcy Code.

### 13. Changes in Rates Subject to Regulatory Commission Approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

### 14. Retention of Jurisdiction

After confirmation of the Plan and occurrence of the Plan Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.      To resolve any and all disputes regarding the operation and interpretation of the Plan and the Plan Confirmation Order;

ii.     To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor or the Reorganized Debtor and to consider any objection to claim or interest whether such objection is filed before or after the Effective Date;

iii.    To determine the extent, validity and priority of any lien asserted against property of the Debtor and property of the Debtor's estate;

iv.     To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the

Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before this Bankruptcy Court in this Bankruptcy Case on or before the Effective Date with respect to any person or entity related thereto;

v.    To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.    To determine any request for payment of administrative expenses;

vii.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the Effective Date;

ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the Reorganized Debtor;

xi.    Except as otherwise provided in the Plan and the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xii.    To issue such orders in aid of consummation of the Plan and the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules;

xiii; To enter a discharge, under 11 U.S.C. § 1141(d), if applicable; and

xiv.    To enter a final decree closing the Bankruptcy Case.

## IV.    TAX CONSEQUENCES OF THE PLAN

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor. The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all of the tax implications of any action.

The implementation of the Plan may have Federal, state, and local tax consequences to the Debtor, and the Debtor's creditors and equity holders. No tax opinion has been sought or will be obtained with respect to any tax consequences of the Plan. *This Disclosure Statement does not constitute and is not intended to constitute either a tax opinion or a tax advice to any person, and the summary contained herein is provided for informational purposes only.*

THE FOLLOWING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED FEDERAL AND STATE INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL. THE SELECTED FEDERAL AND STATE TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN. THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED TO BE AND IS NOT TAX ADVICE.

THE DEBTOR DOES NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN. CONSEQUENTLY,

THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX CONSEQUENCES DESCRIBED HEREIN TO THE DEBTOR, HOLDERS OF CLAIMS AND HOLDERS OF INTERESTS.

1.    Federal Income Tax Consequences to Certain Creditors

a.    *In General*

Generally, a holder of a Claim should in most, but not all circumstances, recognize gain or loss equal to the difference between the "amount realized" by such holder in exchange for its Claim and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the cash and the fair market value of any other consideration received under a plan of reorganization in respect of a holder's Claim. The tax basis of a holder in a Claim will generally be equal to the holder's cost therefor. To the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in the holder's hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. Generally, if the Claim is a capital asset in the holder's hands, any gain or loss realized will generally be characterized as capital gain or loss, and will constitute long-term capital gain or loss if the holder has held such Claim for more than one year.

A creditor who received cash in satisfaction of its Claims may recognize ordinary income or loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor who did not previously include in income accrued but unpaid interest attributable to its Claim, and who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having received interest income to the extent that any consideration received is characterized for U.S. federal income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss as a result of surrendering its Claim. A creditor who previously included in its income accrued but unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such accrued but unpaid interest is not satisfied,

regardless of whether such creditor realizes an overall gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the holders of certain Claims will likely receive only a partial distribution of their allowed claims. Whether the applicable holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the holder and its Claims. Creditors should consult their own tax advisors.

2. <u>Information Reporting and Backup Withholding</u>

Distributions pursuant to the Plan will be subject to any applicable federal income tax reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments to certain taxpayers, including payments of interest. Under the IRC's backup withholding rules, a holder of a Claim may be subject to backup withholding with respect to distributions or payments made pursuant to the Plan, unless the holder (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the taxpayer is not subject to backup withholding because of a failure to report all dividend and interest income. Backup withholding is not an additional federal income tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of income tax. A holder of a Claim may be required to establish an exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

**THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL PURPOSES ONLY. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

**V.    CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, acceptance of the plan, whether the plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

**A.    Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

**B.    Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim or interest which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**C.    What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest files an objection to the claim or interest.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

The deadline for non-governmental creditors to submit claims against the Debtor and its bankruptcy estate was March 29, 2022.  The deadline for governmental creditors to submit claims against the Debtor and its bankruptcy estate is July 18, 2022.  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

A detailed Claims Chart is attached as **Exhibit 7** to the Disclosure Statement.  The Claims Chart identifies claims which were scheduled by the Debtor, including the amounts and priorities of the claims and whether the Debtor contends that the claims are disputed, contingent or unliquidated.  The Claims Chart also identifies all proofs of claim which were filed by creditors asserting claims against the Debtor, including the amounts and priorities of the claims asserted.  Finally, the Claims Chart indicates whether the Debtor has disputed or presently disputes any portion of the claims.  The Debtor reserves the right to update and modify the Claims Chart at any time and to file objections to claims even if the Claims Chart does not identify any dispute relating to a particular claim.

**D.    What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest has the right to vote only if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

The Debtor believes that members of classes 1, 2, 3, 4, and 5 are impaired and entitled to vote to accept or reject the Plan.  Parties who dispute the Debtor's characterization of their

claim or interest as being impaired or unimpaired may file an objection to the Plan contending

that the Debtor has incorrectly characterized the class.

**E.      Who Is <u>Not</u> Entitled to Vote**

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been

disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to

Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not

receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote

because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant

to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such

claims are not placed in classes and they are required to receive certain treatment specified by

the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan

do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR

CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO

OBJECT TO THE CONFIRMATION OF THE PLAN.

**F.      Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an

unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot

for the secured part of the claim and another ballot for the unsecured claim.

**G.      Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one

impaired class has accepted the Plan without counting the votes of any insiders within that

class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be

confirmed by "cramdown" on non-accepting classes, as discussed below.

**H.      Votes Necessary for a Class to Accept the Plan**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan.  A class of interests is considered to have "accepted" a plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted on the plan, voted to accept the plan.

**I.      Treatment of Non-accepting Classes**

As noted above, even if <u>all</u> impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**J.      Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The Debtor will ask the Court to confirm the Plan by cramdown on any and all impaired classes that do not vote to accept the Plan.

**K.      Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the debtor's assets are usually sold by a chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a

lien.    Administrative claims are paid next.    Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.    Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.    Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm the Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation of the Debtor.    The Debtor maintains that this requirement is clearly met.

The impaired classes under the Plan consist of classes 1, 2, 3, 4, and 5.    The Debtor must therefore satisfy the "best interest of creditors test" with respect to members of classes 1, 2,3, 4, and 5 that do not vote to accept the Plan.

Through Plan proposal discussions during the subchapter-V stage of the Debtor's case (when § 1125 did not apply), the Debtor is informed that all the creditors in Classes 1, 2, 3, and 4 support the Plan and will vote to accept the Plan.    Accordingly, this Best Interest Test focuses on the creditors in Class 5.

Attached as **Exhibit 8** to the Disclosure Statement, in balance sheet format, is a demonstration of the liquidation analysis in a hypothetical chapter 7 case as of August 3, 2022 (the "Expected Plan Confirmation Date"), if the case were to be converted to chapter 7 instead of the chapter 11 plan being confirmed.    As shown in **Exhibit 8**, all creditors in Class 5 will receive as much or more under the Plan as they would receive under a Chapter 7 liquidation of the Debtor.    *See*, **Exhibit 8**.    In a hypothetical chapter 7 liquidation, the Debtor projects that Class 5 would receive only approximately 5.10% recovery, which recovery includes numerous assumptions in favor of the creditors, including: (1) a full 100% recovery on $1,400,000 collateral for a Western Surety Bond, even though a similar bond with Lexon Surety will have an actual recovery rate of less than 50%; (2) a 54.5% recovery (i.e., 45.5% discount) rate on prepetition avoidance actions against insiders, even though those insiders have informed the

Debtor that they would vigorously defend any such lawsuits; (3) a 50% discount on the secured claim held by insider Mega International LLC, even though Mega has informed the Debtor that it would vigorously defend its claim and lien in a lawsuit; and (4) a 62.5% discount on the post-petition administrative expense claims held by Mega International LLC and Escada Sourcing and Production LLC, even though those insiders have informed the Debtor that they would vigorously defend their administrative claims in litigation. The Debtor does not believe the foregoing results would be achievable by a Chapter 7 Trustee if the case were converted, but the Debtor provides this hypothetical scenario to show that even with an optimistic, creditor-and-trustee-friendly analysis, the Plan still pays creditors far more than a liquidation. Taking the analysis one step further, even if all of the insider prepetition debt owing to Escada Sourcing and Production LLC were subordinated to Class 5 non-insider general unsecured debt (the Debtor is informed that ESP would vigorously defend the legitimacy of its claim to share in a recovery in the event of a chapter 7 liquidation, and so the Debtor does not believe this result is possible or easily achieved), the Class 5 hypothetical liquidation recovery would be only 10.63%, which is still far less than the Plan proposes to pay creditors at 15%. Clearly, the Plan provides at least as much – and more – to creditors, and therefore meets the requirements of the Best Interest Test.

**L.      Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Plan Effective Date to pay all the claims and expenses which are entitled to be paid on such date. As shown in the financial statements and projections attached hereto, the Debtor will have sufficient cash on hand on the Plan Effective Date to enable the Reorganized Debtor to pay all the claims and expenses that are entitled to be paid on such date, enabling the Debtor to satisfy the first aspect of the feasibility

analysis.  On the Plan Effective Date, the Debtor is projected to have approximately $2,193,000 in cash funds available.  Based on the Plan, the following payments will be required to be made on or about the Plan Effective Date:

| Class/Type | Claimant | Effective Date Payment |
|---|---|---|
| Admin | LNBYG | $125,000.00 |
| Admin | HCTV | $25,000.00 |
| Admin | Subchapter V Trustee | $20,000.00 |
| Admin | Committee Counsel | $30,000.00 |
| Admin | UST | $0.00 |
| Admin | Clerk of the Court | $0.00 |
| Unclassified | County of LA | $10,000.00 |
| Unclassified | CA FTB | $1,000.00 |
| Unclassified | IRS | $500.00 |
| Unclassified | NYC Dept. of Finance | $0.00 |
| Class 1 | Eden Roc | $0.00 |
| Class 2 | Mega | $0.00 |
| Class 3 | ESP | $0.00 |
| Class 4 | ESP | $0.00 |
| Class 5 | Gen. Unsec. Creditors | $1,400,000.00 |
| **TOTAL** | | **$1,611,500.00** |

The second aspect considers whether the Reorganized Debtor will have enough cash over the life of the Plan to make the required Plan payments.  Attached as **Exhibit 3** to the Disclosure Statement and Plan are cash flow projections prepared on a monthly basis, followed by yearly summaries, which demonstrate the ability of the Reorganized Debtor to make all of the Plan payments that are required to be made over time.

The Debtor's projections are based upon detailed, piece-by-piece analysis of historical data over the last several months.  Cash flow projections were generated using a comprehensive budgeting model developed by the Debtor's management.  Evidentiary support for plan projections can be found in the Debtor's monthly operating reports filed on the Court's docket at docket entry numbers 88, 114, and 143.  While the Plan projections show future income,

parties should note and understand that the basis of payment is not the Debtor's future income projections, but, rather, (1) an initial distribution of cash on hand and Exit Financing, plus (2) the expected recovery on the Western Surety Bond by no later than July 2023.

## VI.    RISK FACTORS REGARDING THE PLAN

One risk posed by the Plan is the potential uncertainty that the Western Surety Bond will not be recovered in full or that such recovery may take longer than July 2023. Nonetheless, the Debtor has investigated the recovery of the Western Surety Bond and reasonably believes that the recovery will be accomplished by no later than July 2023.  Thus, the Reorganized Debtor will have sufficient funds available to make all of the Plan payments over time when they come due.

Another risk is the amount of the tax claim asserted by NYC Department of Finance. On May 2, 2022, NYC Department of Finance filed proof of claim #39, asserting a priority unsecured claim in the amount of $904,777.63.  This claim is under investigation, as the Debtor scheduled the priority claim as $349,209.25 and believes the proof of claim is overstated. However, if the claim is more than $399,209.35, the Class 5 Recovery could be reduced from a target of 15 cents to as low as 12.5 cents.

## VI.    EFFECT OF CONFIRMATION OF THE PLAN

### A.  Discharge.

The Debtor will receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because there has not been a liquidation of all or substantially all of the property of the Debtor's estate and because the Reorganized Debtor will be continuing the Debtor's current business operations.

### B.  Modification of the Plan.

The Debtor may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before confirmation.  The Debtor may also seek to modify the Plan at any time after

confirmation of the Plan so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

### C. Post-Confirmation Status Reports.

Until a final decree closing the Debtor's chapter 11 case is entered, the Reorganized Debtor will file quarterly post-confirmation status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan.

### D. Post-Confirmation Operations

On and after the Effective Date, the Debtor will operate as the "Reorganized Debtor," and not as a "debtor in possession," and will not be subject to motion practice and court approval for, *inter alia*, (1) employing and compensating professionals for services rendered on and after the Effective Date; (2) obtaining financing; (3) entering into transactions outside the ordinary course of business; (4) budget approval; (5) compensating insiders; or (6) sale of substantially all or any part of the Reorganized Debtor's business.

### E. Post-Confirmation Conversion/Dismissal.

A creditor or any other party in interest may bring a motion to convert or dismiss the Bankruptcy Case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed, but before the final decree is entered, if there is a default in performing the Plan. If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtor's chapter 11 estate that has not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case, and, the Bond Lien shall remain in place, and the Settlement shall remain in place. The Plan Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation before 180 days after the entry

of the Plan Confirmation Order pursuant to 11 U.S.C. § 1144. If the Debtor and/or Reorganized Debtor successfully defends against an adversary proceeding or other lawsuit to revoke discharge, revoke the Plan Confirmation Order, or otherwise allege confirmation by fraud, then Debtor and/or Reorganized Debtor shall be entitled to an award of reasonable attorneys' fees and costs against any such plaintiff and its counsel.

## F. **Final Decree.**

Once this estate has been fully administered as referred to in Bankruptcy Rule 3022, the Reorganized Debtor will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Case. The Reorganized Debtor will be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

Presented By:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.


