JOHN-PATRICK M. FRITZ (State Bar No. 245240)
JONATHAN D. GOTTLIEB (State Bar No. 339650)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: JPF@LNBYG.COM; JDG@LNBYG.COM

Attorneys for Chapter 11
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | ) Case No.: 2:22-bk-10266-BB |
| | ) |
| ESCADA AMERICA LLC, | ) Chapter 11 Case |
| | ) |
| Debtor and Debtor in Possession. | ) **DEBTOR'S NOTICE OF AND MOTION FOR AN ORDER EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF KEVIN WALSH IN SUPPORT THEREOF** |

Hearing:
Date:   June 15, 2022
Time:   10:00 a.m.
Place:  Courtroom 1539
             255 East Temple Street
             Los Angeles, CA 90012

Hearing to be held in-person and by video-conference Government Zoom, see Court's website under "Telephonic Instructions" for more details:
https://www.cacb.uscourts.gov/judges/honorable-sheri-bluebond

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................5

I.    STATEMENT OF FACTS..................................................................................5

      A.    Case Background. ................................................................................5

      B.    Redesignation of the Bankruptcy Case From a Case Under
            Subchapter V To a Traditional Chapter 11 Bankruptcy Case.........7

II.   DISCUSSION .................................................................................10

      A.    The Court Has Authority To Extend The Debtor's Exclusive
            Period To File A Plan Of Reorganization And Obtain Acceptances
            Thereof. ...............................................................................10

      B.    Good Cause Exists to Grant the Debtor's Request to Extend the
            Exclusivity Periods for the Debtor to File a Plan of Reorganization
            and Obtain Acceptance Thereof ......................................................12

III.  CONCLUSION ...............................................................................14

DECLARATION OF KEVIN WALSH .......................................................16

**PLEASE TAKE NOTICE** that a hearing will be held on June 15, 2022, at 10:00 a.m. before the Honorable Sheri Bluebond, United Stated Bankruptcy Judge for the Central District of California, in Courtroom 1539 located at 255 East Temple Street, Los Angeles, California 90012 for the Court to consider approval of this motion ("<u>Motion</u>") filed by Escada America LLC, the debtor and debtor-in-possession in the above referenced chapter 11 bankruptcy case (the "<u>Debtor</u>"), for the entry of an order extending the exclusivity period for the Debtor to file a plan of reorganization to and including August 16, 2022 (the "<u>Proposed Plan Exclusivity Period</u>"), and extending the exclusivity period for the Debtor to obtain acceptance thereof to and including October 15, 2022 (the "<u>Proposed Solicitation Exclusivity Period</u>").[1]

**PLEASE TAKE FURTHER NOTICE** that this Motion is based upon Rule 9013-1 of the Local Bankruptcy Rules for the Central District of California ("<u>LBR</u>"), Rule 9013 of the Federal Rules of Bankruptcy Procedure ("<u>FRBP</u>"), 11 U.S.C. §§ 105(a) and 1121, this Motion, the supporting Memorandum of Points and Authorities, the annexed Declaration of Kevin Walsh (the "<u>Declaration</u>"), the arguments and statements of counsel to be made at the hearing on this Motion, and other admissible evidence properly brought before the Court.

The Debtor respectfully submits that "cause" exists to extend the Current Exclusivity Periods for several reasons, as explained in greater detail in the annexed memorandum of points and authorities  Most notably, the trajectory of the case was greatly complicated by contested matter of whether the Debtor was eligible for subchapter V, which added uncertainty to most of the original 120-day plan exclusivity period, and which was resolved only on May 4, 2022. Nonetheless, the Debtor still worked diligently and filed its chapter 11 plan and disclosure statement on May 12, 2022 (within the original 120-day plan exclusivity period), and has set it for hearing on June 22, 2022.  However, the Debtor will need time to work on this Plan with input from an official committee of unsecured creditors, if and when formed (which is expected

---

[1] The requested extensions are for a period of ninety (90) days each. Currently, the exclusivity period for the Debtor to file a plan of reorganization (the "<u>Current Plan Exclusivity Period</u>") and obtain acceptance thereof (the "<u>Current Solicitation Exclusivity Period</u>" together with the Current Plan Exclusivity Period, the "<u>Current Exclusivity Periods</u>") expires on May 18, 2022 and July 17, 2022, respectively.

to happen shortly after the original 120-day exclusivity period would end, if not extended by Court order).  The Debtor is operating in good faith, current on its administrative expenses, and in compliance with all of the material requirements of administering its estate. This is the Debtor's first request for an extension of its exclusivity periods under 11 U.S.C. § 1121, and the request is made in good faith and not for the purpose of pressuring creditors into acceding to certain plan terms.  The Debtor is not aware of any creditor whose claim or interest would be adversely affected or impaired by the granting of the relief requested herein.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), any opposition to this Motion must be filed with the Clerk of the United States Bankruptcy Court and served upon the United States Trustee as well as counsel for the Debtor at the address located in the upper left-hand corner of the first page of this Notice and Motion by no later than fourteen (14) days before the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that the failure to file and serve a timely response to this Motion may be deemed by the Court to be consent to the granting of the relief requested in this Motion.

**PLEASE TAKE FURTHER NOTICE** that the failure to file and serve a timely response to this Motion may be deemed by the Court to be consent to the granting of the relief requested in this Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

(a)     granting the Motion;

(b)     affirming the adequacy of the notice given;

(c)     entering an order in substantially the form attached as **Exhibit 1** hereto;

(c)     extending the Current Plan Exclusivity Period to and including August 16, 2022, without prejudice to the Debtor's right to request additional extensions;

(d)     extending the Current Solicitation Exclusivity Period to and including October 15, 2022, without prejudice to the Debtor's right to request additional extensions; and

/ / /

3

1        (e)    granting such other and further relief as the Court deems just and proper.

