JOHN-PATRICK M. FRITZ (State Bar No. 245240)
CARMELA T. PAGAY (State Bar No. 195603)
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email: JPF@LNBYG.COM; CTP@LNBYG.COM

Attorneys for Chapter 11
Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>ESCADA AMERICA LLC,<br><br>    Debtor and Debtor in Possession. | ) Case No.: 2:22-bk-10266-BB<br>) Chapter 11 Case<br>)<br>) **DEBTOR'S CONFIRMATION BRIEF IN SUPPORT OF DEBTOR'S FIRST AMENDED CHAPTER 11 REORGANIZATION PLAN, DATED JANUARY 27, 2023**<br>)<br>) [Declaration of Kevin Walsh Filed Separately and Concurrently]<br>)<br>) <u>Hearing</u>:<br>) Date:  March 15, 2023<br>) Time:  11:00 a.m.<br>) Place:  Courtroom 1539<br>)        255 East Temple Street<br>)        Los Angeles, CA 90012<br>)<br>) Hearing to be held in-person and by video-conference Government Zoom, see Court's website under "Telephonic Instructions" for more details:<br>) https://www.cacb.uscourts.gov/judges/honorable-sheri-bluebond<br>) |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 2

II.  SUMMARY OF PLAN ............................................................................ 3

    A.  Summary of Plan Classes and Treatment .......................................... 3

    B.  Means of Effectuating and Implementing the Plan ........................... 4

    C.  Classification and Treatment of Claims and Interests ...................... 6

III.  THIS COURT HAS JURISDICTION OVER THE CONFIRMATION OF THE
PLAN ......................................................................................................... 14

IV. THE ELEMENTS NECESSARY FOR PLAN CONFIRMATION ARE PRESENT .... 14

    A.  Standard for Confirmation ................................................................ 14

    B.  The Plan Complies with All of the Applicable Provisions of Sections
1129(a) of the Bankruptcy Code ...................................................... 15

V.  REVISION AT THE REQUEST OF THE UNITED STATES TRUSTEE ............. 29

VI.  CONTRACT AND LEASE ASSUMPTION OR REJECTION ................................. 30

    A.  Standard for Assumption or Rejection ............................................. 30

    B.  Adequate Assurance of Future Performance .................................... 32

VII.  CONCLUSION ........................................................................................ 33

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re A&C Properties*,
   784 F.2d 1377 (9th Cir.1986) ..........................................................................................3, 19

*In re Acequia, Inc.*,
   787 F.2d 1352 (9th Cir.1986) ........................................................................................14, 27

*In re Arnold & Baker Farms*,
   177 B.R. 648(9th Cir.B.A.P.1994), *aff'd*, 85 F.3d 1415, *cert. denied*, 519 U.S.
   1054 (1997)........................................................................................................................14

*In re Art & Architecture Books of the 21st Century*,
   2016 WL 118743 (Bankr.C.D.Cal. Mar.18, 2016) .............................................................14

*In re Blair*,
   538 F.2d 849 (9th Cir.1976) ...............................................................................................19

*Blixseth v. Credit Suisse*,
   961 F.3d 1074 (9th Cir.2020) .............................................................................................29

*Matter of Carla Leather, Inc.*,
   44 B.R. 457 (Bankr.S.D.N.Y.1984).....................................................................................19

*In re Carson*,
   82 B.R. 847 ........................................................................................................................18

*In re Central Fla. Metal Fabrication, Inc.*,
   190 B.R. 119 (Bankr. N.D. Fla. 1995).................................................................................30

*In re Chipwich, Inc.*,
   54 B.R. 427 (Bankr. S.D.N.Y. 1985)...................................................................................31

*In re Claremont Acquisition Corp., Inc.*,
   113 F.3d 1029 (9th Cir. 1997). Bankruptcy.........................................................................32

*Comm'l Fin. Ltd. v Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*,
   47 B.R. 425 (D. Haw. 1985) ...............................................................................................31

*In re Continental Country Club, Inc.*,
   114 B.R. 763 (Bankr. M.D. Fla. 1990) ...............................................................................31

*In re Downtown Inv. Club III*,
   89 B.R. 59 (9th Cir.B.A.P.1988)........................................................................................20

*Durkin v. Benedor Corp. (In re G.I. Indus., Inc.),*
    204 F.3d 1276 (9th Cir. 2000) ..................................................................30

*In re Embers 86th Street. Inc.,*
    184 B.R. 892 (Bankr.S.D.N.Y.1995) ..........................................................32

*In re FCX, Inc.,*
    60 B.R. 405 (E.D.N.C. 1986) ....................................................................31

*In re Gucci,*
    193 B.R. 411 (S.D.N.Y.1996) ...............................................................30, 31

*In re Hydronic Enterprise, Inc.,*
    58 B.R. 363 (Bankr. D. R.I. 1986) ...........................................................18

*Kane v. Johns-Manville Corp.,*
    843 F.2d 636 (2d Cir.1988) .....................................................................15

*In re Klein Sleep Products, Inc.,*
    78 F.3d 18 (2d. Cir. 1996) ......................................................................30

*Knowles v. Putterbaugh (In re Hallet),*
    33 B.R. 564 (Bankr. D. Me. 1983)............................................................18

*In re Lee Way Holding Co.,*
    120 B.R. 881 (Bankr.S.D. Ohio 1990).......................................................19

*In re Linda Vista Cinemas, L.L.C.,*
    442 B.R. 724 (Bankr.D.Ariz.2010)...........................................................27

*In re M. Long Arabians,*
    103 B.R. 211 (9th Cir.B.A.P.1989)...........................................................25

*In re M&S Assoc., Ltd.,*
    138 B.R. 845 (Bankr.W.D.Tex.1992) .........................................................28

*In re Mobile Air Drilling Co., Inc.,*
    53 B.R. 605 (Bankr. N.D. Ohio 1985) .......................................................18

*Newman v. Stein,*
    464 F.2d 689 (2nd Cir. 1972)..................................................................19

*P.G. & E.,*
    350 F.3d at 937 .....................................................................................17

*In re Parks Lumber Co., Inc.,*
    19 B.R. 285 (Bankr.W.D.La.1982)............................................................22

*In re Pike's Peak Water Co.*,
   779 F.2d 1456 (10th Cir.1985). Bankruptcy .................................................................27

*In re Prime Motors Inns*,
   124 B.R. 378 (Bankr. S.D. Fla. 1991) .....................................................................31

*In re Produce Hawaii, Inc.*,
   41 B.R. 301 (Bankr.D.Hawaii 1984) ........................................................................22

*In re Prudential Energy Co.*,
   58 B.R. 857 (Bankr.S.D.N.Y.1986)..........................................................................28

*Summit Land Co. v. Allen (In re Summit Land Co.)*,
   13 B.R. 310 (Bankr. D.Utah 1981) ...........................................................................31

*In re Sylmar Plaza, L.P.*
   314 F.2d 1070 (9th Cir. 2002) ..................................................................................22

*In re Texaco, Inc.*,
   84 B.R. 893 (Bankr.S.D.N.Y.1988)...........................................................................20

*United States v. Alaska National Bank (In re Walsh Constr., Inc.)*,
   669 F.2d 1325 (9th Cir.1982) ....................................................................................19

*United States v. Energy Resources Co., Inc.*,
   495 U.S. 545 (1990)....................................................................................................27

*Universal Cooperatives, Inc. v. FCX Inc (In re FCS, Inc.)*,
   85 F.2d 1149 (4th Cir. 1988), *cert denied,* 489 U.S. 1011 (1989)..........................16

*In re W.T. Grant & Co.*,
   699 F.2d 599 (2nd Cir.1983).....................................................................................19

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
   839 F.2d 610 (9th Cir.1988) .....................................................................................18

**Federal Statutes**

11 U.S.C.
   § 326(a) .......................................................................................................................24
   § 365.........................................................................................................................30,32
   § 503(b) .....................................................................................................................7, 8
   § 507.......................................................................................4, 10, 11, 13, 16, 26
   § 511...........................................................................................................................10

§ 1121.................................................................................................................20, 21
§ 1122......................................................................................................15, 16, 20, 21
§ 1123.................................................................................4, 14, 16, 17, 18, 20, 20
§ 1125.................................................................................................................20, 21
§ 1126....................................................................................................................25,27
§ 1127.........................................................................................................................21
§ 1129.........................................2, 10, 15, 20, 21, 22, 23, 25, 26, 27, 28, 29
§ 1141(d)...............................................................................................................2, 33

28 U.S.C.
§ 157...........................................................................................................................14
§ 1408.........................................................................................................................14

**Other Authorities**

5 Collier on Bankruptcy ¶ 1129.02...............................................................15

7 Collier on Bankruptcy ¶ 1129.02[16].........................................................29

Fed.R.Bankr.P. 2002(b)........................................................................................15

1   Escada America LLC, a Delaware limited liability company (the "Debtor"), the debtor

2  and debtor in possession in the above-captioned, chapter 11 bankruptcy case, hereby

3  respectfully submits the *Debtor's Confirmation Brief in Support of Debtor's First Amended*

4  *Chapter 11 Reorganization Plan, Dated January 27, 2023* (the "Brief" and "Motion"). By

5  way of the Motion, the Debtor respectfully requests that the Court confirm the *Debtor's First*

6  *Amended Chapter 11 Reorganization Plan, Dated January 27, 2023* (the "Plan") [ECF 425].