By: _/s/ John-Patrick M. Fritz_____
      JOHN-PATRICK M. FRITZ
      Attorneys for Chapter 11
      Debtor and Plan Proponent

Escada America LLC


By: _Kevin J Walsh_____
      Kevin Walsh
      Director of Finance
      Authorized Agent for Debtor

**Exhibit 1**

**BALANCE SHEET**                          **SAP Dec YTD 2021**

| ASSETS | $ | 5,470,358 |
|---|---|---|
| **TOTAL NON - CURRENT ASSETS** | **$** | **4,044,042** |
| Intangible assets | $ | - |
| Property, plant and equipment | $ | 632,300 |
| Financial Assets | $ | 3,411,742 |
| **TOTAL CURRENT ASSETS** | **$** | **1,426,316** |
| Inventories | $ | - |
| Receivables and other assets | $ | 244,685 |
| Short-term non-financial assets | $ | 112,444 |
| Cash and cash equivalents | $ | 1,069,186 |

| EQUITY & LIABILITIES | $ | 5,470,358 |
|---|---|---|
| **TOTAL EQUITY** | **$** | **(31,941,768)** |
| Capital reserves | $ | 84,164,492 |
| Retained Earnings | $ | (116,106,260) |
| **CURRENT LIABILITIES** | **$** | **37,412,126** |
| Short-term bank liabilities | $ | 940 |
| Trade payables and other liabilities | $ | 17,408,942 |
| Short-term non-financial liabilities | $ | 75,361 |
| Net Payables to group companies | $ | 19,816,430 |
| Income Tax Liabilities | $ | 41,833 |
| Short-Term Provisions | $ | 68,621 |

**INCOME STATEMENT**                    **SAP Dec YTD 2021**

| | |
|---|---:|
| SALES | 5,880,284 |
| COGS | 2,651,361 |
| GROSS PROFIT | 3,228,923 |
| **Expenses** | **19,860,135** |
| Personnel Expenses | 3,812,787 |
| Other Operating Expenses | 16,047,348 |
| **Other Income** | 1,073,618 |
| | |
| EBITDA | (15,557,595) |
| Amortisation of intangible assets | 65,400 |
| Depreciation of tangible assets | 453,562 |
| | |
| EBIT | (16,076,556) |
| Net Financial Result | 0 |
| | |
| PROFIT BEFORE INCOME TAXES | (16,076,556) |

**Exhibit 2**

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Internal Revenue Service | 2A | 5/5/22 | | | $500.00 | | | | $0.00 | | | | | | $500.00 | | |
| County of Los Angeles | 9 | 2/9/22 | | | $8,537.47 | | | | | | | | | | $8,537.47 | | |
| California Franchise Tax Board | 17 | 2/24/22 | | | $800.00 | | | | $0.00 | | | | | | $800.00 | | |
| California Employment Dev. Dept. | | | | | | | | | $0.00 | | | | | | | | |
| WWD | | | | | | $258.00 | | | | | | | | | | $258.00 | $38.70 |
| Woodbury Common Premium Outlets | | | | | | $108,024.00 | | | | CUD | | | | | | $0.00 | $0.00 |
| WASTE MANAGEMENT | | | | | | $1,173.00 | | | | | | | | | | $1,173.00 | $175.95 |
| Wage Works, Inc. | | | | | | $585.00 | | | | | | | | | | $585.00 | $87.75 |
| Verizon Wireless | | | | | | $11,917.00 | | | | | | | | | | $11,917.00 | $1,787.55 |
| VERIZON | | | | | | $125.00 | | | | | | | | | | $125.00 | $18.75 |
| VECTOR SECURITY INC | | | | | | $150.00 | | | | | | | | | | $150.00 | $22.50 |
| UPS SUPPLY CHAIN SOLUTIONS, INC. | | | | | | $25.00 | | | | | | | | | | $25.00 | $3.75 |
| UNITED PARCEL SERVICE | | | | | | $146.00 | | | | | | | | | | $146.00 | $21.90 |
| UNITED HEALTH CARE JP MORGAN | | | | | | $1,145.00 | | | | | | | | | | $1,145.00 | $171.75 |
| TOWN OF PALM BEACH | | | | | | $55.00 | | | | | | | | | | $55.00 | $8.25 |
| THYSSEN KRUPP ELEVATOR | | | | | | $1,055.00 | | | | | | | | | | $1,055.00 | $158.25 |
| THOMSON REUTERS | | | | | | $2,596.00 | | | | | | | | | | $2,596.00 | $389.40 |
| THOMPSON TAX & ASSOCIATES | | | | | | $2,352.00 | | | | | | | | | | $2,352.00 | $352.80 |
| THE JEWISH WEEK INC. | | | | | | $648.00 | | | | | | | | | | $648.00 | $97.20 |
| The Epoch Times Association Inc. | | | | | | $786.00 | | | | | | | | | | $786.00 | $117.90 |
| TAX FREE SHOPPING, LTD | | | | | | $85.00 | | | | | | | | | | $85.00 | $12.75 |
| TAMI HOGAN | | | | | | $1,061.00 | | | | | | | | | | $1,061.00 | $159.15 |
| Talent Staff, LLC | | | | | | $3,603.00 | | | | | | | | | | $3,603.00 | $540.45 |
| T & G INDUSTRIES | | | | | | $8,000.00 | | | | | | | | | | $8,000.00 | $1,200.00 |
| Syzygy Performance GmbH | | | | | | $145,914.00 | | | | | | | | | | $145,914.00 | $21,887.10 |
| St Moritz Security Services, Inc. | | | | | | $19,523.00 | | | | | | | | | | $19,523.00 | $2,928.45 |
| SPG HOUSTON HOLDINGS,LP | 4 | 1/28/22 | $100.00 | | | $13,226.39 | | | $274,232.00 | CUD | | | $100.00 | | | $13,226.39 | $1,983.96 |
| SOUTHWEST SIGN COMPANY | | | | | | | | $6,151.00 | | | | | | | | $6,151.00 | $922.65 |
| SOUTH COAST PLAZA | | | | | | $10,064.00 | | | | CUD | | | | | | $0.00 | $0.00 |
| SoCalGas | | | | | | $0.00 | | | | | | | | | | $0.00 | $0.00 |
| Sirina Protection Systems | | | | | | $466.00 | | | | | | | | | | $466.00 | $69.90 |
| Sing Tao Newspapers New York LLC | | | | | | $462.00 | | | | | | | | | | $462.00 | $69.30 |
| Simon Property Group LP | | | | | | $55,572.00 | | | | CD | | | | | | $0.00 | $0.00 |
| SHIFT 4 CORPORATION | | | | | | $533.00 | | | | | | | | | | $533.00 | $79.95 |
| SHAROTTE BOUTIQUE | | | | | | $1,335.00 | | | | | | | | | | $1,335.00 | $200.25 |
| SEW GOOD | | | | | | $980.00 | | | | | | | | | | $980.00 | $147.00 |
| SEN Graphics, Inc. | | | | | | $556.00 | | | | | | | | | | $556.00 | $83.40 |
| Sedgwick Claims Management | | | | | | $14.00 | | | | | | | | | | $14.00 | $2.10 |
| Scottsdale Fashion Square LLC | 32 | 3/27/22 | $27,270.76 | | | $148,006.67 | | | $116,909.00 | CUD | | | $27,270.76 | | | $148,006.67 | $22,201.00 |
| SCM | | | | | | $5,441.00 | | | | | | | | | | $5,441.00 | $816.15 |
| SCHINDLER ELEVATOR CORPORATION | | | | | | $3,241.00 | | | | | | | | | | $3,241.00 | $486.15 |
| Schaefer Trans. Inc. | | | | | | $17,780.00 | | | | | | | | | | $17,780.00 | $2,667.00 |
| SAMSON MANAGEMENT CORP. | | | | | | $1,343,149.00 | | | | | | | | | | $1,343,149.00 | $201,472.35 |
| RUSSIAN BAZAAR | | | | | | $83.00 | | | | | | | | | | $83.00 | $12.45 |
| Runway Waiters | | | | | | $1,083.00 | | | | | | | | | | $1,083.00 | $162.45 |
| Reliable Products Supply | | | | | | $363.00 | | | | | | | | | | $363.00 | $54.45 |
| REGENCY ENTERPRISES INC | | | | | | $17,167.00 | | | | | | | | | | $17,167.00 | $2,575.05 |
| RAVE FABICARE INC. | | | | | | $188.00 | | | | | | | | | | $188.00 | $28.20 |
| Ralph's Sewing and Vacuum | | | | | | $636.00 | | | | | | | | | | $636.00 | $95.40 |
| QSCS OF NY, INC. | | | | | | $945.00 | | | | | | | | | | $945.00 | $141.75 |
| Pyke Mechanical Inc. | | | | | | $650.00 | | | | | | | | | | $650.00 | $97.50 |
| Premium Outlet Partners LP | 3 | 1/28/22 | $5,328.85 | | | $841,749.01 | | | $102,433.00 | | | | $5,328.85 | | | $841,749.01 | $126,262.35 |
| PITNEY BOWES PURCHASE POWER | | | | | | $4,270.00 | | | | | | | | | | $4,270.00 | $640.50 |
| PITNEY BOWES GLOBAL | | | | | | $828.00 | | | | | | | | | | $828.00 | $124.20 |
| PALM BEACH FIRE RESCUE | | | | | | $121.00 | | | | | | | | | | $121.00 | $18.15 |
| PALM BEACH COUNTY | | | | | | $180.00 | | | | | | | | | | $180.00 | $27.00 |
| Orkin Pest Control | | | | | | $353.00 | | | | | | | | | | $353.00 | $52.95 |
| Orkin , 875- N Houston Comm | | | | | | $354.00 | | | | | | | | | | $354.00 | $53.10 |
| ORKIN | | | | | | $545.00 | | | | | | | | | | $545.00 | $81.75 |
| ORACLE ELEVATOR COMPANY | | | | | | $700.00 | | | | | | | | | | $700.00 | $105.00 |
| OPTUS INC | | | | | | $770.00 | | | | | | | | | | $770.00 | $115.50 |
| Optimum | | | | | | $1,390.00 | | | | | | | | | | $1,390.00 | $208.50 |
| Oprandy's Fire & Safety Equipment | | | | | | $44.00 | | | | | | | | | | $44.00 | $6.60 |
| Opentext | 19 | 3/2/22 | | | | $3,164.50 | | | $4,481.00 | | | | | | | $4,481.00 | $672.15 |
| ONE TIME VENDOR_Customer refund_ C.ICHIK | | | | | | $876.00 | | | | | | | | | | $876.00 | $131.40 |
| One Image Protection INC | | | | | | $1,098.00 | | | | | | | | | | $1,098.00 | $164.70 |
| OCTAVIO PARRA | | | | | | $165.00 | | | | | | | | | | $165.00 | $24.75 |