2

3    Dated: May 17, 2022         ESCADA AMERICA LLC

4                    By: _____

5                        JOHN-PATRICK M. FRITZ
                         JONATHAN D. GOTTLIEB

6                        LEVENE, NEALE, BENDER,
                         YOO & GOLUBCHIK L.L.P.

7                        Attorneys for Chapter 11
                         Debtor and Debtor in Possession

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      STATEMENT OF FACTS

**A.      Case Background.**

1.      The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 18, 2022 (the "Petition Date").  The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession.

2.      The Debtor was formed as a Delaware limited liability company in 2009.  The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, an office New York City, New York, and, as of the Petition Date, ten (10) retail stores across seven (7) states in the United States, and over 50 fulltime employees.  As part of its first-day motions, the Debtor rejected five (5) leases, and is now operating at five leased locations with approximately 4 employees in its corporate office and 29 employees in stores.

3.      The Debtor's retail business is generally known to the public and branded as "Escada."  The Debtor uses the "Escada" brand via a license agreement and does not own any intellectual property rights in connection with the "Escada" brand.  For several decades, Escada had been a global retail brand for high-fashion, high-end, ready-to-wear apparel for women, with an emphasis on high-fashion evening wear. On a global scale, Escada has various retail stores and subsidiaries in several countries in Europe, including but not limited to Spain, England and Germany.  Escada also has retail stores in North America, including the Debtor, which operates Escada's brick-and-mortar retail business only in the United States.

4.      By 2019, the Escada business on a global scale was in deep distress and could not continue.  At that time, the Debtor, together with other subsidiaries of Escada's then-parent company, was acquired by new ownership (which is now the current ownership and management).  At the time of the acquisition of Debtor in 2019, Escada had 29 subsidiaries in 22 countries, all of which were financially distressed.   In December 2019, the Debtor devised

and began implementation of a plan to turn around the United States Escada retail business. Debtor believed that the business could be operated at a profit if fundamental business-model changes were implemented, such as overhauling the Debtor's technological suite and reducing speed to market by shifting supply chains from Asia to Europe. Debtor's turnaround plan was also contingent upon Debtor's ability to sell product at Debtor's physical locations because ecommerce sales were minimal. However, what was not – and could not be – known at the time of the acquisition in November 2019, was that an unprecedented, global, catastrophic, and life-changing event with severe economic consequences was on the immediate horizon – the Covid-19 pandemic.

5.    In December 2019, just one month after the acquisition and just as the Debtor's transformation plan was being put into effect, the novel corona virus, known to us now as Covid-19, was quietly spreading in certain regions of Asia, unbeknownst to the rest of the world. From December 2019 through February 2020, the Debtor prepared to implement a number of business-model and operational changes. However, in March 2020, the world drastically changed, and set the Debtor on course for this current bankruptcy filing. On or about March 15, 2020, the City of Los Angeles declared a state of emergency with shelter in place orders. In the following days, many business and financial centers across the United States came to a near total standstill as the nation was gripped by the Covid-19 crisis. In the span of just 12 days, all fifteen (15) of the Debtor's then-active stores in eight (8) States were shuttered due to lockdown restrictions.

6.    In late March 2020, the United States federal government responded with historic economic aid, passing the CARES Act and providing approximately $3 trillion of stimulus to the economy, which may have bolstered the stock market's recovery, but such economic stimulus did nothing to help retail businesses such as the Debtor, which rely on foot traffic from customer shopping in stores to generate sales. Unfortunately, the Debtor was not eligible for any of these stimulus payments and was left with no support during these unprecedented times. In addition, as long as the pandemic lockdowns continued and stores remained closed, or

6

shoppers refrained from shopping due to deep concerns about their health and safety, the Covid-19 recession for retail businesses would continue.

7.    From March 2020 to December 2021, the Debtor reduced its overhead expenses by an estimated $13,383,037.40 and entered into negotiations with its commercial landlords for rent relief at all store locations.  Nonetheless, the 21 months leading up to the Debtor's petition date were a marked state of tremendous uncertainty for the world's health and economic affairs brought on by an unprecedented pandemic, followed by an unprecedented recession, then unprecedented trillions of dollars of government aid, none of which has prevented the ongoing uncertainty posed by Covid-19 variants and the attendant on-again-off-again lockdowns across the nation and around the world, all of which made business in the current economic environment very difficult.

8.    The Debtor negotiated workouts with some, but not all, of its various landlords during 2020 and 2021, but with the consequences of the Covid-19 pandemic that Debtor was forced to file bankruptcy to restructure its business affairs.  The Debtor could not survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.  Accordingly, the Debtor determined that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

**B.**    **Redesignation of the Bankruptcy Case From a Case Under Subchapter V To a Traditional Chapter 11 Bankruptcy Case.**

9.    The Debtor commenced its bankruptcy case as a subchapter V case, which requires a plan to be filed within the first 90 days of the Petition Date, unless the Court extends the deadline for reasons for which the Debtor should not justly be held accountable.  Accordingly, shortly after the first date of the 341 Meeting, the Debtor, through counsel, engaged in extensive and continuous discussions with some its largest creditors (717 GFC LLC, Simon Property Group, Brookfield Properties Retail, and BW Hotel LLC) (collectively, the "Creditors") in an attempt to formulate a consensual plan of reorganization.

10.    On March 16, 2022, creditors Brookfield Properties Retail, Inc., Simon Property Group, Inc., and certain of their respective affiliates, filed their Objection of Simon Property Group and Brookfield Properties Retail to Debtor's Subchapter V Election or, Alternatively, Motion for Appointment of an Official Committee of Unsecured Creditors (the "Election Motion") [Dkt. 103].