7  Unless otherwise indicated with specificity or implied by context, capitalized defined terms

8  used in this Motion have the same meanings as ascribed to them in the Plan.  In support of this

9  Motion, the Debtor relies on this Motion, the Plan, the separately and concurrently filed

10  declaration of Kevin Walsh (the "Walsh Declaration"), the separately filed notice of the

11  hearing (the "Hearing") on the Plan, the *Disclosure Statement Describing Debtor's First*

12  *Amended Chapter 11 Reorganization Plan, Dated January 27, 2023* (the "Disclosure

13  Statement") [ECF 426], any other evidence and pleadings that the Debtor may file in support

14  of the Plan and arguments of counsel to be made at the Hearing in support of the Plan, and the

15  entire record in the case and the entire docket in the case.

16        **I.**  **INTRODUCTION**

17     The Plan is a reorganization plan with a frontloaded "pot plan" distribution to pay

18  creditors shortly after the Effective Date.  This Motion presents a comprehensive analysis of the

19  Plan proposed by the Debtor.  This Motion also sets forth the evidentiary basis upon which the

20  Debtor will request the Court to confirm the Plan pursuant to sections 1129(a), and, where

21  applicable, section 1129(b) of the Bankruptcy Code.  Pursuant to 11 U.S.C. § 1141(d),  by way

22  of this Motion, the Debtor specifically seeks a discharge of its debts such that all debts are

23  discharged except for those set forth in the Plan, and that the debts in the Plan will be treated

24  exclusively as set forth in the Plan.  By way of this Motion, the Debtor also specifically seeks an

25  injunction that bars all parties from pursuing the collection or enforcement of any debt or claim

26  arising before the Plan Effective Date except as allowed pursuant to the Plan.

27

28

The Debtor's bases for confirmation of the Plan include this Motion, notice of the Motion, the Plan, the Walsh Declaration, the entire record and docket in the bankruptcy case, and any arguments to be made by counsel at the hearing to confirm the Plan.

## II.    SUMMARY OF PLAN

The Motion provides an abbreviated summary of the Plan terms.  For the avoidance of doubt, the terms set forth in the Plan (and not the abbreviated summary in this Motion) control.

### A.    Summary of Plan Classes and Treatment

The Plan proposed by the Debtor is based on an extensively negotiated settlement term sheet (the "Term Sheet") among the Debtor, the Official Committee of Unsecured Creditors (the "Committee"), and three insider secured-creditor-affiliates of the Debtor: (i) Eden Roc International LLC ("Eden Roc"); (ii) Mega International LLC ("Mega"); and (iii) Escada Sourcing and Production LLC ("ESP") (collectively, the "Secured Creditors").[1]  The Debtor entered into the Term Sheet and seeks to confirm the Plan because the Debtor believes the settlement among the Debtor, Secured Creditors and the Committee (i) is in the best interest of the estate and creditors, and (ii) is fair, reasonable and provides adequate consideration to the estate on account of the claims being compromised under the Plan.  Among other things, the Debtor believes the settlement satisfies applicable Ninth Circuit law because (i) any potential litigation claims the estate holds against the Secured Creditors or other insiders are risky, complex and would be extremely expensive and time consuming to pursue, (ii) the Plan settlement provides for a prompt, certain cash recovery to creditors and thereby avoids the risk and difficulty in collecting any judgment(s) the estate might obtain against the Secured Creditors through protracted litigation, and (iii) two of the Debtor's largest unsecured creditors signed the Term Sheet and, upon information and belief, other large unsecured creditors support the settlement as implemented through the Plan.  *See In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir.1986) (holding that approval of a settlement requires consideration of the following factors:  "(a) [t]he probability of success in the litigation; (b) the difficulties, if any, to be

---

[1] A copy of the Term Sheet is attached as Exhibit A to the Disclosure Statement.

encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises"). The Term Sheet, which forms the basis of the Plan, is a compromise of controversies appropriately made through the Plan pursuant to 11 U.S.C. § 1123(b)(3).

On the Plan Effective Date, the Debtor will be referred to as the "Post-Confirmation Debtor." Except as otherwise provided for in the Plan, the Post-Confirmation Debtor will acquire all assets and assume all liabilities of the Debtor as restructured under the Plan, except all of the Debtor's inventory and tangible personal property shall vest in ESP in accordance with the Plan.

The Class 1 claim under the Plan is comprised of Eden Roc's allowed secured claim. The Class 2 claim under the Plan is comprised of Mega's allowed secured claim. The Class 3 claim under the Plan is comprised of ESP's allowed secured claim on account of the consignment agreement. The Class 4 claim under the Plan is comprised of ESP's allowed insider non-priority general unsecured claim on account of its prepetition debt acquisition. The Class 5 claims under the Plan are allowed non-insider claims against the Debtor that are not secured by a charge against, or interest in, any of the Debtor's assets, are not administrative claims, and are not entitled to priority under Bankruptcy Code Section 507(a). Class 6 under the Plan is comprised of Escada Store Services LLC's equity interests in the Debtor.

The Plan also contains non-classified claim holders, as the Bankruptcy Code pre-determines their treatment. These non-classified claim categories include: (i) post-petition estate professionals; (ii) other post-petition administrative expense claims; (iii) non-tax priority unsecured claims, primarily for prepetition unpaid wages; and (iv) prepetition priority tax claims.

## B. Means of Effectuating and Implementing the Plan

The Plan will be funded with: (i) Cash on Hand (as defined below) after satisfaction in full of allowed Administrative Claims and Priority Claims, (ii) the Cash Contribution (as defined

4

below), and (iii) (A) the Bond Proceeds (as defined below) and/or (B) the Bond Cover (as defined below).

Mega and ESP are collectively referred to herein as the "Contributing Creditors". The Contributing Creditors will contribute new cash in an amount equal to $675,000.00 (the "Cash Contribution") to pay allowed claims against the estate. For the avoidance of doubt, the Contributing Creditors shall contribute additional new cash in excess of the Cash Contribution as necessary to ensure that the GUC Floor is met.[2]

The Debtor's total cash on hand on the Effective Date of the Plan, prior to the funding of the Cash Contribution and excluding the Bond Proceeds or Bond Cover, as applicable, must be no less than $900,000 (the "Cash on Hand"). Notwithstanding the foregoing, if the total cash on hand on the Effective Date of the Plan is less than $900,000, then the Contributing Creditors may contribute additional cash necessary to satisfy the GUC Floor.

In the event the total amount of estate cash, excluding any Bond Proceeds (defined below) is less than $900,000 at any point before the Effective Date of the Plan, the Contributing Creditors may contribute funds (such funds, collectively, the "Cash Top Up") to increase the total amount of estate cash to at least $900,000. In the event Cash on Hand exceeds $900,000 on the Effective Date of the Plan, the Contributing Creditors shall be reimbursed the amount of the Cash Top Up from any such excess Cash on Hand.

The recovered proceeds (the "Bond Proceeds") of the Bond Collateral shall be distributed to holders of allowed General Unsecured Claims by no later than May 1, 2023 (the "Distribution Date"). In the event that the recovered Bond Proceeds are less than $1,850,000.00 as of the Distribution Date, the Contributing Creditors may advance such funds as necessary (the "Bond

---

[2] "GUC" is an acronym for "general unsecured creditors," specifically here for Class 5. The "GUC Floor," shall be no less than $2,600,000, i.e., an amount sufficient to pay each holder of an allowed Class 5 Claim no less than 13 cents on the dollar for Class 5's aggregate allowed claims, as provided in greater detail in the Plan. Class 5 claims are estimated at $20,000,000. If Class 5 claims exceed $20,000,000 the GUC Floor proportionally must also be greater than $2,600,000 to achieve a 13-cent recovery.

Cover") to ensure a total distribution of $1,850,000.00 in Bond Proceeds plus Bond Cover to holders of General Unsecured Claims.  If (i) the GUC Floor is met on the Distribution Date, and (ii) the Contributing Creditors advanced the Bond Cover, then any Bond Proceeds received after the date of the Bond Cover shall be the property of the Contributing Creditors.  For the avoidance of doubt, the Bond Proceeds shall not be included in the calculation of the amount of Cash on Hand.

The Secured Creditors and, subject to obtaining the necessary votes in support of the Plan, the general unsecured creditors agree that $200,000.00 (the "Wind Down Carve Out") of the Cash on Hand may be used to pay the allowed administrative expense claims of professionals retained by the bankruptcy estate for allowed fees and expenses solely to the extent such fees and expenses were incurred to effectuate the Debtor's, Committee's, and Secured Creditors' settlement and obtain confirmation of the Plan.  Separate from and in addition to the Wind Down Carve Out, the Secured Creditors agree to pay, outside of the Cash Contribution and use of cash collateral, Debtor's counsel's reasonable fees for the drafting of certain of the "Exit Documents," as that term is defined in the Plan.