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Payout |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| NVEnergy | | | | | | | | | $251.00 | | | | | | | $251.00 | $37.65 |
| Nestle Waters  North America | | | | | | | | | $275.00 | | | | | | | $275.00 | $41.25 |
| Mutual Security Services, Inc | | | | | | | | | $500.00 | | | | | | | $500.00 | $75.00 |
| MUSE MANAGEMENT, INC | | | | | | | | | $31,690.00 | | | | | | | $31,690.00 | $4,753.50 |
| MR HANDYMAN OF CALIFORNIA | | | | | | | | | $1,035.00 | | | | | | | $1,035.00 | $155.25 |
| Mood Media | | | | | | | | | $4,899.00 | | | | | | | $4,899.00 | $734.85 |
| Monika Arden | | | | | | | | | $2,421.00 | | | | | | | $2,421.00 | $363.15 |
| Modern Luxury | | | | | | | | | $467.00 | | | | | | | $467.00 | $70.05 |
| MILLENIUM SIGNS & DISPLAY, INC. | | | | | | | | | $1,456.00 | | | | | | | $1,456.00 | $218.40 |
| MI9 Retail - Raymark ULC | | | | | | | | | $12,227.00 | | | | | | | $12,227.00 | $1,834.05 |
| METROPOLITAN TELECOMM. | | | | | | | | | $65,087.00 | | | | | | | $65,087.00 | $9,763.05 |
| Melanie Theodoridis | | | | | | | | | $212.00 | | | | | | | $212.00 | $31.80 |
| Master Touch Cleaners, Inc. | | | | | | | | | $990.00 | | | | | | | $990.00 | $148.50 |
| Master Mechanical Services, Inc | | | | | | | | | $361.00 | | | | | | | $361.00 | $54.15 |
| MARY TANABE | | | | | | | | | $300.00 | | | | | | | $300.00 | $45.00 |
| Mark-Alan Harmon | | | | | | | | | $70.00 | | | | | | | $70.00 | $10.50 |
| Margaret's Cleaners | 23 | 3/16/22 | | | | $4,433.73 | | | $2,609.00 | | | | | | | $2,609.00 | $391.35 |
| Mangia 57th Inc. | | | | | | | | | $341.00 | | | | | | | $341.00 | $51.15 |
| Madeline Ungar | | | | | | | | | $653.00 | | | | | | | $653.00 | $97.95 |
| Lea Journo Salon | | | | | | | | | $430.00 | | | | | | | $430.00 | $64.50 |
| Las Vegas North Outlets, LLC | 5 | 1/28/22 | $3,387.18 | | | $750,769.87 | | | $266,918.00 | CUD | | | $3,387.18 | | | $750,769.87 | $112,615.48 |
| LA MODELS | | | | | | | | | $227.00 | | | | | | | $227.00 | $34.05 |
| KUCKER MARINO WINIARSKY & BITTENS, | | | | | | | | | $3,975.00 | | | | | | | $3,975.00 | $596.25 |
| Kim Murphy | | | | | | | | | $226.00 | | | | | | | $226.00 | $33.90 |
| Keter Environmental Services, Inc | | | | | | | | | $1,609.00 | | | | | | | $1,609.00 | $241.35 |
| Joyce A. Pence | | | | | | | | | $174.00 | | | | | | | $174.00 | $26.10 |
| Johnson Controls Security Solutions | 36 | 3/29/22 | | | | $59,041.10 | | | $55,742.00 | | | | | | | $55,742.00 | $8,361.30 |
| JOHNSON CONTROLS FIRE PROTECTION LP | 35 | 3/29/22 | | | | $569.46 | | | $514.00 | | | | | | | $514.00 | $77.10 |
| Jive Communications, Inc | | | | | | | | | $1,404.00 | | | | | | | $1,404.00 | $210.60 |
| Jana Cori Coke | | | | | | | | | $387.00 | | | | | | | $387.00 | $58.05 |
| J.D Coins Inc. | | | | | | | | | $761.00 | | | | | | | $761.00 | $114.15 |
| INTERNATIONAL SILKS & WOOLENS | | | | | | | | | $167.00 | | | | | | | $167.00 | $25.05 |
| Inter Trade Systems Inc | | | | | | | | | $321.00 | | | | | | | $321.00 | $48.15 |
| INGENIEURB RO RUCKPAUL & | | | | | | | | | $389.00 | | | | | | | $389.00 | $58.35 |
| IMPERIAL NETWORK GROUP INC | | | | | | | | | $1,287.00 | | | | | | | $1,287.00 | $193.05 |
| IMPERIAL COMMERCIAL CLEANING | | | | | | | | | $708.00 | | | | | | | $708.00 | $106.20 |
| HWS Informationssysteme GmbH | | | | | | | | | $4,531.00 | | | | | | | $4,531.00 | $679.65 |
| Hospitality Services, Inc | | | | | | | | | $3,831.00 | | | | | | | $3,831.00 | $574.65 |
| Hedy Bentel | | | | | | | | | $1,055.00 | | | | | | | $1,055.00 | $158.25 |
| HAWAII MEDICAL SERVICE ASSOCIATION | | | | | | | | | $4,575.00 | | | | | | | $4,575.00 | $686.25 |
| HAIG SERVICE CORPORATION | | | | | | | | | $310.00 | | | | | | | $310.00 | $46.50 |
| Green Peak Building Services, Inc | | | | | | | | | $2,302.00 | | | | | | | $2,302.00 | $345.30 |
| GRANT MCCARTHY GROUP LLC | | | | | | | | | $11,701.00 | | | | | | | $11,701.00 | $1,755.15 |
| Granite Telecommunications | | | | | | | | | $2,473.00 | | | | | | | $2,473.00 | $370.95 |
| Global Facility Management & Constr | | | | | | | | | $25,000.00 | | | | | | | $25,000.00 | $3,750.00 |
| General Information Solutions, LLC | | | | | | | | | $22.00 | | | | | | | $22.00 | $3.30 |
| Fusion Cloud Company, LLC | | | | | | | | | $100.00 | | | | | | | $100.00 | $15.00 |
| Funaro & co., P.C. | | | | | | | | | $38,565.00 | CD | | | | | | $0.00 | $0.00 |
| Frontier Communications | | | | | | | | | $820.00 | | | | | | | $820.00 | $123.00 |
| Freecom Luxury Art Book, LLC | | | | | | | | | $6,955.00 | | | | | | | $6,955.00 | $1,043.25 |
| FRACHT FWO,INC | | | | | | | | | $615.00 | | | | | | | $615.00 | $92.25 |
| FLORIDA POWER & LIGHT | 1 | 1/21/22 | | | | $2,887.17 | | | $1,005.00 | | | | | | | $2,887.17 | $433.08 |
| Florida Pest Control | | | | | | | | | $502.00 | | | | | | | $502.00 | $75.30 |
| FASHION LOGISTICS, INC. | | | | | | | | | $15,867.00 | | | | | | | $15,867.00 | $2,380.05 |
| FANDL, LLC | | | | | | | | | $1,066.00 | | | | | | | $1,066.00 | $159.90 |
| Express Parking, Management, Inc. | | | | | | | | | $599.00 | | | | | | | $599.00 | $89.85 |
| EXPRESS FIRE PROTECTION | | | | | | | | | $240.00 | | | | | | | $240.00 | $36.00 |
| Elaine Cohen | | | | | | | | | $877.00 | | | | | | | $877.00 | $131.55 |
| El Paseo Collection North | | | | | | | | | $6,554.00 | CUD | | | | | | $0.00 | $0.00 |
| Eddie Love (Petty Cash) | | | | | | | | | $60.00 | | | | | | | $60.00 | $9.00 |
| Dutch Express, LLC | | | | | | | | | $25.00 | | | | | | | $25.00 | $3.75 |
| Direct Construction Company Limited | 18 | 3/2/22 | | | | $3,600.92 | | | $1,651.00 | | | | | | | $3,600.92 | $540.14 |
| Cushman and Wakefield | | | | | | | | | $43,151.00 | CD | | | | | | $43,151.00 | $6,472.65 |
| CT CORPORATION SYSTEM | | | | | | | | | $1,952.00 | | | | | | | $1,952.00 | $292.80 |
| Crown Castle Fiber LLC | | | | | | | | | $15,910.00 | | | | | | | $15,910.00 | $2,386.50 |
| Country Club Cleaners | | | | | | | | | $380.00 | | | | | | | $380.00 | $57.00 |
| CONDE NAST PUBLICATIONS | | | | | | | | | $23,300.00 | | | | | | | $23,300.00 | $3,495.00 |

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Concur Technologies Inc | | | | | | | | | $2,430.00 | | | | | | | $2,430.00 | $364.50 |
| Computoo, Inc. | | | | | | | | | $1,411.00 | | | | | | | $1,411.00 | $211.65 |
| Computoo GmbH | | | | | | | | | $21.00 | | | | | | | $21.00 | $3.15 |
| ComplyRight, Inc. dba HR Direct | | | | | | | | | $617.00 | | | | | | | $617.00 | $92.55 |
| COMMONWEALTH EDISON | | | | | | | | | $1,776.00 | | | | | | | $1,776.00 | $266.40 |
| Comcast Business | | | | | | | | | $110.00 | | | | | | | $110.00 | $16.50 |
| Comcast Business | | | | | | | | | $125.00 | | | | | | | $125.00 | $18.75 |
| CMS MECHANICAL SERVICE CO. | | | | | | | | | $1,414.00 | | | | | | | $1,414.00 | $212.10 |
| CLEANER'S SUPPLYS INC | | | | | | | | | $81.00 | | | | | | | $81.00 | $12.15 |
| CITY OF WEST PALM BEACH | | | | | | | | | $388.00 | | | | | | | $388.00 | $58.20 |
| City of Beverly Hills | | | | | | | | | $275.00 | | | | | | | $275.00 | $41.25 |
| CITY EXPEDITOR, INC. | | | | | | | | | $755.00 | | | | | | | $755.00 | $113.25 |
| CIT | 40 | 5/9/22 | | | | $49,170.37 | | | $14,896.00 | | Late | | | | | $49,170.37 | $7,375.56 |
| Cision US, I | | | | | | | | | $6,694.00 | | | | | | | $6,694.00 | $1,004.10 |
| Cisco Systems Capital Corporation | | | | | | | | | $31,960.00 | | | | | | | $31,960.00 | $4,794.00 |
| Chicago Oak Street Partners, LLC | 20 | 3/12/22 | | | | $837,026.18 | | | $554,764.00 | CUD | | | | | | $837,026.18 | $125,553.93 |
| CHETRIT 1412 LLC | 16 | 2/21/22 | | | | $250,000.00 | | | $250,000.00 | CU | | | | | | $250,000.00 | $37,500.00 |
| CenturyLink | 8 | 2/3/22 | | | | $700.25 | | | $689.00 | | | | | | | $700.25 | $105.04 |
| Carlton Technologies, Inc | | | | | | | | | $269.00 | | | | | | | $269.00 | $40.35 |
| BUREAU OF ELEVATOR SAFETY | | | | | | | | | $274.00 | | | | | | | $274.00 | $41.10 |
| Borden Ladner Gervais, LLP | | | | | | | | | $1,480.00 | | | | | | | $1,480.00 | $222.00 |
| BOGUSLAW SANKOWSKI | | | | | | | | | $941.00 | | | | | | | $941.00 | $141.15 |
| Blue Print AG | | | | | | | | | $598.00 | | | | | | | $598.00 | $89.70 |
| Bal Harbour Shops LLLP | | | | | | | | | $81,623.00 | CUD | | | | | | $0.00 | $0.00 |
| AVALARA INC | | | | | | | | | $4,649.00 | | | | | | | $4,649.00 | $697.35 |
| Atlantic Broadband | | | | | | | | | $78.00 | | | | | | | $78.00 | $11.70 |
| Atlantic Broadband | | | | | | | | | $733.00 | | | | | | | $733.00 | $109.95 |
| ASA Cleaning Services Corp | | | | | | | | | $22,255.00 | | | | | | | $22,255.00 | $3,338.25 |
| Archive Systems, Inc. | | | | | | | | | $11,515.00 | | | | | | | $11,515.00 | $1,727.25 |
| Angel Tailor | | | | | | | | | $152.00 | | | | | | | $152.00 | $22.80 |
| AMERICAN EXPRESS | 13 | | | | | $21,674.03 | | | $59,401.00 | D | | | | | | $21,674.03 | $3,251.10 |
| American Commercial Equities Three, | | | | | | | | | $29,341.00 | CUD | | | | | | $0.00 | $0.00 |
| Amanda Huang | | | | | | | | | $55.00 | | | | | | | $55.00 | $8.25 |
| ALPINE BUSINESS SYSTEMS | | | | | | | | | $10,988.00 | | | | | | | $10,988.00 | $1,648.20 |
| Alliant Insurance Services, Inc. | | | | | | | | | $348,375.00 | | | | | | | $348,375.00 | $52,256.25 |
| Alliance Pro Services LLC | | | | | | | | | $278.00 | | | | | | | $278.00 | $41.70 |
| ALA MOANA CENTER ASSOCIATION | | | | | | | | | $1,198.00 | CUD | | | | | | | |
| Ala Moana Anchor Acquisition, LLC | 14 | 2/18/22 | $7,220.63 | | | $1,382,622.26 | | | $264,681.00 | CUD | | | $7,220.63 | | | $1,382,622.26 | $207,393.34 |
| ABALON EXTERMINATING CO. INC. | | | | | | | | | $450.00 | | | | | | | $450.00 | $67.50 |
| [Beverly Hills Wilshire Hotel] | 15 | 2/18/22 | | | | $2,441,373.90 | | | $2,546,815.33 | CUD | | | | | | $2,441,373.90 | $366,206.09 |
| 717 GFC LLC | 24 | 3/23/22 | | | | $5,108,857.92 | | | $5,055,143.00 | CUD | | | | | | $5,108,857.92 | $766,328.69 |
| 693 Fifth Owner LLC | | | | | | | | | $1,641.00 | CUD | | | | | | $0.00 | $0.00 |
| Harris County Water Control | 6 | 1/31/22 | | $1,546.80 | | | | | | | | | $1,546.80 | | | $0.00 | $0.00 |
| Harris County Municipal Utility District | 7 | 1/31/22 | | $8,204.13 | | | | | | | | | $8,204.13 | | | $0.00 | $0.00 |
| The Retail Property Trust | 10 | 3/10/22 | | | | $440,000.00 | | | | | | | | | | $440,000.00 | $66,000.00 |
| Sawgrass Mills Phase IV LLC | 11 | 2/10/22 | $4,205.33 | | | $543,937.97 | | | | | | | $4,205.33 | | | $543,937.97 | $81,590.70 |
| Premium Outlet Partners LP | 12 | 2/10/22 | $5,326.37 | | | $417,439.45 | | | | | | | $5,326.37 | | | $417,439.45 | $62,615.92 |
| Mi9 Retail – Raymark ULC | 21A | 3/15/22 | | | | $266.61 | | | | | | | | | | $266.61 | $39.99 |
| Fedex Corporate Services, Inc | 22 | 3/16/22 | | | | $2,677.50 | | | | | | | | | | $2,677.50 | $401.63 |
| Great Northern Insurance | 25 | 3/24/22 | | | | $211,141.65 | | | | | | | | | | $211,141.65 | $31,671.25 |
| Chubb Insurance Company | 26 | 3/24/22 | | | | $20,576.73 | | | | | | | | | | $20,576.73 | $3,086.51 |
| Vigilant Insurance Company | 27 | 3/24/22 | | | | $67,260.00 | | | | | | | | | | $67,260.00 | $10,089.00 |
| Federal Insurance Company | 28 | 3/24/22 | | | | $1,788.23 | | | | | | | | | | $1,788.23 | $268.23 |
| Stephanie Buono | 29 | 3/24/22 | | | | $40,411.80 | | | $0.00 | CUD | | | | | | $40,411.80 | $6,061.77 |
| the Neiman Marcus Group | 30 | 3/24/22 | | $84,533.42 | | $230,085.72 | | | | | | | | | | $230,085.72 | $34,512.86 |
| Manhattan Telecommunications Corporation/MetTel | 31 | 3/25/22 | | | | $86,806.03 | | | | | | | | | | $86,806.03 | $13,020.90 |
| United Parcel Service | 33 | 3/28/22 | | | | $235,709.96 | | | | | | | | | | $235,709.96 | $35,356.49 |
| Suzanne Humbert | 37 | 3/29/22 | | | | $300,960.00 | | | $0.00 | CUD | | | | | | $300,960.00 | $45,144.00 |
| Rebecca Castillo | | | | | | | | | $0.00 | CUD | | | | | | $0.00 | $0.00 |
| NYC Department of Finance | 39 | 5/2/22 | | | $904,777.63 | | $349,209.25 | | $68,819.41 | C | Under Investigation | | | | $349,209.25 | $68,819.41 | $10,332.91 |
| Ann Marie Di Ionna | | | | | | | | | $99,915.19 | | | | | | | $99,915.19 | $14,987.28 |
| Escada Shared Services Ltd. | | | | | | | | | $32,000.00 | | | | | | | $0.00 | $0.00 |
| Dunnwright Services Inc. | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 |
| Site Crew Inc. | | | | | | | | | $0.00 | | | | | | | $0.00 | $0.00 |
| Worth-Pondfield LLC | 34A | 3/28/22 | $43,666.35 | | | $1,462,737.72 | | | $1,343,149.00 | CUD | | | $43,666.35 | | | $1,462,737.72 | $219,410.66 |

| | | | FILED CLAIM | | | | | SCHEDULED CLAIM | | | OBJECTION | PROPOSED TREATMENT OF CLAIM | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any | Proposed Exit Financing Amount | Proposed Admin Amount | Proposed Secured Amount | Proposed Priority Amount | Proposed Unsecured Amount | Proposed Unsecured Payout |
| IDK Cooling Corp. | 38 | 4/14/22 | | | | $2,041.41 | | | | | Late | | | | | $0.00 | $0.00 |
| **TOTAL** | | | | | | $15,982,714.51 | | | $13,818,133.93 | | | | $471,505.47 | $21,815,446.71 | $359,046.72 | $18,514,329.91 | $2,777,149.49 |
| | | | | | | | | | | | | | | | | | 15% recovery |