11.    On March 23, 2022, 717 GFC LLC filed its joinder to the Election Motion.

12.    Later in the day on March 23, 2022, the Debtor filed its opposition to the Election Motion.

13.    The Debtor and the Creditors continued their settlement negotiations and discussions in attempts to formulate a consensual plan, at times with the participation of the subchapter V trustee.  Between March 29, 2022, and April 19, 2022, the Debtor and the Creditors entered into multiple stipulations to continue the hearing on the Election Motion and the Debtor's cash collateral motion while settlement talks continued, with the hearings rescheduled for May 11, 2022.

14.    The stipulations between the parties included a request that the Court extend the 90-day deadline for the Debtor to file its subchapter V plan from April 18, 2022, to May 2, 2022, which the Court granted at a status conference held on April 6, 2022 [Dkt. 132].

15.    On April 21, 2022,[2] the Office of the United States Trustee filed its "United States Trustee's Notice of Motion and Motion Objecting to Debtor's Subchapter V Designation" (the "Designation Motion") [Dkt. 145], which was set for hearing on June 1, 2022.

16.    On May 2, 2022, the Debtor timely filed its subchapter V plan (the "Subchapter V Plan") [Dkt. 148].

17.    Central to the framework and key deal terms for the Subchapter V Plan were the necessity of minimizing administrative expenses and confirming a plan in a short timeframe to

---

[2] April 21, 2022, was the last day of the 30-day period to object to the subchapter V designation, measured by 30 days from the conclusion of the meeting of creditors under 11 U.S.C. § 341 on March 22, 2022.

accelerate payment to general unsecured creditors, with the first payment in the lump sum of $1,400,000 paid by early August 2022.

18.    The Debtor, creditors, and the entire estate were at risk of a month of meaningless delay and mounting administrative costs between the filing of the Subchapter V Plan on May 2, 2022, and the UST's Designation Motion not set for hearing until June 1, 2022.

19.    Rather than lose a month of time while running up administrative costs litigating the UST's Designation Motion, on May 4, 2022, the Debtor filed its amended petition to un-elect the subchapter V designation and designate its case as one under chapter 11, but no longer subchapter V.

20.    At the chapter 11 status conference on May 11, 2022, the Debtor raised the possibility of the Court conditionally approving a disclosure statement with a combined hearing on final approval of the disclosure statement and plan confirmation; however, the Court indicated that such a request would likely not be granted.

21.    On May 12, 2022, the Debtor filed its chapter 11 plan (the "Plan") [Dkt. 160] and disclosure statement (the "Disclosure Statement") [Dkt. 161].

22.    On May 13, 2022, the Court entered an order setting the hearing on the adequacy of the Disclosure Statement for June 22, 2022 [Dkt. 167].

23.    As reported by the Debtor to the Court at the chapter 11 status conference hearing held on May 11, 2022, the Subchapter V Plan and the current Plan were designed to be potentially consensual plans.

24.    The exclusive period for the Debtor to file a plan of reorganization expires on May 18, 2022 (the "Current Plan Exclusivity Period") and the exclusive period for the Debtor to obtain acceptance of a plan of reorganization expires July 17, 2022 (the "Current Solicitation Exclusivity Period," and, together with the Current Plan Exclusivity Period, the "Current Exclusivity Periods"), respectively, unless otherwise extended by order of the Court.

25.    If the Court hears and approves the adequacy of the Disclosure Statement on June 22, 2022, a plan confirmation hearing would likely not be held until at least August 3, 2022,

accounting for 28 days' opportunity to vote and file objections pursuant to FRBP 2002(b), seven

days thereafter for the Debtor to file a confirmation brief, and seven days thereafter for a plan

confirmation hearing.  By that time, the Current Plan Exclusivity Periods will have expired.

26.    The Debtor respectfully submits that good cause exists to extend the exclusivity

period for the Debtor to file a plan of reorganization and obtain acceptance thereof  to and

including August 16, 2022 (the "Proposed Plan Exclusivity Period"), and to and including

October 15, 2022 (the "Proposed Solicitation Exclusivity Period"), as requested herein.

## II.    DISCUSSION

**A.    The Court Has Authority To Extend The Debtor's Exclusive Period To File A Plan Of Reorganization And Obtain Acceptances Thereof.**

Pursuant to Section 1121(b) and (c)(3) of the Bankruptcy Code, a chapter 11 debtor has

the exclusive right, for a period of 120 days following the filing of the petition, to file a plan of

reorganization, and thereafter obtain acceptances to any plan so filed for a period of an additional

60 days.

Sections 1121(d) of the Bankruptcy Code allows the Court to extend or reduce these

time periods for cause. Section 1121(d) provides, in pertinent part as follows:

> (d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period [exclusivity period for filing a plan of reorganization] or the 180-day period [exclusivity period for obtaining acceptances of the plan] referred to in this section.

> (2)(A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief

> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d)(1) and (2)

1

2      The decision of whether to grant a request to extend or shorten the exclusivity periods lie

3   within the sound discretion of the bankruptcy judge.  *In re Amko Plastics, Inc.*, 197 B.R. 74, 77

4   (Bankr. S.D. Ohio 1996); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (Bankr.

5   E.D.N.Y. 1989). The "cause" standard referred to in Section 1121 has been referred to as a

6   general standard that allows the bankruptcy court "maximum flexibility to suit various types of

7   reorganization proceedings."  *In re Public Service Company of New Hampshire*, 88 B.R. 521,

8   534 (Bankr. D.N.H. 1988).