### C. Classification and Treatment of Claims and Interests

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

#### 1. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has not placed the following claims in a class.

#### a. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Bankruptcy Case that are allowed under Bankruptcy Code Section 507(a)(2).  The Bankruptcy

Code requires that all administrative claims be paid on the Plan Effective Date unless a particular claimant agrees to a different treatment. "Administrative Claim" means a claim for costs and expenses of administration allowed under Section 503(b) of the Bankruptcy Code and referred to in Section 507(a)(2) of the Bankruptcy Code.

The following chart lists all of the Debtor's § 507(a)(2) estate professional administrative claims and their treatment under the Plan.

| Name | Amount Owed | Treatment |
| --- | --- | --- |
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Quarterly Fees to the United States Trustee ("UST") | $0 | The Debtor will be current on quarterly fees by the time of the hearing on plan confirmation. |
| LNBYG, Bankruptcy Counsel to the Debtor | Up to $43,474 Plus a portion of the "Wind Down Carve Out" for any qualifying fees and expenses<br><br>Plus reasonable fees for preparation of certain "Exit Documents," with such fees to be paid for by the Secured Creditors. | Paid in full out of the Debtor's cash on hand up to an agreed cap of $43,474[3] plus a portion of the $200,000 Wind Down Carve Out for any qualifying fees and expenses.<br><br>Fees for certain "Exit Documents" to be paid by Secured Creditors.<br><br>Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Subchapter V Trustee | $0 (est.) | The Subchapter V Trustee has already been paid in full. |
| HCVT, Accountant for the Debtor | Up to $6,402.60 (est.) | HCVT has already been paid in full. |

---

[3]  This amount reflects an agreed cap of $180,000 as payment in full of all allowed fees and expenses of LNBYG in connection with its second and final fee applications to the extent such fees and expenses exceed $180,000, other than for fees and expenses qualifying for payment from the Wind Down Carve Out or for preparation of the Exit Documents, as described in greater detail below.

| | | |
|---|---|---|
| KDW, Counsel for the Committee | Up to $339,502<br><br>Plus a portion of the "Wind Down Carve Out" for any qualifying fees and expenses | Paid in full out of the Debtor's cash on hand up to an agreed cap of $339,502[4] plus a portion of the $200,000 Wind Down Carve Out for any qualifying fees and expenses.<br><br>Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Emerald, Financial Advisor for the Committee | Up to $22,539<br><br>Plus a portion of the "Wind Down Carve Out" for any qualifying fees and expenses | Paid in full out of the Debtor's cash on hand up to an agreed cap of $22,539[5] plus a portion of the $200,000 Wind Down Carve Out for any qualifying fees and expenses.<br><br>Paid on the later of the Effective Date and the date the Court enters an order allowing such fees and expenses. |
| Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"), counsel for Simon Properties and Brookfield for a substantial contribution claim under § 503(b) for such creditors' | $50,000 | Paid in full out of the Debtor's cash on hand up to $50,000.<br><br>Paid on the later of the Effective Date and the date the Court enters an order allowing such fees |

---

[4] This amount reflects an agreed cap of $680,000 as payment in full of all allowed fees and expenses of KDW incurred in this case to the extent such fees and expenses exceed $680,000, other than for fees and expenses qualifying for payment from the Wind Down Carve Out, as described in greater detail below.

[5] This amount reflects an agreed cap of $115,000 as payment in full of all allowed fees and expenses of Emerald incurred in this case to the extent such fees and expenses exceed $115,000, other than for fees and expenses qualifying for payment from the Wind Down Carve Out, as described in greater detail below.

| | | |
|---|---|---|
| contributions to the estate during the period prior to Committee formation | | and expenses. |
| Committee member expenses to attend in-person mediation | $3,000.00 (est.) | Paid in full out of the Debtor's cash on hand<br><br>Paid on the later of the Effective Date and the date the Court enters an order allowing such expenses. |
| **TOTAL** | **$ 464,917**<br>**$ 200,000 (Wind Down)**<br>**$    TBD (Exit Docs)** | **Paid in the manner described above** |

Regarding non-professional administrative claims: (A) The column titled "Proposed Admin Amount" on Exhibit 5 to the Disclosure Statement, and (B) the following chart lists all of the Debtor's § 507(a)(2) administrative claims (other than estate-professional-administrative-expense claims listed above) known to be accruing and unpaid in the ordinary course of business and their treatment under the Plan.  Additionally, the Court has set an administrative claims bar date of **March 1, 2023**.    *See*, docket entry number 423.  The only administrative claim filed was by Allen Matkins, reflecting the contribution claim for $50,000 set forth above.  ECF 450, 451, 452.

| Name | Amount Owed | Treatment |
|---|---|---|
| Mega<br>(for Debtor's staff's health, dental, and vision benefits plans accrued and unpaid during the pendency of the bankruptcy case) | $140,000 (est.) | Upon the Plan going effective, Mega agrees to receive $0 for its post-petition administrative claim against the bankruptcy estate. |
| ESP<br>(for consignment fees accrued and unpaid during the pendency of the bankruptcy case) | $2,441,097.32 (est.) | Upon the Plan going effective, ESP agrees to receive $0 for its post-petition administrative claim against the bankruptcy estate. |
| **TOTAL** | **$2,581,097.32 (est.)** | **$0.00** |

Except for estate-professional-administrative-expense claims, all of the Debtor's allowed section 507(a)(2) administrative claims, including for the avoidance of doubt those listed in Exhibit 5 to the Disclosure Statement under the column titled "Proposed Admin Amount," shall be paid in full on the Plan Effective Date, unless a particular claimant agrees to a different treatment.

### b.  Priority Tax Claims

Prepetition priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Plan Effective Date, equal to the allowed amount of such allowed tax claims, over a period ending not later than five years after the Petition Date, and not less favorable than other creditors paid under the Plan.  Interest rates on these claims are conclusively determined by applicable non-bankruptcy law as of the month that the Plan is confirmed.  11 U.S.C. § 511.

Under the Plan, all allowed Section 507(a)(8) priority tax claims under $100,000 will be paid within 15 days of the Plan Effective Date. Interest on the priority tax claims will accrue and be paid at the applicable non-bankruptcy law statutory rate.  Unless timely contested under the Plan, a failure by the Debtor to make a payment on the priority tax claims pursuant to the terms of the Plan will be an event of default.  If the event of default is not cured within thirty (30) days after service of written notice of default from the taxing authority, then the taxing authority may enforce its applicable remedies by application of non-bankruptcy law in non-bankruptcy court. The chart below indicates all priority tax claims which were either scheduled by the Debtor or asserted by the taxing agencies in timely filed proofs of claim.  The inclusion of the claims in the chart below is intended simply to reflect the claims that have been scheduled and/or asserted in timely filed proofs of claim as priority tax claims, and is not intended to be a concession by the Debtor regarding the validity of the amount of any such claims or the classification of such claims as priority tax claims under Section 507(a)(8) of the Bankruptcy Code.

| Claimant | Proof of Claim No. | Claim Amount |
|---|---|---|
| County of Los Angeles | 9, as amended | $0[6] |
| Cal. Franchise Tax Board | 17 | $800.00 |
| IRS | 2, as amended | $500.00 |
| Cal. Empl. Dev. Dep't | N/A | $0 |
| NYC Dept. of Finance | 39 | $0[7] |
| U.S. Customs and Border Protection | 42 | $0[8] |
| **TOTAL** | | **$1,300.00** |

## 2. Classified Claims and Interests

### a. Non-Tax Pre-Petition Priority Claims

Certain prepetition priority claims that are referred to in Bankruptcy Code Sections 507(a)(4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment under the Bankruptcy Code as each holder of such an allowed claim must receive cash on the Effective Date equal to the allowed amount of such claim. However, the holder of such an unsecured priority claim may agree to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim. The Debtor's schedules reflect no creditors as holding priority unsecured claims. No creditors filed proofs of claim asserting non-tax priority unsecured claims.

### b. Class 1 – Allowed Secured Claim of Eden Roc International, LLC

Class 1 is comprised of Eden Roc's allowed secured claim of $579,025.32, plus accrued interest, fees, and costs. Upon the Plan going effective, Class 1 agrees to receive a distribution of $0 for its Class 1 claim. Class 1 shall have no lien on the Bond Collateral/Proceeds, Cash Contribution, or Cash on Hand. Class 1 will not receive any payments under the Plan or from the estate. Eden Roc shall receive a release as set forth in the Plan in exchange for the waiver of its right to receive any distribution on account of its Class 1 claim. Class 1 is impaired and entitled to vote on the Plan. Class 1 voted to accept the Plan.

---

[6]  On November 17, 2022, Los Angeles County withdrew proof of claim #9. [ECF 362]

[7]  On October 28, 2022, NYC Dept. of Finance withdrew proof of claim #39. [ECF 352]

[8]  On February 1, 2023, the Court signed an order approving a stipulation for claim #42 to be withdrawn with prejudice [ECF 436].