**Exhibit 3**

**Escada America LLC**
**3 Year Cash Forecast**
$ in Thousands, Except per Unit Data

| | | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | ME | YE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Fcst / Act | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST | FCST |
| | Projection Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 8 |
| | Month / Year Ending | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Jul-23 |
| 1 | Beginning Operating Cash | $1,700 | $253 | $272 | $279 | $299 | $203 | $222 | $237 | $484 | $500 | $522 | $1,824 | $1,700 |
| 2 | | | | | | | | | | | | | | |
| 3 | ( + ) Store Receipts | $156 | $153 | $156 | $153 | $156 | $156 | $146 | $156 | $156 | $156 | $153 | $156 | $1,851 |
| 4 | ( + ) Other / Liquidation Receipts | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 240 |
| 5 | ( + ) Issuance of Exit Financing | 150 | - | - | - | - | - | - | - | - | - | - | - | 150 |
| 6 | ( + ) Release of Bond LC (1) | - | - | - | - | - | - | - | 342 | - | - | 1,400 | - | 1,742 |
| 5 | ( + ) 3rd Party Sublease Contribution | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 420 |
| 6 | **Total Receipts & Income** | $361 | $208 | $211 | $208 | $211 | $211 | $201 | $553 | $208 | $211 | $1,608 | $211 | $4,403 |
| 7 | | | | | | | | | | | | | | |
| 8 | ( - ) Consignment Fee (to be Accrued) (2) | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 9 | ( - ) HQ Personnel | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (40) | (480) |
| 10 | ( - ) Store Personnel | (33) | (32) | (33) | (32) | (33) | (33) | (31) | (33) | (32) | (33) | (32) | (33) | (389) |
| 11 | ( - ) Store Associate Retention Bonus | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (1) | (12) |
| 12 | ( - ) Selling and Shipping | (5) | (5) | (5) | (5) | (5) | (5) | (4) | (5) | (5) | (5) | (5) | (5) | (56) |
| 13 | ( - ) Store Rent | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (15) | (180) |
| 14 | ( - ) HQ Rent | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (420) |
| 15 | ( - ) Financial Charges | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (2) | (28) |
| 16 | ( - ) Benefits | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (35) | (420) |
| 17 | ( - ) Misc. (Facilities & Other) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (4) | (46) |
| 18 | ( - ) Utilities, Telephones, Networks | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (5) | (60) |
| 19 | ( - ) Sales Taxes | (15) | (15) | (15) | (15) | (15) | (15) | (14) | (15) | (15) | (15) | (15) | (15) | (178) |
| 20 | ( - ) Interest Expense on Exit Financing | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 21 | **Total Operating Disbursements** | ($190) | ($188) | ($190) | ($188) | ($190) | ($190) | ($186) | ($190) | ($188) | ($190) | ($188) | ($190) | ($2,268) |
| 22 | | | | | | | | | | | | | | |
| 23 | **Net Cash Flow Before Plan Expenses** | $172 | $19 | $22 | $19 | $22 | $22 | $15 | $363 | $19 | $22 | $1,419 | $22 | $2,135 |
| 24 | | | | | | | | | | | | | | |
| 25 | ( - ) LNBYG (Debtor's Counsel) | (125) | - | - | - | - | - | - | - | - | - | - | - | (125) |
| 26 | ( - ) Gregory Jones (Sub V Trustee) | (20) | - | - | - | - | - | - | - | - | - | - | - | (20) |
| 27 | ( - ) HCVT (Debtor's Accountant) | (25) | - | - | - | - | - | - | - | - | - | - | - | (25) |
| 28 | ( - ) Committee Counsel | (30) | - | - | - | - | - | - | - | - | - | - | - | (30) |
| 29 | ( - ) US Trustee Quarterly Fees | (8) | - | (14) | - | - | (3) | - | - | (3) | - | - | (3) | (31) |
| 30 | ( - ) County of Los Angeles | (10) | - | - | - | - | - | - | - | - | - | - | - | (10) |
| 31 | ( - ) CA Franchise Tax Board | (1) | - | - | - | - | - | - | - | - | - | - | - | (1) |
| 32 | ( - ) IRS | (1) | - | - | - | - | - | - | - | - | - | - | - | (1) |
| 33 | ( - ) NYC Dept. of Finance | - | - | - | - | (117) | - | - | (117) | - | - | (117) | - | (350) |
| 34 | ( - ) Class I Eden Roc LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 35 | ( - ) Class II Mega International LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 36 | ( - ) Class III Escada Sourcing and Production LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 37 | ( - ) Class IV Escada Sourcing and Production LLC | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 38 | ( - ) Class V General Unsecured Creditors (3) | (1,400) | - | - | - | - | - | - | - | - | - | - | (1,370) | (2,770) |
| 39 | **Ending Operating Cash** | $253 | $272 | $279 | $299 | $203 | $222 | $237 | $484 | $500 | $522 | $1,824 | $473 | $473 |
| 40 | | | | | | | | | | | | | | |
| 41 | **Memo: Unpaid Consignment Fees to Escada Sourcing and Production LLC (1)** | $26 | $52 | $79 | $105 | $131 | $158 | $183 | $209 | $235 | $261 | $287 | $314 | $314 |
| 42 | | | | | | | | | | | | | | |
| 43 | | | | | | | | | | | | | | |
| 44 | (1) If the Bond in the amount of $1.4M is recovered sooner, proceeds will be distributed to the Class V General Unsecured Creditors within 30 days of receipt. |
| 44 | (2) Assumes 15% of Retail and Other / Liquidation Receipts. |
| 45 | (3) Primary source of this payment is expected from bond recovery and will is to be paid to Class 5 within 30 days of receipt, regardless of when recovered, but, under any circumstance, no later than July 31, 2023. |

**Exhibit 4**

# EXHIBIT 4

The Settlement Agreement between the Debtor and its estate, on the one hand, and Escada Sourcing and Production LLC ("ESP") on the other hand is under discussion and subject to final documentation.  The key terms of the Settlement Agreement are set forth in the Plan, and include:

On the Effective Date, Escada Sourcing and Production LLC ("Exit Financier") will contribute exit financing in the amount of $150,000 subject to the terms of the Settlement Agreement. The Settlement Agreement shall provide, in part, that the Exit Financier will (i) provide a five-year, zero-interest, $150,000 loan to the Debtor, (ii) agree to subordinate its claim for post-petition priority consignment fees, (iii) subordinate its claims under Classes 3 and 4 to those of Class 5 to the extent provided for in the Debtor's Plan and (iv) vote in favor of the Debtor's Plan, in return for which the Debtor and the Estate shall irrevocably grant the Exit Financier and its wholly-owned subsidiary, Escada Online GmbH, a complete release of claims, including, without limitation, for any preference or fraudulent transfers or avoidance action claims.

If the Bankruptcy Court orders the Bankruptcy Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Debtor's chapter 11 estate that has not been disbursed pursuant to the Plan will revest in the chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Bankruptcy Case, and, the Bond Lien shall remain in place, and the Settlement shall remain in place.

The foregoing is without prejudice to revision during ongoing settlement discussions.

**Exhibit 5**

**EXHIBIT 5**


The following pages annexed to this Exhibit 5 are from the Debtor's Statement of Financial Affairs ## 3 and 4 listing potential preference actions held by the Debtor's estate.

Because the lien of Escada Sourcing and Producing LLC ("ESP") was filed within the one-year period prior to the Petition Date, there is a potential preference lien avoidance action against ESP.  However, the Debtor is informed and believes that ESP has valid defenses to portions of its claim for ordinary course, new value, and/or contemporaneous exchange of value for certain portions of its claim and lien.

The Debtor does not believe that the estate has any actual or fraudulent transfer avoidance claims.

The Debtor may have claims against Lexon Surety related to a prepetition bond, which is under investigation.

**Exhibit 3 to SOFA**

| Creditor | Date | Total Amount | Reason of payment | Address |
|---|---|---|---|---|
| CHAMBERLAIN, HRDLICKA, WHITE, | 1/13/2022 | 22,762.50 | Professional Legal Services | 191 Peachtree Street, N.E., Forty Sixth Floor, Atlanta, GA, 30303 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 11/10/2021 | 23,092.67 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 11/18/2021 | 15,101.40 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 12/3/2021 | 15,101.40 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| FEDEX CORPORATE SERVICES, INC. / Schaefer Trans. Inc. | 1/13/2022 | 27,558.36 | FEDEX Services | PO BOX 371461, PITTSBURGH, PA, 15250-7461 |
| SCOTTSDALE FASHION SQUARE, LLC | 12/3/2021 | 728.44 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SCOTTSDALE FASHION SQUARE, LLC | 1/7/2022 | 32,563.59 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SHEILA FERRIS-BEATON | 10/29/2021 | 248.02 | Expense Reimbursement, Travel, Store Expenses | S. Grand Central Parkway, #3419, 555, Las Vegas, NV, 89106 |
| 693 Fifth Owner LLC | 12/3/2021 | 58,162.02 | Store Rent | PO Box 780522, Philadelphia, PA, 19178-0522 |
| 693 Fifth Owner LLC | 12/16/2021 | 62,513.84 | Store Rent | PO Box 780522, Philadelphia, PA, 19178-0522 |
| Account Service Fees / JP MORGAN | 11/2/2021 | 3.95 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218-2051 |
| Account Service Fees / JP MORGAN | 11/15/2021 | 4,070.79 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218-2051 |
| Account Service Fees / JP MORGAN | 11/26/2021 | 7.90 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218-2051 |
| Account Service Fees / JP MORGAN | 12/15/2021 | 4,383.29 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218-2051 |
| Account Service Fees / JP MORGAN | 1/3/2022 | 10,690.73 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218-2051 |
| Account Service Fees / JP MORGAN | 1/10/2022 | 7.90 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218-2051 |
| Account Service Fees / JP MORGAN | 1/18/2022 | 4,356.09 | Monthly Bank Charges | PO Box 182051, Columbus, OH 43218-2051 |
| ADP, LLC | 11/29/2021 | 290.34 | Payroll Fees | 1851 N Resler Drive, MS 100, El Paso, TX, 79912 |
| ADP, LLC | 12/30/2021 | 290.34 | Payroll Fees | 1851 N Resler Drive, MS 100, El Paso, TX, 79912 |
| ADP, LLC | 1/14/2022 | 1,403.70 | Payroll Fees | 1851 N Resler Drive, MS 100, El Paso, TX, 79912 |
| Ala Moana Anchor Acquisition, LLC | 11/3/2021 | 25,000.00 | Store Rent | PO Box 860375, Minneapolis, MN, 55486-0074 |
| Ala Moana Anchor Acquisition, LLC | 12/3/2021 | 25,000.00 | Store Rent | PO Box 860375, Minneapolis, MN, 55486-0074 |
| Alliance Pro Services, LLC | 11/1/2021 | 1,893.93 | Plumbing & Other Store Maintenance | 239 Sneech Pond Rd, Cumberland, RI, 02864 |
| American Commercial Equities Three, LLC | 11/2/2021 | 6,690.00 | Store Rent | 22917 Pacific Coast Highway, Malibu, CA, 90265 |
| American Commercial Equities Three, LLC | 11/26/2021 | 31,690.00 | Store Rent | 22917 Pacific Coast Highway, Malibu, CA, 90265 |
| American Commercial Equities Three, LLC | 1/10/2022 | 31,690.00 | Store Rent | 22917 Pacific Coast Highway, Malibu, CA, 90265 |
| AMERICAN EXPRESS | 10/28/2021 | 13,697.06 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/1/2021 | 0.65 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/4/2021 | 8,832.19 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/5/2021 | 12,001.16 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 11/10/2021 | 250.00 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 12/1/2021 | 0.65 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 12/3/2021 | 1,750.94 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 12/6/2021 | 12,148.07 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 1/3/2022 | 17,269.98 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 1/5/2022 | 9,869.51 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| AMERICAN EXPRESS | 1/14/2022 | 1,452.85 | Store and Admin services | PO Box 1270, NEWARK, NJ, 07101-1270 |
| Angel Tailor | 12/3/2021 | 57.60 | Tailoring Services | 1311 Kapiolani Blvd Suite 209, Honolulu, HI, 96814 |
| AT&T | 11/8/2021 | 476.92 | Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| AT&T | 12/9/2021 | 476.92 | Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| AT&T | 1/6/2022 | 476.92 | Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| ATLANTIC BROADBAND | 10/25/2021 | 151.90 | Telephone & Internet cost | PO Box 371801, Pittsburgh, PA, 15250-7801 |
| AVALARA INC | 11/4/2021 | 21,000.00 | License/Consulting on Automated Tax Platform | DEPT CH 16781, PALATINE, IL, 60055-6781 |
| AVALARA INC | 12/14/2021 | 4,899.38 | Avalara CertCapture Service & Setup | DEPT CH 16781, PALATINE, IL, 60055-6781 |
| AVALARA INC | 1/18/2022 | 179.09 | Avalara AvaTax Platform Charge -- Proration | DEPT CH 16781, PALATINE, IL, 60055-6781 |
| Blanca Lozano | 11/3/2021 | 100.00 | Expense Reimbursement, Travel, Store Expenses | 3500 Mystic Pointe Dr. apt 3107, AVENTURA, FL, 33180 |
| CENTRAL HUDSON GAS & ELECTRIC | 11/8/2021 | 94.22 | Utilities | 284 SOUTH AVENUE POUGHKEEPSIE NY 12601-4839 |
| CENTRAL HUDSON GAS & ELECTRIC | 12/9/2021 | 204.94 | Utilities | 284 SOUTH AVENUE POUGHKEEPSIE NY 12601-4839 |
| CENTRAL HUDSON GAS & ELECTRIC | 12/30/2021 | 124.14 | Utilities | 284 SOUTH AVENUE POUGHKEEPSIE NY 12601-4839 |
| Cerasia & Del Rey-Cone LLP | 11/4/2021 | 6,635.00 | Legal Expenses | 3 Honeysuckle Ave. West Orange, NJ, 07052 |
| CERASIA LAW LLC | 1/13/2022 | 687.50 | Legal Expenses | 3 Honeysuckle Ave. West Orange, NJ, 07052 |
| CERTEGY CHECK SERVICES | 12/21/2021 | 30.00 | Check Services /Payment solutions | PO Box 4535, CAROL STREAM, IL, 60197-4535 |
| City of Beverly Hills | 1/4/2022 | 278.00 | Engine inspection / Fire Department | PO Box 548, Roseville, CA, 95678-0548 |
| CNA INSURANCE | 11/15/2021 | 25,192.60 | Insurance Policy Payments | PO Box 74007619, CHICAGO, IL, 60674-7619 |
| CNA INSURANCE | 1/18/2022 | 40,151.00 | Insurance Policy Payments | PO Box 74007619, CHICAGO, IL, 60674-7619 |