9      The Bankruptcy Code does not define "cause" or establish formal criteria for extensions

10  of the exclusivity periods. Consistent with a balanced, integrated approach to reorganizations

11  under chapter 11, Congress contemplated that bankruptcy courts would apply the exclusivity

12  provisions flexibly so as to promote the orderly, consensual and successful reorganization of a

13  debtors affairs.  *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 220, 232 (1977) [hereinafter

14  <u>House Report</u>]. Appropriate "cause" justifying extensions of the exclusivity periods should

15  be interpreted in the context of the overall purpose of chapter 11 and the means Congress

16  established for accomplishing them. Congress recognized that a debtor must have a reasonable

17  time to formulate and negotiate a plan of reorganization. Denying a debtor an exclusive period

18  to propose and confirm a plan could dissuade a debtor from choosing chapter 11 and encourage

19  creditors to act unilaterally.  House Report at 231-32.  *See also*, *In re Pine Run Trust, Inc.*, 67

20  B.R. 432, 434 (Bankr. E.D. Pa. 1936) (exclusivity determinations should balance creditor and

21  debtor interests in favor of reorganization).

22      The "cause" standard referred to in Section 1121 has been referred to as a general

23  standard that allows the bankruptcy court "maximum flexibility to suit various types of

24  reorganization proceedings."  <u>In re Public Service Company of New Hampshire</u>, 88 B.R. 521,

25  534 (Bankr.D.N.H.1988).

26      It is common for courts to grant more than one extension of the exclusive periods to file

27  and gain acceptance of chapter 11 plans. <u>See</u>, <u>e.g.</u>, <u>Gaines v. Perkins (In re Perkins)</u>, 71 B.R.

28

11

294 (W.D.Tenn.1987) (affirming bankruptcy court's approval of multiple extensions); In re Express One Int'l, Inc., 194 B.R. 98 (Bankr.E.D.Tex.1996) (granting multiple extensions); In re Pine Run Trust, Inc., 67 B.R. 432 (Bankr.E.D.Pa.1986) (granting second exclusivity); see also Williamette Water Front, Ltd. v. Victoria Station, Inc. (In re Victoria Station, Inc.), 88 B.R. 231 (9th Cir.B.A.P.1988) (in allowing multiple extensions of time to assume or reject unexpired nonresidential leases pursuant to section 365(d)(4), the BAP noted that the allowance of such multiple extensions is supported by, among other things, other courts' allowance of multiple extensions of exclusivity periods)(citations omitted), aff'd, 875 F. 2d 1380 (9th Cir.1989).

Among the factors to be considered in finding "cause" to extend the exclusivity periods are: (i) the size and complexity of the case (Grand Traverse Devel. Co. Ltd. Partnership, 147 B.R. 418, 420 (Bankr.W.D.Mich.1992)); (ii) whether a debtor is attempting in good faith to formulate a viable plan and the degree of progress that has been achieved by the debtor in the Chapter 11 process (In re Jasick, 727 F.2d 1379 (5th Cir.1984), reh'g denied, 731 F.2d 888 (5th Cir.1984)); and (iii) a debtor's satisfaction of its post-petition obligations as they come due (In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr.S.D.N.Y.1987)). While the foregoing are some of the most common factors, a court has discretion to consider others. See, e.g., Express One, 194 B.R. at 100. For example, the diligence of management and proper administration of the case is a factor that weighs in favor of an extension of the plan exclusivity periods. See, In re United Press International, 60 B.R. 265 (Bankr.D.D.C. 1986); In re Trainer's, Inc., 17 B.R. 246, 247 (Bankr.E.D.Pa.1982).

**B.**    **Good Cause Exists to Grant the Debtor's Request to Extend the Exclusivity Periods for the Debtor to File a Plan of Reorganization and Obtain Acceptance Thereof**

**(i)**    **Size and Complexity of the Case**

The Debtor's case is not a "mega" case, but nor is it small (regardless of whether eligible for subchapter V). The Debtor has approximately $20 million of insider secured debt and nearly $20 million of general unsecured debt, and more than 200 creditors. Furthermore, the

reorganization is complex because of multiple retail lease locations, ongoing operations, and non-traditional assets in the form of import bonds to investigate and liquidate for implementing the Plan.  Moreover, the trajectory of the case was greatly complicated by contested eligibility for subchapter V, which added uncertainty as to which reorganization scheme would apply to this estate.  The Debtor requires an extension of the Current Exclusivity Periods to fairly address these numerous issues.

**(ii)    Efforts to Formulate and Confirm a Viable Plan of Reorganization**

After months of extensive negotiations with the largest non-insider general unsecured creditors in the case, the Debtor filed its Subchapter V Plan by the extended deadline of May 2, 2022, then worked diligently to reformulate that plan into the current Plan, filed on May 12, 2022 – both within the original 120-day Current Exclusivity Periods of § 1121.  However, the Debtor will need time to work on this Plan with input from an official committee of unsecured creditors, if and when formed (which is expected to happen shortly after the original Current Exclusivity Periods would end, if not extended by Court order).

**(iii)    Post-Petition Obligations**

The Debtor is current with its non-professional fee/expenses post-petition obligations.

**(iv)    Diligence of Management and Proper Administration of the Case**

The Debtor has properly administered its Chapter 11 case in that the Debtor has complied with all of the material requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the UST.  Under these circumstances, an extension of the exclusivity periods for filing and obtaining confirmation of a plan of reorganization can be granted with the confidence that the Debtor is in full compliance with the requirements that are a condition to the Debtor maintaining its exclusive right to file a plan of reorganization and gain acceptance thereof.

**(v)    Prior Requests to Extend Exclusivity Periods**

This is the Debtor's first request to extend any of its plan exclusivity periods under 11 U.S.C. § 1121, and the requested extension is within the limits set forth in 11 U.S.C. §

13

1121(d)(2).  Courts commonly grant multiple extensions of the exclusivity periods.  Therefore, this factor weighs in favor of extending the Debtor's plan exclusivity periods.