### c. Class 2 – Allowed Secured Claim of Mega International, LLC

Class 2 is comprised of Mega's allowed secured claim of $1,506,953.00, plus accrued interest, fees, and costs. Upon the Plan going effective, Class 2 agrees to receive a distribution of $0 for its Class 2 claim. Class 2 shall have no lien on the Bond Collateral/Proceeds, Cash Contribution, or Cash on Hand. Class 2 will not receive any payments under the Plan or from the estate. Mega shall receive a release as set forth in the Plan in exchange for the waiver of its right to receive any distribution on account of its Class 2 claim. Class 2 is impaired and entitled to vote on the Plan. Class 2 voted to accept the Plan.

### d. Class 3 – Allowed Claim of Escada Sourcing and Production LLC Related to Consignment

Class 3 is comprised of ESP's allowed secured claim for unpaid consignment fees under a true consignment arrangement between ESP and the Debtor. Class 3 has a prepetition secured claim in the amount of no less than $9,130,457.00. To the extent ESP is a creditor, all inventory held by Debtor and proceeds thereof are the collateral for ESP's Class 3 claim. Upon the Plan going effective, Class 3 agrees to receive a distribution of $0 for its Class 3 claim. Class 3 shall have no lien on the Bond Proceeds, Cash Contribution, or Cash on Hand. Class 3 will not receive any payments under the Plan or from the estate. ESP shall receive a release as set forth in the Plan in exchange for the waiver of its right to receive any distribution on account of its Class 3 claim. Class 3 is impaired and entitled to vote on the Plan. Class 3 voted to accept the Plan.

### e. Class 4 – Allowed Claim of Escada Sourcing and Production LLC Related to Debt Acquisition

Class 4 is comprised of ESP's allowed unsecured claim for $11,507,641.10. Upon the Plan going effective, Class 4 agrees to receive a distribution of $0 for its Class 4 claim. Class 4 shall have no lien on the Bond Proceeds, Cash Contribution, or Cash on Hand. Class 4 will not receive any payments under the Plan or from the estate. ESP shall receive a release as set forth in the Plan in exchange for the waiver of its right to receive any distribution on account of its Class 4 claim. Class 4 is impaired and entitled to vote on the Plan. Class 4 voted to accept the Plan.

#### f.  Class 5 – Allowed Claims of Non-Insider General Unsecured Creditors

The Class 5 claims under the Plan are comprised of each allowed claim against the Debtor held by a non-insider that is not secured by a charge against, or interest in, any of the Debtor's assets, that is not an administrative claim, or otherwise not entitled to priority under Bankruptcy Code Section 507(a).    The estimated amount of asserted Class 5 claims is $20,616,904.66.  The Claims Chart attached as **Exhibit 2** to the Disclosure Statement and Plan shows all claims which were scheduled by the Debtor and all proofs of claim which have been filed against the Debtor that are in Class 5, and estimated prorated recovery.

In full and final satisfaction of each, any, and all of their claims against the Debtor, on the Plan Effective Date, each holder of an allowed Claim in Class 5 will receive its pro rata share of the "GUC Distribution," which shall be no less than the "GUC Floor," which shall be no less than an amount sufficient to pay each holder of an allowed Class 5 Claim no less than 13 cents on the dollar for its aggregate allowed claims, as provided in greater detail below.  In the event of a default, the Debtor's bankruptcy case shall be converted to chapter 7.

The Plan's treatment of Class 5 is the result of an extensively and hard-fought negotiated global settlement among the Debtor, the Committee, and the Secured Creditors.

On the Plan Effective Date, the total amount of value available for distribution to holders of allowed General Unsecured Claims shall be no less than $2,600,000 (the "<u>GUC Floor</u>") and may be a greater sum (the "<u>GUC Distribution</u>"), which amount shall be distributed pro rata to the holders of allowed general unsecured creditors no later than May 1, 2023 (the "<u>Distribution Date</u>").    The GUC Distribution will consist of: (i) Cash on Hand after satisfaction in full of allowed Administrative Claims and Priority Claims, (ii) the Cash Contribution, and (iii) either (A) the Bond Proceeds or (B) the Bond Cover.

The GUC Floor is predicated on allowed General Unsecured Claims totaling not more than an aggregate amount of $20,000,000. If, as of the effective date, the total allowed amount of General Unsecured Claims exceeds, in aggregate, $20,000,000, then the amount of the GUC Floor shall increase to the amount necessary to provide all allowed General Unsecured Claims a

distribution equal to 13.0%.

### g. Class of Interest Holders

Class 6 is comprised of the equity interests in the Debtor, held by the Debtor's sole member, Escada Store Services LLC. Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor.  Class 6 is unimpaired, and the Class 6 interest holder is conclusively presumed to have voted to accept the Plan by operation of law.

The Class 6 equity interests will retain its rights and interests without impairment.  Class 6 receives no payments on account of its equity interests under the Plan.  In compliance with 11 U.S.C. § 1123(a)(6), the Debtor's charter, bylaws, and/or operating agreement will be amended to provide for the inclusion of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among classes.

### III.

### THIS COURT HAS JURISDICTION OVER THE CONFIRMATION OF THE PLAN

This court has jurisdiction over the Debtor's bankruptcy case pursuant to 28 U.S.C. §157(a).  Venue of the cases is appropriate in the Central District of California pursuant to 28 U.S.C. §1408.  Confirmation is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(a) and (l).

### IV.

### THE ELEMENTS NECESSARY FOR PLAN CONFIRMATION ARE PRESENT

### A.    Standard for Confirmation

A Plan proponent must demonstrate each element of §1129 by a preponderance of evidence.  *In re Arnold & Baker Farms*, 177 B.R. 648, 654(9th Cir.B.A.P.1994), *aff'd,* 85 F.3d 1415, *cert. denied,* 519 U.S. 1054 (1997).  The Court may consider the cumulative record and evidence amassed throughout the case in confirming a plan.  *In re Acequia, Inc*., 787 F.2d 1352, 1359 (9th Cir.1986).  "[F]or those creditors who object, it is up to that objecting party to 'produce evidence to establish the validity of the objection before the ultimate burden … is shifted to the plan proponent.'"  *In re Art & Architecture Books of the 21st Century*, 2016 WL

118743 *7 (Bankr.C.D.Cal. Mar.18, 2016) (quoting *In re Future Energy Corp.*, 83 B.R. 470, 482 n.21 (Bankr.S.D. Ohio 1988) (collecting cases)).  Parties in interest are permitted 28 days' notice for filing objections and the hearing to consider confirmation of a chapter 11 plan.  FED.R.BANKR.P. 2002(b).  Opposition must be a complete written statement of all reasons in opposition with declarations and evidence.  LBR 9013-1(f)(2).  Direct testimony is taken by declaration.  LBR 9013-1(i)(3).  The failure by a party in interest to file a written and fully supported opposition may be deemed by the Court to be waiver of objection to confirmation of the Plan.  LBR 9013-1(h).  No party filed any objection to the Plan.

**B.**    **The Plan Complies with All of the Applicable Provisions of Sections 1129(a) of the Bankruptcy Code**

1.    Section 1129(a)(1) of the Bankruptcy Code

Section 1129(a)(1) of the Bankruptcy Code provides that a court may confirm a plan of reorganization only if "the plan complies with the applicable provisions of this title."  The phrase "applicable provisions" has been interpreted to mean Sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a plan of reorganization.  *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d Cir.1988); 5 COLLIER ON BANKRUPTCY ¶ 1129.02 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

1.1    Section 1122 of the Bankruptcy Code.  Section 1122 of the Bankruptcy Code governs the classification of claims and interests.  Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class."

The Plan designates five classes of claims and one class of interest holders.  Classes 1, 2, and 3 are comprised of the allowed secured claims of Eden Roc, Mega, and ESP, respectively, and each is in a different class because each creditor class has a different lien priority; additionally, Eden Roc and Mega have blanket liens, while ESP's lien is more limited in scope. Class 4 is comprised of the general unsecured claim held by ESP, which is separately classified by way of a voluntary subordination as insider claims to non-insider claims in Class 5, as part of

the heavily negotiated plan terms among the Debtor, the Secured Creditors, and the Committee. Class 5 is a separate class of all allowed non-insider general unsecured claims. Class 6 is separately classified as the equity interest holder because it does not hold a creditor claim, and it is the only party in interest holding equity.

Based on the foregoing classification of claims and interests, the Plan complies with the provisions of Section 1122 of the Bankruptcy Code.

1.2    <u>Section 1123(a) of the Bankruptcy Code</u>. The Plan complies with the seven (7) mandatory provisions of Section 1123(a) of the Bankruptcy Code.

Section 1123(a)(1) of the Bankruptcy Code requires that a plan of reorganization designate classes of claims other than claims of the kind specified in Section 507(a)(2), (3) and (8) of the Bankruptcy Code. The Plan satisfies the requirements of Section 1123(a)(1) of the Bankruptcy Code by designating all classes of claims other than claims specified in Sections 507(a)(2), (3) and (8) of the Bankruptcy Code.