| Vendor | Date | Amount | Description | Address |
|---|---|---|---|---|
| Comcast Business | 10/18/2021 | 121.60 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 72211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 11/10/2021 | 125.01 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 72211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 11/18/2021 | 121.40 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 72211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 12/10/2021 | 125.01 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 72211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 12/20/2021 | 121.40 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 72211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 1/10/2022 | 125.01 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 72211 CHARLOTTE NC 28272-1211 |
| Comcast Business | 1/18/2022 | 121.52 | Telephone & Internet cost | 141 NW 16TH ST POMPANO BEACH FL 33060-5250 or COMCAST PO BOX 72211 CHARLOTTE NC 28272-1211 |
| COMMONWEALTH EDISON | 10/19/2021 | 700.05 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| COMMONWEALTH EDISON | 11/17/2021 | 621.42 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| COMMONWEALTH EDISON | 12/20/2021 | 1,519.76 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| COMMONWEALTH EDISON | 1/7/2022 | 784.59 | Electricity | COMED  PO BOX 6111  CAROL STREAM, IL 60197-6111  or COMED PO BOX 6112 CAROL STREAM, IL 60197-6112 |
| ComplyRight, Inc. dba HR Direct | 12/2/2021 | 636.48 | Poster Service Renewal | PO Box 669390, Pompano Beach, FL, 33066 |
| ComplyRight, Inc. dba HR Direct | 1/4/2022 | 181.88 | Poster Service Renewal | PO Box 669390, Pompano Beach, FL, 33066 |
| CON EDISON | 10/18/2021 | 32.76 | Utilities | PO Box 1702, NEW YORK, 10116-1702 |
| CON EDISON | 11/16/2021 | 33.81 | Utilities | PO Box 1702, NEW YORK, 10116-1702 |
| CON EDISON | 12/17/2021 | 34.84 | Utilities | PO Box 1702, NEW YORK, 10116-1702 |
| Credit Card Fees / FISERV | 10/18/2021 | 1,895.33 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/19/2021 | 0.97 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/20/2021 | 1.20 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/21/2021 | 1,630.43 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/22/2021 | 306.56 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/25/2021 | 3,184.31 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/26/2021 | 1.01 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/27/2021 | 1.20 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/28/2021 | 1,699.37 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 10/29/2021 | 401.18 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/1/2021 | 2,296.29 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/2/2021 | 0.98 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/3/2021 | 2,042.70 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/4/2021 | 1,373.86 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/5/2021 | 418.58 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/8/2021 | 1,602.33 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/9/2021 | 0.87 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/10/2021 | 1.03 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/12/2021 | 1,924.12 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/15/2021 | 1,522.55 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/16/2021 | 1.06 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/17/2021 | 1.96 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/18/2021 | 2,298.82 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/19/2021 | 517.45 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/22/2021 | 1,530.09 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/23/2021 | 1.80 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/24/2021 | 1.44 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/26/2021 | 2,442.78 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/29/2021 | 1,724.30 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 11/30/2021 | 3.84 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | 12/1/2021 | 2.33 | Credit Card Fees from Store Sales | 255 Fiserv Dr, Brookfield, WI 53045, USA |

| Name | Description | Date | Amount | Address |
|---|---|---|---|---|
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/7/2021 | 3,349.75 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/7/2021 | 695.17 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/6/2021 | 1,634.06 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/8/2021 | 2.76 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/9/2021 | 986.41 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/10/2021 | 1,151.01 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/14/2021 | 0.99 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/15/2021 | 1.28 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/16/2021 | 1,213.44 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/17/2021 | 344.20 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/20/2021 | 3,073.11 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/21/2021 | 0.51 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/22/2021 | 0.55 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/23/2021 | 1,884.32 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/24/2021 | 5,026.25 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/27/2021 | 2,161.85 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/28/2021 | 533.99 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/30/2021 | 1.62 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 12/31/2021 | 1.75 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/3/2022 | 3,681.94 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/4/2022 | 45.52 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/5/2022 | 1.25 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/6/2022 | 1.47 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/7/2022 | 4,787.34 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/10/2022 | 1,212.13 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/11/2022 | 0.66 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/12/2022 | 0.93 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/13/2022 | 3,077.40 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/14/2022 | 215.12 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Credit Card Fees / FISERV | Credit Card Fees from Store Sales | 1/18/2022 | 2,573.88 | 255 Fiserv Dr, Brookfield, WI 53045, USA |
| Cynthia White | Expense Reimbursement, Travel, Store Expenses | 10/29/2021 | 191.64 | 7014 E. Camelback Road, Suite 1128, Scottsdale, AZ, 85251 |
| Cynthia White | Expense Reimbursement, Travel, Store Expenses | 1/4/2022 | 66.29 | 7014 E. Camelback Road, Suite 1128, Scottsdale, AZ, 85251 |
| DEPT TAX FEE (CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION) | CA sales tax audit settlement | 11/24/2021 | 38,699.79 | PO Box 942879, SACRAMENTO CA 94279-8062 |
| DILLARD STORE SERVICES INC | Customer Refund | 12/10/2021 | 2,750.08 | P.O. Box 8005, Little Rock, AR, 72203 |
| Dutch Express, LLC | | 11/5/2021 | 159.73 | 34 West 15th Street, 3rd Floor, New York, Ny, 10013 |
| El Paseo Collection North | Store Rent | 11/3/2021 | 5,000.00 | 73-061 El Paseo, Suite 200, Palm Desert, CA, 92260 |
| El Paseo Collection North | Store Rent | 12/3/2021 | 11,694.37 | 73-061 El Paseo, Suite 200, Palm Desert, CA, 92260 |
| Erica Nieves | Expense Reimbursement, Travel, Store Expenses | 10/28/2021 | 293.86 | 18181 NE 31 ST, CH305, AVENTURA, FL, 33160 |
| Erica Nieves | Expense Reimbursement, Travel, Store Expenses | 12/16/2021 | 510.72 | 18181 NE 31 ST, CH305, AVENTURA, FL, 33160 |
| Erica Nieves | Expense Reimbursement, Travel, Store Expenses | 1/4/2022 | 935.35 | 18181 NE 31 ST, CH305, AVENTURA, FL, 33160 |
| ESCADA DESERT HILLS PREMIUM OUTLETS | Store Rent | 11/3/2021 | 58,162.02 | PO Box 822873, Philadelphia, PA, 19182-2873 |
| ESCADA DESERT HILLS PREMIUM OUTLETS | Store Rent | 12/3/2021 | 58,805.22 | PO Box 822873, Philadelphia, PA, 19182-2873 |
| ESCADA LAS VEGAS NORTH OUTLETS, LLC | Store Rent | 11/3/2021 | 33,647.89 | 875 South Grand Central Parkway, #1690, Las Vegas, NV, 89106 |
| ESCADA LAS VEGAS NORTH OUTLETS, LLC | Store Rent | 12/3/2021 | 33,647.89 | 875 South Grand Central Parkway, #1690, Las Vegas, NV, 89106 |
| ESCADA SAWGRASS MILLS PHASE IV, LLC | Store Rent | 11/3/2021 | 42,170.34 | PO Box 403539, ATLANTA, GA, 30384 |
| ESCADA SAWGRASS MILLS PHASE IV, LLC | Store Rent | 12/3/2021 | 42,170.34 | PO Box 403539, ATLANTA, GA, 30384 |
| ESCADA WOODBURY COMMON PREMIUM OUTLETS | Store Rent | 11/3/2021 | 53,508.12 | PO Box 822884, Philadelphia, PA, 19182-2884 |
| ESCADA WOODBURY COMMON PREMIUM OUTLETS | Store Rent | 12/3/2021 | 53,508.12 | PO Box 822884, Philadelphia, PA, 19182-2884 |
| EXPRESS FIRE PROTECTION | Fire Inspection | 12/3/2021 | 251.45 | PO Box 670041, CORAL SPRINGS, FL, 33067 |
| Express Parking Management, Inc. | Employee Parking Fees | 10/29/2021 | 2,305.08 | 1001 W. JASMINE DRIVE, SUITE N, LAKE PARK, FL, 33403-2119 |
| FANDL, LLC | Business Licensing, PP?, CRT Other Taxes/Fees | 10/28/2021 | 5,000.00 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FANDL, LLC | Business Licensing, PP?, CRT Other Taxes/Fees | 11/4/2021 | 13,040.32 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FANDL, LLC | Business Licensing, PP?, CRT Other Taxes/Fees | 1/13/2022 | 29,011.47 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FANDL, LLC | Business Licensing, PP?, CRT Other Taxes/Fees | 1/14/2022 | 8,147.91 | 170 E. Ridgewood Ave. Suite 203, Ridgewood, NJ, 07450 |
| FASHION LOGISTICS INC | Storage/Logistic Services | 10/29/2021 | 14,175.11 | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |
| FASHION LOGISTICS INC | Storage/Logistic Services | 12/2/2021 | 15,909.81 | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |

| Name | Date | Amount | Description | Address |
|---|---|---|---|---|
| FASHION LOGISTICS INC | 1/4/2022 | 7,930.38 | Storage/Logistic Services | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |
| FASHION LOGISTICS INC | 1/13/2022 | 9,262.78 | Storage/Logistic Services | 621 ROUTE 46, HASBROUCK HEIGHTS, NJ, 07604 |
| FLORIDA POWER & LIGHT | 10/21/2021 | 461.35 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 10/26/2021 | 1,194.36 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 11/5/2021 | 751.34 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 11/19/2021 | 436.11 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 11/24/2021 | 1,040.15 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 12/21/2021 | 330.50 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 12/28/2021 | 955.33 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FLORIDA POWER & LIGHT | 1/5/2022 | 582.75 | Electricity | GENERAL MAIL FACILITY, MIAMI, FL, 33188-0001 |
| FRACHT FWO,INC | 11/4/2021 | 616.98 | Duty | Broadway 50, Lynbrook NY, 11563 |
| FRACHT FWO,INC | 11/18/2021 | 616.98 | Duty | Broadway 50, Lynbrook NY, 11563 |
| Franchise TAX (State of California) | 10/18/2021 | 3,200.00 | Franchise TAX | PO BOX 942879, SACRAMENTO CA 94279-8062 |
| Franchise TAX (State of California) | 10/19/2021 | 6,400.00 | Franchise TAX | PO BOX 942879, SACRAMENTO CA 94279-8062 |
| FRONTIER COMMUNICATIONS HOLDINGS, LLC. | 12/2/2021 | 828.45 | Telephone & Internet cost | P.O. Box 709, South Windsor, CT 06074-9998 or FRONTIER P.O. Box 740407 CINCINNATI OH 45274-0407 |
| General Information Solutions, LLC | 10/29/2021 | 1,067.16 | HR Services / Recruitment | PO Box 841243, Dallas, TX, 75284 |
| General Information Solutions, LLC | 1/13/2022 | 185.25 | HR Services / Recruitment | PO Box 841243, Dallas, TX, 75284 |
| GOING PLACES, LLC | 11/3/2021 | 13,500.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 11/18/2021 | 500.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 12/3/2021 | 13,500.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 12/31/2021 | 155.88 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GOING PLACES, LLC | 1/7/2022 | 13,500.00 | Store Rent | 1343 N. Wells Street, Rear Bldg., Chicago, IL, 60610 |
| GRANITE TELECOMMUNICATIONS LLC | 10/29/2021 | 2,595.95 | Telecommunication | PO Box 983119, Boston, MA, 02298-3119 |
| GRANITE TELECOMMUNICATIONS LLC | 11/10/2021 | 1,619.39 | Telecommunication | PO Box 983119, Boston, MA, 02298-3119 |
| GRANITE TELECOMMUNICATIONS LLC | 1/13/2022 | 1,619.39 | Telecommunication | PO Box 983119, Boston, MA, 02298-3119 |
| GRANT MCCARTHY GROUP LLC | 12/6/2021 | 5,000.00 | Tax Consulting | 777 WESTCHESTER AVENUE, WHITE PLAINS, NY, 10604 |
| HAWAII MEDICAL SERVICE ASSOCIATION | 12/6/2021 | 7,515.56 | Medical Coverage | PO Box 29330, HONOLULU, HI, 96820-1730 |
| HAWAII MEDICAL SERVICE ASSOCIATION | 12/15/2021 | 4,099.20 | Medical Coverage | PO Box 29330, HONOLULU, HI, 96820-1730 |
| HURST & SIEBERT, INC. | 12/1/2021 | 17,596.70 | Demolition & builders services for store maintenance | 932 Calle Amanecer, Suite A, San Clemente, CA, 92673 |
| Inter Trade Systems Inc | 12/2/2021 | 341.20 | EcaAtalogue- Base Usage Fees | PO Box 55811, Boston, MA, 02205-5811 |
| Inter Trade Systems Inc | 1/4/2022 | 170.60 | EcaAtalogue- Base Usage Fees | PO Box 55811, Boston, MA, 02205-5811 |
| JIVE COMMUNICATIONS INC | 12/2/2021 | 1,411.03 | Telephone & Internet cost | PO BOX 412252, BOSTON, MA, 02241 - 2252 |
| JIVE COMMUNICATIONS INC | 1/4/2022 | 1,411.12 | Telephone & Internet cost | PO BOX 412252, BOSTON, MA, 02241 - 2252 |
| JIVE COMMUNICATIONS INC | 1/13/2022 | 1,399.82 | Telephone & Internet cost | PO BOX 412252, BOSTON, MA, 02241 - 2252 |
| Joseph R. Saucier | 11/18/2021 | 203.50 | Personal Shopper | 68 King Street, Boston, MA, 02122 |
| JOYCE, LLC | 11/5/2021 | 1,264.00 | Professional Legal Services | 7209 Lancaster Pike, Hockessin, DE, 19707 |
| KETER ENVIRONMENTAL SERVICES, INC. | 1/4/2022 | 2,098.50 | Waste Management | PO Box 417468, Boston, MA, 02241-7468 |
| KETER ENVIRONMENTAL SERVICES, INC. | 1/7/2022 | 2,098.50 | Waste Management | PO Box 417468, Boston, MA, 02241-7468 |
| KEVIN WALSH | 1/14/2022 | 210.54 | Expense Reimbursement, Travel, Store Expenses | 693 Fifth Avenue, Floor 6, NY, 10022 |
| KUCKER MARINO WINIARSKY & BITTENS, | 12/3/2021 | 4,270.00 | Legal Expenses | 747 Third Avenue, New York, NY, 10017 |
| LA-MODELS,INC | 12/3/2021 | 240.00 | Models | 7700 SUNSET BLVD. LOS ANGELES, CA, 90046 |
| LANDMARK RETAIL CORP | 11/15/2021 | 5,000.00 | Store Maintenance | 24 Newark Pompton Turnpike, Bldg B, Little Falls, NJ, 07424 |
| Levene, Neale, Bender, Yoo & Brill, LLP | 10/29/2021 | 17,552.11 | Professional Services | 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA, 90067-6200 |
| Levene, Neale, Bender, Yoo & Brill, LLP | 12/16/2021 | 6,054.76 | Professional Services | 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA, 90067-6200 |
| Levene, Neale, Bender, Yoo & Brill, LLP | 1/14/2022 | 50,000.00 | Deposit for Professional Services | 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA, 90067-6200 |
| LISA KENEALLY | 1/14/2022 | 3,698.59 | Payroll | Prince Court 4, Jackson, NJ, 08527 |
| Lisa Lucero-Day | 12/3/2021 | 45.00 | Expense Reimbursement, Travel, Store Expenses | 73505 Ironwood Street, Palm Desert, CA, 92260 |
| Lori Brown | 11/1/2021 | 467.21 | Expense Reimbursement, Travel, Store Expenses | Wilshire Boulevard, 9502, Beverly Hills, 90212 |
| Lori Brown | 1/4/2022 | 573.22 | Expense Reimbursement, Travel, Store Expenses | Wilshire Boulevard, 9502, Beverly Hills, 90212 |
| MADELINE LINGAR | 12/2/2021 | 689.00 | Personal Shopper | 7825 Blue Water Drive, Las Vegas, NV, 89128 |
| MAIGAN RAHIMI | 10/29/2021 | 1,010.79 | Expense Reimbursement, Travel, Store Expenses | 11736 SW25th Court, Miramar, FL, 33025 |
| MAIGAN RAHIMI | 12/16/2021 | 1,592.67 | Expense Reimbursement, Travel, Store Expenses | 11736 SW25th Court, Miramar, FL, 33025 |