      **(vi)**     <u>**The Purpose Behind the Debtor's Request**</u>

      The Debtor's request herein is being made in good faith and not for the purpose of pressuring creditors into acceding to certain plan terms.  The Debtor is not aware of any creditor whose claim or interest would be adversely affected or impaired by the granting of the relief requested herein.

**III.**   **<u>CONCLUSION</u>**

      **WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

      (a)    granting the Motion;

      (b)    affirming the adequacy of the notice given;

      (c)    entering an order substantially in the form as the proposed order attached as **Exhibit 1** hereto;

      (d)    extending the Current Plan Exclusivity Period to and including August 16, 2022, without prejudice to the Debtor's right to request additional extensions;

      (d)    extending the Current Solicitation Exclusivity Period to and including October 15, 2022, without prejudice to the Debtor's right to request additional extensions; and

      (f)    granting such other and further relief as the Court deems just and proper.

Dated: May 17, 2022            ESCADA AMERICA LLC

                          By: _____
                              JOHN-PATRICK M. FRITZ
                              JONATHAN D. GOTTLIEB
                              LEVENE, NEALE, BENDER,
                              YOO & GOLUBCHIK L.L.P.
                              Attorneys for Chapter 11
                              Debtor and Debtor in Possession

## DECLARATION OF KEVIN WALSH

I, Kevin Walsh, hereby declare as follows:

1.    I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.    I am the Director of Finance for Escada America LLC, a Delaware limited liability company. (the "Debtor"), the debtor and debtor in possession in this chapter 11 bankruptcy case.

3.    I am an experienced finance professional, having worked for the Debtor since 2016 and with prior work experience at Fortune 500 companies including Johnson & Johnson (Controller/Director) and Pfizer (Finance Director).

4.    I have reviewed and am familiar with and am knowledgeable about the books and records of the Debtor, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.

5.    I make this declaration in support of the Debtor's "Motion For An Order Extending The Debtor's Exclusive Periods To File A Chapter 11 Plan And Obtain Acceptances Thereof" (the "Motion").

6.    The Debtor commenced its bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on January 18, 2022 (the "Petition Date").  The Debtor continues to manage its financial affairs, operate its business, and administer its bankruptcy estate as a debtor in possession.

7.    The Debtor was formed as a Delaware limited liability company in 2009.  The Debtor is a national specialty retailer selling high-end, ready-to-wear women's apparel with its main office in Beverly Hills, California, an office New York City, New York, and, as of the Petition Date, ten (10) retail stores across seven (7) states in the United States, and over 50 fulltime employees.  As part of its first-day motions, the Debtor rejected five (5) leases, and is now operating at five leased locations with approximately 4 employees in its corporate office and 29 employees in stores.

8.      The Debtor's retail business is generally known to the public and branded as "Escada."  The Debtor uses the "Escada" brand via a license agreement and does not own any intellectual property rights in connection with the "Escada" brand.  For several decades, Escada had been a global retail brand for high-fashion, high-end, ready-to-wear apparel for women, with an emphasis on high-fashion evening wear. On a global scale, Escada has various retail stores and subsidiaries in several countries in Europe, including but not limited to Spain, England and Germany.  Escada also has retail stores in North America, including the Debtor, which operates Escada's brick-and-mortar retail business only in the United States.

9.      By 2019, the Escada business on a global scale was in deep distress and could not continue.  At that time, the Debtor, together with other subsidiaries of Escada's then-parent company, was acquired by new ownership (which is now the current ownership and management).  At the time of the acquisition of Debtor in 2019, Escada had 29 subsidiaries in 22 countries, all of which were financially distressed.   In December 2019, the Debtor devised and began implementation of a plan to turn around the United States Escada retail business.  Debtor believed that the business could be operated at a profit if fundamental business-model changes were implemented, such as overhauling the Debtor's technological suite and reducing speed to market by shifting supply chains from Asia to Europe.  Debtor's turnaround plan was also contingent upon Debtor's ability to sell product at Debtor's physical locations because ecommerce sales were minimal.  However, what was not – and could not be – known at the time of the acquisition in November 2019, was that an unprecedented, global, catastrophic, and life-changing event with severe economic consequences was on the immediate horizon – the Covid-19 pandemic.

10.      In December 2019, just one month after the acquisition and just as the Debtor's transformation plan was being put into effect, the novel corona virus, known to us now as Covid-19, was quietly spreading in certain regions of Asia, unbeknownst to the rest of the world.  From December 2019 through February 2020, the Debtor prepared to implement a number of business-model and operational changes with the goal of making the United States Escada retail

business profitable and correct the mistakes of its prior management and prior owners. However, in March 2020, the world drastically changed, and set the Debtor on course for this current bankruptcy filing.  On or about March 15, 2020, the City of Los Angeles declared a state of emergency with shelter in place orders. In the following days, many business and financial centers across the United States came to a near total standstill as the nation was gripped by the Covid-19 crisis.  In the span of just 12 days, all fifteen (15) of the Debtor's then-active stores in eight (8) States were shuttered due to lockdown restrictions.

11.    In late March 2020, the United States federal government responded with historic economic aid, passing the CARES Act and providing approximately $3 trillion of stimulus to the economy, which may have bolstered the stock market's recovery, but such economic stimulus did nothing to help retail businesses such as the Debtor, which rely on foot traffic from customer shopping in stores to generate sales.  Unfortunately, the Debtor was not eligible for any of these stimulus payments and was left with no support during these unprecedented times. In addition, as long as the pandemic lockdowns continued and stores remained closed, or shoppers refrained from shopping due to deep concerns about their health and safety, the Covid-19 recession for retail businesses would continue.