Section 1123(a)(2) of the Bankruptcy Code requires that a plan of reorganization specify those classes of claims or interests that are not impaired, and Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify those classes of claims or interests that are impaired. The Plan satisfies both of these requirements by indicating whether each class under the Plan is impaired and what treatment each class will receive.

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to less favorable treatment. The Plan satisfies this requirement as no claim holder or interest holder is receiving treatment under the Plan different from any other claim holder or interest holder in the same class. Thus, the Plan satisfies the requirement of section 1123(a)(4).

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the Plan's implementation and sets forth a non-exclusive list of methods of doing so. In general terms, §1123(a)(5) is an empowering statute meant to enhance the ability of the

1    proponent to deal with the property of the estate by providing for preemption of conflicting state

2    laws.  *Universal Cooperatives, Inc. v. FCX Inc (In re FCS, Inc.)*, 85 F.2d 1149, 1155 (4th Cir.

3    1988), *cert denied,* 489 U.S. 1011 (1989).  The methods of plan implementation as set forth in

4    §1123(a)(5) are self-executing, so a plan of reorganization may propose acts to implement the

5    plan notwithstanding contrary non-bankruptcy agreements.  *Pacific Gas & Electric Co. v. Calif*

6    *on behalf of the Calif. Dept. of Toxic Substances.*  350 F.3d 932, 937 (9th Cir. 2003), *cert.*

7    *denied,* 543 U.S. 956 (2004). The examples of adequate means for implementation of a plan set

8    forth in §1123(a)(5) are illustrative and do not exclude or limit other means of implementation.

9    *P.G. & E.,* 350 F.3d at 937.

10    The Plan describes the means for the Plan's implementation.  Specifically, the Plan

11    provides for its implementation by way of, *inter alia*, Sections 1123(a)(5)(A) and (B).  The

12    Debtor will implement the Plan through a settlement, cash infusion from the Contributing

13    Creditors, business operations, and transfer of personal property to ESP.  The Plan meets the

14    requirements of Section 1123(a)(5).

15    Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion

16    in the charter of a corporate debtor a provision prohibiting the issuance of nonvoting equity

17    securities, and providing, as to the several classes of securities possessing voting power, an

18    appropriate distribution of such power among classes.  The Plan specifically meets this

19    requirement in the treatment of the equity interest class.

20    Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain only provisions

21    that are consistent with the interests of creditors and equity security holders and with public

22    policy with respect to the manner of selection of any officer, director, or trustee.  The Plan does

23    not contain any provisions that offend section 1123(a)(7) and, accordingly, complies with this

24    subsection.

25    1.3    Section 1123(b) of the Bankruptcy Code. Section 1123(b)(1) of the Bankruptcy

26    Code provides that a plan may impair or leave any class of claims, whether secured or

27

28

17

unsecured, or of interests unimpaired under the plan.  The Plan designates that classes 1, 2, 3, 4, and 5 are impaired and that class 6 is not impaired.

Section 1123(b)(2) of the Bankruptcy Code specifies that, subject to Section 365, a plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected.  Section II.B.12 of the Plan and **Exhibit 4** thereto, provide the assumption and rejection of executory contracts and prepetition unexpired leases subject to this provision.

Section 1123(b)(3) of the Bankruptcy Code specifies that a plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate," and/or "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest."  As set forth in sections II.B.5 & 6 of the Plan, the Plan provides that all claims, claim objections, causes of action and avoidance actions of the Debtor and its estate are preserved by the Plan, and the Post-Confirmation Debtor shall have sole and full power and authority to settle, adjust, retain, enforce, or abandon any claim, cause of action, or avoidance actions as the sole representative of the Debtor's estate under section 1123(b) of the Bankruptcy Code or otherwise, regardless of whether such claims, causes of action, or avoidance actions were commenced prior or subsequent to the Plan Effective Date.

Moreover, the Plan itself is a compromise of controversies among the Debtor, Committee, and Secured Creditors, for all of the reasons set forth in the Plan, Term Sheet, and Committee Support Letter.  settlement is set forth in Bankruptcy Rule 9019(a), which provides in pertinent part that "[o]n motion by the trustee and after hearing on notice to creditors ... the court may approve a compromise or settlement."  The decision of whether a compromise should be accepted or rejected lies within the sound discretion of the Court.  *In re Carson*, 82 B.R. 847, 852 (Bankr. S.D. Ohio 1987; *In re Hydronic Enterprise, Inc.*, 58 B.R. 363, 365 (Bankr. D. R.I. 1986); *In re Mobile Air Drilling Co., Inc.,* 53 B.R. 605, 607 (Bankr. N.D. Ohio 1985); *Knowles v. Putterbaugh (In re Hallet)*, 33 B.R. 564, 565 (Bankr. D. Me. 1983).

"The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir.1988). "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir.1986), *cert. denied* 479 U.S. 854 (1986). Accordingly, in approving a settlement agreement, the Court need not conduct an exhaustive investigation of the claims sought to be compromised. *See*, *United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir.1982). Rather, it is sufficient that the Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. *See In re A & C Properties, supra*, 784 F.2d at 1381.

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

(a)     the probability of success in the litigation;

(b)     the difficulties, if any, to be encountered in the matter of collection;

(c)     the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

(d)     the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties, supra*, 784 F.2d at 1381 (the "A & C Factors").

A court should not substitute its own judgment for the judgment of the trustee or the debtor in possession. *Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr.S.D.N.Y.1984). A court, in reviewing a proposed settlement, is not to decide the numerous questions of law and fact but rather to canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2nd Cir.1983), *accord*, *Newman v. Stein*, 464 F.2d 689, 693 (2nd Cir. 1972). The court should not conduct a "mini-trial" on the merits of the underlying cause of action. *Matter of Walsh Const., Inc.*, 669

F.2d 1325, 1328 (9th Cir.1982); In re Blair, 538 F.2d 849 (9th Cir.1976).  "It is well established that compromises are favored in bankruptcy."  *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr.S.D. Ohio 1990).  Here, among other things, the Debtor believes the settlement satisfies applicable Ninth Circuit law because (i) any potential litigation claims the estate holds against the Secured Creditors or other insiders are risky, complex and would be extremely expensive and time consuming to pursue, (ii) the Plan settlement provides for a prompt, certain cash recovery to creditors and thereby avoids the risk and difficulty in collecting any judgment(s) the estate might obtain against the Secured Creditors through protracted litigation, and (iii) two of the Debtor's largest unsecured creditors signed the Term Sheet and, upon information and belief, other large unsecured creditors support the settlement as implemented through the Plan. Therefore, the compromise set forth in the Plan should be approved and confirmed.

Section 1123(b)(4) of the Bankruptcy Code specifies that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests."  The Plan does not contemplate the sale of any assets.

Section 1123(b)(5) of the Bankruptcy Code permits a plan to modify the rights of holders of secured claims.  The Secured Creditors' rights are modified as set forth in Classes 1, 2, and 3.

Subsection 1123(b)(6) is a catch-all category for "any other appropriate provision not inconsistent with the applicable provisions of this title."  The Debtor submits that the Plan does not contain provisions inconsistent with the applicable provisions of title 11.

Based upon the foregoing, the Plan complies with all of the provisions of Section 1122 and 1123 of the Bankruptcy Code and, therefore, complies with Section 1129(a)(1) of the Bankruptcy Code.

2.    Section 1129(a)(2) of the Bankruptcy Code.    Section 1129(a)(2) of the Bankruptcy Code provides that a court may confirm a plan only if "[t]he proponent of the plan complies with applicable provisions of the title."  The "principal purpose of 11 U.S.C. § 1129(a)(2) is to ensure that the proponents have complied with the requirements of 11 U.S.C. § 1125 in the solicitation of acceptances to the plan,"  *In re Texaco, Inc.*, 84 B.R. 893, 906-07

(Bankr.S.D.N.Y.1988), and with the requirements of Section 1121 and 1127 of the Bankruptcy Code. *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (9th Cir.B.A.P.1988).

2.1     Section 1121 of the Bankruptcy Code. Section 1121© of the Bankruptcy Code provides that "[a]ny party in interest including the debtor . . . may file a plan . . . ." The Plan is proposed by the Debtor, which is a party in interest in this case. The requirements of Section 1121 have been met.

2.2     Section 1125 of the Bankruptcy Code. Section 1125(b) of the Bankruptcy Code provides, in part, that:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at that time or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and hearing, by the Court as containing adequate information.

11 U.S.C. § 1125(b). At a hearing held on January 25, 2023, the Court approved the Debtor's Disclosure Statement describing the Plan and found that the Disclosure Statement contains adequate information pursuant to Section 1125(b) of the Bankruptcy Code. On or about February 3, 2023, a copy of the Disclosure Statement and Plan and notice of the hearing on the confirmation of the Plan, together with ballots for creditors to use to vote on the Plan, were sent to each known party in interest in the Debtor's case. The Debtor did not solicit acceptance of a plan prior to these events. The Debtor has complied with the provisions of Section 1125 of the Bankruptcy Code.