| Name | Date | Amount | Description | Address |
|---|---|---|---|---|
| MAIGAN RAHIMI | 1/4/2022 | 322.48 | Expense Reimbursement, Travel, Store Expenses | 11736 SW25th Court, Miramar, FL, 33025 |
| Mangia 57th Inc. | 12/2/2021 | 353.22 | market catering | 50 West 57th Street, New York, NY, 10019 |
| Margaret's Cleaners | 10/28/2021 | 1,778.89 | Dry Cleaning | 5150 Convoy Street, San Diego, CA, 92111 |
| MASTER TOUCH CLEANERS, INC | 1/13/2022 | 1,132.00 | Dry Cleaning | 1175 Baker Street, Suite A7, Costa Mesa, CA, 92626 |
| MELAND, RUSSIN & BALDWICK | 11/5/2021 | 257.00 | Professional Services | 3200 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, FL, 33131 |
| MI9 Retail - Raymark ULC | 10/19/2021 | 5,573.17 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 10/29/2021 | 8,750.00 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 12/3/2021 | 5,573.17 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 12/20/2021 | 5,839.78 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MI9 Retail - Raymark ULC | 1/4/2022 | 9,323.17 | Store Point of Sale System | 2020 Route Transcanadienne, #401, Dorval, QC, H9P 2N4 |
| MICHELLE DELLA PERUTA | 1/14/2022 | 3,763.02 | Payroll | 41 BELCHER RD WARWICK NY 10990-3008 US |
| MODERN FUTURE INC. | 10/29/2021 | 300.00 | Tailoring Services | 310 N Beverly Dr, Beverly Hills, CA, 90210 |
| MODERN FUTURE INC. | 1/4/2022 | 450.00 | Tailoring Services | 310 N Beverly Dr, Beverly Hills, CA, 90210 |
| Monika Arden | 10/19/2021 | 67.05 | Expense Reimbursement, Travel, Store Expenses | 1800 Sawgrass Mills Circle, 2430, Sunrise, NJ, 33323 |
| Monika Arden | 1/4/2022 | 232.67 | Expense Reimbursement, Travel, Store Expenses | 1800 Sawgrass Mills Circle, 2430, Sunrise, NJ, 33323 |
| Monika Arden | 1/14/2022 | 3,694.05 | Payroll | 1800 Sawgrass Mills Circle, 2430, Sunrise, NJ, 33323 |
| OPEN TEXT INC | 12/2/2021 | 3,113.69 | IT services | 9711 Washington Blvd., Suite 700, Gaithersburg, MD, 20878 |
| ORANGE & ROCKLAND | 10/18/2021 | 921.36 | Utilities | PO BOX 1005 SPRING VALLEY, NY 10977 |
| ORANGE & ROCKLAND | 11/16/2021 | 601.62 | Utilities | PO BOX 1005 SPRING VALLEY, NY 10977 |
| ORANGE & ROCKLAND | 12/17/2021 | 599.75 | Utilities | PO BOX 1005 SPRING VALLEY, NY 10977 |
| ORKIN | 1/4/2022 | 695.50 | Pest Control | 2257 Vista Parkway, Suite 5, West Palm Beach, FL, 33411-2726 |
| RAVE FABICARE INC. | 12/2/2021 | 211.62 | Dry Cleaning | 8490 E RUTHERUS DRIVE STE. 104, SCOTTSDALE, AZ, 85260 |
| RAVE FABICARE INC. | 1/4/2022 | 138.62 | Dry Cleaning | 8490 E RUTHERUS DRIVE STE. 104, SCOTTSDALE, AZ, 85260 |
| Sara Y. Sakakibara | 10/19/2021 | 597.95 | Personal Shopper | Ala Wai Blvd. 1645, Honolulu, HI, 96815 |
| Schaefer Trans. Inc. | 11/4/2021 | 7,507.34 | International Freight Forwarding Services | 580 Atlantic Avenue, EAST ROCKAWAY, NY, 11518 |
| Schaefer Trans. Inc. | 11/18/2021 | 838.28 | International Freight Forwarding Services | 580 Atlantic Avenue, EAST ROCKAWAY, NY, 11518 |
| Schaefer Trans. Inc. | 1/13/2022 | 4,513.15 | International Freight Forwarding Services | 580 Atlantic Avenue, EAST ROCKAWAY, NY, 11518 |
| SCOTTSDALE FASHION SQUARE, LLC | 11/3/2021 | 32,469.59 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SCOTTSDALE FASHION SQUARE, LLC | 12/3/2021 | 31,835.15 | Store Rent | PO Box 31001-2156, Pasadena, CA, 91110-2156 |
| SEN Graphics, Inc. | 12/3/2021 | 585.00 | Marketing / Stickers | 3125 Horseshoe Lane, Suite D, Charlotte, NC, 28208 |
| Sharon Moskal | 11/3/2021 | 1,106.25 | Marketing | 1580 President Street,Brooklyn, NY, 11213 |
| Sharon Moskal | 1/4/2022 | 1,350.00 | Marketing | 1580 President Street,Brooklyn, NY, 11213 |
| SHEILA FERRIS BEATON | 1/4/2022 | 248.23 | Expense Reimbursement, Travel, Store Expenses | S. Grand Central Parkway, #3419, 555, Las Vegas, NV, 89106 |
| SHEILA FERRIS BEATON | 1/14/2022 | 3,733.53 | Payroll | S. Grand Central Parkway, #3419, 555, Las Vegas, NV, 89106 |
| SHELLY RAPP | 1/14/2022 | 3,922.43 | Payroll | 48650 Seminole Drive, Suite C-132, Cabazon, CA, 92230 |
| SHIFT 4 CORPORATION | 10/29/2021 | 508.89 | IT / POS Processing | 1491 CENTER CROSSING RD, LAS VEGAS, NV, 89144 |
| SHIFT 4 CORPORATION | 11/29/2021 | 544.72 | IT / POS Processing | 1491 CENTER CROSSING RD, LAS VEGAS, NV, 89144 |
| SHIFT 4 CORPORATION | 12/29/2021 | 591.48 | IT / POS Processing | 1491 CENTER CROSSING RD, LAS VEGAS, NV, 89144 |
| SO CAL GAS | 10/19/2021 | 16.27 | Gas Supply | SoCalGas, PO BOX C, MONTEREY PARK CA 91756-5111 |
| SO CAL GAS | 11/22/2021 | 14.79 | Gas Supply | SoCalGas, PO BOX C, MONTEREY PARK CA 91756-5111 |
| SO CAL GAS | 12/21/2021 | 16.27 | Gas Supply | SoCalGas, PO BOX C, MONTEREY PARK CA 91756-5111 |
| SOUTH COAST PLAZA | 11/3/2021 | 2,426.10 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTH COAST PLAZA | 11/18/2021 | 11,794.84 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTH COAST PLAZA | 12/3/2021 | 12,464.57 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTH COAST PLAZA | 1/7/2022 | 8,963.90 | Store Rent | FILE NUMBER 54876, LOS ANGELES, CA, 90074-4876 |
| SOUTHERN CALIFORNIA EDISON | 10/18/2021 | 5,360.19 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHERN CALIFORNIA EDISON | 11/16/2021 | 3,752.46 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHERN CALIFORNIA EDISON | 12/20/2021 | 3,671.67 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHERN CALIFORNIA EDISON | 1/18/2022 | 3,567.30 | Electricity | PO Box 300, ROSEMEAD, CA, 91772-0001 |
| SOUTHWEST SIGN COMPANY | 12/3/2021 | 6,553.80 | Installation work and maintenance | 1852 POMONA ROAD, CORONA, CA, 92878 |
| SOUTHWEST SIGN COMPANY US | 1/13/2022 | 3,620.00 | Installation work and maintenance | 1852 POMONA ROAD, CORONA, CA, 92878 |
| SPECTRUM | 11/8/2021 | 249.96 | Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL  33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |
| SPECTRUM | 12/6/2021 | 114.98 | Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL  33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |

| | | | |
|---|---|---|---|
| SPECTRUM | 1/6/2022 | 114.98 Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL 33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |
| SPECTRUM | 1/7/2022 | 134.98 Telephone & Internet cost | 4145 S. FALKENBURG RD RIVERVIEW FL 33578-8652 or PO BOX 742663 Cincinnati, OH 45274-2663 |
| Stephanie Sparkman | 11/5/2021 | 5,763.13 Expense Reimbursement, Travel, Store Expenses | 5337 Pond View Dr, Westerville, OH, 43081 |
| Stephanie Sparkman | 12/2/2021 | 9,735.01 Expense Reimbursement, Travel, Store Expenses | 5337 Pond View Dr, Westerville, OH, 43081 |
| Steven Wawak /AT&T | 10/26/2021 | 139.10 Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| Steven Wawak /AT&T | 11/26/2021 | 139.10 Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| Steven Wawak /AT&T | 12/28/2021 | 139.10 Telephone & Internet cost | AT&T P.O. Box 5019 Carol Stream, IL 60197-5019 |
| TAMI HOGAN | 12/3/2021 | 1,065.80 Personal Shopper | 600 LIECHTY COURT, HEATH, TX, 75032 |
| THOMPSON TAX & ASSOCIATES | 10/19/2021 | 69,666.56 Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 11/18/2021 | 84,177.67 Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 12/3/2021 | 39,915.95 Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 12/17/2021 | 78,524.73 Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| THOMPSON TAX & ASSOCIATES | 1/7/2022 | 65,495.65 Escada Sales and Use Tax Returns | PO Box 96, WAVERLY, KS, 66871 |
| Total Appliance & A/C Repair, Inc. | 11/12/2021 | 16,366.51 HVAC replacement | PO Box 70, Hallandale Beach, FL, 33009 |
| U.S Customs and Border Protection | 10/25/2021 | 4,424.85 US Customs | Bldg. #77, Jamaica, NC, 11430 |
| U.S Customs and Border Protection | 11/23/2021 | 6,723.59 US Customs | Bldg. #77, Jamaica, NC, 11430 |
| VECTOR SECURITY INC | 11/3/2021 | 1,973.01 Security | PO Box 89462, Cleveland, OH |
| VERIZON | 11/12/2021 | 145.64 Telephone & Internet cost | PO BOX 5124 ALBANY, NY 12212-5124 |
| VERIZON | 12/14/2021 | 145.64 Telephone & Internet cost | PO BOX 5124 ALBANY, NY 12212-5124 |
| VERIZON | 1/12/2022 | 145.64 Telephone & Internet cost | PO BOX 5124 ALBANY, NY 12212-5124 |
| WASTE MANAGEMENT | 10/21/2021 | 990.75 Utilities | WASTE MANAGEMENT OF ILLINOIS, INC POBOX 42390 PHOENIX, AZ 85080 |
| WASTE MANAGEMENT | 11/19/2021 | 1,197.36 Utilities | WASTE MANAGEMENT OF ILLINOIS, INC POBOX 42390 PHOENIX, AZ 85080 |
| WASTE MANAGEMENT | 12/21/2021 | 1,198.05 Utilities | WASTE MANAGEMENT OF ILLINOIS, INC POBOX 42390 PHOENIX, AZ 85080 |
| WORTH-PONDFIELD LLC | 11/10/2021 | 100,000.00 Store Rent | 97-77 QUEENS BLVD, SUITE 710, REGO PARK, NY, 11374 |
| WORTH-PONDFIELD LLC | 11/18/2021 | 50,000.00 Store Rent | 97-77 QUEENS BLVD, SUITE 710, REGO PARK, NY, 11374 |
| WORTH-PONDFIELD LLC | 12/3/2021 | 50,000.00 Store Rent | 97-77 QUEENS BLVD, SUITE 710, REGO PARK, NY, 11374 |