12.    From March 2020 to December 2021, the Debtor reduced its overhead expenses by an estimated $13,383,037.40 and entered into negotiations with its commercial landlords for rent relief at all store locations.  Nonetheless, the 21 months leading up to the Debtor's petition date were a marked state of tremendous uncertainty for the world's health and economic affairs brought on by an unprecedented pandemic, followed by an unprecedented recession, then unprecedented trillions of dollars of government aid, none of which has prevented the ongoing uncertainty posed by Covid-19 variants and the attendant on-again-off-again lockdowns across the nation and around the world, all of which made business in the current economic environment very difficult.

13.    The Debtor negotiated workouts with some, but not all, of its various landlords during 2020 and 2021, but with the consequences of the Covid-19 pandemic that Debtor was

forced to file bankruptcy to restructure its business affairs.  The Debtor could not survive ongoing litigation with these landlords and the attendant litigation costs and potential liability for breach of those leases.  Accordingly, the Debtor determined that it was in the best interest of its estate to file this current bankruptcy case to preserve the going-concern value of its business and save the jobs of its employees.

14.    The Debtor commenced its bankruptcy case as a subchapter V case, which requires a plan to be filed within the first 90 days of the Petition Date, unless the Court extends the deadline for reasons for which the Debtor should not justly be held accountable. Accordingly, shortly after the first date of the 341 Meeting, the Debtor, through counsel, engaged in extensive and continuous discussions with some its largest creditors (717 GFC LLC, Simon Property Group, Brookfield Properties Retail, and BW Hotel LLC) (collectively, the "Creditors") in an attempt to formulate a consensual plan of reorganization.

15.    On March 16, 2022, creditors Brookfield Properties Retail, Inc., Simon Property Group, Inc., and certain of their respective affiliates, filed their Objection of Simon Property Group and Brookfield Properties Retail to Debtor's Subchapter V Election or, Alternatively, Motion for Appointment of an Official Committee of Unsecured Creditors (the "Election Motion") [Dkt. 103].

16.    On March 23, 2022, 717 GFC LLC filed its joinder to the Election Motion.

17.    Later in the day on March 23, 2022, the Debtor filed its opposition to the Election Motion.

18.    The Debtor and the Creditors continued their settlement negotiations and discussions in attempts to formulate a consensual plan, at times with the participation of the subchapter V trustee.  Between March 29, 2022, and April 19, 2022, the Debtor and the Creditors entered into multiple stipulations to continue the hearing on the Election Motion and the Debtor's cash collateral motion while settlement talks continued, with the hearings rescheduled for May 11, 2022.

19.     The stipulations between the parties included a request that the Court extend the 90-day deadline for the Debtor to file its subchapter V plan from April 18, 2022, to May 2, 2022, which the Court granted at a status conference held on April 6, 2022 [Dkt. 132].

20.     On April 21, 2022,[3] the Office of the United States Trustee filed its "United States Trustee's Notice of Motion and Motion Objecting to Debtor's Subchapter V Designation" (the "Designation Motion") [Dkt. 145], which was set for hearing on June 1, 2022.

21.     On May 2, 2022, the Debtor timely filed its subchapter V plan (the "Subchapter V Plan") [Dkt. 148].

22.     Central to the framework and key deal terms for the Subchapter V Plan were the necessity of minimizing administrative expenses and confirming a plan in a short timeframe to accelerate payment to general unsecured creditors, with the first payment in the lump sum of $1,400,000 paid by early August 2022.

23.     The Debtor, creditors, and the entire estate were at risk of a month of meaningless delay and mounting administrative costs between the filing of the Subchapter V Plan on May 2, 2022, and the UST's Designation Motion not set for hearing until June 1, 2022.

24.     Rather than lose a month of time while running up administrative costs litigating the UST's Designation Motion, on May 4, 2022, the Debtor filed its amended petition to un-elect the subchapter V designation and designate its case as one under chapter 11, but no longer subchapter V.

25.     At the chapter 11 status conference on May 11, 2022, the Debtor raised the possibility of the Court conditionally approving a disclosure statement with a combined hearing on final approval of the disclosure statement and plan confirmation; however, the Court indicated that such a request would likely not be granted.

26.     On May 12, 2022, the Debtor filed its chapter 11 plan (the "Plan") [Dkt. 160] and disclosure statement (the "Disclosure Statement") [Dkt. 161].

---

[3] April 21, 2022, was the last day of the 30-day period to object to the subchapter V designation, measured by 30 days from the conclusion of the meeting of creditors under 11 U.S.C. § 341 on March 22, 2022.

27.    On May 13, 2022, the Court entered an order setting the hearing on the adequacy of the Disclosure Statement for June 22, 2022 [Dkt. 167].

28.    As reported by the Debtor to the Court at the chapter 11 status conference hearing held on May 11, 2022, the Subchapter V Plan and the current Plan were designed to be potentially consensual plans.

29.    The exclusive period for the Debtor to file a plan of reorganization expires on May 18, 2022 (the "Current Plan Exclusivity Period") and the exclusive period for the Debtor to obtain acceptance of a plan of reorganization expires July 17, 2022 (the "Current Solicitation Exclusivity Period," and, together with the Current Plan Exclusivity Period, the "Current Exclusivity Periods"), respectively, unless otherwise extended by order of the Court.

30.    If the Court hears and approves the adequacy of the Disclosure Statement on June 22, 2022, a plan confirmation hearing would likely not be held until at least August 3, 2022, accounting for 28 days' opportunity to vote and file objections, seven days thereafter for the Debtor to file a confirmation brief, and seven days thereafter for a plan confirmation hearing. By that time, the Current Plan Exclusivity Periods will have expired.