2.3     Section 1127 of the Bankruptcy Code. Section 1127 of the Bankruptcy Code sets forth certain requirements that a plan proponent must satisfy in order to modify a plan. Section 1127(b) of the Bankruptcy Code authorizes a plan proponent to modify the plan at any time before confirmation of the plan provided the plan as modified satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code. As of the filing of this Motion, the Debtor has not modified the Plan. The Plan meets the requirements of section 1127.

3.      <u>Section 1129(a)(3) of the Bankruptcy Code</u>.     Section 1129(a)(3) of the Bankruptcy Code provides that a court may confirm a plan only if the plan is proposed "in good faith and not by any means forbidden by law."    A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  *See, e.g., In re Sylmar Plaza, L.P.* 314 F.2d 1070, 1074 (9th Cir. 2002).

The Plan has been proposed in good faith by the Debtor.  The Plan is not proposed by any means forbidden by law.  The Plan is the result of a highly negotiated Term Sheet among the Debtor, Secured Creditors, and Committee, after a full-day, in-person mediation with the Honorable Martin Barash, United States Bankruptcy Judge for the Central District of California, followed by multiple settlement discussions by telephone and videoconference in the following weeks.  The Plan satisfies the requirements of §1129(a)(3).

4.      <u>Section 1129(a)(4) of the Bankruptcy Code</u>.     Section 1129(a)(4) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ny payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable."  Pursuant to section II.A.1.a the Plan, the Bankruptcy Court must approve all professional fees and expenses before they may be paid.

5.      <u>Section 1129(a)(5) of the Bankruptcy Code</u>.     Section 1129(a)(5)(A)(i) of the Bankruptcy Code provides that a court may confirm a plan only if the plan proponent discloses "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer or voting trustee of the debtor . . . or a successor to the debtor under the plan."  The Plan discloses such identities and affiliations in Section II.B.3 of the Plan.

Section 1129(a)(5)(A)(ii) of the Bankruptcy Code requires that the appointment to, or continuance in, such office of such individual be "consistent with the best interests of creditors and equity holders and with public policy."  *In re Produce Hawaii, Inc.*, 41 B.R. 301, 304 (Bankr.D.Hawaii 1984); *In re Parks Lumber Co., Inc.*, 19 B.R. 285, 291 (Bankr.W.D.La.1982).

1   The Debtor submits that public policy favors the continuation of the Debtor's current

2   management, which is qualified based on the prepetition and post-petition track record in the

3   Debtor's case.

4       Section 1129(a)(5)(B) of the Bankruptcy Code provides that a Court may confirm a plan

5   only if the plan proponent discloses "the identity of any insider that will be employed or retained

6   by the reorganized debtor, and the nature of any compensation for such insider."  The Plan

7   discloses such identities and affiliations in Section II.B.3 of the Plan.  The Debtor's sole

8   member, Escada Store Services LLC, will manage the Post-Confirmation Debtor for no

9   compensation.  The Plan satisfies the requirements of §1129(a)(5).

10       6.   <u>Section 1129(a)(6) of the Bankruptcy Code</u>.  Section 1129(a)(6) of the

11   Bankruptcy Code requires that after confirmation of a plan, any governmental regulatory

12   commission with jurisdiction "over the rates of the debtor has approved any rate change

13   provided for in the plan …"  This Section of the Bankruptcy Code is inapplicable to the Debtor.

14       7.   <u>Section 1129(a)(7) of the Bankruptcy Code</u>.  Section 1129(a)(7)(A) of the

15   Bankruptcy Code (commonly referred to as the "best interest of creditors test" and herein the

16   "Best Interest Test") requires that, with respect to each impaired class under the Plan, each

17   member of the class must either accept the Plan or receive under the Plan property having a

18   value, as of the Effective Date, that is not less than the amount that such claim holder would

19   receive if the Debtor's chapter 11 case were converted to a chapter 7 liquidation case.  Thus, for

20   the Court to be able to confirm the Plan, the Court must find that all creditors and interest

21   holders who do not accept the Plan will receive at least as much under the Plan as such holders

22   would receive under a chapter 7 liquidation of the Debtor.  The Debtor maintains that this

23   requirement is clearly met.

24       The impaired classes under the Plan consist of classes 1, 2, 3, 4, and 5.  The Debtor must

25   therefore satisfy the "best interest of creditors test" with respect to members of classes 1, 2,3, 4,

26   and 5 that do not vote to accept the Plan.  All creditors in Classes 1, 2, 3, and 4 voted to accept

27   the Plan.  Accordingly, this Best Interest Test focuses on the creditors in Class 5.

28

23

In a hypothetical chapter 7 liquidation, the Debtor projects that Class 5 would receive less than the 13% GUC Floor recovery set forth in the Plan. The GUC Floor of $2,600,000 is premised on (1) $900,000 Cash on Hand (prior to satisfaction of administrative claims and priority claims up to any agreed limits, if applicable), (2) $1,8500,000 Bond Proceeds and/or Bond Cover from the Contributing Creditors, and (3) $675,000 Cash Contribution from the Contributing Creditors. Without the Plan and the settlement reflected therein, there will be no Cash Contribution, immediately reducing the estate funds to $2,750,000. In the absence of the settlement encapsulated in the Plan, administrative expense estate professional claims in this chapter 11 case would exceed $1,000,000, immediately reducing estate funds to $1,750,000. In the absence of the settlement encapsulated in the Plan, the Contributing Creditors will not be fronting the Bond Cover of $1,850,000, meaning that the hypothetical chapter 7 estate would already be in an administratively insolvent starting position with insufficient cash on hand to pay chapter 7 estate professionals and also pay chapter 11 estate professionals.

In a hypothetical chapter 7 case, the chapter 7 trustee would hire his/her own counsel and undertake an investigation of the Bankruptcy Case and the estate, then bring lawsuits, adding a new layer of administrative expenses to the $1,000,000 of chapter 11 expenses already incurred. All of these administrative expenses must be paid before payments can be made to Class 5. The formula payment to the chapter 7 trustee pursuant to Bankruptcy Code Section 326(a) would also significantly reduce the funds available for distribution to Class 5 creditors. Because secured creditors are paid before unsecured creditors, the chapter 7 trustee would also have to succeed in disallowing the claims held by the Secured Creditors to realize a dividend to Class 5. Whatever funds might be in the estate would be used as a litigation fund to bring claims against the Secured Creditors in an effort to defeat their multi-million-dollar secured claims and post-petition administrative claims, collect any judgments against them, and then pay those proceeds to the holders of general unsecured claims only after the chapter 7 and chapter 11 administrative expense professional fees had been paid in full. Under these circumstances, the Debtor submits that the minimum 13% recovery provided by the GUC Floor to Class 5 under the Plan passes the

1   Best Interest of Creditors Test because it provides at least as much (and certainly much more)

2   than would be achieved in a hypothetical chapter 7 liquidation.

3         8.    <u>Section 1129(a)(8) of the Bankruptcy Code</u>.  Section 1129(a)(8) of the

4   Bankruptcy Code provides that a court may confirm a plan only if "[w]ith respect to each class

5   of claims or interests: (A) such class has accepted the plan; or (B) such class is not impaired

6   under the plan." Section 1126(c) of the Bankruptcy Code provides that "[a] class of claims has

7   accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in

8   amount and more than one-half in number of the allowed claims of such class held by creditors .

9   . . that have accepted or rejected such plan." Only votes actually cast are counted. *In re M.*

10   *Long Arabians*, 103 B.R. 211, 216 (9th Cir.B.A.P.1989).

11         Here, Class 6 is not impaired and is deemed to have accepted the Plan without voting

12   pursuant to 11 U.S.C. § 1126(g), thereby meeting the requirements of 11 U.S.C. § 1129(a)(8).

13   Classes 1, 2, 3, 4, and 5 are impaired, and all of those classes voted overwhelmingly to accept

14   the Plan, as shown in the concurrently and separately filed plan voting tabulation summary.

15         9.    <u>Section 1129(a)(9) of the Bankruptcy Code</u>.  According to section 1129(a)(9) of

16   the Bankruptcy Code, plan confirmation requires that each holder of a priority claim under

17   Section 507(a)(2) or 507(a)(3) of the Bankruptcy Code must receive cash equal to the allowed

18   amount of such claim or agree to a different treatment.

19         Section 1129(a)(9) of the Bankruptcy Code provides that a court may confirm a plan only

20   if the plan complies with the following:

21         a.    Each holder of a priority claim under Section 507(a)(2) or 507(a)(3) of

22   the Bankruptcy Code must receive cash equal to the allowed amount of such claim or agree to a

23   different treatment.