| Exhibit 4 to SOFA | | | | |
|---|---|---|---|---|
| Creditor | Date | Total Amount | Reason of payment | Address |
| ESCADA (UK) LTD | 8/25/2021 | 77,000.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 2/3/2021 | 74,900.94 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 3/24/2021 | 72,001.55 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 4/23/2021 | 88,136.96 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 6/11/2021 | 20,000.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 6/29/2021 | 6,735.68 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 7/22/2021 | 94,640.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 10/21/2021 | 84,247.20 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 11/18/2021 | 113,720.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA SHARED SERVICES LTD | 11/22/2021 | 56,585.00 | Financial & IT Services | Churchgate House, 56 Oxford St. Manchester, GB, M1 6EU |
| ESCADA ONLINE US LLC | 1/21/2021 | 30,000.00 | Partial Payment on Intercompany Debt | 693 Fifth Avenue, Floor 6, NY, 10022 |
| Escada Store Services LLC | 9/9/2021 | 25,000.00 | Intercompany Payment / Legal Services | 9720 Wilshire Boulevard, Beverly Hills, CA, 90212 |
| Escada Sourcing & Production group | 2/22/2021 | 150,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 3/5/2021 | 121,636.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 3/24/2021 | 100,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 4/16/2021 | 90,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 4/23/2021 | 150,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 4/28/2021 | 250,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/5/2021 | 120,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/14/2021 | 55,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/19/2021 | 235,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/21/2021 | 45,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/26/2021 | 45,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 5/27/2021 | 153,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 6/11/2021 | 25,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 6/22/2021 | 120,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 6/28/2021 | 120,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 7/29/2021 | 40,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 8/5/2021 | 48,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 9/23/2021 | 35,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 11/8/2021 | 60,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 11/22/2021 | 30,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |
| Escada Sourcing & Production group | 12/21/2021 | 75,000.00 | Consignment Payments and Partial Repayment of Intercompany Debt | Einsteinring  14-18, Aschheim, DE, 85609 |

**Exhibit 6**

## **Exhibit 6**

| Landlord or Counterparty | Real Property Address (if Lease) | Assume or Reject | Cure Amount |
|---|---|---|---|
| Worth-Pondfield LLC c/o Eastgold Holdings LLC | 222 Worth Avenue, Palm Beach, Florida | TBD | TBD |
| 693 Fifth Owner LLC | 693 Fifth Avenue 6th Floor, New York, NY | TBD | TBD |
| Scottsdale Fashion Square LLC | 6900 E Camelback Rd, Scottsdale, AZ 85251 | TBD | TBD |
| Escada Sourcing and Production LLC | N/A (Consignment Agreement) | TBD | TBD |

The Debtor uses the "Escada" brand subject to a licensing agreement, which the Debtor believes is not an executory contract. If the Debtor's Plan is confirmed, then the Reorganized Debtor will continue to use the Escada brand.

**Exhibit 7**

| | | FILED CLAIM | | | | | SCHEDULED CLAIM | | | | OBJECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any |
| Mega International, LLC | | | | | | | $1,506,953.00 | | | | |
| Escada Sourcing and Production LLC | | | | | | | $675,361.39 | | | | |
| Escada Sourcing and Production LLC | | | | | | | $19,044,356.07 | | | | |
| Eden Roc International, LLC | | | | | | | $579,025.32 | | | | |
| Internal Revenue Service | 2 | 1/27/22 | | | $79,500.00 | | | $0.00 | | | |
| County of Los Angeles | 9 | 2/9/22 | | | $8,537.47 | | | $0.00 | | | |
| California Franchise Tax Board | 17 | 2/24/22 | | | $800.00 | | | $0.00 | | | |
| California Employment Dev. Dept. | | | | | | | | $0.00 | | | |
| WWD | | | | | | | | | $258.00 | | |
| Woodbury Common Premium Outlets | | | | | | | | | $108,024.00 | CUD | |
| WASTE MANAGEMENT | | | | | | | | | $1,173.00 | | |
| Wage Works, Inc. | | | | | | | | | $585.00 | | |
| Verizon Wireless | | | | | | | | | $11,917.00 | | |
| VERIZON | | | | | | | | | $125.00 | | |
| VECTOR SECURITY INC | | | | | | | | | $150.00 | | |
| UPS SUPPLY CHAIN SOLUTIONS, INC. | | | | | | | | | $25.00 | | |
| UNITED PARCEL SERVICE | | | | | | | | | $146.00 | | |
| UNITED HEALTH CARE JP MORGAN | | | | | | | | | $1,145.00 | | |
| TOWN OF PALM BEACH | | | | | | | | | $55.00 | | |
| THYSSEN KRUPP ELEVATOR | | | | | | | | | $1,055.00 | | |
| THOMSON REUTERS | | | | | | | | | $2,596.00 | | |
| THOMPSON TAX & ASSOCIATES | | | | | | | | | $2,352.00 | | |
| THE JEWISH WEEK INC. | | | | | | | | | $648.00 | | |
| The Epoch Times Association Inc. | | | | | | | | | $786.00 | | |
| TAX FREE SHOPPING, LTD | | | | | | | | | $85.00 | | |
| TAMI HOGAN | | | | | | | | | $1,061.00 | | |
| Talent Staff, LLC | | | | | | | | | $3,603.00 | | |
| T & G INDUSTRIES | | | | | | | | | $8,000.00 | | |
| Syzygy Performance GmbH | | | | | | | | | $145,914.00 | | |
| St Moritz Security Services, Inc. | | | | | | | | | $19,523.00 | | |
| SPG HOUSTON HOLDINGS,LP | 4 | 1/28/22 | $100.00 | | | $13,226.39 | | | $274,232.00 | CUD | |
| SOUTHWEST SIGN COMPANY | | | | | | | | | $6,151.00 | | |
| SOUTH COAST PLAZA | | | | | | | | | $10,064.00 | CUD | |
| SoCalGas | | | | | | | | | $0.00 | | |
| Sirina Protection Systems | | | | | | | | | $466.00 | | |
| Sing Tao Newspapers New York LLC | | | | | | | | | $462.00 | | |
| Simon Property Group LP | | | | | | | | | $55,572.00 | CD | |
| SHIFT 4 CORPORATION | | | | | | | | | $533.00 | | |
| SHAROTTE BOUTIQUE | | | | | | | | | $1,335.00 | | |
| SEW GOOD | | | | | | | | | $980.00 | | |
| SEN Graphics, Inc. | | | | | | | | | $556.00 | | |
| Sedgwick Claims Management | | | | | | | | | $14.00 | | |

| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | FILED CLAIM | | | | SCHEDULED CLAIM | | | | OBJECTION |
| Scottsdale Fashion Square LLC | 32 | 3/27/22 | $27,270.76 | | | $148,006.67 | | | $116,909.00 | CUD | |
| SCM | | | | | | | | | $5,441.00 | | |
| SCHINDLER ELEVATOR CORPORATION | | | | | | | | | $3,241.00 | | |
| Schaefer Trans. Inc. | | | | | | | | | $17,780.00 | | |
| SAMSON MANAGEMENT CORP. | | | | | | | | | $1,343,149.00 | | |
| RUSSIAN BAZAAR | | | | | | | | | $83.00 | | |
| Runway Waiters | | | | | | | | | $1,083.00 | | |
| Reliable Products Supply | | | | | | | | | $363.00 | | |
| REGENCY ENTERPRISES INC | | | | | | | | | $17,167.00 | | |
| RAVE FABICARE INC. | | | | | | | | | $188.00 | | |
| Ralph's Sewing and Vacuum | | | | | | | | | $636.00 | | |
| QSCS OF NY, INC. | | | | | | | | | $945.00 | | |
| Pyke Mechanical Inc. | | | | | | | | | $650.00 | | |
| Premium Outlet Partners LP | 3 | 1/28/22 | $5,328.85 | | | $841,749.01 | | | $102,433.00 | | |
| PITNEY BOWES PURCHASE POWER | | | | | | | | | $4,270.00 | | |
| PITNEY BOWES GLOBAL | | | | | | | | | $828.00 | | |
| PALM BEACH FIRE RESCUE | | | | | | | | | $121.00 | | |
| PALM BEACH COUNTY | | | | | | | | | $180.00 | | |
| Orkin Pest Control | | | | | | | | | $353.00 | | |
| Orkin , 875- N Houston Comm | | | | | | | | | $354.00 | | |
| ORKIN | | | | | | | | | $545.00 | | |
| ORACLE ELEVATOR COMPANY | | | | | | | | | $700.00 | | |
| OPTUS INC | | | | | | | | | $770.00 | | |
| Optimum | | | | | | | | | $1,390.00 | | |
| Oprandy's Fire & Safety Equipment | | | | | | | | | $44.00 | | |
| Opentext | 19 | 3/2/22 | | | | $3,164.50 | | | $4,481.00 | | |
| ONE TIME VENDOR_Customer refund_ C.ICHIK | | | | | | | | | $876.00 | | |
| One Image Protection INC | | | | | | | | | $1,098.00 | | |
| OCTAVIO PARRA | | | | | | | | | $165.00 | | |
| NVEnergy | | | | | | | | | $251.00 | | |
| Nestle Waters  North America | | | | | | | | | $275.00 | | |
| Mutual Security Services, Inc | | | | | | | | | $500.00 | | |
| MUSE MANAGEMENT, INC | | | | | | | | | $31,690.00 | | |
| MR HANDYMAN OF CALIFORNIA | | | | | | | | | $1,035.00 | | |
| Mood Media | | | | | | | | | $4,899.00 | | |
| Monika Arden | | | | | | | | | $2,421.00 | | |
| Modern Luxury | | | | | | | | | $467.00 | | |
| MILLENIUM SIGNS & DISPLAY, INC. | | | | | | | | | $1,456.00 | | |
| MI9 Retail - Raymark ULC | | | | | | | | | $12,227.00 | | |
| METROPOLITAN TELECOMM. | | | | | | | | | $65,087.00 | | |
| Melanie Theodoridis | | | | | | | | | $212.00 | | |
| Master Touch Cleaners, Inc. | | | | | | | | | $990.00 | | |
| Master Mechanical Services, Inc | | | | | | | | | $361.00 | | |

| | FILED CLAIM | | | | | | SCHEDULED CLAIM | | | | OBJECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any |
| MARY TANABE | | | | | | | | | $300.00 | | |
| Mark-Alan Harmon | | | | | | | | | $70.00 | | |
| Margaret's Cleaners | 23 | 3/16/22 | | | | $4,433.73 | | | $2,609.00 | | |
| Mangia 57th Inc. | | | | | | | | | $341.00 | | |
| Madeline Ungar | | | | | | | | | $653.00 | | |
| Lea Journo Salon | | | | | | | | | $430.00 | | |
| Las Vegas North Outlets, LLC | 5 | 1/28/22 | $3,387.18 | | | $750,769.87 | | | $266,918.00 | CUD | |
| LA MODELS | | | | | | | | | $227.00 | | |
| KUCKER MARINO WINIARSKY & BITTENS, | | | | | | | | | $3,975.00 | | |
| Kim Murphy | | | | | | | | | $226.00 | | |
| Keter Environmental Services, Inc | | | | | | | | | $1,609.00 | | |
| Joyce A. Pence | | | | | | | | | $174.00 | | |
| Johnson Controls Security Solutions | 36 | 3/29/22 | | | | $59,041.10 | | | $55,742.00 | | |
| JOHNSON CONTROLS FIRE PROTECTION LP | 35 | 3/29/22 | | | | $569.46 | | | $514.00 | | |
| Jive Communications, Inc | | | | | | | | | $1,404.00 | | |
| Jana Cori Coke | | | | | | | | | $387.00 | | |
| J.D Coins Inc. | | | | | | | | | $761.00 | | |
| INTERNATIONAL SILKS & WOOLENS | | | | | | | | | $167.00 | | |
| Inter Trade Systems Inc | | | | | | | | | $321.00 | | |
| INGENIEURB RO RUCKPAUL & | | | | | | | | | $389.00 | | |
| IMPERIAL NETWORK GROUP INC | | | | | | | | | $1,287.00 | | |
| IMPERIAL COMMERCIAL CLEANING | | | | | | | | | $708.00 | | |
| HWS Informationssysteme GmbH | | | | | | | | | $4,531.00 | | |
| Hospitality Services, Inc | | | | | | | | | $3,831.00 | | |
| Hedy Bentel | | | | | | | | | $1,055.00 | | |
| HAWAII MEDICAL SERVICE ASSOCIATION | | | | | | | | | $4,575.00 | | |
| HAIG SERVICE CORPORATION | | | | | | | | | $310.00 | | |
| Green Peak Building Services, Inc | | | | | | | | | $2,302.00 | | |
| GRANT MCCARTHY GROUP LLC | | | | | | | | | $11,701.00 | | |
| Granite Telecommunications | | | | | | | | | $2,473.00 | | |
| Global Facility Management & Constr | | | | | | | | | $25,000.00 | | |
| General Information Solutions, LLC | | | | | | | | | $22.00 | | |
| Fusion Cloud Company, LLC | | | | | | | | | $100.00 | | |
| Funaro & co., P.C. | | | | | | | | | $38,565.00 | CD | |
| Frontier Communications | | | | | | | | | $820.00 | | |
| Freecom Luxury Art Book, LLC | | | | | | | | | $6,955.00 | | |
| FRACHT FWO,INC | | | | | | | | | $615.00 | | |
| FLORIDA POWER & LIGHT | 1 | 1/21/22 | | | | $2,887.17 | | | $1,005.00 | | |
| Florida Pest Control | | | | | | | | | $502.00 | | |
| FASHION LOGISTICS, INC. | | | | | | | | | $15,867.00 | | |
| FANDL, LLC | | | | | | | | | $1,066.00 | | |
| Express Parking, Management, Inc. | | | | | | | | | $599.00 | | |
| EXPRESS FIRE PROTECTION | | | | | | | | | $240.00 | | |