31.    The Debtor respectfully submits that good cause exists to extend the exclusivity period for the Debtor to file a plan of reorganization and obtain acceptance thereof  to and including August 16, 2022 (the "Proposed Plan Exclusivity Period"), and to and including October 15, 2022 (the "Proposed Solicitation Exclusivity Period"), as requested in the Motion.

32.    The Debtor represents that cause exists to extend the Plan Exclusivity Periods.

33.    The Debtor represents that its case is not a "mega" case but is not small (regardless of whether the Debtor is eligible for subchapter V). The Debtor has approximately $20 million of general unsecured debt, and more than 200 creditors. Furthermore, the reorganization is complex because of multiple retail lease locations, ongoing operations, and non-traditional assets in the form of import bonds to investigate and liquidate for implementing the Plan. Moreover, the trajectory of the case was greatly complication by contested eligibility for subchapter V, which added uncertainty as which reorganization scheme would apply to this

estate. The Debtor is informed and believes that it requires extension of the Exclusivity Periods to fairly address these numerous issues.

34.    After months of extensive negotiations with the largest non-insider general unsecured creditors in the case, the Debtor filed its Subchapter V Plan by the extended deadline of May 2, 2022, then worked diligently to reformulate that plan into the current Plan, filed on May 12, 2022 – both within the original 120-day Current Exclusivity Periods. However, the Debtor will need time to work on this Plan with input from an official committee of unsecured creditors, if and when formed (which is expected to happen shortly after the original Exclusivity Periods would end, if not extended by Court order).

35.    The Debtor has properly administered its Chapter 11 case in that the Debtor has complied with all of the material requirements of the Bankruptcy code, the Federal Rules of Bankruptcy Procedure, and the UST.  Under these circumstances, an extension of the exclusivity periods for filing and obtaining confirmation of a plan of reorganization can be granted with the confidence that the Debtor is in full compliance with the requirements that are a condition to the Debtor maintaining its exclusive right to file a plan of reorganization and gain acceptance thereof.

36.    This is the Debtor's first request to extend any of its plan exclusivity periods.

37.    The Debtor's request to extend the Current Exclusivity Periods is made in good faith, and the Debtor believes granting the relief requested in the Motion is in the best interest of the estate.

Executed on this 17th day of May 2022, at Morristown, New Jersey.

By: 
     Kevin Walsh

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit "1"**

1  JOHN-PATRICK M. FRITZ (State Bar No. 245240)
   JONATHAN D. GOTTLIEB (State Bar No. 339650)
2  LEVENE, NEALE, BENDER,
   YOO & GOLUBCHIK L.L.P.
3  2818 La Cienega Avenue
4  Los Angeles, California 90034
   Telephone:  (310) 229-1234
5  Facsimile:  (310) 229-1244
   Email: JPF@LNBYG.COM; JDG@LNBYG.COM
6

7  Attorneys for Chapter 11
   Debtor and Debtor in Possession

8
                **UNITED STATES BANKRUPTCY COURT**
9                **CENTRAL DISTRICT OF CALIFORNIA**
                   **LOS ANGELES DIVISION**
10

11 In re:                          ) Case No.: 2:22-bk-10266-BB
                                   )
12 ESCADA AMERICA LLC,             ) Chapter 11 Case
                                   )
13     Debtor and Debtor in Possession.  ) **ORDER EXTENDING THE DEBTOR'S**
                                   ) **EXCLUSIVE PERIODS TO FILE A**
14                                 ) **CHAPTER 11 PLAN AND SOLICIT**
                                   ) **ACCEPTANCES THEREOF**
15                                 )
                                   ) Hearing:
16                                 ) Date:   June 15, 2022
                                   ) Time:  10:00 a.m.
17                                 ) Place:  Courtroom 1539
                                   )          255 East Temple Street
18                                 )          Los Angeles, CA 90012
                                   )
19 _____

20

21      On June 15, 2022, at 10:00 a.m., the Honorable Sheri Bluebond, United States

22 Bankruptcy Judge for the Central District of California (the "Court"), held a hearing (the

23 "Hearing") in Courtroom 1539 of the United States Bankruptcy Courthouse located at 255 East

24 Temple Street, Los Angeles, California, to consider the *Debtor's Notice of Motion and Motion*

25 *for an Order Extending the Debtor's Exclusive Periods to File a Chapter 11 Plan and Obtain*

26 *Acceptances Thereof* (the "Motion") [ECF __], filed by Escada America LLC, a Delaware

27 limited liability company (the "Debtor"), the debtor and debtor in possession in the above-

28

                                    1

captioned, chapter 11 bankruptcy case.  Appearances were made as set forth on the Court's record of the hearing.

The Court, having read and considered the Motion and all papers in support of the Motion, including the declaration of Kevin Walsh (the "Declaration") annexed to the Motion, the statements of counsel made orally at the hearing, the record in the case, the docket in the case, no opposition having been filed or received, and for good cause appearing, therefor,

**HEREBY FINDS** that notice of the Motion and Hearing were good and proper under the circumstances and pursuant to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rules, and

**HEREBY ORDERS AS FOLLOWS:**

(1)    The Motion is granted on a final basis as set forth in this Order;

(2)    The exclusivity period for the Debtor to file a chapter 11 plan is hereby extended to, and including, August 16, 2022, without prejudice to the Debtor's right to request additional extensions; and

(3)    The exclusivity period for the Debtor to obtain acceptance of a chapter 11 plan is extended to, and including, October 15, 2022, without prejudice to the Debtor's right to request additional extensions.