24         b.    Each holder of a priority claim under Sections 507(a)(1), (4), (5), (6) or

25   (7) of the Bankruptcy Code must receive, on account of such claim:

26              i.    deferred cash payments of a value, as of the effective date, equal

27   to the allowed amount of such claim, if such class has accepted the plan; or

28

ii.    cash on the effective date equal to the allowed amount of such claim, if such class has not accepted the plan.

c.    Each holder of a priority claim under Section 507(a)(8) of the Bankruptcy Code must receive, on account of such claim, deferred cash payments, over a period not exceeding five years after the Petition Date, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

Under the Plan, each holder of an allowed administrative claim (i.e., claims arising under Section 507(a)(2) of the Bankruptcy Code) will be paid in full upon the Effective Date, except that estate professionals who were employed in the Case will not be paid until their fees and expenses are approved by the Court following the filing of final fee applications by such professionals, and subject to the Term Sheet's caps set forth in the Plan.  With respect to the administrative expense claims of Mega and ESP, they have agreed to receive $0.  The Debtor is not aware of any prepetition priority claims under 11 U.S.C. § 507(a) except as set forth below:

| Claimant | Proof of Claim No. | Claim Amount |
|---|---|---|
| County of Los Angeles | 9, as amended | $0[9] |
| Cal. Franchise Tax Board | 17 | $800.00 |
| IRS | 2, as amended | $500.00 |
| Cal. Empl. Dev. Dep't | N/A | $0 |
| NYC Dept. of Finance | 39 | $0[10] |
| U.S. Customs and Border Protection | 42 | $0 |
| **TOTAL** | | **$1,300.00** |

Under the Plan, all allowed Section 507(a)(8) priority tax claims under $100,000 will be paid within 15 days of the Plan Effective Date. Interest on the priority tax claims will accrue and be paid at the applicable non-bankruptcy law statutory rate.

Based upon the foregoing, the Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code.

---

[9]    On November 17, 2022, Los Angeles County withdrew proof of claim #9.  [ECF 362]

[10]    On October 28, 2022, NYC Dept. of Finance withdrew proof of claim #39.  [ECF 352]

10.    Section 1129(a)(10) of the Bankruptcy Code.

Section 1129(a)(10) of the Bankruptcy Code provides that a court may confirm a plan only if "at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." Section 1126(c) of the Bankruptcy Code provides that "[a] class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." Class 5 is impaired and is comprised of creditors holdings non-insider general unsecured claims. As shown in the separately and concurrently filed plan ballot voting tabulation and summary, Class 5 voted to accept the Plan. Therefore, the requirement of § 1129(a)(10) has been met.

11.    Section 1129(a)(11) of the Bankruptcy Code. Section 1129(a)(11) of the Bankruptcy Code provides that a court may confirm a plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." The purpose of §1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly obtain after confirmation. *In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 737 (Bankr.D.Ariz.2010), quoting *In re Pizza of Haw., Inc.,* 761 F.2d 1374, 1382 (9th Cir.1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11], at 1129–34 (15th ed. 1984)).

In order to meet this feasibility standard, a debtor need only demonstrate that the plan has a "reasonable probability of success." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir.1986); *In re Pike's Peak Water Co.*, 779 F.2d 1456, 1460 (10th Cir.1985). Bankruptcy courts have set forth six factors to help courts determine feasibility: (1) adequacy of the debtor's capital structure; (2) the earning power of the debtor's business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other

related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re M&S Assoc., Ltd.*, 138 B.R. 845, 849 (Bankr.W.D.Tex.1992). However, in analyzing feasibility, the court need find only a reasonable assurance of commercial viability, not guaranteed success. *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr.S.D.N.Y.1986).

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Plan Effective Date to pay all the claims and expenses which are entitled to be paid on such date. Here, the Plan is feasible because it is contemplated to make payments by no later than a Distribution Date of May 1, 2023, within approximately two weeks of an outside Plan Effective Date of April 15, 2023, to be funded by (1) Cash On Hand, (2) Bond Proceeds or Bond Cover, and (3) the Cash Contribution. The effect of the foregoing is that the Plan payments will be frontloaded so that there will be little to no obstacles to substantially consummating the Plan by May 1, 2023. Additionally, the Debtor, the Committee, the Secured Creditors, Debtor's general bankruptcy counsel, and Committee's general bankruptcy counsel have agreed to a fixed Wind Down Carve Out from the Cash on Hand in the amount of $200,000, capped administrative estate professional claims, and additional contributions by the Secured Creditors as needed to ensure that the GUC Floor is met by the Distribution Date.

The second aspect considers whether the Post-Confirmation Debtor will have enough cash over the life of the Plan to make the required Plan payments. This consideration does not apply here because the Plan contemplates almost immediate substantial consummation and payment within weeks of the Effective Date and by no later than May 1, 2023. Accordingly, the Debtor submits that the Plan is feasible and meets the requirements of 11 U.S.C. § 1129(a)(11).

12. <u>Section 1129(a)(12) of the Bankruptcy Code</u>. Section 1129(a)(12) of the Bankruptcy Code provides that a court may confirm a plan only if "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the

1    plan." The Debtor is in compliance with all of the fee requirements set forth in section 1930 of

2    title 28.  The Debtor has timely paid all fees or costs owing to the Clerk of the Court or the

3    Office of the United States Trustee.  The Plan also provides for payment of future applicable

4    fees.  Accordingly, the requirements of Section 1129(a)(12) are met.

5         13.    Section 1129(a)(13) of the Bankruptcy Code.    Section 1129(a)(13) of the

6    Bankruptcy Code provides that a court may confirm a plan only if "[t]he plan provides for the

7    continuation after its effective date of payment of all retiree benefits . . . for the duration of the

8    period the debtor has obligated itself to provide such benefits."  This provision is inapplicable as

9    the Debtor has no retiree benefit obligations.

10         14.    Section 1129(a)(14) of the Bankruptcy Code.  Section 1129(a)(14) does not apply

11   to the Debtor because it does not have any domestic support obligations.

12         15.    Section 1129(a)(15) of the Bankruptcy Code.  Section 1129(a)(15) does not apply

13   because the Debtor is not an individual.

14         16.    Section 1129(a)(16) of the Bankruptcy Code.    Section 1129(a)(16) of the

15   Bankruptcy Code requires that "[a]ll transfers of property of the plan shall be made in

16   accordance with any applicable provisions of nonbankruptcy law that govern the transfer of

17   property by a corporation or trust that is not a moneyed, business, or commercial corporation or

18   trust."   This section applies to non-profit corporations.   7 COLLIER ON BANKRUPTCY ¶

19   1129.02[16] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).  This subsection is

20   inapplicable to the Debtor.

21             **V.       REVISION AT THE REQUEST OF THE UNITED STATES TRUSTEE**

22         At the request of the United States Trustee, the Debtor has agreed to revise the language

23   of the exculpation clause in section II.B.10 of the Plan as follows, with underlined font showing

24   the revision requested, to conform to the requirements of *Blixseth v. Credit Suisse*, 961 F.3d

25   1074 (9th Cir.2020):

26

27             To the maximum extent permitted by law, not any one of the Debtor, the
              Post-Confirmation Debtor, the Committee, Brookfield, Simon Property,
28            Eden Roc International LLC, Escada Sourcing and Production LLC, Mega

International LLC, each of its/their management, each of its/their professionals employed or retained by any of them, whether or not by Bankruptcy Court order (collectively, the "Exculpated Parties"), shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds, except for acts of willful misconduct or gross negligence as determined by a final order by a court of competent jurisdiction.

For the avoidance of doubt the exculpation and release applies only to the events of the Debtor's case and Plan as set forth in the preceding paragraph.  This is not – and shall not be construed to be – a release or exculpation of the Exculpated Parties for matters outside of the Debtor's case and Plan as set forth in the preceding paragraph.

## VI.    CONTRACT AND LEASE ASSUMPTION OR REJECTION

### A.    Standard for Assumption or Rejection

Section 1123(b)(2) of the Bankruptcy Code specifies that, subject to Section 365, a plan may provide for the assumption, rejection, or assignment of any executory contract or unexpired lease not previously rejected.  Section II.B.12 of the Plan and **Exhibit 4** thereto, provide the assumption and rejection of executory contracts and prepetition unexpired leases subject to this provision, to the extent not already assumed or rejected.

Barring exceptions not herein relevant, Section 365(a) of the Bankruptcy Code authorizes a debtor in possession, "subject to the Court's approval, . . . [to] assume or reject any executory contract or unexpired lease of the debtor."  A debtor in possession may assume or reject executory contracts for the benefit of the estate.  *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir. 1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y.1996).  In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it.  *Durkin v. Benedor Corp. (In re G.I. Indus., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) (bankruptcy court applies the business judgment rule to evaluate assumption or rejection

1    decisions); *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990);

2    *see also In re Gucci*, 193 B.R. at 415.

3       A debtor in possession satisfies the "business judgment" test when it decides, in good

4    faith, that the assumption or rejection may benefit the estate.  *In re FCX, Inc.*, 60 B.R. 405, 411

5    (E.D.N.C. 1986); *In re Chipwich, Inc.*, 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985); *Comm'l*

6    *Fin. Ltd. v Hawaii Dimensions, Inc. (In re Hawaii Dimensions, Inc.)*, 47 B.R. 425, 427 (D. Haw.

7    1985) (bankruptcy courts generally approve the debtor in possession's decision on assumption

8    or rejection absent a showing of bad faith, abuse of discretion, or a clear demonstration that the

9    assumption or rejection will not benefit the estate or its creditors). *In re FCX, Inc.*, 60 S.R. at

10    411-12; *In re Chipwich*, 54 B.R. at 430-31.  The business judgment standard requires that the

11    court follow the business judgment of the debtor unless that judgment is the product of bad

12    faith, whim, or caprice.  *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991),

13    *citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985),

14    *cert. denied*, 475 U.S. 1057 (1986).