| | FILED CLAIM | | | | | | SCHEDULED CLAIM | | | | OBJECTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Creditor | Claim No. | Date Claim Filed | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any |
| Elaine Cohen | | | | | | | | | $877.00 | | |
| El Paseo Collection North | | | | | | | | | $6,554.00 | CUD | |
| Eddie Love (Petty Cash) | | | | | | | | | $60.00 | | |
| Dutch Express, LLC | | | | | | | | | $25.00 | | |
| Direct Construction Company Limited | 18 | 3/2/22 | | | | $3,600.92 | | | $1,651.00 | | |
| Cushman and Wakefield | | | | | | | | | $43,151.00 | CD | |
| CT CORPORATION SYSTEM | | | | | | | | | $1,952.00 | | |
| Crown Castle Fiber LLC | | | | | | | | | $15,910.00 | | |
| Country Club Cleaners | | | | | | | | | $380.00 | | |
| CONDE NAST PUBLICATIONS | | | | | | | | | $23,300.00 | | |
| Concur Technologies Inc | | | | | | | | | $2,430.00 | | |
| Computop, Inc. | | | | | | | | | $1,411.00 | | |
| Computop GmbH | | | | | | | | | $21.00 | | |
| ComplyRight, Inc. dba HR Direct | | | | | | | | | $617.00 | | |
| COMMONWEALTH EDISON | | | | | | | | | $1,776.00 | | |
| Comcast Business | | | | | | | | | $110.00 | | |
| Comcast Business | | | | | | | | | $125.00 | | |
| CMS MECHANICAL SERVICE CO. | | | | | | | | | $1,414.00 | | |
| CLEANER'S SUPPLYS INC | | | | | | | | | $81.00 | | |
| CITY OF WEST PALM BEACH | | | | | | | | | $388.00 | | |
| City of Beverly Hills | | | | | | | | | $275.00 | | |
| CITY EXPEDITOR, INC. | | | | | | | | | $755.00 | | |
| CIT | 40 | 5/9/22 | | | | $49,170.37 | | | $14,896.00 | | Late |
| Cision US, I | | | | | | | | | $6,694.00 | | |
| Cisco Systems Capital Corporation | | | | | | | | | $31,960.00 | | |
| Chicago Oak Street Partners, LLC | 20 | 3/12/22 | | | | $837,026.18 | | | $554,764.00 | CUD | |
| CHETRIT 1412 LLC | 16 | 2/21/22 | | | | $250,000.00 | | | $250,000.00 | CU | |
| CenturyLink | 8 | 2/3/22 | | | | $700.25 | | | $689.00 | | |
| Carlton Technologies, Inc | | | | | | | | | $269.00 | | |
| BUREAU OF ELEVATOR SAFETY | | | | | | | | | $274.00 | | |
| Borden Ladner Gervais, LLP | | | | | | | | | $1,480.00 | | |
| BOGUSLAW SANKOWSKI | | | | | | | | | $941.00 | | |
| Blue Print AG | | | | | | | | | $598.00 | | |
| Bal Harbour Shops LLLP | | | | | | | | | $81,623.00 | CUD | |
| AVALARA INC | | | | | | | | | $4,649.00 | | |
| Atlantic Broadband | | | | | | | | | $78.00 | | |
| Atlantic Broadband | | | | | | | | | $733.00 | | |
| ASA Cleaning Services Corp | | | | | | | | | $22,255.00 | | |
| Archive Systems, Inc. | | | | | | | | | $11,515.00 | | |
| Angel Tailor | | | | | | | | | $152.00 | | |
| AMERICAN EXPRESS | 13 | | | | | $21,674.03 | | | $59,401.00 | D | |
| American Commercial Equities Three, | | | | | | | | | $29,341.00 | CUD | |
| Amanda Huang | | | | | | | | | $55.00 | | |

| Creditor | Claim No. | Date Claim Filed | FILED CLAIM | | | | SCHEDULED CLAIM | | | | OBJECTION |
| | | | Admin | Secured | Priority | General Unsecured | Schedule "D" Secured | Schedule "E" Priority | Schedule "F" Unsecured | C/U/D | Basis of Objection, If Any |
|---|---|---|---|---|---|---|---|---|---|---|---|
| ALPINE BUSINESS SYSTEMS | | | | | | | | | $10,988.00 | | |
| Alliant Insurance Services, Inc. | | | | | | | | | $348,375.00 | | |
| Alliance Pro Services LLC | | | | | | | | | $278.00 | | |
| ALA MOANA CENTER ASSOCIATION | | | | | | | | | $1,198.00 | CUD | |
| Ala Moana Anchor Acquisition, LLC | 14 | 2/18/22 | $7,220.63 | | | $1,382,622.26 | | | $264,681.00 | CUD | |
| ABALON EXTERMINATING CO. INC. | | | | | | | | | $450.00 | | |
| [Beverly Hills Wilshire Hotel] | 15 | 2/18/22 | | | | $2,441,373.90 | | | $2,546,815.33 | CUD | |
| 717 GFC LLC | 24 | 3/23/22 | | | | $5,108,857.92 | | | $5,055,143.00 | CUD | |
| 693 Fifth Owner LLC | | | | | | | | | $1,641.00 | CUD | |
| Harris County Water Control | 6 | 1/31/22 | | $1,546.80 | | | | | | | |
| Harris County Municipal Utility District | 7 | 1/31/22 | | $8,204.13 | | | | | | | |
| The Retail Property Trust | 10 | 3/10/22 | | | | $440,000.00 | | | | | |
| Sawgrass Mills Phase IV LLC | 11 | 2/10/22 | $4,205.33 | | | $543,937.97 | | | | | |
| Premium Outlet Partners LP | 12 | 2/10/22 | $5,326.37 | | | $417,439.45 | | | | | |
| MI9 Retail – Raymark ULC | 21A | 3/15/22 | | | | $266.61 | | | | | |
| Fedex Corporate Services, Inc | 22 | 3/16/22 | | | | $2,677.50 | | | | | |
| Great Northern Insurance | 25 | 3/24/22 | | | | $211,141.65 | | | | | |
| Chubb Insurance Company | 26 | 3/24/22 | | | | $20,576.73 | | | | | |
| Vigilant Insurance Company | 27 | 3/24/22 | | | | $67,260.00 | | | | | |
| Federal Insurance Company | 28 | 3/24/22 | | | | $1,788.23 | | | | | |
| Stephanie Buono | 29 | 3/24/22 | | | | $40,411.80 | | | $0.00 | CUD | |
| the Neiman Marcus Group | 30 | 3/24/22 | | $84,533.42 | | $230,085.72 | | | | | |
| Manhattan Telecommunications Corporation/MetTel | 31 | 3/25/22 | | | | $86,806.03 | | | | | |
| United Parcel Service | 33 | 3/28/22 | | | | $235,709.96 | | | | | |
| Suzanne Humbert | 37 | 3/29/22 | | | | $300,960.00 | | | $0.00 | CUD | |
| Rebecca Castillo | | | | | | | | | $0.00 | CUD | |
| NYC Department of Finance | 39 | 5/2/22 | | | $904,777.63 | | | $349,209.25 | $68,819.41 | C | Under investigation |
| Ann Marie Di Ionna | | | | | | | | | $99,915.19 | | |
| Escada Shared Services Ltd. | | | | | | | | | $32,000.00 | | |
| Dunnwright Services Inc. | | | | | | | | | $0.00 | | |
| Site Crew Inc. | | | | | | | | | $0.00 | | |
| Worth-Pondfield LLC | 34A | 3/28/22 | $43,666.35 | | | $1,462,737.72 | | | $1,343,149.00 | CUD | |
| IDK Cooling Corp. | 38 | 4/14/22 | | | | $2,041.41 | | | | | Late |

**Exhibit 8**

**Escada America LLC**
**Estimated Liquidation Value of Assets**

| Non-Exempt Assets | Book Value | Liquidation Discount | Chapter 7 | Notes |
|---|---|---|---|---|
| Cash & Cash Equivalents | $1,946,450.74 | 0.0% | $1,946,450.74 | *Cash as of 5/2/22* |
| PP&E (Net of Depreciation) | $597,000.00 | 100.0% | $0.00 | *As of 5/2/22* |
| LOC - Bond Department / Lexon Insurance Company | $350,000.00 | 100.0% | $0.00 | *According to Lexon, when the bond terminates, Lexon will draw against its two letters of credit* |
| LOC - Bond Department / Lexon Insurance Company | $400,000.00 | 14.5% | $341,934.35 | *for $408,065.65 for payments to customs and legal bills, leaving a balance of $341,934.15, provided Lexon incurrs no more costs or expenses.* |
| LOC - Western Surety Company | $1,400,000.00 | 0.0% | $1,400,000.00 | |
| LOC - 2% Cushion at JPM Chase | $47,079.74 | 0.0% | $47,079.74 | *Assumes that JPM Chase will not assert any attorneys' fees or costs.* |
| Accounts Receivable - Credit Cards | $5,923.00 | 0.0% | $5,923.00 | *As of 3/31/22* |
| Accounts Receivable - Department Stores | $486,965.78 | 95.0% | $24,348.29 | |
| Potential Avoidance Claims | $2,200,000.00 | 45.5% | $1,200,000.00 | *Debtor believes that the $2.2M in payments in the 12 months pre-filing were proper, but setting forth a potential recovery estimate for purposes of this analysis* |
| **Total Non-Exempt Assets Before Admin & Other Expenses** | **$5,850,790.59** | | **$4,965,736.12** | |
| Less: Secured Debt - Eden Roc LLC | ($579,000.00) | 0.0% | ($579,000.00) | |
| Less: Secured Debt - Mega International LLC | ($1,700,000.00) | 50.0% | ($850,000.00) | *Debtor does not expect an actual discount and is informed that Mega would defend the validity of its claim and lien, but this hypothetical analysis sets forth a potential discount for illustrative purposes only.* |
| Less: Secured Debt - Escada Sourcing and Production LLC | ($19,719,717.46) | 100.0% | $0.00 | *It is possible that as much as $579,025.32 is subject to defenses on preferential lien avoidance claims, however, and the Debtor is informed that ESP would defend the validity of its claim and lien, but, for illustrative purposes, the lien on the entire claim is treated as avoided.* |
| Less: Post-Petition Administrative Trade Claims of Mega International LLC and Escada Sourcing and Production LLC | ($400,000.00) | 62.5% | ($150,000.00) | *Debtor does not expect an actual discount, and Debtor is informed that Mega and ESP would defend the validity of their claims on post-petition benefits advanced by Mega and post-petition consignment fees owed to ESP, but setting forth a potential discount for purposes of hypotehtical analysis for illustrative purposes.* |
| Less: US Trustee Quarterly Fees (Petition Date Through July 31, 2022) | | | ($22,200.15) | |
| Less: Chapter 7 Trustee Fees | | | ($177,885.46) | |
| Less: Chapter 7 Trustee Legal and Accounting Fees | | | ($500,000.00) | |
| Less: Chapter Post-Petition Administrative, Non-insider Trade Payables Accrued in Ordinary Course but Unpaid | | | ($150,000.00) | *These expenses consist of non-insider payroll, etc. accrued in the ordinary course and paid in arrears on regular 15-day or 30-day terms but not yet paid in the ordinary course at the time of an immediate hypothetical conversion to chapter 7.* |
| Less: SubChapter V Trustee Fees and Expenses | | | ($20,000.00) | |
| Less: Chapter 11 Debtor Counsel Fees and Expenses | | | ($125,000.00) | |
| Less: Chapter 11 Accountant Fees and Expenses | | | ($25,000.00) | |
| Less: Committee Counsel Fees and Expenses | | | ($30,000.00) | |
| Less: Unpaid Admin Landlord Rent | | | ($8,816.03) | |
| Less: Priority Unsecured Claims (other than NYC Rent Tax) | | | ($11,100.00) | |
| Less: NYC Rent Tax | | | ($349,209.25) | *The NYC Department of Finance has since filed an updated claim for approximately $904,777.00, which the Debtor believes is overstated and is investigating* |
| **Estimated Amount Available to Pay Allowed General Unsecured Claims** | | | **$1,967,525.23** | |
| **Est Total Amount of General Unsecured Claims for Chapter 7 (including insiders)** | | | **$37,524,411.61** | |
| **Est Total Class 5 General Unsecured Claims** | | | **$18,514,329.91** | |
| **Prorated Recovery for General Unsecured Claims for Chapter 7** | | | **5.24%** | |
| **Prorated Class 5 General Unsecured Creditor Recovery, if all affiliate unsecured debt disallowed** | | | **10.63%** | *Debtor does not expect that affiliate unsecured debt will be disallowed, and Debtor is informed the Escada Sourcing and Production LLC would defend the validity of its claim, but this hypothetical scenario is outlined for illustrative purposes.* |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled **DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION, DATED MAY 12, 2022**  will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 12, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **May 12, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒  Service information continued on attached page

The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 12, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| **May 12, 2022** | Jason Klassi | */s/ Jason Klassi* |
| *Date* | *Type Name* | *Signature* |

1

**2:22-bk-10266-BB Notice will be electronically mailed to:**

2

Dustin P Branch on behalf of Creditor The Macerich Company
3    branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com

4    John C Cannizzaro on behalf of Creditor 717 GFC LLC
john.cannizzaro@icemiller.com, julia.yankula@icemiller.com

5
Michael J Darlow on behalf of Creditor Harris County Municipal Utility District #358
6    mdarlow@pbfcm.com, tpope@pbfcm.com

7    Caroline Djang on behalf of Interested Party Caroline R. Djang
caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com

8
Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)
9    eryk.r.escobar@usdoj.gov

10    John-Patrick M Fritz on behalf of Debtor Escada America, LLC
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

11
William W Huckins on behalf of Creditor Brookfield Properties Retail, Inc.
12    whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

13    William W Huckins on behalf of Creditor SIMON PROPERTY GROUP INC
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

14
Gregory Kent Jones (TR)
15    gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com

16    Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC
mkogan@koganlawfirm.com

17
Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.
18    ggpbk@ggp.com

19    Lindsey L Smith on behalf of Debtor Escada America, LLC
lls@lnbyg.com, lls@ecf.inforuptcy.com

20
Ronald M Tucker, Esq on behalf of Creditor SIMON PROPERTY GROUP INC
21    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com

22    United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

23

24

25

26

27

28