**SO ORDERED.**

###

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled  **DEBTOR'S NOTICE OF AND MOTION FOR AN ORDER EXTENDING THE DEBTOR'S EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN AND OBTAIN ACCEPTANCES THEREOF; MEMORANDUM AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF KEVIN WALSH IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 16, 2022**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **May 16, 2022**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 16, 2022**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 16, 2022 | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

F-9013-3.1.PROOF.SERVICE

**2:22-bk-10266-BB Notice will be electronically mailed to:**

Dustin P Branch on behalf of Creditor The Macerich Company
branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com

John C Cannizzaro on behalf of Creditor 717 GFC LLC
john.cannizzaro@icemiller.com, julia.yankula@icemiller.com

Michael J Darlow on behalf of Creditor Harris County Municipal Utility District #358
mdarlow@pbfcm.com, tpope@pbfcm.com

Caroline Djang on behalf of Interested Party Caroline R. Djang
caroline.djang@bbklaw.com, laurie.verstegen@bbklaw.com;wilma.escalante@bbklaw.com

Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)
eryk.r.escobar@usdoj.gov

John-Patrick M Fritz on behalf of Debtor Escada America, LLC
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

William W Huckins on behalf of Creditor Brookfield Properties Retail, Inc.
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

William W Huckins on behalf of Creditor SIMON PROPERTY GROUP INC
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

Gregory Kent Jones (TR)
gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com

Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC
mkogan@koganlawfirm.com

Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.
ggpbk@ggp.com

Lindsey L Smith on behalf of Debtor Escada America, LLC
lls@lnbyg.com, lls@ecf.inforuptcy.com

Ronald M Tucker, Esq on behalf of Creditor SIMON PROPERTY GROUP INC
rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

This form is mandatory.   It has been approved for use by the United States Bankruptcy Court for
the Central District of California.

*June 2012*

| | | |
|---|---|---|
| Escada 9277<br>20 Largest, Secured and RSN | Securities Exchange Commission<br>450 5th Street, NW<br>Washington, DC  20549 | Securities Exchange Commission<br>5670 Wilshire Boulevard, 11th Floor<br>Los Angeles, CA 90036 |
| 717 GFC LLC<br>Attn: Mrs.Tsui Yeung<br>500 5th Avenue 54th Floor<br>New York City, NY 10110 | Beverly Hills Wilshire Hotel<br>9500 WILSHIRE BLVD<br>BEVERLY HILLS, CA 90212 | Worth-Pondfield LLC<br>c/o SAMSON MANAGEMENT CORP.<br>Attn.: Kathy Panaro<br>97-77 QUEENS BLVD, SUITE 710<br>REGO PARK, NY 11374 |
| Chicago Oak Street Partners, LLC<br>Attn:  Lesley Pembroke<br>1343 N. Wells Street, Rear Bldg.<br>Chicago, IL 60610 | Alliant Insurance Services, Inc.<br>701 B St 6th Floor<br>San Diego, CA 92101 | SPG HOUSTON HOLDINGS,LP<br>PO Box 822693<br>PHILADELPHIA, PA 19182-2693 |
| Las Vegas North Outlets, LLC<br>Attn: Marie Wood<br>875 South Grand Central Parkway, #1<br>Las Vegas, NV  89106 | Ala Moana Anchor Acquisition, LLC<br>Attn:  Lisa Gordon<br>PO Box 860375<br>Minneapolis, MN 55486-0074 | CHETRIT 1412 LLC<br>Attn: Nativ Winiarsky<br>PO Box 785000<br>PHILADELPHIA, PA 10018 |
| Syzygy Performance GmbH<br>Osterwaldstra e 10<br>Munchen, Germany 80805-0000 | Scottsdale Fashion Square LLC<br>Attn:  Tamara Ortega<br>PO Box 31001-2156<br>Pasadena, CA 91110-2156 | Woodbury Common Premium Outlets<br>Attn: Marie Wood<br>PO Box 822884<br>Philadelphia, PA 19182-2884 |
| Premium Outlet Partners LP<br>Attn:  Leslie C. Traylor<br>PO Box 822873<br>Philadelphia, PA 19182-2873 | Bal Harbour Shops LLLP<br>Attn: Lorena Dehogues<br>9700 Collins Avenue<br>Bal Harbour, FL  33154 | METROPOLITAN TELECOMM.<br>PO Box 9660<br>MANCHESTER, NH 03108-9660 |
| AMERICAN EXPRESS<br>PO Box 1270<br>NEWARK, NJ 07101-1270 | Johnson Controls Security Solutions<br>Attn:  Virgil Guerra<br>PO Box 371994<br>Pittsburgh, PA 15250-7994 | Simon Property Group LP<br>2696 Solution Center<br>Chicago, IL  60677-2006 |
| Cushman and Wakefield<br>Attn:  Kaleb McCullough<br>1290 Avenue of the Americas<br>New York, NY 10104 | Funaro & co., P.C.<br>Attn:  Joseph M. Catalano<br>350 Fifth Avenue, 41st Fl<br>New York, NY 10118 | Sawgrass Mills Phase IV, L.L.C.<br>c/o M.S. Management Associates Inc.,<br>225 W Washington St,<br>Indianapolis, IN 46204 |
| RSN<br>Dustin P. Branch, Esq., Jessica M. Simon, Esq.<br>Nahal Zarnighian, Esq.<br>BALLARD SPAHR LLP | RSN<br>Simon Property Group, Inc.<br>Attn:  Ronald M. Tucker, Esq.<br>225 West Washington Street<br>Indianapolis, Indiana 46204 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

1

Secured
Eden Roc International, LLC
9720 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212

Secured
Escada Sourcing and
Production LLC
9720 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212

Secured
Mega International, LLC
9720 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for
the Central District of California.

*June 2012*