15       In *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310 (Bankr. D.Utah

16    1981), the bankruptcy court explained why deference is given to the debtor in possession's

17    decision to assume or reject an executory contract or unexpired lease:

18
19        "[Court approval under section 365(a),] if required, except in
extraordinary situations, should be granted as a matter of course.
20        To begin, this rule places responsibility for administering the estate
with the trustee (debtor in possession), not the court, and therefore
21        furthers the policy of judicial independence considered vital by the
authors of the Code. Seconds this rule expedites the administration
22        of estates, another goal of the Bankruptcy Reform Act. Third, the
rule encourages rehabilitation by permitting the replacement of
23        marginal with profitable business arrangements. Fourth, the rule is
supported by pre-Code cases in this Circuit."

24    *Id*. at 315.
25

26       Additionally, the assumption of executory contracts and unexpired leases furthers the

27    goals of Chapter 11 of promoting reorganization by balancing the debtor's interest in

28

1  maximizing the value of its estate against the contracting party's interest in receiving the benefit

2  of its bargain and being protected against default by the debtor after assumption has occurred.

3  *In re Embers 86th Street. Inc.*, 184 B.R. 892, 896 (Bankr.S.D.N.Y.1995).

4  　　　　　　　　**B.**　　**Adequate Assurance of Future Performance**

5  　　　　　　In general, a debtor must cure all defaults, both monetary and non-monetary, prior to the

6  assumption of an executory contract or unexpired lease.　11 U.S.C. § 365(b); *In re Claremont*

7  *Acquisition Corp., Inc.*, 113 F.3d 1029, 1033 (9th Cir. 1997).　Bankruptcy Code section

8  365(b)(1) provides, in relevant part, that:

9
10  　　　　　if there has been a default in an executory contract or unexpired lease of
　　　　　the debtor, the [debtor in possession] may not assume such contract or
　　　　　lease unless, at the time of assumption of such contract or lease, the
11  　　　　　[debtor　　　　　　in　　　　　　possession]　　　　　　–

12  　　　　　(A)　　cures, or provides adequate assurance that the [debtor in possession]
　　　　　will promptly cure, such default …;
13
14  　　　　　(B)　　compensates, or provides adequate assurance that the [debtor in
　　　　　possession] will promptly compensate, a party other than the debtor to such
　　　　　contract or lease, for any actual pecuniary loss to such party resulting from
15  　　　　　such default; and

16  　　　　　(C)　　provides adequate assurance of future performance under such
　　　　　contract or lease."
17

18  11 U.S.C. § 365(b)(1).

19
20  　　　　　To the extent not already assumed or rejected, **Exhibit 4** to the Plan sets forth the

　　executory contracts and unexpired leases that the Debtor will assume along with the cure
21
　　amounts, which will conclusively be determined to be the cure amounts upon confirmation of
22
　　the Plan.
23
　　　　　The Debtor is able to provide "adequate assurance of future performance" for these
24
　　contracts and leases, as demonstrated by its ability to cure the defaults and its past ability to
25
　　perform the contracts and leases without material default.　Moreover, the Debtor is current on all
26
　　post-petition obligations under the contracts and leases, unless otherwise noted (the Debtor is
27
　　not current on prepetition or post-petition payments to ESP on account of the consignment
28

agreement, and, according to the Term Sheet and Plan, these past-due amounts are not paid under the Plan). Based on the Debtor's pre-petition and post-petition history, the revenues historically generated by the Debtor's business operations, and the Debtor's available cash, the Debtor is able to provide adequate assurance of future performance, as modified and agreed to by the parties under the Plan. Accordingly, as part of the Plan, the Court should approve the cure and assumption of the contracts and leases as set forth on **Exhibit 4** to the Plan.

## VII.    <u>CONCLUSION</u>

**WHEREFORE,** based on the foregoing the Debtor respectfully requests that the Court enter an order:

1. Granting this Motion;

2. Affirming the Notice of this Motion, the Plan, the Hearing on this Motion and confirmation of the Plan;

3. Overruling any objections to confirmation of the Plan;

4. Confirming the Plan pursuant to 11 U.S.C. § 1129;

5. Granting the Debtor a discharge pursuant to 11 U.S.C. § 1141(d) that includes an injunction to enforce such discharge;

6. Authorizing the Debtor to assume the contracts and leases set forth in the Plan with the cure amounts determined as set forth in the Motion;

7. Setting a post-confirmation status conference; and

8. Granting such other and further relief as may be just and appropriate under the circumstances of the case.

Dated: March 9, 2023                        ESCADA AMERICA LLC

By: ___/s/ John-Patrick M. Fritz_____
JOHN-PATRICK M. FRITZ
LEVENE, NEALE, BENDER,
YOO & GOLUBCHIK L.L.P.
Attorneys for Chapter 11
Debtor and Debtor in Possession

33

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 2818 La Cienega Avenue, Las Angeles, CA 90034

A true and correct copy of the foregoing document entitled **DEBTOR'S CONFIRMATION BRIEF IN SUPPORT OF DEBTOR'S FIRST AMENDED CHAPTER 11 REORGANIZATION PLAN, DATED JANUARY 27, 2023** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 9, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **March 9, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

| | | |
|---|---|---|
| The Honorable Sheri Bluebond<br>United States Bankruptcy Court<br>Central District of California<br>Edward R. Roybal Federal Building and Courthouse<br>255 E. Temple Street, Suite 1534 / Courtroom 1539<br>Los Angeles, CA 90012 | | |
| | | |

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **March 9, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
Via email:  bankruptcyteam@CBP.DHS.GOV

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **March 9, 2023** | Jason Klassi | /s/ Jason Klassi |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**2:22-bk-10266-BB Notice will be electronically mailed to:**

Dustin P Branch on behalf of Creditor The Macerich Company
branchd@ballardspahr.com, carolod@ballardspahr.com;hubenb@ballardspahr.com

John C Cannizzaro on behalf of Creditor 717 GFC LLC
john.cannizzaro@icemiller.com, julia.yankula@icemiller.com

Michael J Darlow on behalf of Creditor Harris County Municipal Utility District #358
mdarlow@pbfcm.com, tpope@pbfcm.com

Caroline Djang on behalf of Interested Party Caroline R. Djang
cdjang@buchalter.com, docket@buchalter.com;lverstegen@buchalter.com

Eryk R Escobar on behalf of U.S. Trustee United States Trustee (LA)
eryk.r.escobar@usdoj.gov

John-Patrick M Fritz on behalf of Attorney Levene, Neale, Bender, Yoo & Golubchik L.L.P.
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

John-Patrick M Fritz on behalf of Debtor Escada America, LLC
jpf@lnbyg.com, JPF.LNBYB@ecf.inforuptcy.com

Jonathan Gottlieb on behalf of Debtor Escada America, LLC
jdg@lnbyg.com

Marshall J Hogan on behalf of Creditor Escada Sourcing and Production, LLC
mhogan@swlaw.com, knestuk@swlaw.com

Marshall J Hogan on behalf of Creditor Mega International, LLC
mhogan@swlaw.com, knestuk@swlaw.com

William W Huckins on behalf of Creditor Brookfield Properties Retail, Inc.
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

William W Huckins on behalf of Creditor SIMON PROPERTY GROUP INC
whuckins@allenmatkins.com, clynch@allenmatkins.com;igold@allenmatkins.com

Gregory Kent Jones (TR)
gjones@sycr.com, smjohnson@sycr.com;C191@ecfcbis.com;cpesis@stradlinglaw.com

Michael S Kogan on behalf of Creditor Michael Kogan Law Firm, APC
mkogan@koganlawfirm.com

Carmela Pagay on behalf of Debtor Escada America, LLC
ctp@lnbyg.com

Kristen N Pate on behalf of Creditor Brookfield Properties Retail, Inc.
bk@bpretail.com

Eric S Pezold on behalf of Creditor Escada Sourcing and Production, LLC
epezold@swlaw.com, knestuk@swlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

1   Eric S Pezold on behalf of Creditor Mega International, LLC
    epezold@swlaw.com, knestuk@swlaw.com

2

3   Terrel Ross on behalf of Interested Party TR Capital Management LLC
    tross@trcmllc.com

4   Lindsey L Smith on behalf of Debtor Escada America, LLC
    lls@lnbyg.com, lls@ecf.inforuptcy.com

5

6   Ronald M Tucker, Esq on behalf of Creditor SIMON PROPERTY GROUP INC
    rtucker@simon.com, cmartin@simon.com;psummers@simon.com;Bankruptcy@simon.com

7   United States Trustee (LA)
    ustpregion16.la.ecf@usdoj.gov

8

9   Eric R Wilson on behalf of Creditor Committee Official Committee Of Unsecured Creditors
    kdwbankruptcydepartment@kelleydrye.com, MVicinanza@ecf.inforuptcy.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**